UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EXXON MOBIL CORPORATION, DARREN W. WOODS, ANDREW P. SWIGER, and DAVID S. ROSENTHAL,<br><br>Defendants. | Case No. 3:21-cv-194<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mendi Yoshikawa ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Exxon Mobil Corporation ("Exxon" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Exxon securities between

1

November 6, 2019 and January 14, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.  Exxon explores for and produces crude oil and natural gas in the U.S. and abroad. One of the Company's most important oil and gas properties is in the Permian Basin, which is currently the highest-producing oil field in the U.S.

3.  Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Exxon forced its employees to use unrealistic assumptions regarding the timelines for well drilling in the Permian Basin; (ii) the foregoing assumptions served to artificially inflate the value of the Company's well operations in the Permian Basin; (iii) the foregoing conduct, when revealed, subjected Exxon to a heightened risk of regulatory investigation and oversight; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.  On January 15, 2021, pre-market, the *Wall Street Journal* published an article entitled "Exxon Draws SEC Probe Over Permian Basin Asset Valuation."  The article reported that the SEC probe stemmed from a whistleblower complaint that, during a 2019 internal assessment, workers were forced to use unrealistic assumptions about how quickly wells in the Permian Basin could be drilled to reach a higher valuation, and that at least one worker who complained about the assumptions was fired.

5.  On this news, Exxon's stock price fell $2.42 per share, or 4.81%, to close at $47.89 per share on January 15, 2021.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

9. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Exxon is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

10. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

11. Plaintiff, as set forth in the attached Certification, acquired Exxon securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12. Defendant Exxon is a New Jersey corporation with principal executive offices located at 5959 Las Colinas Boulevard, Irving, Texas 75039-2298.  The Company's common stock

trades in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "XOM."

13. Defendant Darren W. Woods ("Woods") has served as Exxon's Chief Executive Officer at all relevant times.

14. Defendant Andrew P. Swiger ("Swiger") has served as Exxon's Senior Vice President at all relevant times.

15. Defendant David S. Rosenthal ("Rosenthal") has served as Exxon's Vice President and Controller at all relevant times.

16. Defendants Woods, Swiger, and Rosenthal are sometimes referred to herein as the "Individual Defendants."

17. The Individual Defendants possessed the power and authority to control the contents of Exxon' SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Exxon' SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Exxon, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

18. Exxon and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19. Exxon explores for and produces crude oil and natural gas in the U.S. and abroad. One of the Company's most important oil and gas properties is in the Permian Basin, which is currently the highest-producing oil field in the U.S. In 2017, the Company acquired acreage in the Permian Basin, in an area called the Delaware Basin, for $6.6 billion.

### Materially False and Misleading Statements Issued During the Class Period

20. The Class Period begins on November 6, 2019, when Exxon filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2019 (the "3Q19 10-Q"). For the quarter, Defendants reported total assets of $359.36 billion, attributing $13.13 billion in current assets to crude oil, products and merchandise inventories, and $250.51 billion in assets to property, plant and equipment, net.

21. Additionally, in discussing Exxon's liquidity and capital resources, the 3Q19 10-Q touted the Company's "ongoing asset management program," including, in relevant part, that the Company's "[k]ey criteria for evaluating [asset] acquisitions include potential for future growth and attractive current valuations."

22. Appended as exhibits to the 3Q19 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that "the [3Q19 10-Q] fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "the information contained in the [3Q19 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

23. On February 26, 2020, Exxon filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December

31, 2019 (the "2019 10-K"). For full year 2019, Defendants reported total assets of $362.60 billion, attributing $14.01 billion in current assets to crude oil, products and merchandise inventories, and $253.02 billion in assets to property, plant and equipment, at cost, less accumulated depreciation and depletion.

24. Additionally, the 2019 10-K contained statements identical to those referenced in ¶ 21, *supra*, concerning Exxon's purported criteria for evaluating asset acquisitions.

25. Moreover, the 2019 10-K represented, in relevant part, that Exxon "tests assets or groups of assets for recoverability on an ongoing basis"; that "[a]sset valuation analyses, profitability reviews and other periodic control processes assist [Exxon] in assessing whether events or changes in circumstances indicate the carrying amounts of any of its assets may not be recoverable"; and that Exxon "has a robust process to monitor for indicators of potential impairment across its asset groups throughout the year"; all of which indicated to investors that the Company's asset valuations were periodically reviewed, updated, accurate, and reliable, including those regarding the Permian Basin.

26. Appended as exhibits to the 2019 10-K were substantively the same SOX certifications as referenced in ¶ 22, *supra*, signed by the Individual Defendants.

27. On May 6, 2020, Exxon filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2020 (the "1Q20 10-Q"). For the quarter, Defendants reported total assets of $355.80 billion, attributing $12.07 billion in current assets to crude oil, products and merchandise inventories, and $248.41 billion in assets to property, plant and equipment, net.

28. Additionally, the 1Q20 10-Q contained statements identical to those referenced in ¶ 21, *supra*, concerning Exxon's purported criteria for evaluating asset acquisitions.

6

29.     Appended as exhibits to the 1Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 22, *supra*, signed by the Individual Defendants.

30.     On August 5, 2020, Exxon filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2020 (the "2Q20 10-Q").  For the quarter, Defendants reported total assets of $361.50 billion, attributing $15.03 billion in current assets to crude oil, products and merchandise inventories, and $250.52 billion in assets to property, plant and equipment, net.

31.     Additionally, the 2Q20 10-Q contained statements identical to those referenced in ¶ 21, *supra*, concerning Exxon's purported criteria for evaluating asset acquisitions.

