**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated, <br><br> *Plaintiff*, <br><br> v. <br><br> EXXON MOBIL CORPORATION, DARREN W. WOODS, NEIL A. CHAPMAN, JACK P. WILLIAMS, NEIL A. HANSEN, DAVID S. ROSENTHAL, LIAM M. MALLON, JEFFREY J. WOODBURY, and SARA N. ORTWEIN, <br><br> *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No.: 3:21-cv-00194-N |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO COMPEL**
**PLAINTIFFS TO IDENTIFY CONFIDENTIAL WITNESSES**

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, TX 77002
Tel.: (713) 655-5122
Fax: (713) 483-9122

*Attorneys for Defendants Exxon Mobil
Corporation, Darren W. Woods, Neil A.
Chapman, Jack Williams, Neil A. Hansen,
David S. Rosenthal, Liam M. Mallon, Jeffrey
J. Woodbury, and Sara N. Ortwein*

Plaintiffs have alleged that Exxon Mobil Corporation ("ExxonMobil") and other Defendants violated Sections 10(b) of the Exchange Act and SEC Rule 10b-5. To state a Section 10(b) claim, Plaintiffs must plead (1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which Plaintiffs relied, (5) that proximately caused Plaintiffs' injuries. *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). The Private Securities Litigation Reform Act (the "PSLRA") requires Plaintiffs to plead these claims with particularity. *Knutson v. Harris*, Civil Action No. 3:17-CV-2618-BK, 2018 WL 4281557, at *3 (N.D. Tex. Sept. 6, 2018). And the PSLRA also requires Plaintiffs to plead facts that, taken as true, support a "strong inference of scienter." *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535 (5th Cir. 2008).

Plaintiffs try to meet these exacting standards by infusing the Amended Class Action Complaint ("Complaint") with a mix of statements attributed to eight named witnesses and six unnamed "former employees" of ExxonMobil. The Complaint refers to the six confidential witnesses as "FE1" through "FE6." (Dkt. 53 ¶¶ 63-66, 69-70, 74-78, 120-23, 129-32, 158-60, 182, 196-97, 200-01, 213-15, 257, 267, 276, 315.) The Complaint also purports to describe their positions at ExxonMobil and when they worked there. Defendants' counsel requested disclosure of the confidential witnesses' names (App. 3-4), but Plaintiffs' counsel refused to reveal that information (App. 5).

Defendants are entitled to know the confidential witnesses' names to meaningfully test Plaintiffs' allegations. As the Fifth Circuit has held in other PSLRA cases, "[a]t the very least, [confidential] sources must be described 'with sufficient particularity to support the probability that a person in the position occupied by the source . . . would possess the information pleaded . . . .'" *Shaw Grp.*, 537 F.3d at 535 (ellipses in original) (quoting *ABC Arbitrage Plaintiffs*

*Grp. v. Tchuruk*, 291 F.3d 336, 353 (5th Cir. 2002)).    The Court need look no further than Plaintiffs' named witnesses to see their failure to provide this information.    Plaintiffs challenge ExxonMobil's statements about production forecasts in the Permian, its global proved reserves, and the Permian's resource base.    But Plaintiffs have not identified a single witness who was involved in determining the company's statements on these issues.    Rather, these witnesses were field-level operations personnel or short-term contractors with limited responsibilities and a narrow view of ExxonMobil's work in the Permian.    (*E.g.,* Dkt. 53 ¶¶ 191-93, 199 (Jeff Biddle was a "rig-move specialist" at XTO for approximately just seven months who asserted that ExxonMobil's production goal was, in his opinion, "incomprehensible") (Ryan Wells was a "Drilling Consultant at XTO" for approximately just five months who asserted there were drilling delays during his short stint).)    And other witnesses, such as reservoir engineer Andrew Rhodes, did not even work in the Permian Basin.    (Dkt. 53 ¶¶ 102-08.)

