**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>v.<br><br>EXXON MOBIL CORPORATION, DARREN W. WOODS, NEIL A. CHAPMAN, JACK WILLIAMS, NEIL A. HANSEN, DAVID ROSENTHAL, LIAM M. MALLON, JEFFREY J. WOODBURY, and SARA N. ORTWEIN,<br><br>*Defendants*. | Civil Action No. 3:21-cv-00194-N |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**THE AMENDED CLASS ACTION COMPLAINT**

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, TX 77002
Tel.: (713) 655-5122
Fax: (713) 483-9122

*Attorneys for Defendants Exxon Mobil Corporation, Darren W. Woods, Neil A. Chapman, Jack Williams, Neil A. Hansen, David S. Rosenthal, Liam M. Mallon, Jeffrey J. Woodbury, and Sara N. Ortwein*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................1

I.　　Plaintiffs have not alleged any actionable misstatements or omissions. ............................1

　　A.　　Plaintiffs fail to link ExxonMobil's internal metrics to its public disclosures. ..............................................................................................................1

　　B.　　ExxonMobil's "on track," "on plan," or "on schedule" statements are squarely within the PSLRA safe harbor. .................................................................2

　　C.　　*Proved Reserves*: Plaintiffs have not pled with particularity that ExxonMobil materially misrepresented its Proved Reserves. ................................4

　　　　1.　　Plaintiffs improperly conflate "unconventional plays" with specific Permian Proved Reserves. ........................................................................4

　　　　2.　　Plaintiffs do not sufficiently allege that the Permian's Proved Reserves were inflated. ...............................................................................5

　　　　3.　　The Proved Reserves estimates are nonactionable opinions. .......................6

　　D.　　*Resource Base*: Plaintiffs fail to explain how ExxonMobil's statements about the Permian Resource Base are actionable. .................................................7

　　E.　　*Competitive Position*: Plaintiffs' theory would rewrite securities law and lead to absurd results. ..........................................................................................8

　　F.　　*Puffery*: Plaintiffs have not shown how ExxonMobil's general bullish statements about the Permian are actionable. .........................................................8

II.　　Plaintiffs' generic and vague allegations do not support the necessary strong inference of scienter against any Defendant. ..................................................................9

　　A.　　The Complaint depends on prohibited group pleading. ..........................................9

　　B.　　Plaintiffs' purported expert's *ex post facto* analysis is irrelevant to scienter. ...............................................................................................................12

　　C.　　Speakers' general statements about the Permian don't imply that they knew of facts contradicting their public statements. .............................................12

i

D.     None of the factors for the core operations doctrine applies to the Permian. ........14

E.     Plaintiffs' generic motive allegations are insufficient as a matter of law..............14

F.     Plaintiffs' grab-bag of other allegations fails to allege a cogent and compelling inference of scienter. ............................................................................16

G.     Plaintiffs' confidential witnesses were not in a position to know what any Individual Defendant actually knew or thought. ......................................................17

H.     Plaintiffs have not pled scienter for any of ExxonMobil's unattributed corporate statements. ...............................................................................................17

I.     Bond's alleged scienter cannot be imputed to ExxonMobil. .................................17

CONCLUSION .......................................................................................................................18

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
    291 F.3d 336 (5th Cir. 2002) ..................................................................................5

*Abrams v. Baker Hughes Inc.*,
    292 F.3d 424 (5th Cir. 2002) ................................................................................14

*In re Adient plc Securities Litigation*,
    2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020)....................................................3, 8

*Alaska Electrical Pension Fund v. Asar*,
    768 F. App'x 175 (5th Cir. 2019) .........................................................................11

*In re ArthroCare Corp. Securities Litigation*,
    726 F. Supp. 2d 696 (W.D. Tex. 2010).................................................................15

*Barrie v. Intervoice-Brite, Inc.*,
    397 F.3d 249 (5th Cir. 2005) ..................................................................................6

*In re BP p.l.c. Securities Litigation*,
    843 F. Supp. 2d 712 (S.D. Tex. 2012) ..................................................................13

*Braun v. Eagle Rock Energy Partners, L.P.*,
    223 F. Supp. 3d 644 (S.D. Tex. 2016) ...................................................................4

*Carlton v. Cannon,*
    184 F. Supp. 3d 428 (S.D. Tex. 2016) ...................................................2, 3, 4, 15

*Christine Asia Co. v. Ma*,
    718 F. App'x 20 (2d Cir. 2017) ..............................................................................9

*Congregation of Ezra Sholom v. Blockbuster, Inc.*,
    504 F. Supp. 2d 151 (N.D. Tex. 2007) ...........................................................8, 9, 15

*Cornwell v. Credit Suisse Group*,
    689 F. Supp. 2d 629 (S.D.N.Y. 2010)....................................................................9

*Crutchfield v. Match Group, Inc.*,
    529 F. Supp. 3d 570 (N.D. Tex. 2021) ............................................................9, 16

*In re Daou Systems Inc.,*
    411 F.3d 1006 (9th Cir. 2005) ..............................................................................12

*In re Dell Inc., Securities Litigation*,
    591 F. Supp. 2d 877 (W.D. Tex. 2008)...............................................................15

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008) ...........................................................................14

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)................................................................................5

*In re Fleming Cos. Securities & Derivative Litigation*,
    2004 WL 5278716 (E.D. Tex. June 16, 2004)....................................................12

*Fresno County Employees' Retirement Ass'n v. comScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017)................................................................11

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
    514 F. Supp. 3d 942 (S.D. Tex. 2021) ......................................................4, 11, 14

*Indiana Electriccal Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
    537 F.3d 527 (5th Cir. 2008) .................................................................5, 9, 12, 16

*Institutional Investors Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)...............................................................................13

*Izadjoo v. Helix Energy Solutions Group, Inc.*,
    237 F. Supp. 3d 492 (S.D. Tex. 2017) ...............................................................15

*KB Partners I, L.P. v. Barbier*,
    907 F. Supp. 2d 826 (W.D. Tex. 2012).................................................................9

*Kiken v. Lumber Liquidators Holdings, Inc.*,
    155 F. Supp. 3d 593 (E.D. Va. 2015) .................................................................16

*Louisiana Municipal Police Employees' Retirement System v. Wynn*,
    829 F.3d 1048 (9th Cir. 2016) .............................................................................1

*In re Landry's Seafood Restaurant, Inc.*,
    2001 WL 34115784 (S.D. Tex. Feb. 20, 2001) ..................................................13

