**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | Civil Action No. 3:21-cv-00194-N |
| EXXON MOBIL CORPORATION, DARREN W. WOODS, LIAM M. MALLON, and MELISSA BOND, | ) ) ) ) | |
| *Defendants*. | ) ) ) ) ) ) | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
<u>JUDGMENT ON THE PLEADINGS</u>**

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, TX 77002
Tel.: (713) 655-5122
Fax: (713) 483-9122

*Attorneys for Defendants Exxon Mobil
Corporation, Darren W. Woods, Liam M.
Mallon, and Melissa Bond*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...........................................................................................................1

ARGUMENT ..................................................................................................................1

I.    Plaintiffs fail to address Fifth Circuit precedent and the language of Rule 12(c) in claiming the Motion is "Improper." ...........................................................................1

II.   The SAC does not connect Bond's purportedly deceptive conduct with the purchase or sale of any security. ...............................................................................3

    A.    Plaintiffs do not plead any connection between learning curve assumptions in the 2019 Development Plan and ExxonMobil statements. ..................................4

    B.    Plaintiffs do not plead that the 2019 Development Plan's learning curve assumptions were incorporated into the proved reserves and resource base. ..........6

III.  Plaintiffs could not have relied on Bond's allegedly deceptive conduct. ...........................8

IV.   Plaintiffs fail to plead ExxonMobil's scienter with respect to the alleged scheme. ............8

V.    Plaintiffs cannot resurrect the dismissed claims challenging ExxonMobil's forward-looking statements by reframing them as part of an alleged scheme. ...................9

CONCLUSION ...............................................................................................................10

i

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Abecassis v. Wyatt*,
   7 F. Supp. 3d 668 (S.D. Tex. 2014)...............................................................................2

*Affco Investments 2001, LLC v. Proskauer Rose, LLP,*
   625 F.3d 185 (5th Cir. 2010).........................................................................................8

*Boyd v. Dallas Independent School District*,
   2009 WL 159243 (N.D. Tex. Jan. 21, 2009)..................................................................2

*Coggins v. Camber Energy Inc.*,
   2023 WL 6202056 (S.D. Tex. Sept. 22, 2023)................................................................5

*In re Cognizant Tech. Sols Corp. Sec. Litig.*,
   2020 WL 3026564 (D.N.J. June 5, 2020) .......................................................................9

*Duffie v. Wichita County*,
   2014 WL 5796837 (N.D. Tex. Nov. 6, 2014) ..................................................................2

*Estep v. City of Somerset, Kentucky*,
   2011 WL 845847 (E.D. Ky. Mar. 8, 2011) .....................................................................3

*In re Galena Biopharma, Inc. Securities Litigation*,
   117 F. Supp. 3d 1145 (D. Or. 2015)...............................................................................6

*In re HealthSouth Corp. Securities Litigation*,
   257 F.R.D. 260 (N.D. Ala. 2009) ...................................................................................8

*Indiana Public Retirement System v. AAC Holdings Inc.*,
   2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023) .............................................................8

*Kerr v. Exobox Tech's Corp.*,
   2012 WL 201872 (S.D. Tex. Jan. 23, 2012) ...................................................................9

*Knurr v. Orbital ATK Inc.*,
   294 F. Supp. 3d 498 (E.D. Va. 2018)..............................................................................9

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009)........................................................................................10

*Marcu v. Cheetah Mobile Inc.*,
   2020 WL 4016645 (S.D.N.Y. July 16, 2020).................................................................10

ii

*Maverick Fund, Ltd. v. Mohawk Industries, Inc.*,
   2023 WL 2887603 (N.D. Ga. Mar.31, 2023) ...............................................................6

*SEC v. City of Victorville*,
   2018 WL 3201676 (C.D. Cal. Jan. 24, 2018)................................................................9

*Sosa v. Coleman*,
   646 F.2d 991 (5th Cir. 1981)......................................................................................2

*In re SourceCorp Securities Litigation*,
   2006 WL 8439544 (N.D. Tex. June 6, 2006)............................................................10

*In re Tupperware Brands Corp. Securities Litigation*,
   2023 WL 5091802 (11th Cir. Aug. 8, 2023) ...............................................................9

*Villare v. Abiomed, Inc.*,
   2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021) .............................................................9

*West Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
   845 F.3d 384 (8th Cir. 2016)......................................................................................4

