## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) Civil Action No.: 3:21-cv-00194-N |
| v. | ) ) CLASS ACTION |
| EXXON MOBIL CORPORATION, DARREN W. WOODS, LIAM M. MALLON, and MELISSA BOND, | ) ) ) ) |
| Defendants. | ) ) ) ) ) ) |

**LEAD PLAINTIFFS' MOTION TO COMPEL RESPONSES TO LEAD PLAINTIFFS' REQUESTS FOR PRODUCTION 1-7 AND MEMORANDUM OF LAW IN SUPPORT OF THE MOTION**

**EXPEDITED HEARING REQUESTED**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ........................................................................................................ 3

        A.      Summary of Allegations and Procedural Posture .................................. 3

        B.      Defendants Have Repeatedly Raised Reliance, Price Impact, and Damages as Issues for Class Certification ............................................................... 6

        C.      Plaintiffs' Requests for Production ......................................................... 8

        D.      Defendants Have Refused to Produce Documents and the Parties Are at an Impasse .............................................................................................. 10

III.    ARGUMENT ............................................................................................................ 11

        A.      Rule 26 Permits Broad Discovery ......................................................... 11

        B.      The Court Should Compel Responses to Document Requests Nos. 1-4 ............ 12

        C.      The Court Should Compel Responses to Document Requests Nos. 5-7. ............. 14

IV.     CONCLUSION ........................................................................................................ 16

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allegheny County Employees' Retirement System v. Energy Transfer LP*,
623 F.Supp.3d 470 (E.D. Pa. 2022) .......................................................................................13

*Am. Airlines, Inc. v. Travelport Ltd.*,
2012 WL 12884821 (N.D. Tex. May 29, 2012) ....................................................................14

*In re Anadarko Petroleum Corp. Sec. Litig.*,
2022 WL 4544235 (S.D. Tex. Sept. 28, 2022) ........................................................................6

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).............................................................................................................6, 12

*Bridges v. Freese*,
2014 WL 4545948 (S.D. Miss. Sept. 11, 2014)....................................................................15

*Caldwell v. Freedom Mortgage Corp.*,
2020 WL 8361933 (N.D. Tex. Sept. 22, 2020) (Godbey, J.)......................................12, 13, 15

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..................................................................................................................15

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*,
2013 WL 2091715 (N.D. Tex. May 15, 2013) ......................................................................14

*Goldman Sachs Grp, Inc. v. Arkansas Teacher Retirement Sys.*,
594 U.S. 113 (2021)..................................................................................................................2

*Goodson v. Nasco Healthcare Inc.*,
2023 WL 5604131 (N.D. Tex. Aug. 28, 2023).......................................................................16

*Grae v. Corr. Corp. of Am.*,
330 F.R.D. 481 (M.D. Tenn. 2019) .......................................................................................13

*Hensley v. Chaffin*,
2014 WL 2957650 (M.D. La. July 1, 2014) ..........................................................................14

*Kunneman Properties LLC v. Marathon Oil Co.*,
2019 WL 5188355 (N.D. Okla. Oct. 15, 2019) ...............................................................13, 14

*Leaf Trading Cards, LLC v. Upper Deck Co.*,
2018 WL 2971136 (N.D. Tex. Mar. 29, 2018) (Godbey, J.) ............................................11, 16

*In re Mattel, Inc. Securities Litigation*,
2021 WL 4704578 (C.D. Cal. Oct. 6, 2021)..........................................................................12

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
    894 F.2d 1482 (5th Cir. 1990) ...........................................................................12

*Osdoby v. Handi-Foil Corp.*,
    2023 WL 3306967 (E.D.N.Y. May 7, 2023) .......................................................15

*S. Ave. P'ers LP v. Blasnik*,
    2013 WL 12224041 (N.D. Tex. June 21, 2013) ..................................................15

*Slide Fire Sol's v. Bump Fire Sys's, LLC*,
    2016 WL 3352006 (N.D. Tex. Feb. 4, 2016).......................................................16

*U.S. Risk Ins. Grp., Inc. v. United States Risk, Mgmt., L.L.C.*,
    2013 WL 11730656 (N.D. Tex. Mar. 6, 2013) ....................................................14

*Yingling v. Ebay, Inc.*,
    2010 WL 373868 (N.D. Cal. Jan. 29, 2010) .......................................................15

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(b)(3)..........................................................................................6

Fed. R. Civ. P. 26..................................................................................................11

iii

## I.    INTRODUCTION

Lead Plaintiffs Amalgamated Bank ("Amalgamated") and State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement Systems of Rhode Island ("Rhode Island," and together with Amalgamated, "Lead Plaintiffs") respectfully move to compel Defendants Exxon Mobil Corp. ("Exxon") and Melissa Bond ("Bond") to produce documents related to Lead Plaintiffs' motion for class certification.  Lead Plaintiffs have requested an expedited hearing of this motion as time is of the essence and a quick resolution of the motion is required for the Parties to meet the current class certification schedule and discovery cutoff of April 26, 2024.

