**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |  |
|---|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | Civil Action No. 3:21-cv-00194-N |
| EXXON MOBIL CORPORATION, DARREN W. WOODS, LIAM M. MALLON, and MELISSA BOND, | ) ) ) ) ) | |
| *Defendants*. | ) ) ) ) ) ) | |

**DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' MOTION TO COMPEL**
**RESPONSES TO LEAD PLAINTIFFS' REQUESTS FOR PRODUCTION 1-7**

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, TX 77002
Tel.: (713) 655-5122
Fax: (713) 483-9122

*Attorneys for Defendants Exxon Mobil*
*Corporation, Darren W. Woods, Liam M.*
*Mallon, and Melissa Bond*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 2

I.      The Court dismissed Plaintiffs' Rule 10b-5(b) claims. ....................................... 2

II.     Defendants' motion for judgment on the pleadings under Rule 12(c) of the
        Federal Rules of Civil Procedure may moot some or all of this Motion. ........................... 3

III.    Plaintiffs served expansive document requests focused primarily on the merits of
        this action rather than class certification. ................................................................... 3

IV.     During the parties' meet and confers, Plaintiffs confirmed that their Requests are
        merits-based and made no attempt to limit their scope in response to Defendants'
        objections. ................................................................................................................ 5

ARGUMENT ...................................................................................................................... 7

I.      Rule 26 of the Federal Rules of Civil Procedure does not permit unfettered merits
        discovery on class certification. ..................................................................................... 7

II.     The Court should deny Plaintiffs' sweeping request for merits discovery at class
        certification. ............................................................................................................... 8

        A.      Requests Nos. 1-4 are overbroad on their face and, as articulated by
                Plaintiffs, plainly seek merits discovery. ................................................................. 8

        B.      Requests Nos. 5-7 are merits-based fishing expeditions that should be
                rejected. ....................................................................................................... 9

CONCLUSION .................................................................................................................. 11

i

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013)..................................................................................................7

*Billitteri v. Sec. Am., Inc.,*
    No. 3:09-cv-1568-F, 2011 WL 13228268 (N.D. Tex. Apr. 4, 2011) ............................7, 8

*Clarke v. Baptist Mem'l Healthcare Corp.,*
    No. 2:06-cv-02377-MaV, 2008 WL 11320263 (W.D. Tenn. Jan. 29, 2008) ....................8

*Henryhand v. Digital Intel. Sys., LLC,*
    CV 13-2735-JAK (AGRx), 2014 WL 12597804 (C.D. Cal. Jan. 22, 2014)......................10

*Ketch, Inc. v. Heubel Material Handling Inc.,*
    No. CIV-11-23-M, 2011 WL 4527881 (W.D. Okla. Sept. 28, 2011)................................10

*Kinnie Ma Individual Ret. Acct. v. Ascendant Cap., LLC,*
    No. 1:19-cv-01050-RP, 2023 WL 5417142 (W.D. Tex. Aug. 21, 2023) ...........................7

*Larsen v. Crème de la Crème, Inc.,*
    No. 4:09-cv-613, 2011 WL 335171, (E.D. Tex. Jan. 26, 2011), *report and
    recommendation adopted*,
    No. 4:09-cv-613, 2011 WL 1157872 (E.D. Tex. Mar. 28, 2011) ...................................7, 9

*Price v. United Guar. Residential Ins. Co.,*
    No. Civ. A. 3:03-cv-2643-G, 2005 WL 265164 (N.D. Tex. Feb. 2, 2005) ......................10

*Stewart v. Winter,*
    669 F.2d 328 (5th Cir. 1982) .......................................................................................7

*Torres v. Am. Airlines, Inc.,*
    No. 4:18-cv-00983-O, 2020 WL 3485580 (N.D. Tex. May 22, 2020)..............................10

**STATUTES**

15 U.S.C. § 78t(a) .........................................................................................................3

**REGULATIONS**

17 C.F.R. § 240.10b-5(a) ...............................................................................................3

17 C.F.R. § 240.10b-5(b) ...............................................................................................2

17 C.F.R. § 240.10b-5(c) ...............................................................................................3

Defendants Exxon Mobil Corporation ("ExxonMobil"), Darren W. Woods ("Woods"), Liam M. Mallon ("Mallon"), and Melissa Bond ("Bond") (together, "Defendants") respectfully submit this opposition to Plaintiffs' Motion to Compel Responses to Plaintiffs' Requests for Production 1-7 ("Motion" or "Mot.").

