## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) Civil Action No.: 3:21-cv-00194-N |
| v. | )<br>) CLASS ACTION |
| EXXON MOBIL CORPORATION, DARREN W. WOODS, LIAM M. MALLON, and MELISSA BOND, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>)<br>)<br>)<br>) |

## LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

I.    INTRODUCTION

On February 26, 2024, this Court granted Lead Plaintiffs Amalgamated Bank and State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement Systems of Rhode Island's (together, "Lead Plaintiffs") motion to compel Defendants Exxon Mobil Corp. ("Exxon") and Melissa Bond ("Bond") to produce documents related to Lead Plaintiffs' motion for class certification.  (A-3:17-20.)[1]  At the time of its ruling, the Court instructed Defendants to "use best efforts to get production done within 30 days."  *Id.* at 4:11-13.  However, in the month and a half since that ruling, Defendants have failed to produce a single document, email, or piece of paper.  Instead, Defendants now seek again to withhold information relevant to Lead Plaintiffs' motion for class certification by refusing to designate Defendants Darren Woods ("Woods") and Liam Mallon ("Mallon") as custodians.

Woods's and Mallon's custodial documents are central to the class certification motion. Defendants have already told the Court that, in opposing class certification, their main argument will be that Lead Plaintiffs cannot demonstrate that the fraudulent scheme affected the false statements at issue.  Woods and Mallon were the speakers of all those statements.  As such, their documents are highly likely to contain information reflecting the manner in which the scheme affected or impacted their statements to investors.  Defendants cannot advance this argument and also prevent plaintiffs from access to key information that bears directly on it at the same time.

Defendants' sole argument in support of the protective order is that searching Defendants Woods's and Mallon's files is a "disproportionate request."  Def. Br. at 6.  But this simply rehashes their prior argument that Lead Plaintiffs' discovery requests are overbroad, which the Court

---

[1] All citations to "A-__" that do not cite an ECF number refer to the pages of the Appendix of Exhibits filed herewith.  All citations to "¶__" refer to the paragraph numbers of the Complaint. Unless otherwise noted, all emphasis is added, and all internal citations and quotations are omitted.

1

already rejected. *See*, Def. Br. at 1-2 (characterizing the parties' agreed-upon search strings as "broad" and Lead Plaintiffs' Request Nos. 1-7 as "merits" discovery). Notably, Defendants do not argue that the documents are not relevant. Moreover, Defendants have not demonstrated *why* a search of Woods's and Mallon's files is disproportionate. Defendants concede using the agreed search terms on their files turns up 50,000 unique documents not captured by a search of the other custodians' files. Def. Br. at 2. Thus, searching Woods and Mallon is not duplicative. Further, a review of an additional 50,000 documents does not qualify as an unreasonable or disproportionate burden in a complex securities class action such as this one. The Court should deny Defendants' motion for a protective order.

## II.   FACTS

### A.   Lead Plaintiffs' Good Faith Negotiations in the Face of Defendants' Efforts to Delay

Following this Court's ruling on August 28, 2023, which granted in part and denied in part Defendants' motion to dismiss the Second Amended Complaint ("Complaint") (ECF No. 92), Lead Plaintiffs served Defendants with their First Requests for Production of Documents on Defendants Exxon and Bond. (ECF No. 127-3, A-01 – A-13.) After class and merits discovery were bifurcated, (ECF No. 122), Lead Plaintiffs limited their initial requests to seven that were specifically related to class certification, (ECF No. 127-3, A-14 – A-15). When Defendants refused to produce documents sufficient to respond to Lead Plaintiffs' requests, Lead Plaintiffs moved this Court to compel production. (ECF Nos. 127, 133.) In granting this motion, the Court found that Lead Plaintiffs' requests were "close enough to class related . . . to go forward[,]" (A-3:17-20), and directed Defendants to "use best efforts to get production done within 30 days." (*Id.* at 4:11-13).

