# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Civil Action No.: 3:21-cv-00194-N |
| v. | ) ) <u>CLASS ACTION</u> |
| EXXON MOBIL CORPORATION, DARREN W. WOODS, LIAM M. MALLON, and MELISSA BOND, | ) ) <u>DEMAND FOR JURY TRIAL</u> ) ) ) |
| Defendants. | ) ) ) ) ) ) |

**LEAD PLAINTIFFS' MOTION FOR LEAVE TO FILE A THIRD AMENDED CLASS ACTION COMPLAINT AND MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND .............................................................................. 3

      A.    Procedural History ................................................................................... 3

            1.    Initial Motion Practice .................................................................. 3

            2.    Class Certification Discovery ...................................................... 4

            3.    Defendants' Motion for Judgment On The Pleadings ................ 5

      B.    The Proposed Amendment Conforms To The August 12 Order, And
            Corroborates And Bolsters Plaintiffs' Claims ........................................ 6

            1.    The Proposed Amendment Conforms To The Court's Order By
                  Clarifying Exxon's Corporate Statements In The Case ............. 6

            2.    The New Evidence Confirms That The Alleged Scheme Supported
                  Exxon's False Permian Production Statements ......................... 7

            3.    The New Evidence Establishes That Defendants Woods And
                  Mallon Were Aware Of The Scheme And Knowingly Misled
                  Investors .................................................................................... 9

III.  ARGUMENT...................................................................................................... 11

      A.    Plaintiffs Meet The Standard For A Motion To Amend Under Rule 16 .............. 11

            1.    Plaintiffs Have A Substantial Justification For Moving To Amend
                  Outside The Deadline Imposed By The Scheduling Order ...................... 12

            2.    The Proposed Amendment Is Important And Not Futile.......................... 13

            3.    The Proposed Amendment Will Not Prejudice Defendants ..................... 19

            4.    Any Prejudice Can Be Ameliorated By A Continuance.......................... 19

      B.    The Court Should Reconsider Its Dismissal with Prejudice Of Lead
            Plaintiffs' Claims For Misrepresentations Under 10b-5(b) ................................. 20

            1.    Lead Plaintiffs Exercised Due Diligence In Obtaining New
                  Evidence........................................................................................... 21

            2.    The New Evidence Would Have Produced A Different Result And
                  Amendment Is Not Futile................................................................. 23

IV.   CONCLUSION..............................................................................................................24

## TABLE OF AUTHORITIES

CASES                                                                                      Page(s)

*Anderson v. Liberty Mut. Ins. Co.*,
   2022 WL 20689553 (W.D. La. Apr. 26, 2022)....................................................................12, 19

*Archer v. Kennedy*,
   2022 WL 4820168 (N.D. Tx. Oct. 3, 2022) (Godbey, J.)........................................................11

*Austin v. Kroger Texas, L.P.*,
   864 F.3d 326 (5th Cir. 2017) .................................................................................................20

*Barrie v. Intervoice-Brite, Inc.*,
   397 F.3d 249 (5th Cir. 2006) .................................................................................................18

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
   2020 WL 3026564 (D.N.J. June 5, 2020) ..............................................................................15

*Crostley v. Lamar Cnty., Texas*,
   717 F.3d 410 (5th Cir. 2013) .................................................................................................20

*Douga v. Bekins Van Lines LLC*,
   2011 WL 13324354 (W.D. Tex. Jan. 5, 2011) ......................................................................12

*Eagle Railcar Servs.-Roscoe, Inc. v. NGL Crude Logistics, LLC*,
   2017 WL 11634816 (N.D. Tex. Oct. 26, 2017)......................................................................18

*Griffith v. City of New Orleans*,
   2013 WL 2555787 (E.D. La. June 10, 2013)..........................................................................20

*Hartford Fire Ins. Co. v. Gray Corp*,
   2008 WL 11495450 (N.D. Miss. Mar. 4, 2008) .....................................................................19

*Indiana Pub. Ret. Sys. v. AAC Holdings, Inc.*,
   2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023)....................................................................16

*Kerr v. Exobox Techs. Corp.*,
   2012 WL 201872 (S.D. Tex. Jan. 23, 2012) .........................................................................15

*Lee v. Active Power, Inc.*,
   29 F. Supp. 3d 876 (W.D. Tex. 2014)....................................................................................15

*Mailing & Shipping Sys., Inc. v. Neopost USA, Inc.*,
   292 F.R.D. 369 (W.D. Tex. 2013) .........................................................................................19

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
   58 F.4th 195 (5th Cir. 2023) ..................................................................................................17

*Ramirez v. Exxon Mobil Corp.*,
    334 F. Supp. 3d 832 (N.D. Tex. 2018) ....................................................................22

*Rivera v. Robinson*,
    2019 WL 4024939 (E.D. La. Aug. 27, 2019) ..........................................................12

*Shimon v. Sewerage & Water Bd. of New Orleans*,
    2007 WL 1237835 (E.D. La. Apr. 25, 2007)..........................................................12

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) .....................................................................13, 14, 15