32.     Appended as exhibits to the 2Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 22, *supra*, signed by the Individual Defendants.

33.     On November 4, 2020, Exxon filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2020 (the "3Q20 10-Q").  For the quarter, Defendants reported total assets of $358.04 billion, attributing $13.16 billion in current assets to crude oil, products and merchandise inventories, and $250.50 billion in assets to property, plant and equipment, net.

34.     Additionally, the 3Q20 10-Q contained statements identical to those referenced in ¶ 21, *supra*, concerning Exxon's purported criteria for evaluating asset acquisitions.

35.     Appended as exhibits to the 3Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 22, *supra*, signed by the Individual Defendants.

36.     The statements referenced in ¶¶ 20-35 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically,

Defendants made false and/or misleading statements and/or failed to disclose that: (i) Exxon forced its employees to use unrealistic assumptions regarding the timelines for well drilling in the Permian Basin; (ii) the foregoing assumptions served to artificially inflate the value of the Company's well operations in the Permian Basin; (iii) the foregoing conduct, when revealed, subjected Exxon to a heightened risk of regulatory investigation and oversight; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

37. On January 15, 2021, pre-market, the *Wall Street Journal* published an article entitled "Exxon Draws SEC Probe Over Permian Basin Asset Valuation." The article reported that the SEC probe stemmed from a whistleblower complaint that, during a 2019 internal assessment, workers were forced to use unrealistic assumptions about how quickly wells in the Permian Basin could be drilled to reach a higher valuation, and that at least one worker who complained about the assumptions was fired. Specifically, the *Wall Street Journal* reported, in relevant part:

> The [SEC] launched an investigation of Exxon . . . after an employee filed a whistleblower complaint last fall alleging that the energy giant overvalued one of its most important oil and gas properties, according to people familiar with the matter.
>
> Several people involved in valuing a key asset in the Permian Basin, currently the highest-producing U.S. oil field, complained during an internal assessment in 2019 that employees were being forced to use unrealistic assumptions about how quickly the company could drill wells there to arrive at a higher value, according to a copy of the complaint, which was reviewed by The Wall Street Journal.
>
> At least one of the employees who complained was fired last year, according to a person familiar with the matter. The Journal previously reported that there had been internal disagreements over the valuation.

\* \* \*

The SEC began investigating the claims after receiving the complaint, people familiar with the matter said. The current status of the investigation is unknown. A SEC spokesman declined to comment.

\* \* \*

In March 2019, Mr. Woods said Exxon would increase oil and gas production in the Permian to one million barrels a day as early as 2024, up from previous estimates of 600,000 by 2025. The new target would amount to roughly 25% of Exxon's overall production before the Covid-19 pandemic. It hasn't updated its production targets there since announcing budget cuts in November.

"No one I knew in the organization thought this was possible; the pressure to deliver on Woods's promise to the market permeated the organization," the whistleblower said in the complaint.

\* \* \*

As the Journal previously reported, some Exxon managers in 2018 had initially pegged the net present value of the Delaware Basin at about $60 billion. But some employees involved in Exxon's annual development planning estimated during the summer of 2019 that the area's net present value was closer to $40 billion.

According to the whistleblower complaint, the lower estimate reflected, in part, that it took longer than expected to drill wells in 2018. After employees delivered the new number to the Delaware development manager, she allegedly asked them to "claw back" some of the lost value, according to the complaint, by using different assumptions, including a more optimistic "learning curve" that estimated the rate at which they would improve drilling times.

Some employees objected to using the new learning curve, which they viewed as unrealistic, and one employee submitted the revised estimates in a file named "This is a Lie," according to the complaint. The development planners ultimately estimated that the net present value was $50 billion.

38.   On this news, Exxon's stock price fell $2.42 per share, or 4.81%, to close at $47.89 per share on January 15, 2021.

39.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

9

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Exxon securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Exxon securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Exxon or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Exxon;

- whether the Individual Defendants caused Exxon to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Exxon securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

46. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Exxon securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Exxon securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

47. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

49. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Exxon securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Exxon securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

52. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Exxon securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Exxon' finances and business prospects.

53. By virtue of their positions at Exxon, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

54. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Exxon, the Individual Defendants had knowledge of the details of Exxon' internal affairs.

55. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Exxon. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Exxon' businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Exxon securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Exxon' business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Exxon securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

56. During the Class Period, Exxon securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Exxon securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that

were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Exxon securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Exxon securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

57. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

59. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60. During the Class Period, the Individual Defendants participated in the operation and management of Exxon, and conducted and participated, directly and indirectly, in the conduct of Exxon' business affairs. Because of their senior positions, they knew the adverse non-public information about Exxon' misstatement of income and expenses and false financial statements.

61. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Exxon'

financial condition and results of operations, and to correct promptly any public statements issued by Exxon which had become materially false or misleading.

62. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Exxon disseminated in the marketplace during the Class Period concerning Exxon' results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Exxon to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Exxon within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Exxon securities.

63. Each of the Individual Defendants, therefore, acted as a controlling person of Exxon. By reason of their senior management positions and/or being directors of Exxon, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Exxon to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Exxon and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

64. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Exxon.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.  Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.  Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.  Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 28, 2021

Respectfully submitted,

**THE BRISCOE LAW FIRM, PLLC**
/s/Willie C. Briscoe
Willie C. Briscoe
Texas Bar No.: 24001788
12700 Park Central Drive, Suite 520
Dallas, Texas 75251
Telephone: 972-521-6868
Facsimile: 346-214-7463
wbriscoe@thebriscoelawfirm.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
James M. LoPiano
(*pro hac vice* application forthcoming)
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505

Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*