In light of the dubious information Plaintiffs provided about their named witnesses, it is even more critical for Defendants to know the identity of the confidential witnesses so they can appropriately test the plausibility of those witnesses' assertions.    In fact, the Complaint's allegations already reveal the mismatch between some of the confidential witnesses' allegations and the allegedly misleading statements.    For example, FE3 was supposedly a reservoir engineer in North Dakota (not the Permian Basin), but Plaintiffs allege that he stopped reservoir engineering in 2016, well before the class period started.    (Dkt. 53 ¶ 120.)    Yet Plaintiffs rely on FE3 for some of their allegations about production in the Permian Basin.    (Dkt. 53 ¶¶ 120-23.)    Similarly, Plaintiffs allege that FE2 was responsible for "supervising the drilling operations and tracking related costs," but do not specify which operations he supposedly supervised.    (Dkt. 53 ¶ 66.)    That vague statement could refer to anything from two wells to the entire Permian.    Likewise, Plaintiffs

3

ask Defendants and the Court to accept at face value that FE4 – whom Plaintiffs identify only as a "subsurface employee" – supposedly was in a position to know what development planning manager Melissa Bond was reviewing, observe ExxonMobil's senior "executives," divine what information Bond and other "executives" were supposedly sharing, conclude that they were "lying," and determine that all dissenting employees had been removed.  (Dkt. 53 ¶¶ 129, 159-60, 257, 267.)

Compounding matters, the Complaint appears to have, at a minimum, misstated some basic facts about Plaintiffs' confidential and named witnesses, and it fails to sufficiently (or accurately) describe them to allow Defendants to identify them.  In particular:

- The Complaint refers to FE1 through FE6 as "former employees," but the information provided indicates that at least some of them worked for contractors rather than ExxonMobil.  (*Compare* Dkt. 53 ¶ 63 n.2 *to id.* ¶¶ 66, 196.)  Indeed, certain of the named "former employees" appear to actually have been third-party contractors rather than ExxonMobil employees.

- While Plaintiffs appear to take pains to identify individuals with whom Andrew Rhodes had "contact" and or with whom he was "good friends," the actual allegations with respect to sentiments shared by him and "other reservoir" engineers are unmoored to any specifics.  Rhodes supposedly said that unidentified reservoir engineers felt their forecasts were accurate and then pressure purportedly came "down from the reserves group to look for places to boost reserves." (*E.g.*, Dkt. 53 ¶¶ 112-13.)  Notably absent is any tie to the Permian Basin, or any reference to the experiences of his "good friend[]." (Dkt. 53 ¶¶ 105, 112-13.)

- Plaintiffs contend that named former employee Steven Binns "confirmed" that valuations had to be changed to the "liking" of ExxonMobil Executive Vice-President Johnny Hall.  (Dkt. 53 ¶ 134.)  But the details provided about Binns conflict with those reflected in ExxonMobil's records, including both his period of employment and title.  More significantly, the single allegation attributed to Binns about the so-called pressure exerted by Johnny Hall is stale:  Hall retired in 2015 – over two years before the putative class period began – and could not have observed or contributed to any conduct related to the alleged misstatements.

These discrepancies are of greater concern in light of another court's specific caution to one of Plaintiffs' counsel about mischaracterizing confidential witnesses.  In *Millennial Media*, four confidential witnesses claimed that they were "misquoted or misleadingly quoted" and asked

4

that all references to them be struck. *In re Millennial Media, Inc. Sec. Litig.*, No. 14 Civ. 7923(PAE), 2015 WL 3443918, at *5 (S.D.N.Y. May 29, 2015). The court found this "unsettling" and cautioned one of Plaintiffs' counsel in this case "why it is a best practice – if not an ethical imperative – for counsel, before designating a person as a [confidential witness] in a Complaint, to . . . verify the statements that counsel propose to attribute to him or her." *Id.* at *1, *5. *Millennial Media* also noted that this was a common problem: there was a "growing body of cases chronicling the repudiation by [confidential witnesses] of statements attributed to them in securities class-action complaints," and "[n]umerous reported decisions have recounted claims by [confidential witnesses] that such complaints inaccurately attributed facts and statements to them." *Id.* at *12 (collecting cases).