*Lee v. Active Power, Inc.*,
    29 F. Supp. 3d 876 (W.D. Tex. 2014)..................................................................17

*Litwin v. Blackstone Group, L.P.*,
    634 F.3d 706 (2d Cir. 2011)..................................................................................5

*Local 731 I.B. of T. Excavators & Pavers Pension Trust Fund v. Diodes, Inc.*,
    810 F.3d 951 (5th Cir. 2016) .............................................................................14

*Luna v. Marvell Technology Group*,
　　2017 WL 2171273 (N.D. Cal. May 17, 2017) ...................................................................11

*McNamara v. Bre-X Minerals Ltd.*,
　　57 F. Supp. 2d 396 (E.D. Tex. 1999)................................................................................8

*McNamara v. Bre-X Minerals Ltd.*,
　　197 F. Supp. 2d 622 (E.D. Tex. 2001)............................................................................16

*In re MGM Mirage Securities Litigation*,
　　2013 WL 5435832 (D. Nev. Sept. 26, 2013) .....................................................................3

*Nathenson v. Zonagen Inc.*,
　　267 F.3d 400 (5th Cir. 2001) ........................................................................13, 15, 16

*Neiman v. Bulmahn*,
　　854 F.3d 741 (5th Cir. 2017) .................................................................................10, 18

*In re Odyssey Healthcare, Inc. Securities Litigation*,
　　424 F. Supp. 2d 880 (N.D. Tex. 2005) ...........................................................................8

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
　　575 U.S. 175 (2015).........................................................................................................6

*Pehlivanian v. China Gerui Advanced Materials Group, Ltd.*,
　　153 F. Supp. 3d 628 (S.D.N.Y. 2015)............................................................................8

*Mun. Emps.' Ret. Sys. of Mich. v.Pier 1 Imports,*
　　935 F.3d 424 (5th Cir. 2019) .......................................................................................17

*In re Plains All American Pipeline, L.P. Securities Litigation*,
　　307 F. Supp. 3d 583 (S.D. Tex. 2018) .........................................................................10

*Plotkin v. IP Axess, Inc.*,
　　407 F.3d 690 (5th Cir. 2005) .......................................................................................14

*In re Prudential Financial, Inc. Securities Litigation*,
　　2020 WL 7706860 (D.N.J. Dec. 29, 2020).......................................................................6

*In re Qualcomm Inc. Securities Litigation,*
　　2019 WL 1239301 (S.D. Cal. Mar. 18, 2019) ...............................................................13

*Rains v. Zale Corp.*,
　　2011 WL 3331213 (N.D. Tex. Aug. 1, 2011)................................................................17

*Ramirez v. Exxon Mobil Corp.*,
　　334 F. Supp. 3d 832 (N.D. Tex. 2018) ...............................................................4, 12, 13

*In re Regeneron Pharmaceuticals, Inc. Securities Litigation*,
    2005 WL 225288 (S.D.N.Y. Feb. 1, 2005)...................................................................5

*Sheet Metal Workers Local 32 Pension Fund v. Terex Corp.*,
    2018 WL 1587457 (D. Conn. Mar. 31, 2018) .........................................................16

*Smith v. Circuit City Stores, Inc.*,
    286 F. Supp. 2d 707 (E.D. Va. 2003) ......................................................................4

*Southland Securities Corp. v. INSpire Insurance Solutions Inc.,*
    365 F.3d 353 (5th Cir. 2004) .......................................................................3, 17, 18

*Stone v. Life Partners Holdings, Inc.*,
    26 F. Supp. 3d 575 (W.D. Tex. 2014)......................................................................14

*In re St. Jude Medical, Inc. Securities Litigation*,
    836 F. Supp. 2d 878 (D. Minn. 2011)......................................................................5

*In re SunPower Securities Litigation*,
    2011 WL 7404238 (N.D. Cal. Dec. 19, 2011).........................................................16

*Taubenfeld v. Hotels.com*,
    385 F. Supp. 2d 587 (N.D. Tex. 2004) ....................................................................2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)....................................................................................................18

*In re Tenet Healthcare Corp. Securities Litigation*,
    2017 WL 11638941 (N.D. Tex. Dec. 20, 2017) .......................................................9

*Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*,
    325 F. Supp. 3d 728 (N.D. Tex. 2018) ....................................................................14

*In re Triton Energy Ltd. Securities Litigation*,
    2001 WL 872019 (E.D. Tex. Mar. 30, 2001) ..........................................................14

*Truk International Fund LP v. Wehlmann*,
    737 F. Supp. 2d 611 (N.D. Tex. 2009) ....................................................................6

*In re UTStarcom, Inc. Securities Litigation,*
    617 F. Supp. 2d 964 (N.D. Cal. 2009) ....................................................................9

*In re Venator Materials PLC Securities Litigation*,
    2021 WL 2980581 (S.D. Tex. July 7, 2021)....................................................3, 10, 14

*In re VeriFone Holdings, Inc. Securities Litigation,*
    704 F.3d 694 (9th Cir. 2012) ...................................................................................12

## INTRODUCTION

The cornerstone of Plaintiffs' case is an SEC investigation sparked by a whistleblower complaint.  (Compl. ¶¶ 5, 6.)  Plaintiffs' September 2021 Complaint cribbed many allegations from a January 2021 *Wall Street Journal* article describing the whistleblower's allegations and the SEC's investigation.  And they larded the Complaint and Opposition with 45 references to the whistleblower or the SEC investigation.  But now that cornerstone has vanished: the SEC has closed its investigation without taking any enforcement action.  (Reply App. at 3.)  What remains in the Complaint cannot survive the motion to dismiss.

First, Plaintiffs have failed to demonstrate a single actionable statement.  As explained below, their theories are legally barred, factually inadequate, or both.  Second, the Opposition lays bare Plaintiffs' failure to plead scienter.  Plaintiffs' use of prohibited group pleading and "access" to information cannot support a strong inference of scienter.  And if, as Plaintiffs contend, scienter can be inferred from the existence of an SEC investigation, the closing of that investigation must refute any such inference.  (Opp. at 40.)