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021)...................................................................................10

*In re XL Fleet Corp. Securities Litigation*,
   2022 WL 493629 (S.D.N.Y. Feb. 17, 2022) ...............................................................3

## RULES

Fed. R. Civ. P. 9(b) ...............................................................................................................5

Fed. R. Civ. P. 12(h)(2)........................................................................................................2

## INTRODUCTION[1]

Plaintiffs' Opposition lays bare the complete absence of any pleaded factual link between the purportedly deceptive internal conduct at the heart of their only surviving claim and any purchase or sale of a security. The Opposition fails to identify a single particularized allegation connecting the purportedly fraudulent conduct to ExxonMobil management. Indeed, this Court already held that the SAC did not adequately allege that Bond communicated false information to either Woods or Mallon, the only alleged speakers. Moreover, the Opposition fails to point to any allegation that the fraudulent conduct actually somehow "support[ed]" any misleading public statements. In fact, the SAC shows that would be impossible as the only alleged conduct that survived dismissal came after the public statements it purportedly "supports."

Unable to address the substance of Defendants' arguments, Plaintiffs instead try to obfuscate the issues by accusing Defendants of mischaracterizing either the SAC's allegations or the law (or both) while mischaracterizing their own pleading. But the SAC speaks – or in this case, fails to speak – for itself. Taken together, this Court's two prior Orders establish that Plaintiffs' remaining scheme liability and control person claims fail as a matter of law.

## ARGUMENT

I.      **Plaintiffs fail to address Fifth Circuit precedent and the language of Rule 12(c) in claiming the Motion is "Improper."**

First, Plaintiffs inconsistently contend that the Motion is "improper because it asserts arguments Defendants could have asserted in their motion to dismiss" and that the Motion asks the Court to "reconsider issues it already decided." (Mot. at 9.) They are wrong on both counts.

---

[1]     Unless otherwise defined, capitalized terms have the same meaning as in Defendants' Motion for Judgment on the Pleadings and Memorandum of Law in Support (ECF No. 123) (the "Motion" or "Mot.").

Defendants can raise grounds for failure to state a claim on a Rule 12(c) motion that were not raised in a prior Rule 12 motion. *See* Fed. R. Civ. P. 12(h)(2); *Abecassis v. Wyatt*, 7 F. Supp. 3d 668, 670 (S.D. Tex. 2014) ("[A] party is permitted to file successive motions for failure to state a claim pursuant to a Rule 12(c) motion for judgment on the pleadings."). Plaintiffs ignore the plain language of Rule 12 and the Fifth Circuit authority Defendants cited in their Motion to make precisely that point. (Mot. at 10). Plaintiffs' reliance on *Duffie v. Wichita County*, 2014 WL 5796837 (N.D. Tex. Nov. 6, 2014) is inapposite, as that case involved a Rule 12(c) motion after the close of discovery where the record presented genuine material issues of fact.[2] Here, the arguments in the Motion are premised in large part on the Court's Order on the prior Rule 12 motion. As a matter of simple logic, Defendants could not have raised arguments based on the holdings in that Order before that Order issued.

Plaintiffs' paradoxical claim that the Motion reargues issues already decided is foreclosed by this Court's own Order, which recognized that Defendants' "sole argument about whether Plaintiffs pled a 'deceptive or manipulative act'" was that Plaintiffs' did not plead "deceptive conduct beyond the misstatements and omissions." (Order at 19-21 (citation omitted).) Because this Court had not yet ruled on the sufficiency of the SAC's allegations concerning the alleged meetings between Woods, Mallon, and Bond, Defendants could not—and did not—ask the Court to consider whether the allegedly deceptive conduct by Bond was sufficiently alleged to have been in connection with the purchase or sale of a security. This Court's Order raised a new question, which Plaintiffs' own cited caselaw recognizes is the proper subject of a Rule 12(c) motion. *Estep*

---

[2]    Plaintiffs cite *Boyd v. Dallas Independent School District*, 2009 WL 159243, at \*1 (N.D. Tex. Jan. 21, 2009) for the proposition that "Rule 12(c) motions [are] 'disfavored and rarely granted.'" But this quote is from *Sosa v. Coleman*, 646 F.2d 991 (5th Cir. 1981), which was based on the "liberal pleading standard prescribed by F.R.C.P. Rule 8(a)" – not Rule 9(b) or the PSLRA. *Sosa*, 646 F.2d at 993.