This is a securities class action alleging that Exxon and senior executive Defendant Melissa Bond engaged in scheme to defraud investors.  As part of their scheme, Defendants Bond and Exxon directed that Exxon artificially inflate its development plan by using false "learning curve" drilling assumptions to support Defendants' false public statements to investors.  In upholding Lead Plaintiffs' scheme liability claims, the Court specifically found that the allegations in the Second Amended Complaint ("Complaint") (ECF No. 92)[1] connected the scheme to Defendants' false statements.

Currently, class certification discovery is proceeding and must be completed by April 26, 2024.  Lead Plaintiffs served seven requests ("Requests") for production that are narrowly tailored to the issues their class certification motion presents.  The Requests seek information pertaining to two arguments Defendants intend to make in their attempt to defeat class certification. As discussed below, this is precisely the type of evidence that the Supreme Court has instructed

---

[1] All citations to "¶__" herein, refer to the paragraph numbers of the Complaint. All citations to "A-__" refer to the pages of the Appendix of Exhibits filed herewith. Unless otherwise noted, all emphasis is added, and all internal citations and quotations are omitted.

1

District Courts to consider in evaluating such class certification challenges. *See Goldman Sachs Grp, Inc. v. Arkansas Teacher Retirement Sys.*, 594 U.S. 113, 124 (2021) (courts must consider "all record evidence").

First, Request Nos. 1-4 are straightforward and seek documents related to the alleged misstatements, subsequent corrective disclosures, and related price changes in Exxon's stock. These documents are necessary to assess Defendants' claim that there can be no class wide presumption of reliance or damages because Bond and Exxon's scheme did not impact the market price for Exxon's stock. The centerpiece of Defendants' argument is their factual contention that there is no connection between the alleged scheme, Defendants' public misstatements and omissions, and Exxon's stock price.

Acknowledging the relevance of these Requests, Defendants have agreed to collect some readily accessible and centrally maintained files, but they have refused to run any search terms through any custodial sources (such as emails) on grounds of proportionality. Specifically, they represented during a telephonic conference that running search terms through custodial sources would be "burdensome," but admitted that they had not actually evaluated whether a proper production would be burdensome. Nor could they, as the parties had not even exchanged search terms and custodians. Defendants later stated in an email that they refused to conduct the searches because the requests "go[] far beyond the scope of class discovery." (A-39). But Defendants again provided no explanation why they should not be required to conduct a reasonable search done in nearly every securities case to identify documents that are relevant to their articulated defenses to class certification.

Second, Request Nos. 5-7 seek other documents related to the connection between Bond's scheme and Defendants' public disclosures. Again, Defendants have asserted that the class should

2

not be certified because Defendants' scheme is not connected to their public disclosures (and thus did not impact Exxon' stock price).   Nevertheless, they refuse to produce *any* documents responsive to these Requests on relevance grounds, yet also refuse to abandon their related challenges to class certification.  This position improperly hamstrings Lead Plaintiffs from meeting their burden at class certification.  Again, Defendants cannot simply refuse to search for and produce relevant documents that are proportional to the needs of the case.

For the reasons set forth below, Lead Plaintiffs ask the Court to compel Defendants to produce documents in response to Request Nos. 1-7 and to order that Defendants search email and other sources of documents using search terms and custodians that the parties will negotiate. Because class discovery closes on April 26, 2024, and Lead Plaintiffs will need time to review the documents and take depositions, Lead Plaintiffs urge the Court to expedite the hearing of this motion and set a date for the completion of Defendants' document production no later than March 15, 2024.

## II.    BACKGROUND

### A.    Summary of Allegations and Procedural Posture

Lead Plaintiffs allege that Defendants Exxon and Bond engaged in a scheme to defraud investors concerning the value of Exxon's oil and gas producing assets in a region of the southwestern United States known as the Permian Basin, which includes the Delaware Basin.  ¶41. Each year, Exxon created a "development plan" or "growth plan" that estimated the value of its assets and set production goals based on various metrics.  ¶69.