## INTRODUCTION

This Court entered an order on December 11, 2023 staying merits discovery and limiting discovery at this stage to class certification issues. The discovery requests at issue in Plaintiffs' Motion are merits discovery requests that were served before the Court entered that Order. Plaintiffs claim that discovery they represented was merits discovery when it was served is now somehow "narrowly tailored" to class issues. The requests on their face refute that claim. In addition, in two "meet and confers" in which Defendants attempted to actually narrow the production to class issues, Plaintiffs continued to insist that they need the "nitty gritty" details related to the merits of their case to litigate class certification, and they ultimately filed their "emergency" Motion rather than work toward a mutually-acceptable compromise.

Of course, there is *some* overlap between merits and class issues – certain documents that bear directly on price impact or class wide reliance may be appropriate for production despite overlapping with the ultimate merits of Plaintiffs' claims. That is why, despite the overbreadth of Plaintiffs' Requests, as Plaintiffs concede, Defendants have agreed to produce documents that bear on class certification. But a small overlap between class and merits discovery does not throw the door open to broad merits discovery unrelated to class certification at this point. What Defendants would not agree to do was run sweeping searches across multiple custodians for documents related to what Plaintiffs admitted were merits issues. The Court should similarly reject Plaintiffs' attempt to sidestep the Court's discovery order and pursue broad merits discovery under the guise of class

1

discovery.

## STATEMENT OF FACTS

I.    **The Court dismissed Plaintiffs' Rule 10b-5(b) claims.**

On August 24, 2023, the Court issued the Order granting, in part, Defendants' motion to dismiss the SAC. (Order at 1.) The Court dismissed the SAC's misstatement and omission claims under Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b), because the SAC failed to adequately plead scienter. (Order at 12, 16, 18, 22.) In doing so, the Court severed the only link in the SAC between Bond's allegedly fraudulent conduct and the purchase or sale of securities. Specifically, the Court held that it could not credit the SAC's allegations concerning a Fall 2019 meeting where Bond "would have" presented the 2019 development plan to Woods for approval, concluding that the SAC "lacks an adequate factual basis to support Plaintiffs' beliefs about what was communicated during Bond's 2019 Development Plan presentation." (*Id.* at 14-15.) Similarly, the Court rejected the SAC's allegations about three meetings between Bond and Mallon because "Plaintiffs do not contend firsthand knowledge of these meetings, and they have not cited any external source for this information." (*Id.* at 17.)

The Court held that Plaintiffs had stated a scheme liability claim against Bond because Bond allegedly "instructed her team to manipulate internal valuations of ExxonMobil's Permian assets in order to support Woods' public pledges to investors." (*Id.* at 20.) And the Court also held that Plaintiffs sufficiently alleged Bond's scienter in connection with the purported scheme, and imputed Bond's scienter to ExxonMobil. (*Id.* at 21-22.) Because the Court did not dismiss the scheme liability claims against ExxonMobil and Bond, it declined to dismiss the control person claims under Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), against Woods and Mallon. (Order at 22.) Accordingly, the sole merits issues remaining in the case concern whether ExxonMobil and Bond (1) "employ[ed] any device, scheme, or artifice to

2

defraud," 17 C.F.R. § 240.10b-5(a), or (2) "engage[d] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person," *id.* § 240.10b-5(c), in connection with the purchase or sale of any security, and (3) whether Woods or Mallon controlled ExxonMobil and Bond, *see* 15 U.S.C. § 78t(a).