Plaintiffs have been reasonable and accommodating in these negotiations, as evidenced by the exhibits Defendants submitted.  In the weeks following Lead Plaintiffs' initial proposals, the parties negotiated back and forth on custodians, search terms, and date ranges.  As is common in any negotiation, Lead Plaintiffs both conceded and stood firm on various elements.  (*See*, *e.g.*, ECF Nos. 141-12, A-55 – A-62 (proposal from Defendants: (i) removing Bond, Dr. Gulden, and Dr. Burch, among others, from the list of custodians for search terms related to several of Lead Plaintiffs' document requests; (ii) revising search terms; and (iii) limiting the date range for four of Lead Plaintiffs' seven document requests), 141-13, A-63 (Lead Plaintiffs agreeing to the majority of Defendants' changes).)  Lead Plaintiffs made these proposals in good faith, despite the fact that Defendants refused to provide substantive responses to interrogatories requesting the identity of individuals with relevant knowledge until April 8, 2024.  Furthermore, Lead Plaintiffs were willing to negotiate a narrower scope of discovery specific to Woods's and Mallon's documents, but Defendants flatly refused to run any searches whatsoever on Woods's and Mallon's custodial files.  *See* A-22, (stating that during the April 2, 2024 meet and confer, Defendants confirmed that they "refuse to search Woods's and Mallon's documents for any of the categories of requests or run any searches on them").

Defendants' account of the parties' negotiations also fails to note that, to ensure that these requests remain narrowly-tailored, Plaintiffs agreed that not all of the search terms will be run on all of the custodians.  Likewise, the relevant search periods differ depending on the search strings. (*Id.*)  In addition, a relevant time period ranging from March 1, 2019 (when Lead Plaintiffs allege that the fraudulent scheme commenced, ¶ 11) until January 29, 2021 (two weeks after the last corrective disclosure identified in Lead Plaintiffs' document requests (*see* ECF No. 141-12, A-60

– A-61)) is reasonable as it is limited to periods of time that are most likely to identify relevant documents.

### B.    The Relevance of Woods's and Mallon's Documents

Defendants have argued, and have told the Court that they will continue to argue, that class certification should be denied because Lead Plaintiffs cannot demonstrate that the fraudulent scheme affected the false statements at issue.  Woods and Mallon were the speakers of all those statements, including pronouncing Exxon's 1-million-barrels-per-day production goal, telling investors the production goal was "on track," and reporting resource base and proved reserves figures.  ¶¶361-401.  There is no reason to assume, nor have Defendants represented, that searching merely Bond's or her supervisor's documents will provide information bearing on whether and how the false learning curve assumptions affected Woods's and Mallon's public statements.  Bond and her supervisor were not involved in investor relations.  *Contra* Def. Br. at 2.  Conversely, the "two senior Investor Relations employees" Defendants agreed to designate as custodians were likely not privy to the details of the Development Plan.  *See id.* at 1.

The documents of Woods and Mallon are therefore highly relevant to establishing the "connection between Bond's internal conduct and ExxonMobil's public disclosures," without which, Defendants have argued, "Plaintiffs cannot rely on the fraud-on-the-market presumption of reliance."  (ECF No. 123, 2.)  Indeed, Defendants' argument that including Woods and Mallon as custodians would result in the review of an additional 50,000 documents indicates that there are 50,000 responsive documents unique to Woods and Mallon.  *See* Def. Br. at 6-7.  Defendants also conspicuously fail to argue that the documents would not be relevant.  Under these circumstances, prohibiting Lead Plaintiffs from receiving Woods and Mallon's documents would prevent Lead Plaintiffs from being able to successfully counter defenses that Defendants have already made clear they will raise in their opposition to the motion for class certification.