*Tomax AS v. Turbo Drill Indus., Inc.*,
    2023 WL 3171744 (W.D. Tex. Apr. 6, 2023)..........................................................20

*Upton v. Vicknair*,
    2023 WL 2043333 (E.D. La. Feb. 16, 2023) ....................................................20, 21

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012) ...............................................................................18, 23

*W. Virginia Pipe Trades & Welfare Fund v. Medtronic, Inc.*,
    845 F.3d 384 (8th Cir. 2016) ...................................................................................16

*In re XL Fleet Corp. Sec. Litig.*,
    2022 WL 493629 (S.D.N.Y. Feb. 17, 2022)...........................................................16

iv

Lead Plaintiffs Amalgamated Bank ("Amalgamated") and State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island ("Rhode Island") (together, "Lead Plaintiffs"), respectfully move this Court pursuant to Federal Rule of Civil Procedure 16(b) for leave to file a Third Amended Class Action Complaint (the "Proposed Amendment"), a copy of which is attached hereto as Exhibit A.[1]  Lead Plaintiffs further move pursuant to Rule 54 for reconsideration of the Court's Memorandum Opinion and Order dated August 24, 2023 (ECF No. 112, the "Second MTD Order"), which dismissed with prejudice Lead Plaintiffs' claims against Defendants Darren Woods and Liam Mallon under Section 10(b) of the Exchange Act and Rule 10b-5(b), and Lead Plaintiffs' claim against Mallon under Rule 10b-5(a) and (c). [2]

## I.    INTRODUCTION

Lead Plaintiffs seek leave to file the Proposed Amendment to address the Court's August 12, 2024 Memorandum Opinion and Order holding that "the Court severed the connection between Bond's alleged scheme and the public statements made by Woods or Mallon regarding ExxonMobil's prospects for oil production" and that "Plaintiffs cannot rely on public statement[s] made by Woods or Mallon to plead that Bond's alleged scheme impacted the purchase or sale of any security." ECF No. 157 at 8-9 (the "August 12 Order"). The Proposed Amendment addresses the Court's holding in three important ways. First, the Proposed Amendment clarifies that certain of the previously alleged misrepresentations about Permian production were made by Exxon, not

---

[1] For the Court's convenience, attached as Exhibit B is a redline of the Proposed Amendment showing the changes to the complaint. Other than minor changes to correct cross references within the document, the Proposed Amendment's changes are entirely contained in new Sections IV.I and X.D. There are no other substantive changes to the allegations.

[2] Capitalized terms not defined herein shall carry the meaning ascribed to them in the Proposed Amendment. *See* Ex. A.

Woods or Mallon. Second, the Proposed Amendment adds newly discovered evidence that shows that Bond's scheme was directly connected to the production statements, irrespective of Woods's or Mallon's participation in or knowledge of the scheme. And third, the Proposed Amendment adds newly discovered evidence showing that Woods and Mallon orchestrated the scheme and knew that their Class Period statements about Exxon's Permian production were materially false and misleading, and thus, the Exchange Act and Rule 10b-5(b) claims against Woods and Mallon, and the Exchange Act and Rule 10b-5(a) and (c) claims against Mallon should be reinstated.

There is good cause under Rule 16(b) for filing the Proposed Amendment at this stage of the case because it was prompted by the Court's August 12 Order and is entirely based on evidence that was produced to Lead Plaintiffs after the deadline for amendment had lapsed. Further, the Proposed Amendment is important and not futile because it conforms the pleadings to the Court's ruling and clarifies key issues discussed in the August 12 Order. In addition, there is good cause because there is no prejudice to Defendants as class certification document discovery was only completed on August 16, 2024, and the remainder of the schedule has been paused by stipulation pending resolution of this Motion. Further, to the extent any potential prejudice exists, it can be cured through a continuance, as deadlines for merits discovery through trial have not yet been set.

Because the newly discovered evidence demonstrates that Woods and Mallon orchestrated the scheme and knew that their statements to investors were false, Lead Plaintiffs also seek reconsideration of the Second MTD Order and ask the Court to reinstate Lead Plaintiffs' claims against Woods and Mallon under Section 10(b) of the Exchange Act and Rule 10b-5(b) and Lead Plaintiffs' claim against Mallon under Rule 10b-5(a) and (c), which had been dismissed with prejudice. Lead Plaintiffs meet the standards for reconsideration under Rule 54(b) as the motion is based on new evidence, Lead Plaintiffs exercised due diligence in obtaining the evidence, and the

new evidence would have produced a different result if it was available before the original judgment.

For these reasons, Lead Plaintiffs' motion for leave to amend and reconsideration should be granted.

## II.     FACTUAL BACKGROUND

### A.     Procedural History

#### 1.     Initial Motion Practice

On September 10, 2021, Lead Plaintiffs filed an Amended Class Action Complaint alleging that Defendants made false and misleading statements and/or omissions to investors about Exxon's Permian production and stated proved reserves. ECF No. 53. On September 29, 2022, the Court granted Defendants' first motion to dismiss without prejudice on the ground that Lead Plaintiffs had not adequately pled scienter, and granted leave to amend. ECF No. 88.