For example, in *Belmont Holdings Corp. v. SunTrust Banks, Inc.*, the court dismissed a securities class action complaint after plaintiffs' key confidential witness denied making the statements attributed to him in the complaint. 896 F. Supp. 2d 1210, 1228 (N.D. Ga. 2012) (on reconsideration). Similarly, in *City of Livonia Employees' Retirement System v. Boeing Co.*, the court dismissed plaintiffs' securities fraud claims with prejudice after a confidential witness denied the statements attributed to him. 306 F.R.D. 175, 177-78 (N.D. Ill. 2014). The Seventh Circuit affirmed, and plaintiffs' counsel were sanctioned by the district court on remand. *Id.* at 178-79, 183. And in *City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*, several confidential witnesses similarly recanted statements attributed to them. 952 F. Supp. 2d 633, 636 (S.D.N.Y. 2013). Although the case settled, the court wrote an opinion for the "sole purpose" of recording "the problems" with pleading strategies that "rely heavily on private inquiries of confidential witnesses." *Id.* at 638.

It would be fundamentally unfair – and likely a waste of the Court's time – to force Defendants to speculate who these confidential witnesses are on a motion to dismiss and to test their purported statements on that basis – particularly if Plaintiffs are permitted to claim in response that ExxonMobil guessed incorrectly.  Without the names of the witnesses, Defendants cannot test whether these witnesses would have been in a position to know what Plaintiffs assert they knew. And just as Plaintiffs spent at least three months calling and interviewing these and many other current and former ExxonMobil employees in an attempt to elicit material for their Complaint, Defendants should have the information needed to contact these witnesses and ask if they are willing to adopt the statements attributed to them in the Complaint.

Other courts have ordered disclosure of confidential witness names to allow defendants to test statements attributed to them in securities class action complaints.  For example, in *Edgar v. Anadarko Petroleum Corp.*, Chief Judge Rosenthal permitted defendants' counsel to obtain the names of six confidential witnesses.  Tr. of Hr'g at 9-10, *Edgar v. Anadarko Petroleum Corp.*, No. 4:17-CV-01372 (S.D. Tex. Dec. 18, 2017), ECF No. 42 (App. 14-15).  As a result, Defendants' counsel discovered that a key confidential witness started in her role *after* a challenged statement was made.  Tr. of Hr'g at 26-27, *Edgar v. Anadarko Petroleum Corp*, No. 4:17-CV-01372 (S.D. Tex. Mar. 1, 2019), ECF No. 86 (App. 26-27).  Through the disclosure of the confidential witness's name, defense counsel was able to show that plaintiffs did not plead that the witness had any knowledge of the relevant statement.

Courts have even permitted defendants to depose confidential witnesses to test whether the statements attributed to them in a complaint are authentic.  *See, e.g.*, *Campo v. Sears Holding Corp.*, 371 F. App'x 212, 216 n.4 (2d Cir. 2010) (affirming the district court's use of deposition testimony of confidential witnesses at the motion to dismiss stage).  While Defendants do not seek

to conduct depositions at this time, this authority underscores that it is proper to request the names of confidential witnesses.

## **Conclusion**

Defendants respectfully request that the Court order Plaintiffs to identify FE1 through FE6. A proposed form of Order is attached.

Dated: November 19, 2021                      Respectfully submitted,

                                    */s/ Noelle M. Reed*

Noelle M. Reed
   State Bar No. 24044211
Wallis M. Hampton
   State Bar No. 00784199
Brent M. Hanson
   State Bar No. 24106051
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
Tel.: (713) 655-5122
Fax: (713) 483-9122
noelle.reed@skadden.com
wallis.hampton@skadden.com
brent.hanson@skadden.com

Michelle L. Davis
   State Bar No. 24038854
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
308 Bahama Court
Granbury, Texas 76048
Tel.: (713) 655-5197
Fax: (713) 483-9197
michelle.davis@skadden.com

*Attorneys for Defendants Exxon Mobil Corporation, Darren W. Woods, Neil A. Chapman, Jack Williams, Neil A. Hansen, David S. Rosenthal, Liam M. Mallon, Jeffrey J. Woodbury, and Sara N. Ortwein*

8