## ARGUMENT

### I.     Plaintiffs have not alleged any actionable misstatements or omissions.

#### A.     Plaintiffs fail to link ExxonMobil's internal metrics to its public disclosures.

The whistleblower alleged that ExxonMobil used an improper "learning curve" in the drilling assumptions that fed into an internal valuation of the Delaware Basin.  (Compl. ¶¶ 5, 18.) The SEC investigation into those allegations was the linchpin of Plaintiffs' case – and it is now gone.[1]  *See La. Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (court

---

[1]  Although the SEC's notice is not an "indica[tion] that the party has been exonerated and that no action may ultimately result," the now-closed investigation provides no basis for this Court to infer any misconduct.  (Reply App. at 3.)

may take judicial notice of closed SEC investigation).  In any event, Plaintiffs have not tied the basis of that investigation to any public disclosures.  They claim to have "expressly allege[d]" that these drilling assumptions "were incorporated into the proved reserves."  (Opp. at 17, citing Compl. ¶¶ 341-43.)  But Plaintiffs' actual allegations are merely a circular set of cross references that fail to explain how internal valuation assumptions were used in a public statement.  (Compl. ¶¶ 341-43, 59-62, 177.)  In addition:

- Plaintiffs fail to allege that the drilling assumptions used to calculate the Proved Reserves were wrong.  (Opp. at 17; Compl. ¶¶ 51, 62, 101, 341-43, 383.)

- Plaintiffs contend that ExxonMobil's growth plan assumed "increased drilling activity," (Opp. at 17; Compl. ¶ 62), but they concede ExxonMobil was increasing the number of drilling rigs in the Permian (Compl. ¶ 148).

- In their allegation that the 2019 10-K inflated the Proved Reserves, (Compl. ¶¶ 383-84), Plaintiffs rely on the pleading circle above and irrelevant discussions of other regions and corporate culture, without a link to Permian Proved Reserves (Compl. ¶¶ 59-62, 101-136).

### B.   ExxonMobil's "on track," "on plan," or "on schedule" statements are squarely within the PSLRA safe harbor.

***The statements are forward-looking, not statements of present fact.***   ExxonMobil's discussion of its progress toward its projections are forward-looking statements because they reflected "the plans and objectives of management for future operations . . . [and] future economic performance."  *Taubenfeld v. Hotels.com*, 385 F. Supp. 2d 587, 591 (N.D. Tex. 2004) (Godbey, J.).  Plaintiffs do not allege that ExxonMobil misrepresented its actual production in the Permian; their theory depends on linking those accurate statements to ExxonMobil's production goals.  Plaintiffs' own authority holds that statements are forward-looking if they cannot "meaningfully be distinguished from the future projection of which they [were] a part."  *Carlton v. Cannon*, 184 F. Supp. 3d 428, 494 (S.D. Tex. 2016) (alteration in original) (citation omitted).  In fact, *Carlton* specifically held that the company's statement about being "on track" to hit production goals was forward looking.  *Id.* at 485; *see also In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *19

2

(S.D.N.Y. Apr. 2, 2020) (holding "on track" statements are forward-looking) (collecting cases).

Plaintiffs' other authorities don't change the analysis. (Opp. at 11.) The "on pace" statements in *In re Venator Materials PLC Securities Litigation*, 2021 WL 2980581, at \*20 (S.D. Tex. July 7, 2021), were not "solely" forward looking because the project had "never even really beg[u]n." And *MGM* is an out-of-circuit decision that conflicts with *Carlton* and many other authorities. *In re MGM Mirage Sec. Litig.*, 2013 WL 5435832, at \*8 (D. Nev. Sept. 26, 2013).

***Plaintiffs ignore the two independent paths to safe harbor protection.*** *Southland* held that Plaintiffs must show both an absence of meaningful cautionary statements and the speaker's actual knowledge to avoid the safe harbor. *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 371 (5th Cir. 2004). Plaintiffs misstate this holding and ignore other cases with the same holding. (*See* Mot. at 11-12; Opp. at 14 n.3.)

***The production goal statements were accompanied by meaningful cautionary language.*** Plaintiffs do not dispute that ExxonMobil disclosed the very risks that they now say prevented ExxonMobil from meeting its goals, as detailed in the Motion. (Opp. at 11-13; Mot. at 13; App. 153, 169, 171, 173, 175, 177, 179, 182.) But Plaintiffs denigrate these warnings as meaningless "boilerplate" that is somehow both underinclusive because ExxonMobil didn't mention every risk that Plaintiffs identified and overinclusive because it mentioned some risks that Plaintiffs say don't matter. (Opp. at 12-13.) The law does not require companies to thread so fine a needle. And ExxonMobil's disclosures were tailored to the specific risks the company faced. (Mot. at 13.) If this is "boilerplate," then it's impossible for any company to provide meaningful cautionary statements. Nor did ExxonMobil's disclosures omit purported "risks associated with false drilling assumptions." (Opp. at 13.) ExxonMobil's risk factors specifically included "timely completion of exploration, development and construction projects." (Mot. at 13.) Disclosing "the principal

3

contingencies that could cause actual results to depart from the projection" satisfies ExxonMobil's disclosure obligations. *Carlton*, 184 F. Supp. 3d at 455 (citation omitted).

Plaintiffs also argue that the warnings were insufficient because the risks had materialized. (Opp. at 12-13.)   But the authorities Plaintiffs rely on based their analysis on particularized allegations of the speakers' actual knowledge that the risks had materialized – allegations that are missing here.  *See* Section II, *infra*; *see also Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 850-51, 854 (N.D. Tex. 2018); *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 514 F. Supp. 3d 942, 953 (S.D. Tex. 2021).

Finally, these statements aren't actionable even without the safe harbor.  Defendants agree that whether these statements are actionable depends on their context.  Here, the context included the actual performance, warnings of the very risks that allegedly came to pass, and no guarantees. (Mot. at 14.)  A reasonable investor would view these statements "with healthy skepticism." *Braun v. Eagle Rock Energy Partners, L.P.*, 223 F. Supp. 3d 644, 653 (S.D. Tex. 2016).

C.     *Proved Reserves*: **Plaintiffs have not pled with particularity that ExxonMobil materially misrepresented its Proved Reserves.**

1.     **Plaintiffs improperly conflate "unconventional plays" with specific Permian Proved Reserves.**

Plaintiffs incorrectly contend that ExxonMobil reported that *Permian Proved Reserves* increased by "800 million and 1.2 [b]illion BOE."  (Opp. at 15-16.)  But these figures were for *all* domestic unconventional plays and worldwide unconventional plays.  (Compl. ¶¶ 139-40.)  In any event, it is the financial magnitude of the alleged *misstatement* that must be material – not the total amount of, or even increases in, the unconventional reserves.  *See Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 720 (E.D. Va. 2003).  On that subject, the Complaint is silent, and Plaintiffs' authority is thus irrelevant.  (Opp. at 16.)