2

*v. City of Somerset, Ky.*, 2011 WL 845847, at *2 (E.D. Ky. Mar. 8, 2011).  Defendants' remaining arguments flow directly from this new argument and are thus properly before the Court.

II.     **The SAC does not connect Bond's purportedly deceptive conduct with the purchase or sale of any security.**

Plaintiffs' Opposition spends pages arguing the undisputed truism that "[a] scheme which supplies or omits information to bolster false or misleading public statements to investors . . . affects the market value of a security, and therefore satisfies the 'in connection with' requirement."[3]  (Opp. at 12 (citation omitted).)  But the issue is that Plaintiffs' alleged scheme is not one which supplied or omitted information to bolster false or misleading statements to investors.   This Court already decided that it could not credit the SAC's allegations that information from Bond was actually conveyed to Woods or Mallon in meetings.  (Order at 14-17.) Those disregarded allegations are the ***only*** links alleged in the SAC between Bond's allegedly manipulated learning curve assumptions and any public statement by ExxonMobil.  That link has been broken.  Furthermore, the alleged deceptive conduct is supposed to have occurred ***after*** the public statement the SAC claims it "bolstered."  The SAC does not allege how internal conduct could have "bolstered" a prior public statement without reaching the speaker—nor could it.

Plaintiffs' authority only highlights their pleading failures in this respect.  In *In re XL Fleet Corp. Securities Litigation*, 2022 WL 493629 (S.D.N.Y. Feb. 17, 2022), the complaint alleged that the individual defendant responsible for the alleged scheme to inflate XL Fleet's sales probabilities reported directly to, and met frequently with, XL Fleet's CEO.  *Id.* at *7.  The court concluded that the individual defendant's fraudulently generated data "was directly communicated to investors."

---

[3]     Plaintiffs similarly argue that "there is no requirement that the scheme itself be disclosed to the public."  (Opp. at 13.)  But Defendants do not contend otherwise; rather, the SAC fails to allege how Bond's purported scheme actually could have bolstered false statements or concealed the truth from investors.

3

*Id.* at \*8.  Similarly, in *West Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 845 F.3d 384, 394 (8th Cir. 2016), the court concluded that "Medtronic's alleged manipulative conduct <u>directly caused [] biased clinical trial results that the market relied upon</u>."  *Id.*  In these and in the other cases Plaintiffs cite (*see* Opp. at 12-13), the complaints drew a direct connection between allegedly deceptive conduct and an actual communication to investors and therefore to the purchase or sale of securities.  That necessary connection is missing from the SAC.

> **A.      Plaintiffs do not plead any connection between learning curve assumptions in the 2019 Development Plan and ExxonMobil statements.**

Plaintiffs repeatedly intone that "the very purpose" of Bond's alleged scheme was "to support Woods' public pledges to investors." (Opp. at 13-14.)  Plaintiffs point to no citation in the SAC to support this and instead reference this Court's August 24, 2023 Order to contend that this Court "held" that "Bond's false assumptions *supported* Woods' public statements."  (*Id.* at 15.)  Of course, this Court did not in fact "opine" or "hold" anywhere in its Order that Bond's alleged conduct actually "supported" any alleged false statement or omission.  The Court addressed only whether any "conduct beyond misstatements" was *alleged* and noted the Plaintiff's *allegation* that Bond purportedly instructed her team to manipulate internal valuations of Permian assets "to support Woods' public pledges to investors." (Order at 20.)  But the Motion challenges Plaintiffs' (and the SAC's) failure to allege that this purpose was actually *effected*.[4]  Plaintiffs do not identify anything in the SAC alleging that it was.

Plaintiffs' next gambit is to claim that "Mallon and Woods continued to repeat the false production pledge and tie it to the development plan after the scheme was well underway." (Opp.