Starting on March 5, 2019, Exxon's CEO, Defendant Woods, stated that Exxon would produce 1 million barrels of oil-equivalent per day by 2024 from the Permian Basin.  ¶¶122, 361. In announcing the goal, Woods touted Exxon's "development plan" as a basis for his statement and said that the goal was "an outcome of the plans we put together." ¶310.  Unknown to investors,

Woods' pledge was false because Exxon's internal drilling data for how quickly the Permian could be developed contradicted the stated production goal. ¶¶119-20, 122, 299. Defendants nevertheless repeated the false production claims throughout the Class Period. ¶¶373, 384, 388.

Based on accounts from two whistleblowers and related factual findings from OSHA after an investigation into the whistleblowers' claims, Plaintiffs allege that Defendant Mallon, Exxon's Vice President and the President of ExxonMobil Upstream Oil & Gas Company, directed Bond to manufacture a development plan for the Permian basin that would match Woods' 1 million barrels per day production statements to investors. ¶¶122-26, 129. The core component of the development plan was the schedule of wells to be drilled and completed, and the plan thus included assumptions for drilling and completion speed. ¶¶67-69, 119. To artificially inflate the value of the development plan to match Woods' production goal, Bond directed her team to use overly aggressive "learning curve" drilling assumptions for the Delaware Basin, which Exxon engineers told her were impossible to achieve. ¶¶127-28, 130-32.

Exxon then used the fraudulently inflated development plan, which included the falsified drilling assumptions, to substantiate its publicly-stated production goal and its publicly-reported proved reserve and resource base calculations. ¶¶103, 270-73. Bond manipulated the development plan to match Woods's false production goals, and Exxon specifically told investors days before the Class Period started that its reported proved reserve and resource base valuations were based on the development plan. ¶¶103, 270. Specifically, Exxon disclosed, and federal regulations require, that proved reserves are contingent on having a five-year development plan in place that involves estimations of future oil production, and necessarily includes assumptions about how quickly Exxon would be able to drill wells during the development period. ¶¶315-19.

4

As a result of this scheme and Defendants' false statements, Exxon's stock price was artificially inflated. ¶402. The truth about the Permian's true production capacity was belatedly revealed in a series of partial disclosures. ¶¶244-53. On January 31, 2020, Exxon announced that production had slowed in the Permian Basin, and in response Exxon's stock dropped 4.1% on January 31, 2020, 2.2% on February 3, 2020 and 1.3% on February 4, 2020. ¶244. On May 1, 2020, Exxon disclosed a significant reduction in 2020-2021 Permian Basin production volumes, and as a result Exxon's stock declined 7.2%. ¶246. Finally, on January 15, 2021, *The Wall Street Journal* reported on a whistleblower complaint that exposed Exxon's false drilling assumptions and fraudulently inflated development plan. ¶252. As a result, Exxon's stock dropped 4.8%. *Id.*

On August 24, 2023, the Court denied in part Defendants' second motion to dismiss and sustained Plaintiffs' scheme liability claims against Defendants Bond and Exxon. ECF No. 112 at 18-21. Contrary to Defendants' assertions, the Court found that the allegations directly connected the scheme to Defendants' false statements, concluding that: (i) "Bond instructed her team to manipulate internal valuations of ExxonMobil's Permian assets ***in order to support Woods'[] public pledges to investors***," *id*. at 20; and (ii) Plaintiffs "assert[ed] falsification of internal documents ***to make the company's financial state appear rosier than it was in reality***." *Id*. at 20-21. Moreover, the Court held that Plaintiffs sufficiently alleged Defendant Bond set out "***to substantiate Woods'[] promises to investors about ExxonMobil's future productivity in the Permian***." *Id.*

After sustaining the scheme claims, the Court set a class certification schedule and ordered class certification discovery. ECF No. 122. Pursuant to the Court's schedule, on January 4, 2024, Lead Plaintiffs served Defendants with their motion for class certification. *See* ECF No. 125-1. Relevant here, to satisfy the predominance requirement of Rule 23(b)(3), Lead Plaintiffs assert

that the proposed class is entitled to the "fraud-on-the-market" presumption of reliance on the theory that the market relied on Defendants' false statements that were affected by the scheme. *Id.* at A-21-22 (fraud-on-the-market presumption is satisfied when "the scheme supports alleged misrepresentations that are publicly known and material"). Lead Plaintiffs also advanced a common class-wide damages methodology that measures artificial inflation in Exxon stock due to the alleged scheme and related misstatements by measuring the stock price reactions to the three alleged corrective disclosures, which are tied to the scheme through the alleged false statements. *Id.* at A-30-31.