II.     **Defendants' motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure may moot some or all of this Motion.**

In light of the Court's Order, on January 8, 2024, Defendants moved for judgment on the pleadings under Rule 12(c).  (Dkt. 123.)  As relevant for this motion, Defendants (1) challenged the sufficiency of the SAC's allegations connecting Bond's purportedly fraudulent internal learning curve assumptions with the purchase or sale of any security given the Court's holding that it could not credit the allegations regarding Bond's meetings with either Mallon or Woods, and (2) argued that Plaintiffs cannot resurrect their dismissed claims challenging ExxonMobil's forward-looking statements – protected by the PSLRA's safe harbor – by reframing them as part of an alleged scheme.  (*Id.*)  Critically, Defendants' motion is directed only at the adequacy of the pleadings in the SAC.

III.    **Plaintiffs served expansive document requests focused primarily on the merits of this action rather than class certification.**

On November 30, 2023, Plaintiffs served their First Requests for Production of Documents to Defendants Exxon Mobil Corp. and Melissa Bond (the "Requests"), which propounded twenty broad, merits-based requests.  (Plaintiffs' Ex. A.)  Shortly thereafter, on December 11, 2023, this Court issued the Class Certification Scheduling Order staying all discovery "except regarding class certification."  (Dkt. 122 ¶ 3.)  The Court also provided for a relatively short window for class certification discovery (*Id.* ¶ 4), underscoring the expectation that class certification discovery would be narrow.

3

In light of this Court's order, counsel for Defendants promptly contacted Plaintiffs' counsel, explaining that their Requests "largely sought merits discovery," and proposing either that: (1) Defendants treat the Requests as served on December 11, 2023 and object to merits discovery on the ground that such discovery is stayed; or (2) Plaintiffs withdraw the Requests and serve new discovery limited to class certification issues. (Plaintiffs' Ex. B.) Plaintiffs chose not to withdraw the Requests and instead identified Requests Nos. 1-7, without a single modification, as "class certification requests." (*Id.*)

Because they were prepared before this Court stayed merits discovery, these Requests, on their face, seek documents substantially beyond those related to class certification issues and delve headlong into the merits of this action. For example, Request No. 1 seeks, without limitation, the production of "Documents Concerning the alleged corrective disclosures on January 31, 2020; May 1, 2020; and January 15, 2021." (Plaintiffs' Ex. A at 6.) Similarly, Request No. 3 asks for, again without limitation, "Documents Concerning the alleged materially false and misleading statements and omissions." (*Id.*) Given the breadth of these Requests – which would call for the production of nearly every internal substantive ExxonMobil document or communication that would have supported, directly or indirectly, the at-issue disclosures – Defendants objected to them on the basis that they related solely to the merits rather than class certification and thus were overly burdensome and disproportionate to the needs of the case. (Plaintiffs' Ex. D at 6-11.) Nonetheless, Defendants offered to meet and confer to understand Plaintiffs' position as to how the Requests related to class certification (*id.*), in the hopes that the parties could narrow the scope of the Requests and agree on a reasonable scope of class certification discovery consistent with the Court's order.

4

IV. **During the parties' meet and confers, Plaintiffs confirmed that their Requests are merits-based and made no attempt to limit their scope in response to Defendants' objections.**

The parties' brief meet and confer process confirmed that Plaintiffs were seeking primarily merits discovery. During the parties' first meet and confer, on January 17, 2024, Plaintiffs confirmed the expansive scope of Requests Nos. 1-4, proposing to use search terms and custodians to identify broad swaths of documents and communications concerning the preparation of the identified disclosures, including the ***underlying factual support*** for each alleged misstatement or corrective disclosure (including internal calculations or documentation).

Plaintiffs' position on Requests Nos. 5 and 7 was even more extreme. They explained that they wanted to get into the "nitty gritty" of the factual support for the SAC's alleged misstatements and omissions, including documents and communications showing (i) how ExxonMobil's development plans were created, (ii) the preparation and adoption of drilling assumptions in those development plans, and (iii) the extent to which ExxonMobil's development plans and assumptions supported its production goals, growth plan, and planned increase in drilling activity. These issues are at the core of Plaintiffs' scheme liability claim.