III.   ARGUMENT

A.   **Lead Plaintiffs Are Entitled to Broad Discovery Under Rule 26**

Under the Federal Rules of Civil Procedure, parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Courts construe relevance broadly, as a document need not, by itself, prove or disprove a claim or defense or have strong probative force or value to be relevant." *Leaf Trading Cards, LLC v. Upper Deck Co.*, 2018 WL 2971136, at *1 (N.D. Tex. Mar. 29, 2018) (Godbey, J.). This is true even when discovery has been bifurcated between class certification and merits, as "[s]ome discovery when moving for class certification will necessarily overlap with merits discovery." *Caldwell v. Freedom Mortgage Corp.*, 2020 WL 8361933, at *3 (N.D. Tex. Sept. 22, 2020) (Godbey, J.); *see also* A-3:17-20; A-4:1-5. However, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). If a party moves for a protective order, "[t]he movant bears the burden of showing that a protective order is necessary, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998)). Defendants have not met this burden.

B.   **Designating Woods and Mallon as Custodians Is Necessary and Proportional**

Courts "should allow requested discovery that is relevant to any party's claim or defense and proportional to the needs of the case." *Upper Deck Co.*, 2018 WL 2971136, at *1 (Godbey J.). Defendants assert that reviewing the 228,080 documents that hit on the current search parameters is "more typical in substantive merits discovery than at the class certification stage[,]" Def. Br. at 1, and that reviewing an additional 50,000 documents belonging to Woods and Mallon

5

would therefore be wasteful and disproportionate, *id.* at 6-7.  But this Court already determined that Lead Plaintiffs' production requests are sufficiently related to class discovery to "permit [discovery] to go forward[,]" (A-3:17-20), despite Defendants' argument that the volume of documents responsive to Lead Plaintiffs' document requests would be "very broad discovery for class certification[,]" (*id.* at 4:1-5).  Given that Woods and Mallon are the speakers of the alleged misstatements, their documents are relevant to rebutting Defendants' argument at class certification that the fraudulent scheme did not support or affect Woods's and Mallon's statements.  Accordingly, Lead Plaintiffs' request to designate Woods and Mallon as custodians is neither wasteful nor disproportionate to the needs of the case.

This situation is thus unlike *Fuller v. Werner Enterprises, Inc.*, which Defendants rely on, Def. Br. at 6, and which involved a claim against a truck driver and operator following a traffic accident.  3:16-CV-2958-BK, 2018 WL 10374819, at *1 (N.D. Tex. Apr. 24, 2018).  There, the plaintiff sought to establish the driver's frequent cell phone use while driving by seeking the driver's cell phone records for the week preceding the accident.  *Id.*  In denying that discovery, the court noted that the cell phone records would not indicate whether the driver spoke on his phone using a hands-free device, which was a critical fact to know, and therefore would be unable to prove or disprove the plaintiff's theory of insufficient oversight.  *Id.* at *2.  Defendants' additional cases are likewise inapposite, and none involve a court excluding a speaking defendant's documents from production in a securities fraud case (nor could they, as speakers are always designated as custodians in securities actions).  *Walker v. Alta Colleges, Inc.*, A–09–CV–894–LY, 2010 WL 2710769, at *8-9 (W.D. Tex. July 6, 2010) (denying discovery of potential putative class members, which plaintiff conceded was "not yet relevant to the case" prior to a class being certified); *Parsons v. Liberty Insurance Corp.*, No. 3:20-cv-1682-K, 2021 WL 11718301 (N.D.

6

Tex. June 14, 2021) (denying discovery while motions for summary judgment that could be claim-determinative were pending) .

Defendants also fail to cite cases that support their claim that producing Woods's and Mallon's documents would be duplicative. *Impact Fulfillment Services, LLC v. Graham Packaging Co., L.P.* did not involve document collection, but a dispute between the parties as to the defendant's purported obligation to store and maintain nearly 1,000,000 one-liter bottles at significant expense to the defendant. 3:14-CV-03577-N, 2015 WL 13118143, at *1 (N.D. Tex. Nov. 6, 2015) (Godbey, J.). In *Royal Hospitality Corp. v. Underwriters At Lloyd's*, a plaintiff who had received a binding appraisal award was granted the opportunity "to conduct limited discovery, specifically from the appraiser and umpire." 3:18-cv-102, 2022 WL 18436756, at *1 (S.D. Tex. Feb. 24, 2022). The plaintiff then issued a subpoena to a third-party law firm that had represented two of the defendants, seeking *the same* information that had already been collected from the appraiser and umpire. *Id.* at *2. In contrast, not only are Lead Plaintiffs seeking unique documents that are, by Defendants' admission, not in the custody of other designated custodians, but they are also not seeking documents from opposing counsel, which is "disfavored generally and should be permitted in only limited circumstances." *Id.* (quoting *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999)).