On October 31, 2022, Lead Plaintiffs filed a Second Amended Complaint. ECF No. 92 (hereinafter, the "Complaint"). In that Complaint, Lead Plaintiffs alleged that Defendant Mallon and Defendant Melissa Bond engaged in a fraudulent scheme to inflate the value of Exxon's holdings in the Permian to match the public statements that Exxon, Defendant Woods, and Defendant Mallon made to investors. These allegations were based, in part, on findings the U.S. Department of Labor Occupational Safety and Health Administration ("OHSA") made with respect to two whistleblowers, Dr. Damian Burch and Dr. Lindsay Gulden. As OSHA found, Exxon retaliated against Drs. Burch and Gulden for blowing the whistle on the fraud at issue in this case. Lead Plaintiffs also provided additional allegations supporting a strong inference of Defendants Woods's and Mallon's scienter, as well as allegations showing that Defendant Mallon and Defendant Bond furnished Exxon with falsified data meant to mislead investors.

On August 24, 2023, the Court denied Defendants' Motion to Dismiss the Second Amended Complaint in part and granted it in part. ECF No. 112. The Court denied the motion to dismiss Lead Plaintiffs' Rule 10b-5(a) and (c) claims against Defendant Bond and Exxon, concluding that (i) "Bond instructed her team to manipulate internal valuations of ExxonMobil's Permian assets in order to support Woods's public pledges to investors"; (ii) Lead Plaintiffs "assert[ed] falsification of internal documents to make the company's financial state appear rosier than it was in reality"; and (iii) Lead Plaintiffs alleged that Bond set out "to substantiate Woods's promises to investors about ExxonMobil's future productivity in the Permian." Second MTD Order at 18-21. The Court also sustained Lead Plaintiffs' Section 20(a) control person claims against Woods and Mallon. However, the Court dismissed with prejudice Lead Plaintiffs' Rule 10b-5(b) fraud claims against Woods and Mallon, and Lead Plaintiffs' Rule 10b-5(a) and (c) scheme liability claim against Mallon, again for lack of scienter.

### 2.    Class Certification Discovery

The parties subsequently engaged in discovery. On November 30, 2023, Lead Plaintiffs served discovery requests on Defendants Exxon and Bond, which sought documents, including from the custodial files of Woods and Mallon, concerning how Exxon's development plan and associated drilling assumptions, including learning curves, were incorporated in Defendants' allegedly false and misleading statements. Ex. C (Document Request Nos. 5, 7, & 9).

On December 11, 2023, the Court issued a scheduling order bifurcating discovery and directing the parties to proceed with class certification discovery, setting the deadline to file any amendment to the Complaint under Rule 15(a) by February 9, 2024. ECF No. 122. On January 10, 2024, Defendants served responses and objections, refusing to produce documents, and arguing, *inter alia*, that Lead Plaintiffs' requests were not connected to class certification. Lead Plaintiffs subsequently moved to compel production of discovery from Defendants. ECF No. 127. The Court

4

granted the motion to compel on February 26, 2024, finding that the requests were related to class certification and ordered Defendants to begin production. ECF No. 133.

Lead Plaintiffs and Defendants subsequently negotiated a search protocol (Ex. D), a protective order regarding confidential information (ECF No. 138), and an e-discovery stipulation (ECF No. 135).

Defendants filed a second discovery motion seeking to shield Woods's and Mallon's custodial documents from production, which the Court denied on April 22, 2024. ECF No. 149.

Defendants did not begin producing documents until May 3, 2024. Ex. E. Following their latest production on August 16, 2024, Defendants have produced over 22,000 documents, totaling 119,980 pages. Ex. F. As explained in detail below, these documents establish that the scheme supported Exxon's false statements regarding the production of oil in the Permian and show that Woods and Mallon made such statements with scienter. *See* Section II.B, *infra*.

### 3.    Defendants' Motion For Judgment On The Pleadings

While the parties were engaged in class certification discovery, and four days after Lead Plaintiffs filed their motion for class certification, on January 8, 2024, Defendants filed a Motion for Judgment on the Pleadings, largely re-litigating the same issues that the Court had ruled on in denying the Motion to Dismiss the Complaint. ECF. No. 123. Defendants' primary argument was that Lead Plaintiffs could not demonstrate that Exxon's alleged fraud was made in connection with the purchase or sale of securities because the fraudulent scheme was never disclosed to the public. Defendants similarly argued that Lead Plaintiffs could not prove reliance because there was no connection between Bond's falsification of Exxon's internal valuations and Exxon's public disclosures. Lead Plaintiffs opposed the motion, explaining that the Court had previously held that Bond furnished false information supporting Defendants' statements concerning Permian

production and Exxon's disclosures regarding its proved reserves and resource base.  ECF No. 125.