Plaintiffs also argue that these statements were qualitatively material because the Permian

4

was "importan[t]" to ExxonMobil.  (Opp. at 16.)  They cite no Fifth Circuit authority, and Defendants are not aware of any adopting a qualitative materiality standard in 10b-5 cases.  But even Plaintiffs' authority doesn't support the illogical premise that an immaterial alleged misstatement about an "important" area of business becomes *per se* material.  *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 720 (2d Cir. 2011) (whether the statement's subject plays a "significant role" is just one factor in determining qualitative materiality).[2]  Qualitative materiality exists where the "size of the misstatement is small, but the effect . . . is large."  *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 205 (2d Cir. 2009).

### 2.  Plaintiffs do not sufficiently allege that the Permian's Proved Reserves were inflated.

Plaintiffs depend on FE3 and Andrew Rhodes to support their claim that the Permian's Proved Reserves were inflated.  But neither was involved with those reserves, and neither said that they were inflated.  (Opp. at 8, 17-18; Mot. at 17.)  FE3 posits only that "reserves reporting at Exxon" consisted of "being told what the answer was."  (Opp. at 8; Compl. ¶ 121.)  And Plaintiffs agree that this Court "must discount allegations from confidential sources."  *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535 (5th Cir. 2008); (Dkt. 71 at 3).  Rhodes speculates that engineers forecasting Permian reserves "*would have*" used a technique to "increase the proven reserves."  (Compl. ¶¶ 117-18 (emphasis added).)  Speculation about what "would" or "may" have happened is not enough.  *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 354 n.85 (5th Cir. 2002).  Plaintiffs cannot plug this hole with speculation that the Proved

---

[2]  *St. Jude* emphasized that the "statements at issue were provided in direct response to questions from financial analysts."  *In re St. Jude Med., Inc. Sec. Litig.,* 836 F. Supp. 2d 878, 888 (D. Minn. 2011).  And *In re Regeneron Pharmaceuticals, Inc. Securities Litigation* explicitly based its analysis on precedent "[i]n the context of a drug development program."  2005 WL 225288, at *21 (S.D.N.Y. Feb. 1, 2005).

Reserves must have used the internal valuation's "learning curve" assumptions.  (Opp. at 2, 17.)  *See generally* Section I(A), *supra*.  The SEC requires Proved Reserves to be based on "existing" information, which wouldn't include anticipated improvements in drilling speed.  (Mot. at 16.)

Finally, Plaintiffs claim they alleged a "Company-wide policy" to "manipulate numbers."  (Opp. at 18.)  But the only alleged "company-wide" policy the Complaint mentions is not taking writedowns, which they do not link to the Permian Proved Reserves.  Rhodes's allegation that "XTO" reserves eventually needed to be written down isn't specific to the Permian Proved Reserves – XTO has reserves in other plays.  (Compl. ¶¶ 102, 125-26.)  Plaintiffs' assertion that the whistleblower described "scrunch[ing]" learning curves deserves even less weight.  (Opp. at 17.)  The paragraphs they cited didn't mention the whistleblower, and the alleged "scrunching" involved decline curves.  (Compl. ¶¶ 117-18.)  Decline curve analyses have nothing to do with drilling speed; they measure production drop-off over time.  (Compl. ¶¶ 115-16, 130-31.)

### 3. The Proved Reserves estimates are nonactionable opinions.

Plaintiffs contend that the Proved Reserves estimates are not opinions because they have to be reported with reasonable certainty under GAAP.  (Opp. at 18.)  This is a non-sequitur.  The process of estimating oil and gas reserves has a "speculative and uncertain nature."  *Truk Int'l Fund LP v. Wehlmann*, 737 F. Supp. 2d 611, 623 (N.D. Tex. 2009), *aff'd*, 389 F. App'x 354 (5th Cir. 2010).  The tremendous "subjective judgment" that goes into estimating GAAP reserves is the hallmark of opinions.  *In re Prudential Fin., Inc. Sec. Litig.*, 2020 WL 7706860, at *13 (D.N.J. Dec. 29, 2020) (policy reserves).  In contrast, *Ramirez* relied on a case that didn't even address whether a GAAP figure was an opinion.  *See Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 257 (5th Cir. 2005).

All of *Omnicare*'s liability prongs depend on the *speaker's* knowledge.  *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184, 188-89 (2015).

6

Because Plaintiffs have not sufficiently pled knowledge, these claims should be dismissed. *See generally* Section II, *infra*.

> **D.      *Resource Base*: Plaintiffs fail to explain how ExxonMobil's statements about the Permian Resource Base are actionable.**

*The Complaint does not support a reasonable inference that ExxonMobil inflated the Resource Base.* No witness contended that the Permian Resource Base was inflated. The only witness that discussed the Resource Base was Rhodes, and his statements were expressly limited to the Arkoma Shale. (Compl. ¶¶ 124-27.) Nor do Plaintiffs explain how inflating Proved Reserves would also inflate the total Resource Base. Plaintiffs' theory is that ExxonMobil overestimated its drilling speed.[3] But Plaintiffs admit that the Resource Base "does not speak to how fast but rather how much" oil is recovered. (Opp. at 22.) Oil does not vanish from the ground if ExxonMobil cannot drill as quickly as planned.

*These estimates are also opinions.* Plaintiffs largely recycle their argument that Proved Reserves are fact statements. (Opp. at 22.) But Plaintiffs based that argument on Proved Reserves being GAAP figures. The Resource Base is not a GAAP metric, and merely saying that one part of it is based on GAAP information is irrelevant. Otherwise, any opinion that depended in any way on data embedded in financial statements would be treated as a fact. Plaintiffs cite no law for this remarkable theory.

*The safe harbor protects these estimates.* Plaintiffs' safe harbor argument is even weaker. (Opp. at 22.) Plaintiffs admit that the Resource Base estimates include "other discovered resources *that are expected to be ultimately recovered*." (Compl. ¶ 46 (emphasis added).) If that's not a prediction, what is? Claiming that *discovered* resources is a statement of present fact is no answer:

---

[3]     Plaintiffs also contend that ExxonMobil was finding less oil than expected. (Opp. at 22.) But their only particularized allegations involved *two* wells. (Compl. ¶¶ 210-12.)