---

[4]    Plaintiffs conclusorily claim that "Defendants' own admissions" demonstrate that Bond's conduct "was the basis" for unspecified public misstatements and omissions." (Opp. at 14.)  But Plaintiffs offer no cite to any such "admissions" or "public misstatements or omissions," or any citation to the SAC; thus this statement should be disregarded by the Court.

at 14 (*citing* SAC ¶¶ 376, 378, 380, 384, 386, 388, 392, 394, and 398).)  This again begs the question of a connection between Bond's purported conduct and Woods and Mallon.  This Court has held that the SAC does not adequately allege that Bond communicated anything to Woods or Mallon at any time.  (Order at 14-17.)  Plaintiffs do not, and cannot, actually explain how an entirely internal "scheme" being "underway" led to the results of that scheme being incorporated in some public statement.  For example, the SAC alleges (without support) that the purportedly artificially inflated 2019 development plan was first presented to Mallon "[i]n July 2019."  (SAC ¶ 304.)  Paragraphs 376, 378, 380, and 384 identify purportedly false statements made at least two weeks earlier: by Woods in a 2018 Summary Annual Report published on June 18, 2019, and by Mallon at a conference on the same date.  (SAC ¶¶ 304, 376, 378, 380, 384.)  Plaintiffs also fail to reconcile their allegation that Bond manipulated the learning curve assumptions in the 2019 Development Plan with their reliance on statements concerning the results of 2018 operations.

Neither the SAC nor the Opposition connects these dots.  The only factual underpinnings in the SAC that would support Plaintiffs' assumption are the very meetings between Bond, Woods, and Mallon that this Court disregarded because the SAC (1) "lacks an adequate factual basis to support Plaintiffs' beliefs about what was communicated during Bond's 2019 Development Plan presentation [to Woods]," (Order at 15), and (2) did not contain "information suggesting that any witness referenced in the SAC would have reason to know that the meetings [between Bond and Mallon] occurred or what [they] discussed," (*id.* at 17).  Plaintiffs cannot handwave away their obligation to plead "with particularity the circumstances constituting" the allegedly fraudulent scheme.  Fed. R. Civ. P. 9(b); *see also Coggins v. Camber Energy Inc.*, 2023 WL 6202056, at *12 (S.D. Tex. Sept. 22, 2023).

5

Plaintiffs attempt to downplay the Court's holding by arguing that it addressed only whether Woods or Mallon acted with scienter and not whether the scheme caused false information to reach the market. (Opp. at 15.) But these are the only factual allegations in the SAC that created any link between Bond's conduct and the securities markets. If this Court cannot credit those factual allegations, there simply is no link.

Plaintiffs' authority is not to the contrary. Plaintiffs cite *In re Galena Biopharma, Inc. Securities Litigation* for the proposition that "[s]cheme liability is not contingent upon the defendant making a specific misrepresentation or public statement." (Opp. at 15.) But that case concerned a pump-and-dump insider trading scheme where the defendant recommended that the insider sellers make "numerous 'small buys' so that the insider selling SEC Form 4's would be mixed with insider buying forms" – conduct directly in connection with the purchase and sale of securities. *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1165 (D. Or. 2015). And *Maverick Fund, Ltd. v. Mohawk Industries, Inc.* considered whether the complaint adequately alleged scienter for (1) a defendant whom the court had determined made false and misleading statements, and (2) a different defendant who was not sufficiently alleged to have made misstatements but was adequately alleged to have participated in a scheme to manipulate the company's reported financial results. 2023 WL 28876603, at *10-11 (N.D. Ga. Mar. 31, 2023).

**B.    Plaintiffs do not plead that the 2019 Development Plan's learning curve assumptions were incorporated into the proved reserves and resource base.**

The SAC's factual allegations—which disclaim any connection between Bond's conduct and the GRRG group responsible for calculating ExxonMobil's Proved Reserves—foreclose Plaintiffs' claim. (Mot. at 6.) Recognizing this, Plaintiffs argue that because Proved Reserves predict future oil recoveries, they ***must*** have incorporated forward-looking learning curve assumptions. (Opp. at 18.) This is both incorrect and contrary to the SAC, which (correctly)

6

alleges that Proved Reserves are based on "***existing economic conditions, operating methods, and government regulations***" rather than future operating conditions.  (SAC ¶ 49; *see also* Mot. at 6.)

Unsurprisingly, the Opposition does not identify any particularized factual allegation in the SAC supporting a conclusion that Bond, or anyone on the Planning Team, provided Permian Basin learning curve assumptions to the GRRG team responsible for the Permian Basin Proved Reserves calculation.  Despite relying on multiple witnesses—including someone who allegedly helped estimate the reserves (SAC ¶ 75), Plaintiffs apparently didn't find a single witness to support this claim. Instead, they rely on generic disclosures they claim link Proved Reserves with a development plan (Opp. at 16-19)—none of which say anything about learning curve assumptions.