**B.    Defendants Have Repeatedly Raised Reliance, Price Impact, and Damages as Issues for Class Certification**

Throughout the litigation, Defendants have stated that they will challenge class certification on the grounds that there is no class-wide reliance, price impact, or a viable damages theory. The Federal Rules require that a plaintiff moving for certification of a class must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). To demonstrate predominance, a plaintiff must be able to show that individual questions of reliance do not predominate over common questions. Typically, as Lead Plaintiffs have done here, plaintiffs rely on the "fraud-on-the-market" presumption of class-wide reliance set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). To rebut this presumption, defendants often attempt to demonstrate that the misrepresentation did not cause any distortion in the price of the relevant security, *i.e.*, lack of price impact. *See id* at 248. Another component of the predominance inquiry is demonstrating that a damages model can be applied on a class-wide basis. *See In re Anadarko Petroleum Corp. Sec. Litig.*, 2022 WL 4544235, at *6-7 (S.D. Tex. Sept. 28, 2022).

In arguing that a class should not be certified for these reasons, Defendants intend to rely on the factual claim that Bond's scheme had no impact on any of the alleged false misstatements, and thus, did not affect Exxon's stock price.  For instance, in Defendants' portion of the Parties' Joint Case Management Statement and 26(f) Report, they stated:

> Lead Plaintiffs will be unable to prove the element of reliance for Lead Plaintiffs, let alone reliance on a class-wide basis. Defendants also contend that Lead Plaintiffs will be unable to prove that the pleaded "scheme" – which allegedly involved falsification of internal documents – caused any stockholder's loss. Lead Plaintiffs' scheme liability theory rests on the novel and counterintuitive premise that the market could have relied on internal documents that were never communicated to the public – a premise that is fundamentally inconsistent with Lead Plaintiffs' theory that they can establish reliance and losses by demonstrating that the stock price was inflated by false and misleading public statements. (ECF 92 ¶¶ 421-24 [citing Lead Plaintiff's class-wide reliance allegations, including fraud-on-the-market theory].) Finally, Defendants contend that Lead Plaintiffs will not be able to prove that the "learning curve" assumptions regarding drilling speeds were used in any reserve estimates or resource base calculations.

ECF No. 116 at 3-4.  Defendants also stated that they would serve class certification discovery and proffer expert testimony on the issue of "loss causation."  *Id.* at 12.

In addition, Defendants' Answer to the Complaint denied Lead Plaintiffs' assertions of class-wide reliance under the fraud-on-the-market theory and other class allegations (ECF No. 118 at 37-38), and asserted numerous affirmative defenses challenging the factual basis for class-wide reliance (*i.e.*, price impact), and Plaintiffs' damages theory, issues germane to class certification. *See id.* at 42-45 (Tenth Affirmative Defense refuting price impact; Thirteenth, Fourteenth, Fifteenth and Twenty Sixth Affirmative Defenses refuting Plaintiffs' damages theory).

Moreover, in Defendants' latest attempt to dismiss the Complaint on the pleadings, Defendants' primary argument is once again their factual assertion that the scheme was entirely unconnected to the alleged false and misleading statements.  *See* Defendants' Motion for Judgment on the Pleadings (ECF No. 123), *passim*.  Defendants tied their argument to class certification and argued that "[i]n the absence of any connection between Bond's internal conduct and

ExxonMobil's public disclosures, Plaintiffs cannot rely on the fraud-on-the-market presumption of reliance." *Id.* at 2; *see also id.* at 18 (arguing the fraud-on-the-market theory is inapplicable because Bond's conduct was not connected to Defendants' false statements regarding the million barrel per day production pledge or the calculation of Exxon's proved reserves or resource base).