Plaintiffs also confirmed that Request No. 6 seeks internal documents and communications in order to show a connection between Bond's alleged scheme and the SAC's misstatements. In particular, they sought communications and documents from ExxonMobil employees who read the referenced Wall Street Journal article, reacted to it, and were involved in ExxonMobil's subsequent internal investigation. But Plaintiffs have not explained (and cannot explain) how these ***internal*** communications could possibly show a link between Bond's conduct and the misstatements.

5

During the parties' second meet and confer on February 8, 2024,[1] Defendants agreed to identify and produce readily accessible documents prepared in connection with the disclosures containing the alleged misstatements and corrective disclosures in response to Requests Nos. 1-4. (Plaintiffs' Ex. F at 2.)[2]  Plaintiffs, however, continued to push for the use of not-yet-identified custodians and search terms, underscoring that they wanted merits discovery.  Defendants would not agree to such a fishing expedition.[3]  (*Id.*)  And given Plaintiffs' explanation of the information they sought pursuant to Requests Nos. 5-7, Defendants refused to produce documents because the Requests related solely to the merits.  (*Id.*)

Given their agreement to produce certain categories of documents in response to Requests Nos. 1-4, Defendants hoped that, consistent with this Court's request that the parties "conduct[] a meaningful, substantive conference" prior to seeking relief from the Court (Dkt. 122 ¶ 6), Plaintiffs would continue the meet and confer process to narrow their Requests, particularly given the substantial amount of time before the close of class certification discovery (which the parties could modify at any time).  (*Id.* ¶ 4.)  Instead, during the February 8, 2024 meet and confer, Plaintiffs stated that they intended to file a motion to compel.  Plaintiffs then filed this "emergency" Motion

---

[1]  Plaintiffs accuse Defendants of being dilatory in setting up a second meet and confer, (Mot. at 10), but as Defendants explained, Plaintiffs' substantially overbroad class certification Requests required Defendants to meet and confer to first understand what Plaintiffs were actually seeking and how the discovery purportedly related to class certification before they could determine whether the discovery was appropriate and formulate a proposed compromise.  (Plaintiffs' Ex. F at 4.)

[2]  Defendants follow Plaintiffs' non-consecutive lettering in their Appendix in support of their Motion (Dkt. 127-2.)

[3]  Plaintiffs claim that Defendants changed their position regarding Requests Nos. 1-4 between the February 8, 2024 meet and confer and the February 9, 2024 e-mail exchange, asserting "burden" in the former and that "the requests went beyond the scope of class certification discovery" in the latter.  (Mot. at 11.)  But those positions are one and the same; as Defendants explained, the scope of the Requests go substantially beyond class discovery into the merits of the action, and thus run afoul of this Court's scheduling order and create a substantial and disproportionate burden on Defendants.

requesting expedited relief even though two months remain before the April 29, 2024 close of class certification discovery.

## ARGUMENT

I.    **Rule 26 of the Federal Rules of Civil Procedure does not permit unfettered merits discovery on class certification.**

Plaintiffs contend that Rule 26 allows for broad discovery, but ignore that "as in all discovery matters, the district court has broad discretion in limiting the scope of discovery." *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982). The Fifth Circuit has emphasized that district courts are "permitted to limit pre-certification discovery to evidence that, in [their] sound judgment, would be 'necessary or helpful' to the certification decision.'" *Billitteri v. Sec. Am., Inc.*, 2011 WL 13228268, at *2 (N.D. Tex. Apr. 4, 2011) (quoting *Stewart*, 669 F.2d at 331).  That is precisely what the Court did here.

"[W]hen discovery on class certification issues is permitted, '[defendants] should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the [defendant's] expense." *Larsen v. Crème de la Crème, Inc.*, 2011 WL 335171, at *4 (E.D. Tex. Jan. 26, 2011) (citation omitted), *report and recommendation adopted*, 2011 WL 1157872 (E.D. Tex. Mar. 28, 2011).  Courts have "no license to engage in free-ranging merits inquiries at the certification stage." *Kinnie Ma Individual Ret. Acct. v. Ascendant Cap., LLC*, , 2023 WL 5417142, at *7 (W.D. Tex. Aug. 21, 2023) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)).