### C.    Granting Defendants' Motion Would Unfairly Handicap Lead Plaintiffs

Defendants have already argued – and have made clear that they will continue to argue – that a class should not be certified in this action because Lead Plaintiffs will be unable to show a link between the alleged fraudulent scheme and Woods's and Mallon's alleged misstatements. (*See*, *e.g.*, ECF No. 116 at 3-4 ("Lead Plaintiffs will be unable to prove that the pleaded 'scheme' – which allegedly involved falsification of internal documents – caused any stockholder's loss. Lead Plaintiffs' scheme liability theory rests on the novel and counterintuitive premise that the

market could have relied on internal documents that were never communicated to the public – a premise that is fundamentally inconsistent with Lead Plaintiffs' theory that they can establish reliance and losses by demonstrating that the stock price was inflated by false and misleading public statements."); ECF No. 123 at 2 ("In the absence of any connection between Bond's internal conduct and ExxonMobil's public disclosures, Plaintiffs cannot rely on the fraud-on-the-market presumption of reliance.").  In order to be able to counter this argument, Lead Plaintiffs must be given discovery bearing on whether such a connection existed, and that evidence is most likely in the possession of Woods and Mallon.  Denying Lead Plaintiffs the opportunity to review Woods's and Mallon's documents would hamstring Lead Plaintiffs and deny them the discovery to which they are entitled "in order to confirm or dispute [Defendants'] assertions." *Hensley v. Chaffin*, 13–0280–SDD–RLB, 2014 WL 2957650, at *1 n.1 (M.D. La. July 1, 2014).

In sum, Defendants cannot have it both ways – either they designate Woods and Mallon as custodians or they drop their argument that the "link" between the alleged scheme and Woods's and Mallon's alleged misstatements must be demonstrated in order for the Court to grant Lead Plaintiffs' motion for class certification.

## IV.    CONCLUSION

For these reasons, Lead Plaintiffs respectfully request that the Court deny Defendants' motion for a protective order.

Dated: April 18, 2024                        Respectfully submitted,

/s/ *John Rizio-Hamilton*                    /s/ *Daniel L. Berger*

John Rizio-Hamilton (pro hac vice)           Daniel L. Berger (pro hac vice)
johnr@blbglaw.com                            dberger@gelaw.com
Rebecca E. Boon (pro hac vice)               Caitlin M. Moyna (pro hac vice)
rebecca.boon@blbglaw.com                     cmoyna@gelaw.com
John J. Esmay (pro hac vice)                 Lauren J. Salamon (pro hac vice)
john.esmay@blbglaw.com                       lsalamon@gelaw.com
Thomas Sperber (pro hac vice)                GRANT & EISENHOFER PA

8

thomas.sperber@blbglaw.com
Stephen Boscolo (pro hac vice)
stephen.boscolo@blbglaw.com
BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1251 Avenue of the Americas
New York, New York 10020
Phone: (212) 554-1400
Fax: (212) 554-1444

*Co-Lead Counsel for the Class and Counsel for Co-Lead Plaintiff State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island*

485 Lexington Avenue
New York, New York 10017
Phone: (646) 722-8500
Fax: (646) 722-8501

*Co-Lead Counsel for the Class and Counsel for Co-Lead Plaintiff Amalgamated Bank*

Lewis T. LeClair
Texas Bar No. 12072500
lleclair@mckoolsmith.com
McKOOL SMITH PC
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Phone: (214) 978-4000
Fax: (214) 978-4044

*Liaison Counsel for the Class*