On August 12, 2024, the Court denied Defendants' Motion for Judgment on the Pleadings. *See generally* August 12 Order. Although the Court denied the motion in full, it stated:

> However, the Court severed the connection between Bond's alleged scheme and the public statements made by Woods or Mallon regarding ExxonMobil's prospects for oil production. *See* Second MTD Order 12–18 (Finding that "Plaintiffs still have not pleaded facts connecting Woods to Bond's conduct" or that Mallon's trades during the relevant time period did not establish his scienter of the scheme.). Likewise, Plaintiffs cannot rely on public statement[s] made by Woods or Mallon to plead that Bond's alleged scheme impacted the purchase or sale of any security.

*Id*. at 8-9. Following the ruling, Lead Plaintiffs promptly notified Defendants and the Court that they sought to amend their Complaint, and they filed the present motion. *See* ECF No. 158.

### B.   The Proposed Amendment Conforms To The August 12 Order, And Corroborates And Bolsters Plaintiffs' Claims

As set forth directly below, the Proposed Amendment does three important things.  First, it seeks to conform the operative pleading to the Court's August 12 Order by specifying which of the previously alleged false and misleading statements about Permian production are Exxon's corporate statements. *See* August 12 Order, at 8-9.  Second, the Proposed Amendment describes new evidence establishing that the alleged scheme supported Exxon's false Permian production statements to investors, regardless of Woods's and Mallon's scienter. Finally, the Proposed Amendment describes new evidence confirming that Woods and Mallon made their alleged false and misleading statements with scienter.

#### 1.   The Proposed Amendment Conforms To The Court's Order By Clarifying Exxon's Corporate Statements In The Case

The Proposed Amendment first seeks to conform to the Court's August 12 Order by clarifying which of the previously alleged false and misleading statements about Permian production are Exxon's corporate statements, as opposed to public "statements made by Woods

6

and Mallon." *Id.* at 9.  Those statements are set forth in Exhibit A, at ¶¶480-486, and they include

Exxon's statements in press releases that it would "produce more than 1 million oil-equivalent

barrels per day by as early as 2024" in the Permian based on "significant acceleration of value,"

and that "production volumes increased and remained on track" to exceed that goal, as well as

Exxon's "green blob" slide representing the same. *Id.*[3] These corporate statements remain in the

case regardless of whether Woods or Mallon is found to have scienter.

> **2.      The New Evidence Confirms That The Alleged Scheme Supported Exxon's False Permian Production Statements**



---

[3] Hereafter, "¶__" refers to paragraphs in the Proposed Amendment, attached hereto as Exhibit A.

8

9

**3.** **The New Evidence Establishes That Defendants Woods And Mallon Were Aware Of The Scheme And Knowingly Misled Investors**





## III.    ARGUMENT

### A.    Lead Plaintiffs Meet The Standard For A Motion To Amend Under Rule 16

Lead Plaintiffs seek leave to amend their Complaint to conform to the Court's August 12 Order and to add new information learned through class certification discovery regarding Defendants' scheme to inflate the value of Exxon's Permian assets and Woods's and Mallon's scienter. Pursuant to the Court's December 11, 2023 Scheduling Order, "any motion for leave to amend pleadings" at this juncture "must show good cause" under Rule 16(b). ECF No. 122.  Four factors inform the good cause analysis under Rule 16 for leave to amend: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Archer v. Kennedy*, 2022 WL 4820168, at *4 (N.D. Tx. Oct. 3, 2022) (Godbey, J.). Lead Plaintiffs satisfy each of these requirements.

11

### 1.    Lead Plaintiffs Have A Substantial Justification For Moving To Amend Outside The Deadline Imposed By The Scheduling Order

Lead Plaintiffs are justified in moving to amend now because they could not have done so sooner.  The Proposed Amendment seeks in part to conform to the Court's August 12 Order, which explained that "Plaintiffs cannot rely on public statements made by Woods or Mallon to plead that Bond's alleged scheme impacted the purchase or sale of any security."  ECF No. 157 at 9.  This required Lead Plaintiffs to clarify that certain of the statements concerning Permian production were made by Exxon, and not Woods or Mallon. *See Anderson v. Liberty Mut. Ins. Co.*, 2022 WL 20689553, at *3 (W.D. La. Apr. 26, 2022) (allowing amended complaint when the "need to amend the complaint . . . did not fully crystalize and become of paramount importance until [defendant's] motion practice."); *see also Shimon v. Sewerage & Water Bd. of New Orleans*, 2007 WL 1237835, at *1 (E.D. La. Apr. 25, 2007) (allowing amendment of answer in response to court ruling).

The Proposed Amendment is otherwise based entirely on Defendants' production of confidential internal Exxon documents, which was not completed until August 16, 2024.  Lead Counsel also re-interviewed Dr. Burch based on this new evidence in September 2024.  *See Rivera v. Robinson*, 2019 WL 4024939, at *2 (E.D. La. Aug. 27, 2019) ("Newly discovered information acquired through discovery has been found by courts in this circuit to constitute good cause for an untimely leave to amend under Rule 16."); *Douga v. Bekins Van Lines LLC*, 2011 WL 13324354, at *1 (W.D. Tex. Jan. 5, 2011) (allowing amendment under Rule 16 because of new evidence uncovered during discovery); Ex F (Defendants' last production was August 16, 2024). Indeed, Defendants did not even start producing documents until May 3, 2024, months after the February 9, 2024 deadline to amend.  *See* Ex E.