7

these estimates cannot be distinguished from the estimate of ultimate recovery, so they are within the safe harbor. *Adient plc*, 2020 WL 1644018, at \*19. Finally, Plaintiffs did not explain why these statements failed to meet the safe harbor's two independent prongs. (Mot. at 21; Opp. at 22.)

E. *Competitive Position*: **Plaintiffs' theory would rewrite securities law and lead to absurd results.**

Plaintiffs' Opposition challenges two slides describing ExxonMobil's "unique" position and comparing it to certain competitors in three disclosed metrics. (Compl. ¶¶ 355-56.) Plaintiffs do not claim the slides were false. They argue that the slides were misleading in omitting other competitors and metrics (*e.g.*, "well quality") that would have painted ExxonMobil in a worse light. (Opp. at 22-23; Compl. ¶¶ 355-56.) But ExxonMobil had "no duty to cast its business in a pejorative, rather than a positive, light." *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 162 (N.D. Tex. 2007) (Godbey, J.) (citation omitted).

In addition, "a duty to speak the full truth *on a particular subject* arises" only when "a defendant undertakes to say anything *on that particular subject*." *McNamara v. Bre-X Minerals Ltd.*, 57 F. Supp. 2d 396, 416 (E.D. Tex. 1999). ExxonMobil did not have "to choose between an affirmative duty to disclose everything if anything is said and a vow of silence." *See In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d 880, 895 (N.D. Tex. 2005) (Godbey, J.). Nor is there a duty to disclose information "that is equally available [or] widely reported." *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 645 (S.D.N.Y. 2015). Plaintiffs' response that only an expert could understand the publicly available information is nonsensical. (Opp. at 23.) Investors didn't need an expert to identify the other Permian operators or to see the metrics ExxonMobil disclosed in the charts. And if the "well quality" of other competitors was publicly available, investors had access to it; if it wasn't, ExxonMobil didn't have it to disclose.

F. *Puffery*: **Plaintiffs have not shown how ExxonMobil's general bullish statements about the Permian are actionable.**

8

Production goal statements not linked to any specific or concrete facts are immaterial puffery.[4]  This Court has recognized that puffery is immaterial as a matter of law.  *Ezra Sholom*, 504 F. Supp. 2d at 161.  Accordingly, the statements in Paragraphs 232, 353, 355, 359, 361, 363, 373, 378, 385, 387, 397, 398, 403, 410, 412, 413, 415, 417, 421, 423, 430, 432, 434, and 436 are nonactionable.  (*See* Mot. at 22-23.)

**II.     Plaintiffs' generic and vague allegations do not support the necessary strong inference of scienter against any Defendant.**

**A.      The Complaint depends on prohibited group pleading.**

Plaintiffs do not dispute that the Fifth Circuit prohibits group pleading.  They just pretend that they aren't using it.  But Plaintiffs refer to "management" 52 times in the Complaint and 37 times in the Opposition.  Plaintiffs' first two scienter arguments do not mention a single Individual Defendant.  (Opp. at 29-31.)  Plaintiffs' purported list of individualized allegations repeatedly uses group pleading.  (Opp. at 42-43.)  And Plaintiffs' allegations of "common knowledge" are the most extreme example of group pleading.  *See Shaw Grp.*, 537 F.3d at 539-40 (holding that alleging a problem was "widely known throughout the company" does not plead scienter); (*see also* Mot. at 28).[5]

*"Access" to information is insufficient to infer knowledge.*  Plaintiffs' generic allegations

---

[4]   *See, e.g.*, *In re Tenet Healthcare Corp. Sec. Litig.*, 2017 WL 11638941, at *4 (N.D. Tex. Dec. 20, 2017) (general statements about reputation, compliance, and ethical norms are puffery); *Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570, 590 (N.D. Tex. 2021) (statements of feeling optimistic or that company was "on track" to achieve its goals given its growth and progress are puffery).

[5]   Plaintiffs' authority is readily distinguished.  One case didn't involve "common knowledge" allegations.  *See Christine Asia Co. v. Ma*, 718 F. App'x 20, 22-23 (2d Cir. 2017).  The others involved allegations that specific defendants were aware of the problems.  *See KB Partners I, L.P. v. Barbier*, 907 F. Supp. 2d 826, 831 (W.D. Tex. 2012); *Cornwell v. Credit Suisse Grp.,* 689 F. Supp. 2d 629, 637 (S.D.N.Y. 2010); *In re UTStarcom, Inc. Sec. Litig.,* 617 F. Supp. 2d 964, 974 (N.D. Cal. 2009).

9

that "reviews are held" with unnamed "senior management" and that the Global Reserves and Resources Group presented finalized reserves reports to "senior management" are also insufficient. (Opp. at 30; Compl. ¶¶ 259-60.)  They provide no basis to infer that any Individual Defendant knew information different from the final reports.  And contrary to the Opposition, the Complaint does not allege that Bond or any Individual Defendant directed reservoir engineers to manipulate reports.  (Opp. at 29-30; Compl. ¶¶ 109-19, 254-55.)

Plaintiffs' effort to cobble together scienter allegations against Woods, Ortwein, and Bond also falls short.  Plaintiffs assert without citation that Woods had "access" to data.  (Opp. at 31.) They claim that Ortwein had "active" involvement in reserves, but the Complaint merely alleged that she (and others) had the *ability* to change reserves forecasts.  (Opp. at 31; Compl. ¶ 122.)  And the Complaint alleged only that Bond's "access" was to decline curve analyses, which are not related to drilling speed.  (Compl. ¶¶ 115-16, 130-31.)  Plaintiffs didn't allege that Bond reviewed the decline curves, what they revealed, or that she communicated anything to any speaker.  (Opp. at 31; Compl. ¶ 130.)  These barebones allegations are not enough.  *See In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 616 (S.D. Tex. 2018), *aff'd sub nom. Police & Fire Ret. Sys. of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726 (5th Cir. 2019).

Plaintiffs also assert that Defendants (as members of management) had "access" to drilling reports, reserves, and production data, but do not claim that any Defendant actually reviewed that information.  (Opp. at 31-32.)  Plaintiffs' own authority holds that "pleading that a defendant had access to internal information that contradicted his or her public statements is not enough."  *See Venator*, 2021 WL 2980581, at *14; *see also Neiman v. Bulmahn*, 854 F.3d 741, 748 (5th Cir.