Even if the Court accepts Plaintiffs' unsupported contention that Proved Reserves "must have" incorporated Bond's learning curve assumptions, it is still Plaintiffs' burden to plead when, and how, those assumptions were incorporated into the calculation.  They did not do so. Defendants and the Court are left to speculate which ExxonMobil disclosures about the Permian Basin Proved Reserves and Resource Base Plaintiffs contend actually incorporated the allegedly fraudulent learning curves.  But speculation cannot create the necessary connection to the purchase or sale of securities.

Ultimately, the Opposition's complete failure to grapple with Defendants' arguments is most evident in its blithely false assertion that Defendants "ignore[d] allegations attributed to Rhodes that corroborated allegations that the proved reserve calculation considered drilling assumptions from the development plan." (Opp. at 19 n.4.)  Defendants spent more than a page in their Motion addressing the SAC's reliance on Rhodes–including his failure to mention Bond or any use of the Planning Team's learning curve in the Proved Reserve estimates.  (Mot. at 14.)

7

III. **Plaintiffs could not have relied on Bond's allegedly deceptive conduct.**

Plaintiffs claim that they are entitled to the *Basic* presumption of reliance because the SAC alleges that Bond's purportedly fraudulent scheme "supported [D]efendants' public statements."[5] (Opp. at 19-20.) As discussed in Defendants' Motion and above (*see* Mot. at 17-19; *see also supra* II), there is no pleaded connection between Bond's conduct and ExxonMobil's public disclosures that would support the application of the *Basic* fraud-on-the-market doctrine.[6] Plaintiffs next argue that, even if they are not entitled to the *Basic* presumption, the *Affiliated Ute* presumption applies because "Bond's scheme consisted primarily of omissions." (Opp. at 20.) Plaintiffs are trying to have it both ways: the SAC couches the allegedly false and misleading statements as affirmative misstatements, but now Plaintiffs claim they are also omissions. But Plaintiffs cannot transform the SAC's allegations of affirmative misstatements into omissions. (*See* Mot. at 19 n.6.)

IV. **Plaintiffs fail to plead ExxonMobil's scienter with respect to the alleged scheme.**

In an attempt to argue that Bond's scienter should be attributable to ExxonMobil, Plaintiffs again misconstrue Defendants' argument. (Opp. at 22.) According to Plaintiffs, Defendants ignored the standard set out in the Fifth Circuit's decision in *Southland Securities Corp. v. Inspire Insurance Solutions Inc.* (Opp. at 22.) But Defendants addressed this head on – the *Southland* standard is block quoted in the very first sentence of the relevant section. (Mot. at 19-20.)

---

[5]    Plaintiffs assert that reliance is a fact-based question that cannot be resolved on the pleadings. (Opp. at 19.) But courts within this Circuit do not hesitate to dismiss a complaint for failure to allege reliance when – like here – that failure is apparent on the face of the complaint. *See, e,g,*, *Affco Inv. 2001, LLC v. Proskauer Rose*, LLP, 625 F.3d 185, 193 (5th Cir. 2010) (affirming district court's grant of motion to dismiss for failure to plead reliance and acknowledging the "robustness of that element in private securities actions").

[6]    Plaintiffs' authority is inapposite. *Indiana Public Retirement System v. AAC Holdings Inc.* involved a scheme to treat uncollectible revenue as collectible, thus knowingly inflating **publicly-disclosed** accounts receivables. 2023 WL 2592134, at *3 (M.D. Tenn. Feb. 24, 2023). And *In re HealthSouth Corp. Securities Litigation* concerned UBS's alleged scheme to promote HealthSouth **by issuing analyst reports** and serving as a bookrunner on bond offerings despite knowing of the issuer's ongoing accounting fraud. 257 F.R.D. 260, 267-68 (N.D. Ala. 2009).