### C.    Plaintiffs' Requests for Production

On November 30, 2023, Lead Plaintiffs served their Requests to Defendants Exxon and Bond.  A-01-A-13.  On December 11, 2023, the Court bifurcated class and merits discovery and ordered that class certification discovery close on April 26, 2024.  On December 12, 2023, the parties agreed to effectuate service of the Requests on December 11, and Lead Plaintiffs designated Request Nos. 1-7 as relating to class certification.  A-14.  Given the short window of time for class discovery, Lead Plaintiffs asked Defendants to identify any of the aforementioned Requests that they planned to object to as "merits requests," and requested a meet and confer to discuss any such objections.  *Id.*  Defendants did not respond.

Lead Plaintiffs' Request Nos. 1-4 seek documents concerning subjects that typically are germane to any class certification motion, including this one: the alleged false statements, corrective disclosures, and related stock price movements.  These Requests go directly to the issues of the presumption of reliance, price impact and damages methodology.  Requests Nos. 1-4 state:

> 1.    Documents Concerning the alleged corrective disclosures on January 31, 2020; May 1, 2020; and January 15, 2021, as summarized in paragraphs 402-18 of the Complaint.
>
> 2.    Documents Concerning Exxon's stock price movements in response to or immediately following the alleged corrective disclosures, including those stock price movements identified in paragraphs 402-18 of the Complaint.
>
> 3.    Documents Concerning the alleged materially false and misleading statements and omissions on March 5-6, 2019; April 26, 2019; June 18, 2019; September 4, 2019; January 31, 2020; February 26, 2020; and March 5, 2020, as identified in paragraphs 361-401 of the Complaint.

> 4.      Documents Concerning Exxon's stock price movements in response to or immediately following the alleged materially false and misleading statements and omissions identified in paragraphs 361-401 of the Complaint.

A-06.

Request Nos. 5-7 seek documents related to Defendants' factual contention that the scheme was not connected to Exxon's public disclosures and their related arguments opposing class certification on this ground. Request Nos. 5-7 state:

> 5.      Documents Concerning how the Development Plan(s) or valuations of Exxon's Delaware or Permian Basin holdings, and any associated drilling assumptions (including assumptions concerning the drilling learning curve) affected, supported, or were incorporated into the alleged materially false and misleading statements and omissions identified in paragraphs 361- 401 of the Complaint.

> 6.      All Documents and Communications Concerning an August 27, 2020 communication from the Wall Street Journal regarding an upcoming article on Exxon's development plans for the Permian Basin, or that September 13, 2020 article entitled "Exxon Used to be America's Most Valuable Company. What Happened?" including any investigation or other steps taken by Exxon to determine whether Exxon employees provided information to the Wall Street Journal in connection with such article. See Answer ¶ 145, Complaint ¶ 146.

> 7.      Documents Concerning any presentations or meetings related to the Development Plan(s) or valuations of Exxon's Delaware or Permian Basin holdings and any associated drilling assumptions (including assumptions concerning the drilling learning curve), including any draft presentations, slide decks and speakers' notes.

A-06-A-07.

Request No. 6 concerns the Company's reaction and response to a September 13, 2020 *Wall Street Journal* article that reported that Exxon engineered an increase in the value of its 2019 development plan for the Delaware Basin from $40 billion to $50 billion by overestimating how quickly it could drill.  A-16-A-25.  Indeed, the article itself connected the $10 billion increase in value of the Delaware Basin (which Plaintiffs allege Defendant Bond fraudulently manufactured) to Defendant Woods' March million barrel per day production pledge.  *Id*.  That same assertion

was the basis for the whistleblower complaints that revealed Bond's and Exxon's fraudulent scheme and its impact on Exxon's SEC filings and false statements made to investors.  ¶¶145-46.

Meanwhile, Request Nos. 5 and 7 concern the procedures for, and internal dialogue about, the development planning process and drilling assumptions used in any valuations of Exxon's Delaware or Permian Basin assets, as well as how such information affects or is incorporated into Exxon's public statements.  Such Requests are specifically tailored to demonstrating the very connection Defendants assert does not exist between the alleged scheme and Exxon's false statements.

### D.   Defendants Have Refused to Produce Documents and the Parties Are at an Impasse

Defendants served written responses and objections to the Requests on January 10, 2024, but did not agree to produce a single document and instead agreed only to a meet and confer to discuss "whether and how the [Requests] relate to class certification."  A-31-A-36.  Lead Plaintiff immediately reached out to Defendants to schedule a conference.