II.     **The Court should deny Plaintiffs' sweeping request for merits discovery at class certification.**

    A.     **Requests Nos. 1-4 are overbroad on their face and, as articulated by Plaintiffs, plainly seek merits discovery.**

Plaintiffs' Requests Nos. 1-4, on their face, seek documents substantially beyond those necessary for class certification. As drafted, they call for the production of documents, without limitation, "concerning" each of the disclosures at issue. Indeed, these Requests could encompass nearly every internal ExxonMobil document or communication that provided or contained information supporting, directly or indirectly, those disclosures.

Plaintiffs confirmed the scope of these Requests during the meet and confer process, seeking to use search terms and custodians to identify and produce the underlying documentation and calculations that supported each disclosure. That goes well beyond the "reason[] for the alleged false statements, corrective disclosures, and ensuing stock price movements" that Plaintiffs now claim they are seeking, (Mot. at 13), and into the heart of Plaintiffs' scheme liability claim. Accordingly, this discovery is neither "necessary" nor "helpful" for the certification decision. *Billitteri*, 2011 WL 13228268, at \*2 (citation omitted). Indeed, Defendants' production of documents in response to such sweeping requests would "only tend to prove the existence and extent of the [allegations] . . . and [are] irrelevant at the class certification stage." *Clarke v. Baptist Mem'l Healthcare Corp.*, No. 2:06-cv-02377-MaV, 2008 WL 11320263, at \*4 (W.D. Tenn. Jan. 29, 2008).

In the Motion, Plaintiffs contend that Defendants acted unreasonably because they would not agree to "targeted" search terms and custodians to identify and produce documents that bear on reliance and price impact. (Mot. at 13-14.) But that is not what Plaintiffs asked Defendants to do. Nor have Defendants taken the position that all documents responsive to Requests Nos. 1-4 are irrelevant to class certification, or "blanket[ly] refus[ed] to identify custodians and run search

8

terms over custodial emails and other electronic information to search for responsive internal communications and analyses." (Mot. at 12.) Rather, Defendants objected to the use of search terms and custodians for *these particular Requests* because Plaintiffs confirmed that they were seeking discovery that goes to the core merits of the action.[4]

In fact, Plaintiffs' framing of their argument highlights the premature nature of the Motion. Had they offered to narrow the scope of Requests Nos. 1-4, Defendants would have considered it. Plaintiffs did not do so.

### B.    Requests Nos. 5-7 are merits-based fishing expeditions that should be rejected.

Plaintiffs' Requests Nos. 5-7 are a transparent attempt to shoehorn merits discovery into class certification discovery in order to paper over the SAC's pleading deficiencies. Plaintiffs all but confirmed as much during the parties' January 17, 2024 meet and confer when they explained that Requests Nos. 5 and 7 were seeking details underlying the preparation of learning curve assumptions and the development plan.[5] *See supra* at 6. In other words, these Requests are not seeking "information concerning the connection between the alleged scheme to inflate Exxon[Mobil]'s development plan for the Delaware Basin and Defendants' false public statements," as Plaintiffs now claim (Mot. at 14.). Instead, they seek documents that go to the core facts underlying the alleged scheme, and "[t]he plain language and breadth of th[e] [discovery request] appears directed to the merits of the litigation and is not limited to overlap with class

---

[4]    For this reason, Plaintiffs' caselaw, which stands for the unremarkable proposition that some courts have relied on internal communications in assessing price impact and reliance on class certification, is irrelevant. (Mot. at 12-13.)