Thus, Plaintiffs have expeditiously sought amendment one month after the Court's Order and less than one month after Defendants completed production.

## 2.    The Proposed Amendment Is Important And Not Futile

Lead Plaintiffs satisfy the second requirement under Rule 16 because the Proposed Amendment is important and necessary to conform to the Court's August 12 Order, as well as to clarify and correct issues for class certification.

First, the Proposed Amendment conforms to the Court's August 12 Order by confirming that certain alleged false and misleading statements were made by Exxon, not Woods or Mallon. It is important to have clarity on the statements at issue before proceeding to class certification. Second, the Proposed Amendment bolsters the connection between the scheme and Defendants' public statements – a challenge that Defendants have repeatedly told the Court they will raise at class certification by arguing that the scheme did not impact the price of Exxon's common stock (*i.e.*, "price impact"). At class certification, the connection between the scheme and the public statements is relevant to the issue of market reliance. Furthermore, this connection supports Lead Plaintiffs' ability to rely on statements made by Woods and Mallon regarding the Permian production goal, regardless of their scienter. Third, the Proposed Amendment shows that Woods and Mallon were in fact connected to the scheme and knew or were at a minimum severely reckless in not knowing that their statements were false. The amendment would therefore reinstate fraud claims under Rule 10b-5(b) with respect to Woods and Mallon, and scheme liability claims under Rule 10b-5(a) and (c) with respect to Mallon. Establishing the claims at issue in the case prior to class certification is of critical importance.

### a.    The Proposed Amendment Conforms To The Court's Order By Confirming That Many Permian Production Statements Are Exxon's Corporate Statements

At the outset, Plaintiffs' Proposed Amendment seeks to confirm that certain alleged misstatements about Permian production (which were previously alleged) were made by Exxon.

*See* ¶481 (March 5, 2019), ¶¶482-483 (March 6, 2019), ¶484 (April 26, 2019), ¶485 (January 31, 2020), and ¶486 (March 5, 2020).

The Proposed Amendment does not add any new statements to the complaint, as these statements were already alleged to be false and misleading.

Under Fifth Circuit law, a corporate defendant like Exxon can be liable for two types of statements: (1) statements issued in the corporation's name; and (2) statements made by corporate executives within the scope of their authority at the corporation.  As the Fifth Circuit held in *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353 (5th Cir. 2004):

> Respecting the potential section 10(b) liability of [the corporation] itself, however, as all of the individual defendants were executive officers of [the company] whose actions were intended to benefit [the company], we will treat as having been made by [the company] the particular complained of statements in the SEC filings, reports and releases issued in its name. Statements attributed to individual defendants are also treated as having been made by [the company], as all of them appear from the face of the Complaint to have been made pursuant to their positions of authority within the company.

*Southland Sec. Corp.*, 365 F.3d at 365-66.

The Fifth Circuit has also made clear that scienter both for a statement issued in the corporation's name and a statement made by a corporate executive within the scope of his authority may be established through the actions of individuals who "order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like[.]" *Id.* at 366.

Accordingly, under governing Fifth Circuit law, Exxon is liable for all of the false and misleading statements alleged in the Complaint because they were either issued in Exxon's name or made by Woods or Mallon within the scope of their authority, or both.  *See* ¶¶439, 440, 442, 443, 451, 462, 464, 466, 476, 478, 480-486.

Likewise, scienter for all the statements alleged in the Complaint can be established through Defendant Bond under the *Southland* test, who the Court has already held engaged in the

14

scheme to prop up the statements. *See* ECF No. 112 at 18 (concluding that "Bond instructed her team to manipulate internal valuations of ExxonMobil's Permian assets in order to support Woods's public pledges to investors"). Scienter can also be established through others at Exxon who implemented the scheme. *See id.* ████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████

Bond's and others' actions in "furnishing information . . . or the like" to support Exxon's untrue Permian production statements are sufficient to establish scienter for those statements. ECF No. 157 at 13; *see Lee v. Active Power, Inc.*, 29 F. Supp. 3d 876, 882 (W.D. Tex. 2014) (corporate scienter established through agent who furnished false information to others who made misstatements); *see also Kerr v. Exobox Techs. Corp.*, 2012 WL 201872, at *14 (S.D. Tex. Jan. 23, 2012) (scienter for corporate SEC filings established by agent who engaged in scheme to hide ownership interests in the company); *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *25-27 (D.N.J. June 5, 2020) (imputing scienter of non-speaking scheme liability defendants to corporation under *Southland*).

However, to conform to the August 12 Order, which distinguished between statements "made by Woods and Mallon" and Exxon's corporate statements, Lead Plaintiffs have identified all of the previously alleged false and misleading statements issued in Exxon's name and separated them into their own section of the Complaint, located in the Proposed Amendment at ¶¶480-486. These allegations are important and not futile because to the extent the Court maintains that only

15

statements made in Exxon's name can move forward, it is important to clarify which of the previously alleged statements are Exxon's corporate statements.