10

2017) (holding that mere receipt of reports is insufficient for scienter).[6]   The only Individual Defendant they mention is Woods – who they allege "could access data" because Woods and Bond "spoke to each other all the time." (Opp. at 32.)   But Plaintiffs fail to allege that Bond actually spoke to Woods about anything relevant to their claims. (Compl. ¶ 257.)

*"Corporate culture" allegations are not linked to any speaker.* Plaintiffs' assertions that the "reserves group" or "vice presidents or management-level officers" pressured ExxonMobil's reservoir engineers to "boost" the reserves are also inadequate. (Opp. at 29-30.)   They had to allege that an Individual Defendant applied or was subject to such "pressure." *Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 185 (5th Cir. 2019); (Mot. at 31). Plaintiffs try to meet this burden by (1) citing an out of context statement by a former CEO, (2) contending that – as in all companies – employees had to follow executives' decisions, (3) asserting that an unnamed reserves manager told someone that some XTO reserves needed to be written down, and (4) asserting that an unidentified former employee claimed that ExxonMobil "never ever writes down reserves." (Opp. at 33-34.)   But the Complaint does not allege that any speaker knew any of this, much less applied the alleged pressure. If, as Plaintiffs contend, senior management was imposing "decrees" (Opp. at 33), then why couldn't Plaintiffs' fourteen witnesses identify the specific decrees? Plaintiffs' allegations don't approach the detailed allegations in their authorities. *Luna v. Marvell Tech. Grp.*, 2017 WL 2171273, at *4-5 (N.D. Cal. May 17, 2017) (CEO micromanaged the company by requiring his signature on purchase orders over $100,000, company admitted that senior management pressured finance employees, and CEO was terminated after an internal investigation); *Fresno Cnty. Empls.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 542, 551

---

[6]   *Anadarko* is easily distinguished. Plaintiffs alleged that named defendants were presented evidence in multiple meetings and a "20-page letter." *See Anadarko*, 514 F. Supp. 3d at 954.

(S.D.N.Y. 2017) (company's 8-K admitted "concerns about tone at the top").[7]

### B. Plaintiffs' purported expert's *ex post facto* analysis is irrelevant to scienter.

Plaintiffs repeatedly assert that the Court should infer scienter because their unnamed hired "expert" opines that ExxonMobil's production goal was not achievable. (Opp. at 30, 32, 34-35.) The Complaint mentions this expert 31 times, but provides no information about this so-called expert, her qualifications, what she reviewed, or what her methodology is. Without this basic information, this Court cannot credit that unnamed person's opinion. *Cf. Shaw Grp.*, 537 F.3d at 535 (discounting confidential witness allegations); *see also Ramirez*, 334 F. Supp. 3d at 842 (refusing to credit opinions in expert report in a complaint).

In any event, these allegations don't help Plaintiffs. They do not allege that any of the Individual Defendants ever accessed the unidentified data Plaintiffs' expert used, or that they did or could have reproduced the expert's analysis. (Compl. ¶ 81.) And the expert's purported "feasibility" analysis apparently skewed the data – applying *2018* performance metrics to the number of rigs ExxonMobil had in *2019*. (Compl. ¶¶ 166-69.) The expert's data shows that ExxonMobil's performance metrics improved after 2018. (Compl. ¶¶ 83-88; 218-27.) The Court need not credit expert conclusions based on "garbage in, garbage out" analysis.

### C. Speakers' general statements about the Permian don't imply that they knew of facts contradicting their public statements.

Chapman's and Williams's statements that ExxonMobil was continuing to learn about and understand the Permian or Delaware do not support any inference of scienter. (Opp. at 35-36.)

---

[7] In Plaintiffs' other cases, the complaint pled that the speaker had specific information contradicting the public statements. *See In re Fleming Cos. Sec. & Derivative Litig.*, 2004 WL 5278716, at *28-29 (E.D. Tex. June 16, 2004); *In re Daou Sys. Inc.,* 411 F.3d 1006, 1023 (9th Cir. 2005); *In re VeriFone Holdings, Inc. Sec. Litig.,* 704 F.3d 694, 709 (9th Cir. 2012).

Plaintiffs do not allege that they ever made a misleading statement after learning of alleged potential issues with ExxonMobil's production. (Compl. ¶¶ 282-83.)[8] Nor do they explain why the Court should infer that a corporate agent discussing what "*we*" have learned is really saying what *he* had learned. (Mot. at 40.) Plaintiffs cannot fix this pleading failure by arguing that the existence of a misstatement shows scienter. (Opp. at 36.) Otherwise, Section 10(b) would become a *de facto* strict liability statute. Plaintiffs' principal case directly rejects their position. *Ramirez* held that although the defendant discussed "relevant matters in analyst meetings," the plaintiffs "failed to plead any facts demonstrating" the defendant's knowledge. 334 F. Supp. 3d at 856.[9]

Finally, Plaintiffs cannot explain how consistent statements support an inference of scienter. Instead, they argue that it's too early for the Court to infer the opposite. (Opp. at 36.) But Plaintiffs do not get to say whatever they want and, in their words, have the Court "kick the can" of appropriate inferences down the procedural road. (Mot. at 43; Compl. ¶¶ 218, 221, 285, 287.) Plaintiffs' authority is not to the contrary.[10]

---

[8]   Plaintiffs cite no statements by Woods or Hansen. (Opp. at 35 (citing Compl. ¶ 282).)

[9]   Plaintiffs' other cases do not hold otherwise. *See In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 783 (S.D. Tex. 2012) (defendant spoke about, and claimed to be responsible for, safety); *In re Landry's Seafood Rest., Inc.*, 2001 WL 34115784, at *22 (S.D. Tex. Feb. 20, 2001) (defendants admitted "closely" reviewing specific information and focusing on curing problems); *see also Nathenson v. Zonagen Inc.*, 267 F.3d 400, 425 (5th Cir. 2001) (applying core operations doctrine to an essentially one-product company).

[10]   In *Institutional Investors Group v. Avaya,* the CFO repeatedly denied analysts' "focused questions" about whether there was unusual price discounting. 564 F.3d 242, 269-70 (3d Cir. 2009). The Third Circuit recognized the case's unique facts, stating that "[w]e do not suggest that the specific nature of the analysts' inquiries, by itself, creates a strong inference." *Id.* at 270. *Qualcomm* involved far more particularized allegations. The defendants allegedly admitted that refusing to license competitors was improper and unprecedented and were "directly and extensively" involved in maintaining and developing the licensing at issue. *In re Qualcomm Inc. Sec. Litig.,* 2019 WL 1239301, at *11 (S.D. Cal. Mar. 18, 2019).