Defendants' actual argument is straightforward.  The SAC does not allege that Bond made or issued the challenged statements.  (Mot. at 20.)  Because Bond's conduct is not alleged to have been in connection with the purchase or sale of securities (*supra* II; Mot. at 11), the SAC does not allege that Bond furnished information for inclusion in the challenged statements and there is no basis to impute Bond's scienter to ExxonMobil under *Southland*.  *See, e.g.*, *In re Tupperware Brands Corp. Sec. Litig.*, 2023 WL 5091802, at *1 (11th Cir. Aug. 8, 2023) (no scienter where "[t]he lower-level corporate officials that the shareholders point to may have known about the fraud—or even orchestrated the fraud themselves—but the complaint failed to directly connect them to the alleged misstatements").  Plaintiffs cannot **separately** rely on Bond's position at ExxonMobil to impute scienter to the Company, as Bond was not "sufficiently senior" to do so. *Villare v. Abiomed, Inc.*, 2021 WL 4311749, at *22 (S.D.N.Y. Sept. 21, 2021).

For these reasons, Plaintiffs' cases are inapposite.  *See In re Cognizant Tech. Sols Corp. Sec. Litig.*, 2020 WL 3026564, at *27 (D.N.J. June 5, 2020) (defendant approved payments to conceal bribery scheme, which were knowingly used to generate company's financial statements); *Knurr v. Orbital ATK Inc.*, 294 F. Supp. 3d 498 (E.D. Va. 2018) (employees knowingly hid true production costs from superiors in order to misrepresent earnings and estimates); *SEC v. City of Victorville*, 2018 WL 3201676, at *4-5 (C.D. Cal. Jan. 24, 2018) (defendant played a central role in preparing the at-issue statements while knowing that they included nonviable cost valuation); *Kerr v. Exobox Tech's Corp.*, 2012 WL 201872, at *14 (S.D. Tex. Jan. 23, 2012) (defendant prepared company filings while aware it had no product, operations, or value).

V. **Plaintiffs cannot resurrect the dismissed claims challenging ExxonMobil's forward-looking statements by reframing them as part of an alleged scheme.**

Plaintiffs' assertion that certain portions of the "on track" forward-looking statements were statements of present fact (Opp. at 24) ignores that all but one of Plaintiffs' allegations relies on

9

their claim that Bond's learning curve drilling assumptions were inflated or false.  (Mot. at 22.)

Because the learning curve assumptions are forward-looking, any statements that were allegedly

false or misleading because of that assumption were also forward-looking statements.  *Wochos v.

Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021) ("'assumptions underlying or relating' to a

declared objective are also deemed to be forward-looking statements." (citation omitted)).

Equally meritless is Plaintiffs' argument that the cautionary language was insufficient

because "Bond and Exxon[Mobil] knew that the statements were false when made."  (Opp. at 25.)

Plaintiffs have not alleged that any alleged speaker knew about Bond's purportedly deceptive

conduct when the statements were made.  (Order at 14-17; Mot. at 22.)  In any event, "materialized

risk" cases require the risk to have already caused the company's results to differ from what the

company's forward-looking statement predicted.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228,

244, 247 (5th Cir. 2009) (cautionary language was insufficient because the defendants had already

"received adverse financial information confirming their dire predictions" and "some damage from

these risks had already materialized").  Bond's learning curve was, by definition, an assumption

about ExxonMobil's improved performance in the future as it moved towards its 2024 Permian

Basin production goal.  *See Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645, at *6 (S.D.N.Y.

July 16, 2020) (rejecting argument that risk had already materialized when it was "hypothetical").

## CONCLUSION[7]

Defendants respectfully request that the Court dismiss with prejudice Plaintiffs' remaining

claims.

---

[7]   Plaintiffs' Opposition offers no independent basis to sustain the control person claims against Wood and Mallon. Because the scheme liability claim should be dismissed, the control person claims should also be dismissed.  *See In re SourceCorp Sec. Litig.*, 2006 WL 8439544, at *4 (N.D. Tex. June 6, 2006) (Godbey, J.).

Dated: February 12, 2024

Respectfully submitted,

*/s/ Noelle M. Reed*
Noelle M. Reed
   State Bar No. 24044211
Wallis M. Hampton
   State Bar No. 00784199
Brent M. Hanson
   State Bar No. 24106051
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
Tel.: (713) 655-5122
Fax: (713) 483-9122
noelle.reed@skadden.com
wallis.hampton@skadden.com
brent.hanson@skadden.com

Michelle L. Davis
   State Bar No. 24038854
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
308 Bahama Court
Granbury, Texas 76048
Tel.: (713) 655-5197
Fax: (713) 483-9197
michelle.davis@skadden.com

*Attorneys for Defendants Exxon Mobil Corporation, Darren W. Woods, Liam M. Mallon, and Melissa Bond*

11