The Parties conferred on January 17, 2024, and Lead Plaintiffs explained the relevance of the Requests, particularly given Defendants' stated positions and arguments against class certification.  Lead Plaintiffs offered to address any proportionality or burden concerns through the negotiation of reasonable search terms and custodians to be applied to Defendants' documents. Lead Plaintiffs further offered to modify or withdraw several Requests if Defendants would represent that they would not pursue the above-described arguments.  Defendants, however, did not make any such representation and still would not say what they were willing to produce.

Thereafter, Lead Plaintiffs sought to resume discussions, but Defendants failed to provide their availability for a call.  A-42-A-46.  After weeks of delay, Defendants finally stated that they are willing to produce very limited documents for Requests 1-4, tacitly acknowledging that the

Requests related to class certification. Defendants, however, stated that they would only produce "readily accessible documents prepared in connection with the disclosures containing the alleged misstatements and corrective disclosures," and have flatly refused to identify any custodians, conduct keyword searches of custodian emails and other electronic sources, or search for internal communications and analyses related to the disclosures and stock price movements—all of which is standard class certification discovery. A-39-A-41. Although Defendants summarily claimed during a telephonic conference that they were objecting on the basis of burden, they later stated over email that their refusal to conduct keyword searches was based on their contention that the requests went beyond the scope of class certification discovery. *Id*.

For Requests 5-7, and notwithstanding their repeated factual assertion that there is no connection between the scheme and Defendants' public disclosures, and that this lack of a connection precludes class certification, Defendants have refused to produce any documents at all, claiming that the Requests are purely related to the merits. *Id*.

The parties are now at an impasse and require the Court's intervention to resolve the dispute.

III.    **ARGUMENT**

A.    **Rule 26 Permits Broad Discovery**

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26. As this Court has noted, "Courts construe relevance broadly, as a document need not, by itself, prove or disprove a claim or defense or have strong probative force or value to be relevant." *Leaf Trading Cards, LLC v. Upper Deck Co.*, 2018 WL 2971136, at *1 (N.D. Tex. Mar. 29, 2018) (Godbey, J.). Moreover, "[t]he Fifth Circuit requires the party seeking to prevent discovery to specify why the discovery is not relevant or show that it fails the

11

proportionality requirement." *Caldwell v. Freedom Mortgage Corp.*, 2020 WL 8361933, at *1 (N.D. Tex. Sept. 22, 2020) (Godbey, J.) (*citing McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). Where discovery is bifurcated between discovery relating to class certification and merits discovery, an overlap between class certification and merits-related discovery is not grounds to prevent production. *See Caldwell*, 2020 WL 8361933, at *3 ("Some discovery when moving for class certification will necessarily overlap with merits discovery.").

B.     The Court Should Compel Responses to Document Requests Nos. 1-4

Requests Nos. 1-4 seek documents concerning the alleged misstatements and corrective disclosures, and their impact on Exxon's stock price, including the Company's communications and analyses about such matters. These requests directly concern both price impact and damages (not to mention the issue of loss causation, which Defendants have stated they will challenge at this stage). Thus, the documents these Requests seek are relevant to and discoverable for class certification. Defendants have admitted as much. Defendants raised these issues in their portion of the Parties' Rule 26(f) Report and in their Answer to the Complaint. *See* ECF Nos. 116 at 2-3; 118 at 42-45. Moreover, Defendants have already agreed to produce documents to these requests and thus tacitly concede their relevance to class certification.

Defendants' blanket refusal to identify custodians and run search terms over custodial emails and other electronic information to search for responsive internal communications and analyses is unjustified. First, internal communications and analyses are relevant and discoverable at the class certification stage because they tend to shed light on the reasons, bases, and causes for Defendants' disclosures and the related stock price reactions. *See, e.g., In re Mattel, Inc. Securities Litigation,* 2021 WL 4704578 at *6 (C.D. Cal. Oct. 6, 2021) (rejecting defendants' attempt to show no price impact and rebut the *Basic* presumption of reliance based in part on executive's internal

12

statement that a disclosure would cause an adverse market reaction); *Kunneman Properties LLC v. Marathon Oil Co.*, 2019 WL 5188355, at \*3 (N.D. Okla. Oct. 15, 2019) (compelling the use of search terms to look for internal communications where it was not "overly speculative that [the defendants'] employees discussed the bases and reasoning" behind the company's royalty calculations); *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 500 (M.D. Tenn. 2019) (Defendants' internal communications relevant to price impact analysis). For example, internal documents will likely evidence the reasons for the alleged false statements, corrective disclosures, and ensuing stock price movements, including Defendants' and other Exxon employees' expectations and analyses of the market's reactions. These issues speak directly to the reliance and price impact issues, which are front and center in the class certification analysis.