[5]    Request No. 6 fares no better. Plaintiffs attempt to justify this request by speculating that there could be internal documents related to ExxonMobil's internal investigation, initiated after the Wall Street Journal article, that link Bond's conduct with ExxonMobil's public disclosures. That is just the kind of premature merits discovery that courts in this circuit do not allow during class discovery. *See Larsen v. Crème de la Crème, Inc.*, 2011 WL 335171, at *4 (E.D. Tex. Jan. 26, 2011), *report and recommendation adopted*, 2011 WL 1157872 (E.D. Tex. Mar. 28, 2011).

certification issues, if any." *Henryhand v. Digit. Intel. Sys., LLC*, 2014 WL 12597804, at \*3 (C.D. Cal. Jan. 22, 2014).

For this reason, Plaintiffs' contention that documents should still be produced even if there is some overlap between class certification-related issues and merits-related issues rings hollow. (Mot. at 15.)  This is not an instance, as in the cases that Plaintiffs cite (*id.*), where Plaintiffs are seeking class certification discovery that happens to overlap, in part, with merits discovery. Rather, Plaintiffs have acknowledged that they are seeking information wholly related to merits discovery, which has no relevance to class certification.  The Court should reject Plaintiffs' post hoc attempt to recast their merits-based Requests and allow them discovery beyond class certification issues.  *See e.g., Price v. United Guar. Residential Ins. Co.*, 2005 WL 265164, at \*6 (N.D. Tex. Feb. 2, 2005) (denying plaintiff's motion to compel responses to discovery that were only "relevant, if at all, to the merits of the lawsuit and not to the class issues");  *Ketch, Inc. v. Heubul Material Handling Inc.*, 2011 WL 452 7881, at \*2 (denying plaintiff's motion to compel responses to discovery requests that "go[] to the merits of the case rather than the requirements for class certification . . . [as] premature.")*; see also Torres v. Am. Airlines, Inc.*, 2020 WL 3485580, at \*7 (N.D. Tex. May 22, 2020) ("Merit questions may be considered to the extent—but ***only*** to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.") (emphasis added) (citation omitted).[6]

Finally, Plaintiffs' attempt to link these Requests to class certification through Defendants' motion for judgment on the pleadings falls flat.  Defendants' motion asserts, among other things,

---

[6]   Plaintiffs also argue that Defendants have failed to "demonstrate any disproportionate burden" concerning Requests Nos. 5-7.  To the contrary, the fact that Plaintiffs are seeking extensive merits discovery through custodians and search terms demonstrates exactly the disproportionate burden Plaintiffs attempt to place on Defendants.  In any event, to the extent Defendants have not been able to articulate that burden to Plaintiffs, it is because Plaintiffs abruptly broke off the meet and confer process rather than engage in any narrowing of their overbroad, merits-based Requests.

that Plaintiffs do not adequately *plead* reliance in the SAC because the SAC does not *allege* a connection between Bond's conduct and the purchase or sale of any security. (Dkt. 123 at 11, 17.) Those issues are pleading issues, not "factual" ones, and Plaintiffs cannot seek to avoid dismissal on Defendants' motion by seeking unrelated discovery through class certification.[7]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion.

---

[7] To the extent Defendants wanted to argue, in opposition to class certification, that Bond's conduct was not connected with the purchase or sale of a security, Defendants would need to offer evidence to do so rather than relying on the pleadings. This, of course, would necessarily entail discovery and would render Plaintiffs' exhortations moot.

11

Dated: February 23, 2024

Respectfully submitted,

*/s/ Noelle M. Reed*
Noelle M. Reed
    State Bar No. 24044211
Wallis M. Hampton
    State Bar No. 00784199
Brent M. Hanson
    State Bar No. 24106051
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
Tel.: (713) 655-5122
Fax: (713) 483-9122
noelle.reed@skadden.com
wallis.hampton@skadden.com
brent.hanson@skadden.com

Michelle L. Davis
    State Bar No. 24038854
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
308 Bahama Court
Granbury, Texas 76048
Tel.: (713) 655-5197
Fax: (713) 483-9197
michelle.davis@skadden.com

*Attorneys for Defendants Exxon Mobil*
*Corporation, Darren W. Woods, Liam M.*
*Mallon, and Melissa Bond*

12