**b.    New Evidence Confirms A Direct Connection Between The Scheme And The Permian Production Statements**



These allegations are important and not futile because courts routinely hold that the market relies on an alleged scheme where data falsified by the scheme is used to support the company's public statements. *See, e.g.*, *In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629, at *4, *8 (S.D.N.Y. Feb. 17, 2022) (market relied on scheme where vice president of sales pressured employees to inflate sales probabilities, which were incorporated into the company's forecasted sales pipeline reported to investors). As in *XL Fleet*, ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████ Indeed, Defendants specifically referred to Exxon's Development Plan, which contained the false learning curve valuations, in affirming their Permian production statements to investors – which underscores its connection to the scheme. *See, e.g.*, ¶445 (on

March 6, 2019, Woods stated, "it goes back to the development plan that we have in place"); ¶462 (on June 18, 2019 Mallon stated that "our innovative development plan is key"); *see also XL Fleet*, 2022 WL 493629, at *8 (finding the market relied on scheme and underlying falsified data, where public sales forecasts referred to the manipulated sales pipeline, just as Defendants' statements here referred to the manipulated development plan); *see also W. Virginia Pipe Trades & Welfare Fund v. Medtronic, Inc.*, 845 F.3d 384, 393-94 (8th Cir. 2016) (market relied on scheme paying doctors to hide adverse events that impacted the results of published clinical trials); *Indiana Pub. Ret. Sys. v. AAC Holdings, Inc.*, 2023 WL 2592134, at *20 (M.D. Tenn. Feb. 24, 2023) (finding market relied on alleged scheme that manipulated historical data regarding the likelihood of loan repayments that impacted the company's published accounts receivable balance). ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

      c.      **New Evidence Shows that Woods and Mallon Acted With Scienter**

The new allegations are also important and not futile because they show that Woods and Mallon knew, or were at a minimum severely reckless in not knowing, that their statements regarding the Permian production were materially false and misleading. As discussed directly above, there is no requirement that speakers be aware of a scheme for the purposes of corporate scienter or class reliance. However, Woods's and Mallon's knowledge of and control over the scheme establishes that they acted with scienter; it also reinforces the connection between the scheme and their statements impacting the market and addresses the portion of the August 12 Order finding that Lead Plaintiffs failed to establish that connection through Woods and Mallon.

The new allegations are not futile because Plaintiffs can establish scienter by showing that the Defendants either knew that their statements were false at the time they were made or were severely reckless in disregarding an obvious risk of misleading the public. *See Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 216 n.18 (5th Cir. 2023) (finding defendants acted with scienter based on allegations that defendants received reports throughout the class period contradicting their public statements). █████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████ *See, e.g.*, In re VeriFone Holdings, Inc. Sec. *Litig.*, 704 F.3d 694, 708 (9th Cir. 2012) (finding executives were deliberately reckless where they were informed that company would miss financial target and subsequently instructed employees to change these "unacceptable" results). █████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ *See Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 264 (5th Cir. 2006) (finding scienter where CFO directed employees to investigate accounting issue but nevertheless persisted in making false statements after receiving adverse reports). █████████████████████████████

███████████████████████████████████████████████

███

18

### 3.    The Proposed Amendment Will Not Prejudice Defendants

There is little risk of prejudice to Defendants. Discovery is still at the class certification stage and merits discovery has not even begun. Defendants will not be required to re-do class discovery, as the parties already agreed to search terms which encompass the Permian production and Woods and Mallon are already custodians. Nor will discovery continue to run, as the parties have stipulated to a stay of discovery while this motion is pending. Any theoretical prejudice can be cured by the Court granting the parties additional time for discovery. *See Eagle Railcar Servs.-Roscoe, Inc. v. NGL Crude Logistics, LLC*, 2017 WL 11634816, at *4 (N.D. Tex. Oct. 26, 2017) ("Other than the added expense to Defendant, the Court may cure the prejudice resulting from the need for additional discovery by extending the time for discovery."). Finally, to the extent Defendants believe the amended pleadings themselves present prejudice, they can challenge them in opposition to this Motion.

### 4.    Any Prejudice Can Be Ameliorated By A Continuance

This is the best possible time for Plaintiffs to amend because the Proposed Amendment clarifies the statements and claims at issue in this case prior to class certification. Further, to the extent that there is prejudice which cannot be cured by extended discovery, it can be ameliorated by alternative means. Merits discovery and trial deadlines have not yet been set, and the Court can enter a continuance to the extent one is needed. *See Hartford Fire Ins. Co. v. Gray Corp*, 2008 WL 11495450, at *3 (N.D. Miss. Mar. 4, 2008). And whatever potential prejudice could exist "is minimal and can be cured by postponing trial and providing additional opportunities for limited discovery, dispositive motions, and ADR in this case." *Mailing & Shipping Sys., Inc. v. Neopost USA, Inc.*, 292 F.R.D. 369, 376 (W.D. Tex. 2013).  Because Lead Plaintiffs satisfy the four