13

### D.   None of the factors for the core operations doctrine applies to the Permian.

- *First*, Plaintiffs ignore that the Fifth Circuit has never applied the core operations doctrine to a large company.  (Mot. at 34.)  The *Anadarko* case Plaintiffs cite doesn't address the core operations doctrine.  514 F. Supp. 3d at 956.  And over 70 percent of the newly-public Venator's revenue came from the product at issue.  *Venator*, 2021 WL 2980581, at \*3.

- *Second*, the undisclosed information should be something that might "jeopardize[] the company's existence."  *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 959 (5th Cir. 2016).  Plaintiffs have not alleged – and cannot plausibly allege – that ExxonMobil would cease to exist if the Permian were less productive than Defendants had stated.

- *Third*, Plaintiffs don't allege that Defendants would have been exposed to any "documents, conversations, and meetings" under the core operations doctrine.  (Opp. at 37.)

- *Fourth*, Plaintiffs stand the final factor – whether Defendants made inconsistent statements – on its head, contending without authority that the *absence* of inconsistent statements somehow supports their position.  (Opp. at 37-38.)[11]

### E.   Plaintiffs' generic motive allegations are insufficient as a matter of law.

Motives that all executives have are insufficient to plead scienter.  *See Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430, 434 (5th Cir. 2002); *Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*, 325 F. Supp. 3d 728, 744-45 (N.D. Tex. 2018)*, aff'd sub nom. Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imps., Inc.*, 935 F.3d 424 (5th Cir. 2019).  Plaintiffs mount no real response to this statement of law other than a tortured attempt to link ExxonMobil's growth goals in the Permian to executive compensation.  (Opp. at 38.)  But the executive compensation was tied to progress towards general strategic objectives and financial and operating performance.  (Compl.

---

[11]   The facts of the cases Plaintiffs cite are materially different from those alleged here.  *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 342 (5th Cir. 2008) (company was "one-trick pony" with no employees); *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 692-94, 698-700 (5th Cir. 2005) (defendants at struggling "fledgling" company would have known that one of its two strategic partners was headed for bankruptcy); *Stone v. Life Partners Holdings, Inc.*, 26 F. Supp. 3d 575, 600 (W.D. Tex. 2014) (one-product company); *In re Triton Energy Ltd. Sec. Litig.*, 2001 WL 872019, at \*10 (E.D. Tex. Mar. 30, 2001) (relevant assets represented "most or all" of the company's value).

¶¶ 295-96.)   If allegations of aspirational goals to increase corporate revenue or to "turn [a company] around" are all it takes, then every executive in every company has a motive to engage in securities fraud.  (Opp. at 38.)

Stock sales are also mere motive allegations – they cannot create a strong inference of scienter by themselves.  (Mot. at 37.)  And only a few of the Individual Defendants allegedly sold stock during the class period, which undercuts any inference of scienter.  *See Nathenson*, 267 F.3d at 421.  Plaintiffs' attempt to distinguish *Abrams* on this point also falls flat:  If one selling defendant out of five doesn't support an inference, why do three sellers out of eight?  In each case, a majority of defendants held on to their stock.  (Opp. at 39.)

Nor do Plaintiffs dispute that an increase in stock holdings can negate any inference of fraud.  They just say that this doctrine doesn't fit where the increases come from compensation and bonus plans.  (Opp. at 39.)  But *Carlton* didn't draw that distinction.  *See* 184 F. Supp. 3d at 481.  Plaintiffs do not explain why that matters.  Any motive to sell shares at an inflated price doesn't depend on how the executive acquired those shares.

Finally, Plaintiffs have not alleged sales in suspicious times or amounts.  This Court has noted that sales of 22% of holdings are not "suspicious amounts."  *See Ezra Sholom*, 504 F. Supp. 2d at 165; *Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 517-18 (S.D. Tex. 2017) (finding sales of 20% were not suspicious).  Only one of the Defendants exceeded these ranges – and only barely.  (Opp. at 40.)  And where the class period is long, any inference of motive from stock sales becomes more attenuated.  *See, e.g.*, *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 723 (W.D. Tex. 2010); *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 897 (W.D. Tex. 2008).  Likewise, the further away from the alleged misrepresentation, the weaker the inference of scienter.  *See Izadjoo*, 237 F. Supp. 3d at 517 (defendant's sale of some stock exactly two months

15

before alleged corrective disclosure together with earlier stock sales did not support inference of scienter). These limited stock sales by a few defendants over a long class period do not show a motive to engage in securities fraud.

> **F.      Plaintiffs' grab-bag of other allegations fails to allege a cogent and compelling inference of scienter.**

- *Meetings.* Plaintiffs rewrite the Complaint by asserting that Ortwein and Woods attended meetings. (Opp. at 35 (citing Compl. ¶¶ 159, 163).) But neither of the cited paragraphs alleged that Woods attended any of these meetings. And Plaintiffs don't explain how Ortwein's attendance at the meetings about the green blob announcement in March 2019 could affect her October 2, 2018 statements. (Mot. at 43; Compl. ¶¶ 144, 162-63.) Whether the "green blob" was disclosed in July 2018 is a red herring. (Opp. at 43.) Plaintiffs do not allege that she learned facts showing that the projection was false before October 2, 2018.

- *Site Visits.* Whether Woods, Chapman, or Williams visited the Permian is irrelevant because the Complaint does not allege what they learned. As Plaintiffs' authority demonstrates, site visits matter only if there are specific allegations about what defendants learned. *See Sheet Metal Workers Loc. 32 Pension Fund v. Terex Corp.*, 2018 WL 1587457, at *11 (D. Conn. Mar. 31, 2018) (defendant saw factories operating below capacity and excess inventory); *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 608 (E.D. Va. 2015) (defendant toured factory engaged in illegal activities, performed line reviews, and interviewed suppliers); *McNamara v. Bre-X Mins. Ltd.*, 197 F. Supp. 2d 622, 680-81 (E.D. Tex. 2001) (employee wrote up the red flags he saw); (Opp. at 33).