Indeed, courts have relied on internal company documents commenting on market reactions to corrective disclosures to assess price impact and determine that the presumption of reliance applies. *See Allegheny County Employees' Retirement System v. Energy Transfer LP*, 623 F.Supp.3d 470, 504 (E.D. Pa. 2022) (rejecting defendants' price impact arguments at class certification based on internal company emails evaluating the market's reaction to a corrective disclosure). Similarly, here, any internal Exxon emails or reports evaluating the market's reaction to the alleged corrective disclosures will be relevant to evaluating Defendants' price impact argument.

Second, Defendants have not offered any reason to suggest that conducting targeted searches of electronic data using search terms and custodians would present any undue burden or would be disproportional to the needs of the case. *Caldwell*, 2020 WL 8361933, at \*1 (defendants have the burden of proving disproportionality). Nor can they. Using search terms and custodians to search email and other accessible sources is a common practice and courts routinely find such

searches to be proportional, even where, unlike here, the responding party has demonstrated some burden. *Marathon Oil Co.*, 2019 WL 5188355, at \*2-3 (ordering Defendants to search, review, and produce ESI in class certification discovery); *see also Am. Airlines, Inc. v. Travelport Ltd.*, 2012 WL 12884821, at \*3 (N.D. Tex. May 29, 2012) (granting motion to compel party to search ESI using negotiated search terms).  Defendants have not demonstrated any burden, and their vague and conclusory claims do not provide a basis to deny discovery.  *See In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, 2013 WL 2091715, at \*2 (N.D. Tex. May 15, 2013) (conclusory assertions of burden insufficient to defeat motion to compel); *U.S. Risk Ins. Grp., Inc. v. United States Risk, Mgmt., L.L.C.*, 2013 WL 11730656, at \*3 (N.D. Tex. Mar. 6, 2013) (same).

Thus, the Court should compel Defendants to conduct adequate searches for documents responsive to Request Nos. 1-4 using search terms and custodians to be agreed upon by the Parties.

### C.    The Court Should Compel Responses to Document Requests Nos. 5-7.

Document Request Nos. 5-7 seek information concerning the connection between the alleged scheme to inflate Exxon's development plan for the Delaware Basin and Defendants' false public statements.  Because this goes directly to the very arguments Defendants themselves have raised concerning reliance, these Requests are relevant to class certification and seek discoverable information.

Defendants refuse to produce any documents because they claim Request Nos. 5-7 relate only to the merits.  This is incorrect.  Defendants have already asserted, and will continue to argue, that Plaintiffs may not use the fraud-on-the-market theory of reliance because the scheme was not connected to Defendants' false statements.  *See, e.g.,* ECF No. 123 at 18.  Plaintiffs must be given an opportunity to test this factual assertion.  *Hensley v. Chaffin*, 2014 WL 2957650, at \*1 n.1 (M.D. La. July 1, 2014) ("the plaintiff is certainly entitled to a review of the pertinent documentation …

in order to confirm or dispute [defendants'] assertions"); *Osdoby v. Handi-Foil Corp.*, 2023 WL 3306967, at *4-5 (E.D.N.Y. May 7, 2023) (a party is "entitled to test the veracity" of factual assertions by its adversary); *Yingling v. Ebay, Inc.*, 2010 WL 373868, at *3-4 (N.D. Cal. Jan. 29, 2010) (ordering defendant to respond to interrogatory and document requests concerning assertion in answer that the action could not be maintained as a class action where discovery related to commonality and predominance).

But even if these requests touch on merits-related issues, that is no reason for Defendants to refuse to produce responsive documents, even under the Court's bifurcated discovery order. As this Court has held, merits and class discovery often overlap, and parties must respond to class discovery even if it also concerns issues relevant to the merits. *Caldwell*, 2020 WL 8361933, at *3 (compelling production of documents related to both merits and class certification issues); *S. Ave. P'ers LP v. Blasnik*, 2013 WL 12224041, at *1-2, 4 (N.D. Tex. June 21, 2013) (compelling responses related to both merits and class certification issues); *Bridges v. Freese*, 2014 WL 4545948, at *3 (S.D. Miss. Sept. 11, 2014) (denying motion to quash, rejecting defendants' argument that subpoenas and deposition notices were an "attempt[] to engage in merits-based discovery" while merits discovery was stayed, and noting that "[t]he law is clear that … class-certification-related discovery and merits-based discovery frequently overlap"); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (class certification issues "frequently entail overlap with the merits of the plaintiff's underlying claim"). Thus, regardless of whether documents responsive to any of the Requests might also be relevant to the merits of Plaintiffs' allegations, they are discoverable now because such documents are also relevant to class certification.