19

requirements for amendment pursuant to Rule 16(b), the Court should grant the motion for leave to amend.[4]

### B.    The Court Should Reconsider Its Dismissal with Prejudice Of Lead Plaintiffs' Claims For Misrepresentations Under 10b-5(b)

As set forth in Sections II.B.3 and III.A.2.c above, the Proposed Amendment establishes, through newly discovered evidence, that both Defendant Woods and Defendant Mallon knowingly and/or severely recklessly misled investors about Exxon's Permian production. As a result, the Court should reconsider its dismissal with prejudice of Lead Plaintiffs' Rule 10b-5(b) claims against Woods and Mallon and Rule 10b-5(a) and (c) claim against Mallon, and grant leave to amend the Complaint to reinstate these claims.

Under Rule 54(b), interlocutory rulings, like the Second MTD Order, that "adjudicate fewer than all the claims or the rights and liabilities of fewer than all the parties," may be revised "***at any time***" before the entry of a final judgment. *See Crostley v. Lamar Cnty., Texas*, 717 F.3d 410, 420-21 (5th Cir. 2013) (applying Fed. R. Civ. P. 54(b)). This is true even though the Second MTD Order dismissed Lead Plaintiffs' claims with prejudice. *Id.* (district court's refusal to allow plaintiffs to amend complaint to reinstate claims previously dismissed with prejudice was abuse of discretion); *see also Upton v. Vicknair*, 2023 WL 2043333, at *4 (E.D. La. Feb. 16, 2023) (revising order dismissing claims with prejudice so that plaintiff could file an amended complaint to reinstate claims based on new evidence); *Griffith v. City of New Orleans*, 2013 WL 2555787, at

---

[4] To the extent required, Lead Plaintiffs also satisfy the liberal standard for amendment under Rule 15(a), which "evinces a bias in favor of granting leave to amend." *Anderson v. Liberty Mut. Ins. Co.*, 2022 WL 20689553, at *4 (W.D. La. Apr. 26, 2022) (requiring plaintiffs to satisfy both Rule 16 and Rule 15). Lead Plaintiffs satisfy Rule 15 for the same reasons they satisfy Rule 16: no delay or bad faith, no prejudice to defendants, and the amendment would not be futile.

*1 n.3 (E.D. La. June 10, 2013) (dismissals with prejudice are interlocutory orders subject to revision any time before final judgment under Rule 54(b)).

A court may grant a motion for reconsideration under Rule 54(b) "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). The Fifth Circuit has cautioned that a court applying Rule 54(b) "should construe the procedural rules with a preference toward resolving the case on the merits and avoiding any dismissal based on a technicality[,]" and "should also weigh the interests of justice . . . ." *Id.* at 337-38.

Thus, courts in this Circuit evaluating motions under Rule 54(b) apply a "flexible" standard less rigorous than the standards of Rules 59(e) and 60(b), which allow reconsideration of final judgments where a movant (1) presents newly discovered evidence it obtained through the exercise of due diligence, which (2) is material and would have produced a different result. *See Tomax AS v. Turbo Drill Indus., Inc.*, 2023 WL 3171744, at *3 (W.D. Tex. Apr. 6, 2023) (a "less exacting" analysis of "considerations similar to those under Rules 59 and 60 inform[s] the Court's analysis" of motions for reconsideration under Rule 54(b)). The Proposed Amendment is based on newly discovered evidence obtained with due diligence that would have changed the outcome of the Court's prior dismissal with prejudice. Accordingly, the Court should grant Lead Plaintiffs' motion in the interest of justice.

### 1. Lead Plaintiffs Exercised Due Diligence In Obtaining New Evidence

All of the evidence that Lead Plaintiffs intend to provide in the Proposed Amendment is new because it consists of internal Exxon documents obtained during discovery in this action that were not available to Lead Plaintiffs when they drafted the Complaint or when this Court issued the Second MTD Order. *See, e.g.*, *Upton*, 2023 WL 2043333, at *3 (holding that new evidence

21

that became available to plaintiffs only after the court dismissed relevant claims supported granting reconsideration).

Further, Lead Plaintiffs exercised due diligence in obtaining this new evidence. When drafting the Complaint, Lead Plaintiffs conducted a significant and extensive investigation (beyond the comprehensive investigation that they conducted when drafting their first Amended Complaint, ECF No. 53) that included reviewing numerous articles, reports, and publications, as well as interviewing dozens of potential witnesses.  Because this action is subject to the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ("PSLRA"), Lead Plaintiffs were barred from seeking discovery of Defendants' documents until August 24, 2023, when the Second MTD Order was issued.