- *Retaliation.* Plaintiffs do not dispute that they had to plead specific facts linking the purported retaliation to the Individual Defendants. (Mot. at 36; Opp. at 40-41); *Crutchfield*, 529 F. Supp. 3d at 599. Plaintiffs failed to do so.

- *NDAs.* Plaintiffs do not allege that any Individual Defendant used NDAs for improper purposes. (Compl. ¶¶ 312-13.) The Court must "weigh the strength of plaintiffs' favored inference in comparison to other possible inferences." *Shaw Grp.*, 537 F.3d at 535 (citation omitted). It's much more plausible to infer that ExxonMobil required NDAs to protect its confidential information.

- *Presentations.* Plaintiffs don't allege that any Individual Defendant knew that data in ExxonMobil's presentations was allegedly "cherry-picked." (Opp. at 30.) Nor can Plaintiffs use the mere existence of an alleged misrepresentation to show scienter. Plaintiffs' authority is not to the contrary. In *SunPower*, the plaintiffs alleged that the defendants actively "control[led] and monitor[ed] closely accounting operations" and that there was a pattern of manual adjustments to the accounting records. *In re SunPower Sec. Litig.*, 2011 WL 7404238, at *4 (N.D. Cal. Dec. 19, 2011).

16

- ***SOX Certifications.*** Plaintiffs apparently agree that these certifications cannot establish scienter as a matter of law.  (Opp. at 40.)

    **G.**      **Plaintiffs' confidential witnesses were not in a position to know what any Individual Defendant actually knew or thought.**

For witnesses to opine on the Individual Defendants' state of mind, they must have had enough contact with the defendant to support a cogent and compelling inference that they knew what the speaker would have known.  *See Pier 1*, 935 F.3d at 434; (Mot. at 26-27).  Plaintiffs cannot meet this standard, and so they mischaracterize this as an argument that witnesses without contact with the Individual Defendants cannot provide information for a complaint.  (Opp. at 41.)

    **H.**      **Plaintiffs have not pled scienter for any of ExxonMobil's unattributed corporate statements.**

Defendants argued that Plaintiffs failed to tie any of the unattributed press releases to any speaker.  (Mot. at 44.)  Plaintiffs' counter that Individual Defendants may have made similar statements later does not show a sufficient link to the statements at issue.  (Opp. at 44); *Southland*, 365 F.3d at 365.  The Individual Defendants' "power to control" whether statements are made cannot be enough to impute scienter as a matter of law.  (Compl. ¶ 485); *Southland*, 365 F.3d at 365.  Accordingly, the challenged statements in paragraphs 351, 389-90, 393-94, 425, and 430 must be dismissed.

    **I.**      **Bond's alleged scienter cannot be imputed to ExxonMobil.**

Plaintiffs argue in passing that Bond may have "furnished" information used in public disclosures, so her scienter is imputed to ExxonMobil.  (Opp. at 29.)  But they fail to explain how information Bond furnished was purportedly included in a false public disclosure.  *Lee v. Active Power, Inc.*, 29 F. Supp. 3d 876, 882 (W.D. Tex. 2014).  And they fail to allege that Bond knew her actions would lead to fraudulent investor-facing statements.  *See Rains v. Zale Corp.*, 2011 WL 3331213, at *5-6 (N.D. Tex. Aug. 1, 2011) (holding that although individual intended to

17

falsify numbers, there was no scienter because there was no intent to cause the company to release fraudulent statements); *see also Southland*, 365 F.3d at 366 (scienter requires intent to "mislead[] buyers or sellers" (citation omitted)).  They allege only that people questioned the learning curve and the Delaware internal valuation.  (Compl. ¶¶ 175-76, 448.)

Plaintiffs also do not allege with particularity that Bond knew the internal valuation's learning curve assumptions were purportedly false.  Nor do Plaintiffs explain what information Bond actually received or saw that would have revealed the learning curve assumptions were wrong, especially because Plaintiffs' own data shows drilling times in the Delaware dropped rapidly.  (Compl. ¶¶ 83, 221.)  Plaintiffs allege that after Bond asked employees to use a more "optimistic 'learning curve,'" some employees disagreed.  (Compl. ¶¶ 175-76.)  Plaintiffs also concede that the value was then adjusted downward.  (Compl. ¶ 176.)  Alleging that Bond knew the valuation was lower than the original $60 billion doesn't mean that the $50 billion final value was improper.  (Compl. ¶ 257.)  The more plausible inference is that Bond and her team came to an appropriate internal valuation based on ExxonMobil's realized drilling speed improvements. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).  The SEC's dismissal affirms this is the more plausible inference.

At their core, Plaintiffs' scienter arguments are the sort of vague and generic allegations that courts routinely hold are insufficient.  Apparently aware of the weakness of their position, Plaintiffs contend that the entire "mosaic" of their allegations is somehow sufficient.  (Opp. at 40.) But they do not, and cannot, explain how a collection of meritless arguments can magically transform into a strong inference of scienter.  Zero plus zero still equals zero. *See Neiman*, 854 F.3d at 747-50.

## CONCLUSION

The Court should dismiss the lawsuit without leave to replead.

18

Dated: February 9, 2022                        Respectfully submitted,

                                               */s/ Noelle M. Reed*
                                               Noelle M. Reed
                                                    State Bar No. 24044211
                                               Wallis M. Hampton
                                                    State Bar No. 00784199
                                               Brent M. Hanson
                                                    State Bar No. 24106051
                                               SKADDEN, ARPS, SLATE,
                                                    MEAGHER & FLOM LLP
                                               1000 Louisiana Street, Suite 6800
                                               Houston, Texas 77002
                                               Tel.: (713) 655-5122
                                               Fax: (713) 483-9122
                                               noelle.reed@skadden.com
                                               wallis.hampton@skadden.com
                                               brent.hanson@skadden.com

                                               Michelle L. Davis
                                                    State Bar No. 24038854
                                               SKADDEN, ARPS, SLATE,
                                                 MEAGHER & FLOM LLP
                                               308 Bahama Court
                                               Granbury, Texas 76048
                                               Tel: (713) 655-5197
                                               Fax: (713) 483-9197
                                               michelle.davis@skadden.com

                                               *Attorneys for Defendants Exxon Mobil*
                                               *Corporation, Darren W. Woods, Neil A.*
                                               *Chapman, Jack Williams, Neil A. Hansen,*
                                               *David S. Rosenthal, Liam M. Mallon, Jeffrey*
                                               *J. Woodbury, and Sara N. Ortwein*