Because Request Nos. 5-7 seek documents that are relevant to the class certification inquiry, and because Defendants have failed to demonstrate any disproportionate burden,

Defendants must produce documents responsive to these Requests. *Upper Deck Co.*, 2018 WL 2971136, at *1 (Godbey J.) ("[A] court should allow requested discovery that is relevant to any party's claim or defense and proportional to the needs of the case."); *Goodson v. Nasco Healthcare Inc.*, 2023 WL 5604131, at *3 (N.D. Tex. Aug. 28, 2023) (Godbey J.) (granting motion to compel where defendant failed to demonstrate that the request was "disproportionate to the needs of the case"); *Slide Fire Sol's v. Bump Fire Sys's, LLC*, 2016 WL 3352006, at *7 (N.D. Tex. Feb. 4, 2016) (holding that "defendant must produce" categories of documents where they were "relevant" to plaintiff's claims "and proportional to the needs of the case"). Because Requests Nos. 5-7 are relevant to class certification and proportional to the needs of the case, the Court should compel Defendants to respond to the Requests.

## IV.    CONCLUSION

Accordingly, Lead Plaintiffs request that the Court grant its motion to compel responses to Document Requests Nos. 1-7, require Defendants to search for documents using agreed upon search terms and custodians, and set a date for completion of Defendants' document production no later than March 15, 2024.

Dated: February 16, 2024                                 Respectfully submitted,

/s/ *John Rizio-Hamilton*                                 /s/ *Daniel L. Berger*

John Rizio-Hamilton (pro hac vice)            Daniel L. Berger (pro hac vice)
johnr@blbglaw.com                                      dberger@gelaw.com
Rebecca E. Boon (pro hac vice)                  Caitlin M. Moyna (pro hac vice)
rebecca.boon@blbglaw.com                        cmoyna@gelaw.com
John J. Esmay (pro hac vice)                      Lauren J. Salamon (pro hac vice)
john.esmay@blbglaw.com                          lsalamon@gelaw.com
Thomas Sperber (pro hac vice)                   GRANT & EISENHOFER PA
thomas.sperber@blbglaw.com                    485 Lexington Avenue
Stephen Boscolo (pro hac vice)                  New York, New York 10017
stephen.boscolo@blbglaw.com                   Phone: (646) 722-8500
BERNSTEIN LITOWITZ BERGER &        Fax: (646) 722-8501
GROSSMANN LLP
1251 Avenue of the Americas                      *Co-Lead Counsel for the Class and Counsel*

16

New York, New York 10020
Phone: (212) 554-1400
Fax: (212) 554-1444

*Co-Lead Counsel for the Class and Counsel for Co-Lead Plaintiff State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island*

*for Co-Lead Plaintiff Amalgamated Bank*

Lewis T. LeClair
Texas Bar No. 12072500
lleclair@mckoolsmith.com
McKOOL SMITH PC
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Phone: (214) 978-4000
Fax: (214) 978-4044

*Liaison Counsel for the Class*

17

## CERTIFICATE OF CONFERENCE

I, John J. Esmay, hereby certify that, on February 8, 2024, counsel for Lead Plaintiffs, including Rebecca E. Boon and myself, and counsel for Defendants, including Michael W. Restey, Jr. and Abby Davis, conferred telephonically concerning Defendants' responses and objections to Lead Plaintiffs' requests for production of documents. The parties also exchanged several emails concerning the issues discussed at the conference and in the instant Motion. Counsel for Lead Plaintiffs informed counsel for Defendants that they would move the Court to compel production this week, and the parties determined they had reached an impasse on these issues.

*/s/ John J. Esmay*
John J. Esmay

## CERTIFICATE OF SERVICE

I, John Rizio-Hamilton, hereby certify that on February 16, 2024, I electronically filed the foregoing with the Clerk of the Court via ECF, which in turn served notice on all counsel of record.

*/s/ John Rizio-Hamilton*
John Rizio-Hamilton