Thereafter, Lead Plaintiffs diligently pursued discovery: They promptly (i) met and conferred on the bifurcation of discovery and the case schedule as ordered by the Court; (ii) served Defendants with document requests; (iii) opposed Defendants' motion for judgment on the pleadings; (iv) negotiated a search protocol, e-discovery stipulation, and protective order for confidential information; and (v) successfully moved to compel production and opposed a protective order shielding Mallon and Woods from discovery. Lead Plaintiffs received Defendants' first production on May 3, 2024.  *See* Ex. E. Moreover, new evidence supporting the Proposed Amendment was produced as late as August 16, 2024. *See* Ex. F.  Lead Plaintiffs thereafter promptly notified Defendants of their intent to file this motion two business days later on August 20, 2024, and the parties quickly agreed to a briefing schedule.  *See* ECF No. 158. Thus, Lead Plaintiffs have diligently sought the evidence cited in the Proposed Amendment without delay.

### 2. The New Evidence Would Have Produced A Different Result And Amendment Is Not Futile

The newly produced evidence would have produced a different outcome because, as discussed above, *see* Section III.A.2.c, *supra*, the evidence supporting the Proposed Amendment establishes that Defendants Woods and Mallon knowingly misled investors or, at minimum, were severely reckless in making their alleged misrepresentations. The Court dismissed the 10b-5(b) claims against Woods and Mallon and the 10b-5(a) and (c) claim against Mallon because it found that Lead Plaintiffs failed to adequately allege that Defendants Woods and Mallon acted with scienter. *See* Second MTD Order at 12, 17. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████ *See*, *e.g.*, *Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 852-853 (N.D. Tex. 2018) (allegations that Exxon's Management Committee received in-depth information that contradicted publicly-issued statements "support[ed] finding a strong inference of scienter as to Defendants ExxonMobil" and two individual defendants).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████. *VeriFone Holdings*, 704 F.3d at 708 (finding scienter where executives instructed employees to make financial results match targets provided to investors).

The new evidence establishes Woods's and Mallon's scienter and, accordingly, it would have changed the outcome of the Second MTD Order. Thus, in the interest of justice, and pursuant

23

to the flexible standard of Rule 54(b) that applies here, the Court should reconsider its dismissal with prejudice and allow Lead Plaintiffs to amend the Complaint to reinstate these claims.

## IV.    CONCLUSION

Lead Plaintiffs respectfully request that they be given leave to amend the Complaint and file Exhibit A as the operative complaint in this action, and further, that the Court reconsider its dismissal with prejudice of Lead Plaintiffs' Securities Exchange Act and Rule 10b-5(b) fraud claims against Defendants Woods and Mallon and the Rule 10b-5(a) and (c) scheme liability claim against Defendant Mallon and reinstate these claims.

Dated: September 13, 2024                    Respectfully submitted,

/s/ *John Rizio-Hamilton*                       /s/ *Daniel L. Berger*

John Rizio-Hamilton (pro hac vice)          Daniel L. Berger (pro hac vice)
johnr@blbglaw.com                           dberger@gelaw.com
Rebecca E. Boon (pro hac vice)              Caitlin M. Moyna (pro hac vice)
rebecca.boon@blbglaw.com                    cmoyna@gelaw.com
John J. Esmay (pro hac vice)                Lauren J. Salamon (pro hac vice)
john.esmay@blbglaw.com                      lsalamon@gelaw.com
Thomas Sperber (pro hac vice)               GRANT & EISENHOFER PA
thomas.sperber@blbglaw.com                  485 Lexington Avenue
Stephen Boscolo (pro hac vice)              New York, New York 10017
stephen.boscolo@blbglaw.com                 Phone: (646) 722-8500
BERNSTEIN LITOWITZ BERGER &                 Fax: (646) 722-8501
GROSSMANN LLP
1251 Avenue of the Americas                 *Co-Lead Counsel for the Class and Counsel*
New York, New York 10020                    *for Co-Lead Plaintiff Amalgamated Bank*
Phone: (212) 554-1400
Fax: (212) 554-1444

*Co-Lead Counsel for the Class and Counsel*
*for Co-Lead Plaintiff State of Rhode Island,*
*Office of the General Treasurer, on behalf of*
*the Employees' Retirement System of Rhode*
*Island*

                                            Lewis T. LeClair
                                            Texas Bar No. 12072500
                                            lleclair@mckoolsmith.com

24

McKOOL SMITH PC
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Phone: (214) 978-4000
Fax: (214) 978-4044

Liaison Counsel for the Class

**CERTIFICATE OF CONFERENCE**

I, John J. Esmay, hereby certify that, on August 20, 2024, counsel for Lead Plaintiffs, including myself, Caitlin Moyna, and Lauren Salamon, and counsel for Defendants, including Michael W. Restey, Jr. and Abby Davis, conferred in person regarding the instant Motion, and Defendants thereafter indicated they would oppose the motion. Later that same day, counsel for the parties negotiated and submitted a stipulation for briefing the Motion to the Court.

/s/ *John J. Esmay*____
John J. Esmay

**CERTIFICATE OF SERVICE**

I, John Rizio-Hamilton, hereby certify that on September 13, 2024, I electronically filed the foregoing with the Clerk of the Court via ECF, which in turn served notice on all counsel of record.

*/s/ John Rizio-Hamilton*__
John Rizio-Hamilton

26