UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiff,*<br><br>v.<br><br>EXXON MOBIL CORPORATION, DARREN W. WOODS, NEIL A. CHAPMAN, JACK WILLIAMS, NEIL A. HANSEN, DAVID ROSENTHAL, LIAM M. MALLON, JEFFREY J. WOODBURY, and SARA N. ORTWEIN,<br><br>*Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 3:21-cv-00194-N |

**DEFENDANTS' RESPONSE TO LEAD PLAINTIFFS'
MOTION FOR LEAVE TO FILE A THIRD AMENDED CLASS ACTION
COMPLAINT AND MOTION FOR RECONSIDERATION AND BRIEF IN SUPPORT**

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
Tel.: (713) 655-5122
Fax: (713) 483-9122

*Attorneys for Defendants
Exxon Mobil Corporation, Darren W. Woods,
Liam M. Mallon, and Melissa Bond*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ............................................................................................................1

STATEMENT OF FACTS ...............................................................................................4

I.      The learning curve allegations were the foundation for the 2021 Amended Complaint.................................................................................................................4

II.     The Court dismissed most of Plaintiffs' claims for failure to plead with sufficient particularity and failure to plead scienter.................................................................5

        A.     On September 29, 2022, the Court dismissed the First Amended Complaint in its entirety...................................................................................5

        B.     On August 24, 2023, the Court dismissed most of the Second Amended Complaint with prejudice.....................................................................................6

III.    Unable to connect their alleged internal "scheme" to any statement to investors, Plaintiffs attempted to reframe the dismissed Section 10(b) claims based on ExxonMobil's Production Goals as part of the "scheme liability" claim. ...........................7

IV.    During class certification discovery, Plaintiffs pressed for – and received – substantial merits discovery, including discovery on ExxonMobil's use of the learning curve assumptions.............................................................................................8

V.     Defendants' document production established that there was no factual basis for Plaintiffs' claims. ..............................................................................................................10

        A.     ExxonMobil beat the supposedly "impossible" learning curve assumptions in 2020. ......................................................................................................10

        B.     Because Bond did not create the learning curve assumptions, she could not have participated in the alleged "scheme."...........................................................12

        C.     ExxonMobil's production issues in 2020 resulted from the pandemic and the Russia-Saudi price war – not the failure to beat the learning curve assumptions...............................................................................................13

VI.    In its August 12 Order, the Court confirmed that its August 2023 Order had "severed the connection" between the alleged scheme and Woods' and Mallon's Production Goal Statements...............................................................................................16

VII.    Plaintiffs waited until "class certification discovery" was nearly closed to disclose that they intended to seek leave to amend their complaint. ................................................17

ARGUMENT ................................................................................................................................19

I.    Plaintiffs have proffered no reason for the Court to reconsider its prior orders and revive claims it has twice dismissed. ...............................................................................19

    A.    There is no "newly discovered evidence" that warrants reconsideration. .............19

    B.    Reviving claims dismissed with prejudice after Plaintiffs failed to plead scienter would allow Plaintiffs to end-run the protections of the PSLRA. ............20

    C.    Reinstating the Section 10(b) claims would be futile because Plaintiffs have evidence showing their claims have no factual basis. ...................................22

    D.    Plaintiffs were not diligent in seeking reconsideration: the Court dismissed claims based on the Production Goal Statements over one year ago and Plaintiffs knew much of the alleged "new" information for months. ....................26

II.    Plaintiffs have not demonstrated good cause to allow an amendment seven months after the deadline. ..............................................................................................27

    A.    Plaintiffs delayed seeking leave to amend for months – and used the delay to impose substantial discovery costs on Defendants. ...........................................28

    B.    Plaintiffs do not need to amend their complaint to "conform" to the Court's August 12 Order. ......................................................................................29

    C.    The amendment will prejudice Defendants by denying them the PSLRA's protections, forcing them to waste additional resources defending meritless claims, and allowing Plaintiffs to use allegations developed in violation of this Court's Protective Order. ...........................................................32

    D.    A continuance will increase – not cure – the prejudice to Defendants. .................34

CONCLUSION ............................................................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

*Alaska Electrical Pension Fund v. Flowserve Corp.*,
 572 F.3d 221 (5th Cir. 2009)..................................................................................24

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
 568 U.S. 455 (2013) ...............................................................................................33

*Arrieta v. Yellow Transportation, Inc.*,
 2009 WL 129731 (N.D. Tex. Jan. 20, 2009).........................................................21

*Austin v. Kroger Texas, L.P.*,
 864 F.3d 326 (5th Cir. 2017)..................................................................................25

*Bank of America, N.A. as Trustee of Florence Thelma Hall Testamentary Trust v. Devon Energy Production Co.*,
 2018 WL 7916144 (W.D. Tex. Feb. 14, 2018) ......................................................31

*Belmont Holdings Corp. v. SunTrust Banks, Inc.*,
 896 F. Supp. 2d 1210 (N.D. Ga. 2012) ..................................................................23

*In re Bisys Securities Litigation*,
 496 F. Supp. 2d 384 (S.D.N.Y. 2007).........................................................21, 22, 32

*Celanese Corp. v. Clariant Corp.*,
 2016 WL 865365 (N.D. Tex. Mar. 7, 2016) ..........................................................31

*Certain Underwriters at Lloyd's of London v. Alvarado*,
 2021 WL 6773173 (N.D. Tex. July 12, 2021) .......................................................19

*City of Livonia Employees' Retirement System v. Boeing Co.*,
 306 F.R.D. 175 (N.D. Ill. 2014) .......................................................................23, 24

*Congious by & through Hammond v. Shaw*,
 2024 WL 3434571 (N.D. Tex. July 16, 2024) .......................................................22

*Crostley v. Lamar County, Texas*,
 717 F.3d 410 (5th Cir. 2013)..................................................................................25

*Daniel v. Ocwen Loan Servicing, LLC*,
 2020 WL 13430479 (N.D. Tex. Jan. 8, 2020)........................................................22

*Del Giudice v. S.A.C. Capital Management, LLC*,
 2009 WL 424368 (D.N.J. Feb. 19, 2009)...............................................................34

*DeWolff Boberg & Associates, Inc. v. Pethick*,
 2023 WL 4937406 (N.D. Tex. June 30, 2023)............................................27, 29, 34

*Dondi Properties Corporation v. Commercial Savings & Loan Association*,
   121 F.R.D. 284, 287 (N.D. Tex. 1988)........................................................................19

*Experexchange, Inc. v. Doculex, Inc.*,
   2009 WL 3837275 (N.D. Cal. Nov. 16, 2009)..........................................................29

*In re FEMA Trailer Formaldehyde Products Liability Litigation*,
   2012 WL 730457 (E.D. La. Mar. 6, 2012)................................................................23

*Financial Acquisition Partners LP v. Blackwell*,
   440 F.3d 278 (5th Cir. 2006).....................................................................................30

*Glenn v. Imperial Palace of Mississippi, LLC*,
   2013 WL 3712429 (S.D. Miss. July 12, 2013) ........................................................22

*Grand Famous Shipping Ltd. v. Port of Houston Authority*,
   572 F. Supp. 3d 307 (S.D. Tex. 2021).......................................................................23

*Griffith v. City of New Orleans*,
   2013 WL 2555787 (E.D. La. June 10, 2013) ...........................................................25

*Harrison v. Forde*,
   2022 WL 1572247 (S.D. Ala. May 18, 2022)...........................................................29

*Herrmann Holdings Ltd. v. Lucent Technologies Inc.*,
   302 F.3d 552 (5th Cir. 2002).....................................................................................35

*Hixson v. Houston Independent School District*,
   2011 WL 4860004 (S.D. Tex. Oct. 13, 2011)...........................................................23

*iiiiTec Ltd. v. Weatherford Technology Holdings, LLC*,
   2022 WL 138030 (S.D. Tex. Jan. 14, 2022) ............................................................23

*Infusion Resources, Inc. v. Minimed, Inc.*,
   351 F.3d 688 (5th Cir. 2003)...............................................................................22, 26

*Johnson-Williams v. Citimortgage, Inc.*,
   2016 WL 853079 (N.D. Tex. Feb. 11, 2016) ...........................................................27

*Khoury v. Thota*,
   2020 WL 6494986 (S.D. Tex. Oct. 1, 2020).............................................................25

*Khoury v. Thota*,
   2021 WL 3919248 (5th Cir. Sept. 1, 2021)..............................................................25

*Knutson v. Harris*,
   2018 WL 4281557 (N.D. Tex. Sept. 6, 2018)..........................................................35

*Lindsey v. Unitrin Auto & Home Insurance Co.*,
  2010 WL 11640213 (E.D. Ky. Mar. 29, 2010) ...........................................................................30

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ...................................................................................................24

*Milanese v. Rust-Oleum Corp.*,
  244 F.3d 104 (2d Cir. 2001) ....................................................................................................30

*Pasternack v. Shrader*,
  863 F.3d 162 (2d Cir. 2017) ....................................................................................................25

*In re Petrobras Securities Litigation*,
  2016 WL 3144395 (S.D.N.Y. May 5, 2016) ............................................................3, 21, 22, 32

*Randall v. Reeves*,
  189 F.3d 466 (5th Cir. 1999) ..............................................................................................27, 35

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) ...................................................................................................28

*Sako v. Wells Fargo Bank, National Association*,
  2015 WL 5022326 (S.D. Cal. Aug. 24, 2015) .........................................................................29

*Salt and Light Energy Equipment, LLC, v. Origin Bancorp, Inc.*,
  2024 WL 4185613 (N.D. Tex. Aug. 12, 2024) ........................................................................20

*Squyres v. Heico Cos.*,
  782 F.3d 224 (5th Cir. 2015) ........................................................................................28, 29, 32

*T.O. v. Fort Bend Independent School District*,
  2 F.4th 407 (5th Cir. 2021) ......................................................................................................28

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................................21, 32

*Templet v. HydroChem Inc.*,
  367 F.3d 473 (5th Cir. 2004) ...................................................................................................20

*Thomas v. Chevron U.S.A., Inc.*,
  832 F.3d 586 (5th Cir. 2016) ...................................................................................................29

*Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*,
  325 F. Supp. 3d 728 (N.D. Tex. 2018) ....................................................................................30

*Trammel Crow Residential Co. v. National Union Fire Insurance Co. of Pittsburgh, PA*,
  2014 WL 12577396 (N.D. Tex. Sept. 30, 2014) ................................................................19, 29

*Travelers Casualty & Surety Company of America v. James*,
    2016 WL 9306254 (N.D. Tex. Oct. 5, 2016) ...............................................................34

*Turk v. Pershing LLC*,
    2023 WL 11926441 (N.D. Tex. May 16, 2023)........................................................3, 20

*Union Planters National Leasing, Inc. v. Woods*,
    687 F.2d 117 (5th Cir. 1982)...............................................................................34, 35

*United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*,
    2021 WL 5831626 (D. Mass. Dec. 8, 2021) ...............................................................34

*Upton v. Vicknair*,
    2023 WL 2043333 (E.D. La. Feb. 16, 2023)..............................................................26

*Whittington v. Minnesota Life Insurance Co.*,
    2010 WL 11610313 (W.D. La. Aug. 27, 2010) ...........................................................30

## INTRODUCTION

The fundamental defect in Plaintiffs' claims cannot be fixed with a fourth attempt to plead them in yet another amended complaint. For almost four years now, Plaintiffs have doggedly pursued a theory that in its 2019 Plan, ExxonMobil deliberately incorporated "impossible" assumptions about its drilling learning curve – meaning, how quickly it could reduce the time it takes to drill wells. But while Plaintiffs were pleading and repleading and repleading their Complaint, ExxonMobil was not only meeting those purportedly "impossible" learning curve assumptions – it was beating them. And Plaintiffs know that the lynchpin of their claims is a lie – the merits discovery they insisted they needed for class certification included the evidence that disproves their theory. That evidence was in Plaintiffs' possession for months before they filed their Motion. But while Plaintiffs are undeterred by the facts, the Court should not be. Nearly four years of litigation, five months of discovery, and three chances to clear the motion to dismiss bar are enough. Plaintiffs should not be permitted another fishing expedition at ExxonMobil's expense.

Plaintiffs began this nearly four year old litigation determined to force the square peg of a garden-variety employment dispute into the round hole of a securities claim. First, when the *Wall Street Journal* reported that an ExxonMobil employee's complaints about the valuation of assets in the Permian Basin had led to an SEC investigation, they pinned their claims to that investigation. But the SEC investigation was closed without any action by the SEC, and this Court dismissed the First Amended Complaint in full in September 2022.

In their Second Amended Complaint, Plaintiffs fashioned their claims from the *Washington Post*'s hearsay report of allegations made by disgruntled former employees Damian Burch and Lindsey Gulden – neither of whom had any actual drilling experience and both of whom were pursuing employment claims against ExxonMobil. This Court dismissed almost all of those

1

claims, too. The Court dismissed all of the claims arising from ExxonMobil's statements about its production goals and held that Plaintiffs failed to plead scienter for the only two alleged speakers, Liam Mallon and Darren Woods. The lone claim the Court allowed to proceed was a "scheme liability" claim in which Plaintiffs alleged that Melissa Bond engaged in a "scheme" to adopt "impossible" learning curve assumptions to somehow internally support goals ExxonMobil had already publicly announced. The Court recently reconfirmed the dismissal of the production goal claims and the absence of scienter as to both Mallon and Woods in its August 12 Order on Defendants' Motion for Judgment on the Pleadings. In that Order, the Court explicitly confirmed that Plaintiffs cannot base their "scheme" claim on the Production Goal Statements. (Dkt. 157 at 8-9.)[1]

With just one theory of liability surviving the second round of motion to dismiss briefing, Plaintiffs still faced a problem at class certification. The "scheme" they alleged was purely internal. They had not alleged and had no evidence of any connection between the supposedly "impossible" learning curve assumptions and any statement made to investors. And so they asked for – and were granted leave to take – broad, merits-based discovery at the class certification stage. But rather than support Plaintiffs' theory, the discovery refuted it: the Drilling Team's learning curve assumptions were *not* inflated and ExxonMobil actually *beat* the supposedly "impossible" assumptions and drilled wells even more quickly than the 2019 Plan – sometimes called "CP19" – had assumed. ███████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[1]   Unless noted otherwise, references to docket pages are to the page stamped at the top of the filing.

2

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████ In short, what Plaintiffs misleadingly attempt to cast as "new" information to justify their Proposed Amendment and motion for reconsideration of an Order entered over one year ago is in fact a document production that refutes Plaintiffs' remaining claims and would render futile any attempt to replead those claims.[2]

Plaintiffs now seek to salvage their case by asking the Court to resurrect the Section 10(b) and Rule 10b-5(a) and (c) claims (collectively, the "Section 10(b) claims") against Woods and Mallon and to permit them to amend the Complaint to include additional allegations based on cherry-picked and out-of-context statements pulled from the voluminous discovery produced during the class certification phase. The Court should deny both motions because Plaintiffs have not met the burden for either.

As to the motion to reconsider, this Court exercises its discretion to review interlocutory orders "sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays.'" *Turk v. Pershing LLC*, 2023 WL 11926441, at *1 (N.D. Tex. May 16, 2023) (Godbey, J.) (citation omitted). This is not the case for the "sparing" exercise of this discretion. Allowing Plaintiffs to use class certification discovery to resurrect claims that they failed to adequately plead under the PSLRA "would amount to an end run around the PSLRA." *In re: Petrobras Sec. Litig.*, 2016 WL 3144395, at *9 (S.D.N.Y. May 5, 2016). Moreover, reviving the long since dismissed Section 10(b) claims will not change the outcome of this litigation – it will

---

[2] Plaintiffs had or could have obtained virtually all of the documents and information that they now claim is new by July 5, 2024. (*See* App. 4-6.)

3

merely add more delay and impose more unnecessary expense on ExxonMobil, which has now defended itself for more than three years against these meritless allegations.

The Court also should deny Plaintiffs' motion to amend. Because the underlying premise of the lawsuit is demonstrably wrong, amendment is futile. Moreover, Plaintiffs have not shown good cause for their delay in filing. All Plaintiffs' amendment would do is unnecessarily prejudice Defendants and waste judicial resources.

This case is almost four years old. Plaintiffs have had ample opportunities to plead their case and they have failed to do so. The Court should not give them another bite at the apple now, particularly when the discovery produced to date demonstrates that their claims are based on a fundamentally flawed premise.

<b><u>STATEMENT OF FACTS</u></b>

**I.     The learning curve allegations were the foundation for the 2021 Amended Complaint.**

On January 28, 2021, Mendi Yoshikawa filed this lawsuit against ExxonMobil and eight individual defendants, alleging that ExxonMobil used "unrealistic assumptions regarding the timelines for well drilling in the Permian Basin," which "artificially inflat[ed] the value" of the Company's operations in that basin. (Dkt. 1 ¶¶ 3; 36.) This theory was premised on a January 15, 2021 *Wall Street Journal* article reporting that the SEC was investigating ExxonMobil's valuation of its Permian properties. (Dkt. 1 ¶ 37.) After the Court appointed the current Plaintiffs as lead plaintiffs, they filed their Amended Class Action Complaint against ExxonMobil and eight individual defendants. (Dkt. 53.) The Amended Complaint doubled down on the theory that ExxonMobil adopted unrealistic "learning curve" assumptions. (*E.g.*, Dkt. 53 ¶¶ 1-24.) Specifically, Plaintiffs alleged that ExxonMobil baked into its operating plan for 2019 an assumption that it would reduce the time it took to drill wells in the Permian faster than it actually could achieve. (*E.g.*, Dkt. 53 ¶¶ 60, 448.) According to Plaintiffs, ExxonMobil's use of the

4

"wrong" learning curve assumptions led to three categories of false or misleading statements:

- *Production Goal Statements.* ExxonMobil forecast it would produce one million barrels of oil-equivalent per day by as early as 2024 in the Permian. (*E.g.*, Dkt. 53 ¶¶ 351, 359, 363, 370, 378.) Plaintiffs alleged that these predictions were inflated because the forecasts incorporated the learning curve assumptions. (*E.g.*, Dkt. 53 ¶ 352.)

- *Proved Reserves.* Plaintiffs alleged that the "false drilling assumptions" were incorporated into ExxonMobil's calculation of proved reserves. (Dkt. 53 ¶¶ 341-43.) Most importantly, they claimed that ExxonMobil's 2019 10-K overstated its "total proved reserves" – that is, the Company's worldwide proved reserves. (Dkt. 53 ¶¶ 419-20.)

- *Resource Base.* ExxonMobil had stated several times that its "resource base" in the Permian was roughly 9 to 10 billion oil equivalent barrels. (*See* Dkt. 53 ¶¶ 55, 90, 145.) The resource base includes proved reserves "plus other discovered resources that are expected to be ultimately recovered." (Dkt. 53 ¶ 46.) Plaintiffs contended that if the proved reserves were inflated, then the resource base was necessarily inflated as well. (*E.g.*, Dkt. 53 ¶¶ 358, 366.)

## II. The Court dismissed most of Plaintiffs' claims for failure to plead with sufficient particularity and failure to plead scienter.

### A. On September 29, 2022, the Court dismissed the First Amended Complaint in its entirety.

Plaintiffs incorrectly imply that the Court dismissed the Amended Complaint solely based on scienter. (Motion at 3.) In fact, the Court held that most of the Production Goal Statements were protected by the PSLRA's safe harbor as a matter of law. (Dkt. 88 at 24-27.) That safe harbor protects forward-looking statements that are (1) identified as such and accompanied by meaningful cautionary statements, or (2) made without actual knowledge that they were false and misleading. (Dkt. 88 at 21.) As the Court explained, "[t]he safe harbor provision is 'disjunctive'; it may apply even when a plaintiff adequately alleges that the speaker had such knowledge if meaningful cautionary language was provided, and it also may apply even without that language if the plaintiff fails to allege facts sufficient to satisfy the second prong." (Dkt. 88 at 21.) The Court concluded that "ExxonMobil's cautionary language is adequate and that Plaintiffs had "not

5

adequately alleged the actual knowledge required to evade the safe harbor." (Dkt. 88 at 24.) The Court also evaluated the Production Goal Statements to determine whether they were "mixed statements" that included references to the present. (Dkt. 88 at 24.) It held that most of the statements were forward looking and thus fell within the safe harbor. (Dkt. 88 at 25-27.)

Finally, the Court devoted 17 pages of its opinion to scienter and dismissed the Section 10(b) claims against Darren Woods and Liam Mallon because Plaintiffs failed to plead scienter as to any defendant, including specifically Woods and Mallon. (Dkt. 88 at 4-20, 37-38.)

> **B.** **On August 24, 2023, the Court dismissed most of the Second Amended Complaint with prejudice.**

Plaintiffs' Second Amended Complaint ("SAC") named ExxonMobil and three individual defendants: Woods, Mallon, and Melissa Bond. Despite the amendment – and despite the Court's dismissal of claims based on the Production Goal Statements – the foundation of Plaintiffs' claims remained that ExxonMobil had adopted impossible learning curve assumptions that led to the same three categories of allegedly false and misleading statements (Production Goal Statements, Proved Reserves, and Resource Base). (*See* Dkt. 92 ¶¶ 1-34.)

The Court dismissed most of the SAC in a lengthy opinion but allowed a "scheme liability" claim against Bond and ExxonMobil to survive as well as control person claims against Woods and Mallon that were derivative of the scheme liability claim. (Dkt. 112.) The Court again held that Plaintiffs had failed to plead scienter against either Woods or Mallon, and so it dismissed the Section 10(b) claims against them – including specifically the claims arising from the Production Goal Statements.[3] (Dkt. 112 at 12-22.) "Because Plaintiffs . . . had three opportunities to plead their claims," the Court dismissed those claims with prejudice. (Dkt. 112 at 22.)

---

[3]    Because Plaintiffs had not adequately pleaded scienter, the Court did not revisit the safe harbor conclusions in its order dismissing the Amended Complaint. (Dkt. 112 at 12 n.3; 16-17 n.5.)

6

By eliminating some of the claims, the Court's Order effectively narrowed the potential

class period by a year: from March 7, 2018 – January 15, 2021 to March 5, 2019 – January 15,

2021. (*Compare* Dkt. 92 at 8 *to* Dkt. 116 at 4.)[4]  Between August 24, 2023 and September 13,

2024, Plaintiffs did not seek reconsideration of the Court's Order.

**III.    Unable to connect their alleged internal "scheme" to any statement to investors, Plaintiffs attempted to reframe the dismissed Section 10(b) claims based on ExxonMobil's Production Goals as part of the "scheme liability" claim.**

Despite the Court's dismissal of the Section 10(b) claims against Woods and Mallon,

Plaintiffs behaved as though the Production Goal Statements remained in the case.  In the Joint

Case Management Statement and Rule 26 Report filed after the Court's motion to dismiss Order,

Plaintiffs framed their case as follows:

> Defendant Bond knowingly used false data to exaggerate drilling output and artificially inflate the Delaware Basin development plan in order to "ensure conformity" with Defendant Woods' statement to investors that Exxon would achieve 1 million barrels per day by 2024 in the Permian, and that she did so knowing that the false information was being reported to investors in Defendants' statements about the production goal, Exxon's Permian reserves, and its reserves reporting process.

(Dkt. 116 at 13.)

Plaintiffs reiterated this theory in their Memorandum of Law in Support of their Motion

for Class Certification.  (App. 8.)[5]  They asserted that Bond "dictated to her team to use overly

aggressive 'learning curve' drilling assumptions" in ExxonMobil's development plan "to

substantiate not only its production goal but also Exxon's public proved reserve and resource base

calculation." (*Id.*)

---

[4]    The SAC (Dkt. 92) had alleged the broader class.  In the Joint Case Management Statement and Rule 26 Report (Dkt. 116), Plaintiffs used the narrower class.

[5]    Pursuant to the Court's Scheduling Order, Plaintiffs served this brief on Defendants but did not file it with the Court.  (*See* Dkt. 122 at 1.)

**IV.    During class certification discovery, Plaintiffs pressed for – and received – substantial merits discovery, including discovery on ExxonMobil's use of the learning curve assumptions.**

In the Rule 26(f) Report, Plaintiffs asserted that at the class certification stage, they needed "discovery relevant to any analysis of the price impact of all alleged misstatements and omissions, the materiality of such misstatements and omissions, and the manner in which the scheme affected the public statements," including "discovery concerning the impact of false 'learning curve' drilling assumptions that were incorporated into statements to investors." (Dkt. 116 at 11.) In other words, they contended that they needed to see if their "plausible" allegations were supported by actual facts.

On December 11, 2023, the Court entered the Class Certification Scheduling Order (the "Scheduling Order"). (Dkt. 122.) The Scheduling Order set a discovery cutoff of April 28, 2024 (*i.e.,* 60 days before the June 27, 2024 Submission Date). (Dkt. 122 ¶¶ 1, 4(e).) It also established February 9, 2024 – 79 days before discovery closed – as the deadline to seek leave to amend pleadings under Rule 15(a) and cautioned the parties that "[a]ny motion for leave to amend pleadings after that date must show good cause pursuant to Rule 16(b)." (Dkt. 122 ¶ 2.) Plaintiffs did not object or seek reconsideration of the Scheduling Order.

During two discovery disputes last spring, Plaintiffs insisted that they needed merits discovery regarding ExxonMobil's learning curves to prosecute their motion for class certification. (Dkt. 127 at 5-8, 19-22; Dkt. 147 at 6.) In February, Plaintiffs requested documents concerning Defendants' alleged corrective disclosures and misleading statements and omissions, related stock price movements, and:

> the procedures for, and internal dialogue about, the development planning process and drilling assumptions used in any valuations of Exxon's Delaware or Permian Basin assets, as well as how such information affects or is incorporated into Exxon's public statements. Such Requests are specifically tailored to demonstrating the very connection Defendants assert does not exist between the

8

alleged scheme and Exxon's false statements.
(Dkt. 127 at 13-14.)

When Defendants objected that these were merits discovery requests and not class certification discovery, Plaintiffs argued that they needed merits discovery to meet their burden to show investors somehow relied on the alleged internal "scheme." (Dkt. 127 at 6-7.) The Court granted Plaintiffs' motion to compel. (Dkt. 133.)

During the second discovery dispute, Defendants moved for a protective order prohibiting the production of documents from Woods and Mallon in connection with class certification discovery. (Dkt. 140 at 4.) Again, Plaintiffs contended that they needed communications with Woods and Mallon because they were "highly relevant to establishing the connection between Bond's internal conduct and ExxonMobil's public disclosures" concerning the Production Goal Statements, proved reserves, and resource base. (Dkt. 147 at 5.) In other words, Plaintiffs put the factual basis for their learning curve allegations directly at issue. The Court ultimately ordered Defendants to produce the requested materials, which they did. (Dkt. 139 at 3; Dkt. 153 at 3-4.)

Defendants produced nearly 120,000 pages of documents between May 3 and August 16, eighty percent of which were produced by June 28:

| Production Volume | Date | Number of Documents | Number of Pages |
|---|---|---|---|
| | | | |
| 1 | May 3, 2024 | 2,439 | 20,574 |
| 2 | May 24, 2024 | 8,256 | 36,934 |
| 3 | June 25, 2024 | 3,729 | 22,917 |
| 4 | June 28, 2024 | 1,972 | 14,924 |
| 5 | July 5, 2024 | 91 | 365 |
| 6 | August 16, 2024 | 5,941 | 24,266 |
| Total | | 22,428 | 119,980 |

The parties agreed to two extensions of the class certification schedule so they could complete discovery. (Dkt. 150, 154.) But Plaintiffs did not request, and the stipulations did not

9

contain, any extension of the expired deadline to amend pleadings.  (Dkt. 150, 154.)

## V.    Defendants' document production established that there was no factual basis for Plaintiffs' claims.

The nearly 120,000 documents produced to Plaintiffs were sufficient to establish a clear factual record on several key issues, including ExxonMobil's actual drilling performance in the relevant time period.  Contrary to the claims Plaintiffs have been pursuing before this Court for years now, the document production made plain to them that the learning curve assumptions were not only achievable, they were conservative.

### A.    ExxonMobil beat the supposedly "impossible" learning curve assumptions in 2020.

Directly refuting Plaintiffs' core theory, ExxonMobil's actual drilling performance in the Permian Basin met or exceeded the learning curve assumptions in the 2019 Plan that Plaintiffs (and former employee Burch) claim – with no factual support – were "impossible."  (Dkt. 92 ¶ 153.)  The 2019 Plan's learning curve assumptions are an estimate of how quickly ExxonMobil anticipated it would be able to reduce the time it would take to drill wells in 2020 and beyond. (*See* Dkt. 92 ¶ 128.)  Neither Burch nor Gulden (on whom Plaintiffs rely) worked in drilling or were involved in estimating how long it would take to drill wells.  They were both "computational scientists."  (Dkt. 92 ¶¶ 117, 118.)  Burch helped with "mathematical modeling."  (*Id.* ¶¶ 19, 118.) Similarly, Gulden helped with "analytic technical contributions."  (*Id.* ¶ 117.)  In short, they helped run the models used by the planning team – and the learning curve assumptions were just one input in those models provided by the drilling experts for the "mathematical modeling."

10





Plaintiffs' – and Burch's – untested claim that Bond supposedly used false and unachievable learning curve assumptions to bolster this plan cannot be squared with these results, which Plaintiffs neglect to disclose to the Court in their Motion.

**B.    Because Bond did not create the learning curve assumptions, she could not have participated in the alleged "scheme."**

The 2020 results are thoroughly documented in the discovery Plaintiffs have had for months. And they refute Plaintiffs' claim that Bond – or anyone else – created false learning curve

12

assumptions out of whole cloth.  They also refute Plaintiffs' claim that ***Bond*** mandated the use of the learning curve assumptions.  (*See, e.g.*, Dkt. 92 ¶¶ 128-32.)  ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████  ██████████  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

        ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████  Defendants produced most of these documents long before Plaintiffs sought leave to amend.  Indeed, by July 5, 2024, Defendants had produced documents showing that ExxonMobil was handily beating the 2019 Plan's learning curve assumptions.  (App. 2-4.)  Plaintiffs have known for months that their claims were meritless.

> **C.    ExxonMobil's production issues in 2020 resulted from the pandemic and the Russia-Saudi price war – not the failure to beat the learning curve assumptions.**

The documents produced to Plaintiffs similarly make clear that the Production Goal Statements were not false or misleading.  Plaintiffs' Proposed Amendment does not identify a

single document reflecting that Woods or Mallon had reason to believe that the learning curve assumptions were unreasonable – much less impossible.   Instead, Plaintiffs repeatedly cite documents that were created during the months in which the 2019 Plan was still being developed.

While ExxonMobil ultimately did not meet its Permian Basin production goals in 2020, it was for reasons entirely unrelated to whether it met any drilling learning curve assumptions. During the first quarter of 2020, ExxonMobil recognized that "impacts from [COVID-19] rippled

14

through the global economy, significantly reducing demand." (App. 290.) ███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████    Three days earlier, the World Health Organization declared COVID-19 a pandemic.

(App. 312-13.)  Compounding matters, Russia and Saudi Arabia were also engaged in an oil price

war during this time, with both sides flooding the market.  (App. 314.)  As anyone living in Texas

knows,  the  result  –  substantial  oversupply  and  demand  destruction  –  was  an  unprecedented

collapse in oil prices.  Indeed, by late April 2020, crude oil prices actually turned negative:



(App. 399.)

Against this backdrop, Darren Woods explained during ExxonMobil's quarterly earnings

call on May 1, 2020:

> As you well know, today, we face two acute challenges: a global threat to public
> health and a significant global economic downturn, resulting in a commodity price
> collapse.  What started with an oversupply situation was made more extreme by a
> sudden and unprecedented drop in energy demand as the economy shut down to
> stop the spread of the virus . . . . I have to say, we've never seen anything like what

---

6    XTO Energy is a subsidiary of ExxonMobil.

15

the world is experiencing today."

(App. 292.)

In light of these acute challenges, ExxonMobil was "aggressively reducing spend in today's depressed markets," including by "ramp[ing] rigs down by about 75% in the Permian" and shutting in (*i.e.*, pausing production from) some Permian wells.  (App. 292, 295, 306.)   Plaintiffs inexplicably allege this earnings call was somehow a "corrective disclosure." (Dkt. 92 ¶ 249.)  But it was no such thing.  At no point on the earnings call did ExxonMobil discuss the learning curves or its drilling speed in the Permian – the focus was squarely on steps the Company was taking in light of the global pandemic and the Saudi-Russia price war, two events that are conspicuously absent from Plaintiffs' alternate universe.

**VI.**   **In its August 12 Order, the Court confirmed that its August 2023 Order had "severed the connection" between the alleged scheme and Woods' and Mallon's Production Goal Statements.**

Defendants' Motion for Judgment on the Pleadings argued that because the Court had "sever[ed] the link between Bond's conduct and Woods and Mallon," the SAC "fails to plead the necessary connection between her alleged conduct and the securities markets" to state a scheme "in connection with the purchase or sale of securities."  (Dkt. 123 at 7.)  In response, Plaintiffs repeated their mantra that the alleged scheme (1) "was orchestrated to provide support" for the prior Production Goal Statements, and (2) "caused Exxon to report artificially inflated proved reserves and resource base figures."  (Dkt. 125 at 6.)

The Court denied Defendants' motion but squarely rejected Plaintiffs' theory that the alleged scheme included the Production Goal Statements.  (Dkt. 157 at 8-9.)  Rather, the Court confirmed that in its Order one year ago it had "severed the connection between Bond's alleged scheme and the public statements made by Woods or Mallon regarding ExxonMobil's prospects for oil production." (Dkt. 157 at 8-9 (*citing* Dkt. 112 at 12-18.))  Accordingly, the Court confirmed

again that "Plaintiffs cannot rely on public statement[s] made by Woods or Mallon to plead that Bond's alleged scheme impacted the purchase or sale of any security." (Dkt. 157 at 9.)

The Court's August 12 Order changed nothing – it simply reaffirmed the Court's prior holding that Plaintiffs are left with one theory: that the learning curve assumptions were somehow incorporated into ExxonMobil's proved reserves and resource base. (Dkt. 157 at 9-10.) Plaintiffs have alleged that (1) the forward-looking learning curve assumptions were incorporated into the proved reserves, and (2) because the proved reserves were inflated, then the resource base – which included the proved reserves – was also inflated. (Dkt. 92 ¶¶ 66, 319.) But as Plaintiffs admit, proved reserves are calculated "under *existing* economic conditions, operating methods and government regulations." (Dkt. 92 ¶ 49 (emphasis added).) Defendants have repeatedly emphasized that calculating proved reserves is based on historical information rather than projected improvements – and Plaintiffs have repeatedly resisted motions to dismiss by saying that's not what they alleged. (*See, e.g.,* Dkt. 99 at 14; Dkt. 103 at 32; Dkt. 123 at 6-7; Dkt. 125 at 17-18.) Defendants have now produced the documents that Plaintiffs insisted they needed on this issue – and Plaintiffs do not point to a single document supporting their conjecture that the learning curve assumptions were included in the proved reserves or resource base calculation.

**VII.    Plaintiffs waited until "class certification discovery" was nearly closed to disclose that they intended to seek leave to amend their complaint.**

The combination of the class certification discovery and the Court's August 12 Order confirming that they could not ignore the Court's prior dismissal of the Production Goal claims put Plaintiffs in an untenable position. They had built their case around the premise that the connection between the alleged "scheme" by Bond and statements to investors was the Production Goal Statements, proved reserves, and resource base. But discovery had disproved that theory. It also refuted the claim that Bond created or orchestrated the learning curve assumptions provided

by the Drilling Team.   More fundamentally, discovery had established that ExxonMobil had exceeded the allegedly "impossible" learning curve assumptions – which meant that the factual underpinnings of Plaintiffs' entire case were wrong.

The parties had agreed to take depositions between August 20 and September 20, 2024. Minutes before the first deposition – that of ExxonMobil employee Ozgur Ozen – was scheduled to begin, Plaintiffs notified Defendants that they intended to file a motion to amend their complaint. (App. 321.)  The parties agreed to defer any further discovery. (*Id.*)  Plaintiffs did not disclose that they would attempt to reopen the Section 10(b) claims against Woods and Mallon.

Plaintiffs' Motion claims that they are seeking to "clarify" the August 12 Order's holding that (1) the Court had "severed the connection" between the alleged scheme and the Production Goal Statements and (2) Plaintiffs could not rely on public statements by Woods or Mallon to plead that the alleged scheme impacted the purchase or sale of any security. (Motion at 1, 12.)  By "clarify," they mean relitigate.  This Court has already provided the perfect clarity – twice.  The Production Goal Statements cannot be used as the link between the alleged scheme and investors. Notably, despite having received substantial discovery regarding proved reserves and the resource base, Plaintiffs' Motion does not propose to add a single new allegation regarding those theories. And instead of merely seeking to amend their complaint, Plaintiffs also now ask this Court to reconsider its August 24, 2023 Order dismissing the 10(b) claims against Woods and Mallon with prejudice.

The problem Plaintiffs face is that they are now in possession of a wealth of evidence that refutes their claims.  And while they were free to premise an initial complaint and two prior amendments on confidential witnesses and conjecture because they had no other evidence, their duty of candor to the Court precludes them from ignoring evidence they now have and concealing

18

it from the Court in their effort to get a fourth bite at the pleading apple. *See Dondi Props. Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 287 (N.D. Tex. 1988) (en banc).

## ARGUMENT

**I.      Plaintiffs have proffered no reason for the Court to reconsider its prior orders and revive claims it has twice dismissed.**

### A.      There is no "newly discovered evidence" that warrants reconsideration.

This Court analyzes motions for reconsideration of interlocutory orders under Rule 54(b). *Trammel Crow Residential Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2014 WL 12577396, at *2 (N.D. Tex. Sept. 30, 2014) (Godbey, J.). "In deciding motions for reconsideration [under Rule 54(b)], courts in this district often consider factors similar to those they consider when deciding motions under Rules 59 and 60." *Id.* In turn, Rule 59 "allows a court to alter or amend a judgment to (1) accommodate an intervening change in controlling law, (2) account for newly discovered evidence, or (3) correct a manifest error of law or fact." *Certain Underwriters at Lloyd's of London v. Alvarado*, 2021 WL 6773173, at *1 (N.D. Tex. July 12, 2021) (Godbey J.) In deciding a motion for reconsideration, the Court also considers "whether the movant is attempting to rehash its previously made arguments or is attempting to raise an argument for the first time without justification." *Trammel Crow*, 2014 WL 12577396, at *2 (citation omitted).

Plaintiffs fail to identify any newly discovered evidence that warrants reconsideration of the Court's prior two orders concluding that Plaintiffs had not adequately pleaded Section 10(b) claims against Woods and Mallon. (Motion at 21.) Relying on a case from the Western District of Texas, Plaintiffs urge this Court to apply a "flexible" standard when considering their Motion. (Motion at 21 (citing *Tomax AS. v Turbo Drill Indus., Inc.*, 2023 WL 3171744, at *3 (W.D. Tex. Apr. 6, 2023) (Albright, J.) But this Court has held – and *Tomax* recognized – that "a district court's broad discretion under Rule 54(b) 'must be exercised sparingly in order to forestall the

19

perpetual reexamination of orders and the resulting burdens and delays.'" *Turk v. Pershing LLC*, 2023 WL 11926441, at *1 (N.D. Tex. May 16, 2023) (Godbey, J.) (citation omitted) (quoted in *Tomax*, 2023 WL 3171744, at *3); *see also Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (holding that reconsideration under Rule 59(e) "is an extraordinary remedy that should be used sparingly"). The Court should not exercise its discretion where, as here, Plaintiffs rely on cherry picked documents and out-of-context statements and where a well-developed discovery record demonstrates that Plaintiffs' claims are destined to fail.

**B. Reviving claims dismissed with prejudice after Plaintiffs failed to plead scienter would allow Plaintiffs to end-run the protections of the PSLRA.**

Plaintiffs should not be given yet another chance to plead Section 10(b) claims against Woods and Mallon. When Plaintiffs sought merits discovery during the class certification phase, they represented to this Court that the discovery was "narrowly tailored to the issues their class certification motion presents" and "central to the class certification motion." (Dkt. 127 at 5; Dkt. 147 at 2.) In the discovery disputes this spring, Defendants warned that Plaintiffs were seeking merits discovery through the guise of class certification discovery. (Dkt. 130 at 4; Dkt 140 at 5.) Plaintiffs are now using the merits discovery that they obtained under the guise of class certification discovery to try yet again to fix their pleading failures. But "motions to reconsider 'are not the proper vehicle for rehashing old arguments.'" *Salt and Light Energy Equip., LLC, v. Origin Bancorp, Inc.*, 2024 WL 4185613, at *1 (N.D. Tex. Aug. 12, 2024) (Godbey, J.) (citation omitted).

The Court has already hashed and rehashed Plaintiffs' Section 10(b) claims against Woods and Mallon in two earlier rounds of motion to dismiss briefing. Granting this motion – and allowing Plaintiffs to file yet another complaint – will lead to yet another round of 12(b)(6) briefing. That alone justifies denying reconsideration. As Judge Fitzwater has explained:

20

A motion for reconsideration is not ordinarily a mechanism for litigants to plug holes in their arguments after the court has informed them that they are deficient. There are often significant costs – to the justice system and to the litigants themselves – involved in judicial decisionmaking. As evidenced by the length and breadth of the court's memorandum opinion and order in this case, it devoted extensive effort to rendering a decision involving multiple plaintiffs asserting multiple claims. Judges often commit substantial time and resources to deciding motions, particularly summary judgment motions. It is therefore incumbent on the litigants to adequately present their arguments and evidence before the court first decides a motion, not after the fact, when the court has identified the defects in their cases.

*Arrieta v. Yellow Transp., Inc.*, 2009 WL 129731, at *2 (N.D. Tex. Jan. 20, 2009).

Plaintiffs also suggest that the Court dismissed claims against Woods and Mallon "based on a technicality." (Motion at 21.) But their dismissal was not based on a technicality – the Court applied the PSLRA's pleading requirements to conclude that Plaintiffs had not pleaded scienter. (Dkt. 112 at 12-18.) The PSLRA imposes "exacting pleading requirements," among other measures, as a way to check abusive strike suits. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007). Plaintiffs failed to satisfy the PSLRA – twice. Allowing Plaintiffs to rely on class certification discovery to replead their claims now would subvert the PSLRA's policy objectives. *See In re Bisys Sec. Litig.*, 496 F. Supp. 2d 384, 386 (S.D.N.Y. 2007) (denying PSLRA plaintiffs' motion for leave to amend their complaint based on materials acquired during discovery to revive a Section 10(b) claim that had been dismissed with prejudice); *In re: Petrobras Sec. Litig.*, 2016 WL 3144395, at *1 (S.D.N.Y. May 5, 2016) (same). As *Petrobras* explained:

The Second Circuit has explained that "Congress . . . enacted the PSLRA to filter out potential strike suits. Instrumental to achieving this objective was imposition of more stringent pleading requirements and mandatory discovery stays for securities fraud class actions filed in federal court." Thus, "the PSLRA effectively shifted the burden to plaintiffs to acquire particularized knowledge of a party's scienter prior to obtaining discovery." Accordingly, granting plaintiffs' request would amount to an end run around the PSLRA. Plaintiffs would receive the benefits of discovery without adequately pleading scienter before discovery began. The PSLRA does not allow this arrangement, and so, again, the Court must deny the plaintiffs' request.

21

2016 WL 3144395, at *1 (citations omitted).

Similarly, the court in *Bisys* held that allowing amendment in these circumstances "would defeat one of the central aims" of the PSLRA, which "effectively shifted the burden to plaintiffs to acquire particularized knowledge of a party's *scienter **prior to obtaining discovery**.*"  496 F. Supp. 2d at 387 (emphasis added).  *Bisys* concluded that "[i]t would wholly defeat [the PSLRA's] policy to allow plaintiffs who failed as to a given defendant to sustain their pleading burden at the outset of the case to wait until all discovery in the rest of the case was completed and then add that defendant back into the case." *Id.*  Accordingly, Plaintiffs "are in no position to now demand a second bite at the apple." *Id.*; *see also Daniel v. Ocwen Loan Servicing, LLC*, 2020 WL 13430479, at *3 (N.D. Tex. Jan. 8, 2020) (denying motion to reconsider order granting motion to dismiss).

**C.      Reinstating the Section 10(b) claims would be futile because Plaintiffs have evidence showing their claims have no factual basis.**

Under Rule 59(e), a motion to reconsider based upon newly discovered evidence will be granted only if "(1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 696-97 (5th Cir. 2003); *see also Congious by & through Hammond v. Shaw*, 2024 WL 3434571, at *5 (N.D. Tex. July 16, 2024) (holding that under Rule 60, the new evidence must be "material, controlling, or would have produced a different result." (citation omitted)).

In determining whether the "facts discovered" in class certification discovery "would probably change the outcome," the Court can properly consider extrinsic evidence. *See Glenn v. Imperial Palace of Miss., LLC*, 2013 WL 3712429, at *3 (S.D. Miss. July 12, 2013) (considering extrinsic evidence on motion for reconsideration of a Rule 12(b)(6) motion to dismiss).  Indeed,

22

courts routinely consider extrinsic evidence when resolving motions for reconsideration. *See, e.g.,* *iiiTec Ltd. v. Weatherford Tech. Holdings, LLC*, 2022 WL 138030, at \*9 (S.D. Tex. Jan. 14, 2022) ("Courts considering motions to reconsider are duty-bound to 'strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of *all the facts.*'" (emphasis added) (citing *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993))); *see also Grand Famous Shipping Ltd. v. Port of Houston Auth.*, 572 F. Supp. 3d 307, 316 (S.D. Tex. 2021) (same); *Hixson v. Houston Indep. Sch. Dist.*, 2011 WL 4860004, at \*1 (S.D. Tex. Oct. 13, 2011) (same); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2012 WL 730457, at \*8 (E.D. La. Mar. 6, 2012) (considering evidence presented in opposition to plaintiff's motion for reconsideration).

In particular, courts will reconsider motions to dismiss when, as here, they are presented with evidence that the complaint's allegations were incorrect. *See, e.g.*, *Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1223 (N.D. Ga. 2012); *City of Livonia Emp' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 177-78 (N.D. Ill. 2014). As *Belmont* explained:

> In the securities litigation context, where there is a higher scienter pleading standard under the PSLRA, a district court may reconsider an order denying a motion to dismiss, even where the defendant relies upon extrinsic evidence outside the pleadings, when a manifest factual error was made by the court based on 'fraud [by the plaintiff], carelessness by [plaintiff's] counsel [in making its factual allegations], or by the court's own misperception of the facts . . . especially [] where the plaintiff does not, and cannot, dispute the existence of the 'false information concerning [a confidential witness'] position and his personal knowledge' upon which the district court erroneously relied when ruling on the original motion to dismiss.

*Belmont*, 896 F. Supp. 2d at 1223 (alteration in original) (citations omitted) (collecting authorities). In *Belmont*, one of the plaintiffs' key witnesses submitted a declaration denying the statements attributed to him, and the court relied on that extrinsic evidence in reconsidering the motion to dismiss and dismissing the lawsuit. *See id.* at 1228; *see also City of Livonia*, 306 F.R.D. at 177-

23

78 (similar).  By that same logic, this Court can consider extrinsic evidence *rebutting* Plaintiffs' allegations in deciding whether to allow the Proposed Amendment.

The discovery record that Plaintiffs told the Court they needed established that there is no basis for their claims.  Defendants should not be forced to incur the time and expense of filing yet another Motion to Dismiss a fourth complaint.  And reviving the Section 10(b) claims against Woods and Mallon will not change the ultimate outcome of those claims for multiple reasons.

First, Plaintiffs' lawsuit depends on showing that the learning curve assumptions were unreasonable – but the facts show that ExxonMobil exceeded those assumptions. *See* SOF §V(A), *supra*.  Indeed, Plaintiffs allege that one of the key corrective disclosures was the *Wall Street Journal*'s disclosure of the SEC's investigation into the drilling assumptions in the Permian Basin. (Dkt. 92 ¶¶ 252, 253.)  But on January 20, 2022, the Securities and Exchange Committee concluded its investigation, advising ExxonMobil that the staff did not intend to recommend an enforcement action against ExxonMobil.  (App. 332.)

Second, Plaintiffs must show loss causation, *i.e.*, "(1) that the negative 'truthful' information causing the decrease in price [was] related to an allegedly false, non-confirmatory positive statement made earlier and (2) that it is more probable than not that it was this negative statement, and not other unrelated negative statements, that caused a significant amount of the decline." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 228 (5th Cir. 2009) (alteration in original) (citation omitted); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 256 n.19 (5th Cir. 2009) (same).  Under Plaintiffs' liability theory, they must show that ExxonMobil missed its production goals or overstated its proved reserves or resource base because of the "inflated" learning curve assumptions.  But because ExxonMobil exceeded those assumptions, it necessarily follows that ExxonMobil's so-called "corrective disclosures" could not

24

have been based on ExxonMobil failing to meet its learning curves assumptions – and thus, Plaintiffs cannot demonstrate loss causation.

Third, although Plaintiffs insisted they needed discovery for class certification briefing to show that learning curve assumptions were used in the estimation of proved reserves or the resource base, they point to nothing new in this latest complaint. *See* SOF §V, *supra*.

████████████████████████████████████████████████████████████

████████████████████████████████████  *See* SOF §V(B), *supra*.

In addition, the statute of repose bars many of Plaintiffs' Section 10(b) claims. Plaintiffs must bring Section 10(b) claims within "5 years after such violation." 28 U.S.C. §1658(b)(2). For Section 10(b) claims, the statute of repose "begins to run from the date of the misrepresentation or omission." *Khoury v. Thota*, 2020 WL 6494986, at *4 (S.D. Tex. Oct. 1, 2020), *aff'd*, 2021 WL 3919248 (5th Cir. Sept. 1, 2021). The Court has already dismissed the Section 10(b) claims with prejudice. Accordingly, if the Court allows Plaintiffs to reassert their Section 10(b) claims, the statute of repose will bar the claims based on alleged false or misleading statements contained in paragraphs 423-64 and 481-84 of the Proposed Amendment, which were made over five years before Plaintiffs filed the Motion. *See Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017) (repose calculated from date plaintiff seeks leave to amend).

Plaintiffs' remaining authority does not change the analysis. (Motion at 20-22.) Three cases involved reconsidering decisions based on errors of law – not fact. *See Griffith v. City of New Orleans*, 2013 WL 2555787, at *2, *6 (E.D. La. June 10, 2013) (whether certain defendants were employers); *Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 420-21 (5th Cir. 2013) (when limitations ran); *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336, 337-38 (5th Cir. 2017) (district court applied wrong legal standard). Plaintiffs do not argue that the August 24, 2023 Order

25

included any error of law. In *Upton*, the court held that the plaintiff should have "at least *one* chance to amend" and that the proposed amendment might not be futile. *Upton v. Vicknair*, 2023 WL 2043333, at *2 (E.D. La. Feb. 16, 2023) (citation omitted) (emphasis added). Plaintiffs have already had three chances to amend, and the Proposed Amendment will be futile.

Plaintiffs have already wasted enough of this Court's and Defendants' resources. Because reviving the Section 10(b) claims against Woods and Mallon will not change the outcome of this litigation, the Court should deny the motion for reconsideration. *See Infusion Res.*, 351 F.3d at 697 (affirming district court's denial of motion to reconsider summary judgment where new evidence would not have changed the outcome).

**D.      Plaintiffs were not diligent in seeking reconsideration: the Court dismissed claims based on the Production Goal Statements over one year ago and Plaintiffs knew much of the alleged "new" information for months.**

Plaintiffs waited until class certification fact discovery was almost complete to seek reconsideration of the Court's August 24, 2023 Order. They offer two justifications for that delay. First, they contend that the Court's August 12 Order prompted their Motion. (Motion at 2.) But there was nothing new in that Order. As the Court stated, its August 24, 2023 Order on Defendants' motion to dismiss had already "severed the connection" between the alleged scheme and the Production Goal Statements. (Dkt. 157 at 8-9 (*citing* Dkt. 112 at 12-18).) Plaintiffs waited over a year to try to seek reconsideration of that Order.

Second, Plaintiffs claim that "[a]ll of the evidence" that they have added to the Proposed Amendment was not available until ExxonMobil produced it in discovery. (Motion at 21.) But they have had much of this "evidence" – or access to it – for a long time. Some of their new allegations are based on their recent interview with former employee Damian Burch. (*E.g.*, P. App. 233 ¶¶ 169, 246 ¶ 204; Motion at 12.) They interviewed Burch *before* filing the SAC and could have asked him the same questions then but apparently chose not to. (Dkt. 92 at 9.) Many

other allegations are based on ExxonMobil's public disclosures – *all of* which were available when the SAC was filed. (*E.g.*, P. App. 233 ¶170, 236 ¶ 179, 256 ¶ 236, 328-30 ¶¶ 481-86.) Plaintiffs could have included these allegations in the SAC. *See Johnson-Williams v. Citimortgage, Inc.*, 2016 WL 853079, at \*2 (N.D. Tex. Feb. 11, 2016) (denying plaintiff's motion for reconsideration of dismissal of their claims with prejudice where plaintiff could not demonstrate that a document was not previously available to her, or could not have been obtained earlier with reasonable diligence).

The vast majority of the remaining new proposed allegations are based on documents that ExxonMobil produced between May 6 and July 1, 2024. (*See* App. 4-6.) Only five of the 84 new paragraphs cite documents produced after July 1, 2024. (*See id.*) In short, Plaintiffs could have moved for reconsideration long before September 13, 2024. They apparently decided instead to get as much additional discovery as they could in the guise of class certification discovery – perhaps hoping the Court would reverse itself in the order on the Motion for Judgment on the Pleadings – to try to patch the holes in their Complaint. But the Fifth Circuit "has held that parties should not be permitted to present claims and defenses after adverse rulings." *Randall v. Reeves*, 189 F.3d 466, 466 (5th Cir. 1999) (citing *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 612 (5th Cir. 1993)); *see also DeWolff Boberg & Assocs., Inc. v. Pethick*, 2023 WL 4937406, at \*3, \*5 (N.D. Tex. June 30, 2023) (denying motion for leave to amend because, among other reasons, the plaintiff waited until after an adverse ruling on a motion to dismiss before seeking leave to amend).

## II. Plaintiffs have not demonstrated good cause to allow an amendment seven months after the deadline.

To justify their motion for leave, Plaintiffs must establish that there is "good cause" under Rule 16(b) to amend the Scheduling Order's deadline to seek leave to amend pleadings, and they

27

must demonstrate that leave is appropriate under Rule 15(a). *See T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 418 (5th Cir. 2021). Plaintiffs fail to meet either standard.

The parties agree on the Rule 16(b) standards that the Court applies in deciding whether good cause exists: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *See id.* (Motion at 11.)

Similarly, courts consider five factors in deciding whether to grant leave under Rule 15(c): "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962).

None of these factors justifies allowing Plaintiffs to amend their complaint yet again.

**A.    Plaintiffs delayed seeking leave to amend for months – and used the delay to impose substantial discovery costs on Defendants.**

Plaintiffs initially proposed the same deadline for fact discovery and motions for leave to amend pleadings. (Dkt. 112 at 18.) But when the Court set a pleadings deadline before the discovery deadline, Plaintiffs did not object. (*See id.*) And when Plaintiffs stipulated on April 24 and June 11 that virtually every other deadline in the Scheduling Order should be extended, they did not seek to extend the pleadings deadline. (*See* Dkt. 150, 154.) As noted above, Plaintiffs had access to much of the information they now rely on – including many of ExxonMobil's internal documents – by June 11, 2024. (App. 4-6; Argument § I(D), *supra*.) Even then, they didn't seek leave to amend. Instead, they waited until the parties were sitting in a conference room before a deposition began to announce that they would be seeking leave to amend. This eleventh-hour request was not diligent. *See Squyres v. Heico Cos.*, 782 F.3d 224, 238-29 (5th Cir. 2015)

28

(affirming denial of motion for leave that was filed 8 months after the deadline); *Trammel Crow*, 2014 WL 12577396, at *2 (denying defendant's motion for leave to amend answer because defendant was not diligent in seeking to amend). This Court and others have held that similar delays showed a lack of diligence. *E.g., Trammel Crow*, 2014 WL 12577396, at *1 (one to two months); *Experexchange, Inc. v. Doculex, Inc.*, 2009 WL 3837275, at *29 (N.D. Cal. Nov. 16, 2009) (two months); *Sako v. Wells Fargo Bank, Nat'l Ass'n*, 2015 WL 5022326, at *2 (S.D. Cal. Aug. 24, 2015) (two months); *Harrison v. Forde*, 2022 WL 1572247, at *3 (S.D. Ala. May 18, 2022) (three months); *DeWolff Boberg & Assocs.*, 2023 WL 4937406, at *2 (three to four months).

## B. Plaintiffs do not need to amend their complaint to "conform" to the Court's August 12 Order.

Plaintiffs' claim that the proposed amended complaint is needed to "conform" the SAC to the Court's August 12, 2024 Order denying Defendants' Motion for Judgment on the Pleadings is nonsensical. The August 12 Order itself confirms that it changed nothing – the August *2023* Order had already severed any link between Plaintiffs' pleaded scheme and the Production Goal Statements. (Dkt. 157 at 8-9.) And Defendants had already identified that problem for Plaintiffs in both the proposed Scheduling Order (Dkt. 116 at 2-4) and in the Motion for Judgment on the Pleadings itself. Plaintiffs' claim that their Proposed Amendment would not be futile is equally meritless. Plaintiffs essentially argue that "new" evidence (1) connects the alleged scheme to the dismissed Production Goal Statements, and (2) shows that Woods and Mallon acted with scienter in making those statements. (Motion at 16-18.) But as explained above, the evidence demonstrates that there is no merit to Plaintiffs' liability theory.

Defendants recognize that courts normally apply a Rule 12(b)(6) standard when determining whether an amendment is futile. *See, e.g., Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). That standard does not apply, however, when a motion for summary

29

judgment is pending; in that situation, courts can consider extrinsic evidence in deciding whether to permit amendment. *See, e.g., Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("[E]ven if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact"); *Whittington v. Minn. Life Ins. Co.*, 2010 WL 11610313, at *5 (W.D. La. Aug. 27, 2010) (denying motion for leave because "defendant has adduced evidence sufficient to establish that the amendment would prove unavailing and futile").

The logic of those cases applies equally here. Plaintiffs filed their motion for class certification, sought broad merits-based discovery, and now rely on just some of that discovery to justify withdrawing the motion for class certification and seeking leave to amend their complaint. Having put the evidence they obtained in discovery in play to support their Motion, Plaintiffs cannot complain if Defendants' response to the Motion also relies on that same evidence. *See Lindsey v. Unitrin Auto & Home Ins. Co.*, 2010 WL 11640213, at *2 n.1 (E.D. Ky. Mar. 29, 2010) (relying on declaration establishing that plaintiffs could not establish numerosity in denying plaintiffs leave to amend their complaint to plead the Rule 23(a) prerequisites).

Moreover, the Fifth Circuit has held that in deciding motions to dismiss securities cases, the Court may consider "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (citation omitted); *see also Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*, 325 F. Supp. 3d 728, 747 n.4 (N.D. Tex. 2018) (same). Plaintiffs relied on the entirety of Defendants' production in crafting their Proposed Amendment. Accordingly, the Court can consider that entire record in deciding the motion for leave – and that record establishes that Plaintiffs' learning curve theory is affirmatively wrong. *See* SOF §V, *supra*. Defendants submit

30

that the Proposed Amendment would not survive a motion to dismiss, but the Court should not waste its resources or the Defendants' time and money on additional motion practice for claims that will ultimately fail.

Plaintiffs also contend that the Proposed Amendment "seeks to conform" to the August 12 Order by specifying which of the allegedly false and misleading statements were made by ExxonMobil. (Motion at 6-7, 13-16.) But all they are doing is taking public statements that they previously attributed to Woods or Mallon and attributing them to ExxonMobil instead. (*Compare* P. App. 317-20 ¶¶ 439-440, 442-443, 445, 451; 324 ¶ 466; 327 476 *to id.* 328-30 ¶¶ 480-86.) The Court's orders already address the circumstances in which a corporate agent's statements are attributable to the company. (Dkt. 157 at 13.) And the SAC already alleges that ExxonMobil is liable for all the allegedly false and misleading statements. (Dkt. 92 ¶ 436.) Plaintiffs are merely seeking to add more details on this issue in the hope of avoiding the effect of the Court's August 2023 Order. *See Celanese Corp. v. Clariant Corp.*, 2016 WL 865365, at *3 (N.D. Tex. Mar. 7, 2016) (denying plaintiff leave to file an amended complaint asserting new theories, "clarify its allegations," and making "clarifying changes" in light of court's prior order). Attempting to reassert claims that were dismissed does not "conform" to the Court's order. *See Bank of Am., N.A. as Tr. of Florence Thelma Hall Testamentary Tr. v. Devon Energy Prod. Co.*, 2018 WL 7916144, at *3 (W.D. Tex. Feb. 14, 2018) ("The Court does not consider reasserting causes of action the Court already dismissed as "conforming" the Complaint to the Court's ruling.").

Plaintiffs appear to be claiming that the Production Goal Statements should remain in the case regardless of whether they have pleaded scienter as to Woods or Mallon. (Motion at 7.) But this stands the doctrine of corporate scienter on its head. The Court has already held that ExxonMobil's scienter derives from the state of mind of the corporate official making, issuing, or

31

furnishing information or language for the statement. (Dkt. 112 at 22; Dkt. 157 at 13.)  And in its August 12 Order, the Court specifically confirmed that it had relied in part on Woods' and Mallon's lack of scienter to dismiss the Production Goal Statements in August 2023. (Dkt. 157 at 8-9.)  It held that Bond's scienter was relevant only to the public statements about the proved reserves and resource base. (Dkt. 157 at 13-14.)  If Woods and Mallon did not have scienter when they made the Production Goal Statements, then ExxonMobil did not have scienter.

### C.    The amendment will prejudice Defendants by denying them the PSLRA's protections, forcing them to waste additional resources defending meritless claims, and allowing Plaintiffs to use allegations developed in violation of this Court's Protective Order.

Granting leave will also prejudice Defendants in multiple ways.  First, the Court dismissed the Section 10(b) claims against Woods and Mallon because Plaintiffs failed to satisfy the PSLRA's pleading standards.  Allowing Plaintiffs to use discovery to reinstate those claims would deny them the PSLRA's protections. *See* Argument § I(B), *supra*.  These protections are not mere technicalities – they are established principles that are designed to protect defendants from meritless strike suits like this one. *See generally Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *In re: Petrobras Sec. Litig.*, 2016 WL 3144395, at *9 (S.D.N.Y. May 5, 2016); *In re Bisys Sec. Litig.*, 496 F. Supp. 2d 384, 386 (S.D.N.Y. 2007).

Second, the parties have already been through two rounds of motion to dismiss briefing, and Defendants have now spent over three years developing their defenses, including their opposition to Plaintiffs' motion for class certification.  During that time, Defendants have focused on defending a pure scheme liability claim.  Plaintiffs' Proposed Amendment would fundamentally alter the scope of this lawsuit.  Allowing an amendment now – and reopening both briefing stages – would prejudice Defendants. *See Squyres*, 782 F.3d at 238-39 (holding that amendment that would "allow another round of dispositive motions" and impose additional discovery costs was

32

prejudicial). And Plaintiffs would no doubt expect to reopen discovery, imposing additional unnecessary expenses on ExxonMobil.

Third, the record in this case demonstrates that there is no basis for Plaintiffs' lawsuit. The Supreme Court has recognized that securities class actions "have also been subject to abuse, including the 'extract[ion]' of 'extortionate "settlements"' of frivolous claims." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 476 (2013) (alteration in original) (citation omitted). Granting leave would force Defendants to incur the cost and burden of defending claims that Plaintiffs already know are meritless.

Fourth, Plaintiffs appear to have violated the Court's Protective Order to develop many of the facts in the Proposed Amendment. Under that Order, "Confidential Information may be disclosed by the receiving party only to" the receiving party and its employees, counsel and counsel's supporting personnel such as paralegals, as well as experts, consultants, and document processing staff. (Dkt. 138 ¶ 7.) Plaintiffs could not disclose Confidential Information to Damian Burch unless "the information was previously received or authored" by him. (Dkt. 138 ¶ 11(a).) Nonetheless, the Proposed Amendment reflects that Plaintiffs disclosed to Burch documents that Defendants designated as "confidential" – *i.e.*, Confidential Information – even though Burch neither received nor authored these documents. (*See, e.g.*, P. App. 238-40 ¶¶ 183, 185-86, 189; 245-26 ¶¶ 203-04; 252-54 ¶¶ 226, 229.)[7] Plaintiffs then relied on Burch's interpretation and "confirm[ation]" of the confidential information in these documents in their Proposed Amendment. (*Id.*)

---

[7] For example, Plaintiffs cite to an October 11, 2019 email, produced by Defendants and clearly marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER", from Melissa Bond to Staale Gjervik, Carman Mullins, and Chad Rasmussen. (P. App. 252-53 ¶¶ 225-226.) Despite not receiving or sending this email, Plaintiffs allege that ███████████████████████████████████████

███████████████████████

Divulging confidential information to a non-party to bolster allegations in a complaint is incurably prejudicial. Given Plaintiffs' flagrant violation of the Protective Order in an attempt to resurrect the Section 10(b) claims, the appropriate remedy is – at a minimum – to deny Plaintiff's Motion. *See generally United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 2021 WL 5831626, at *10 (D. Mass. Dec. 8, 2021) (striking complaint's allegations that were based on information received in violation of protective order and then dismissing complaint), *aff'd*, 69 F.4th 1 (1st Cir. 2023); *Del Giudice v. S.A.C. Cap. Mgmt., LLC*, 2009 WL 424368, at *10 (D.N.J. Feb. 19, 2009) (dismissing with prejudice complaint based on information obtained in violation of protective order).

**D.    A continuance will increase – not cure – the prejudice to Defendants.**

Plaintiffs breezily assert that Defendants will not be prejudiced because the Court can simply set new deadlines and Defendants will not face duplicative discovery. (Motion at 19-20.) But that argument misses the point. The prejudice described in Section II – Defendants' loss of the PSLRA's protections, the need to restart motion to dismiss and class certification briefing, the continuation of this abusive lawsuit, and the violation of the Protective Order – cannot be fixed by adding more time to the schedule and requiring ExxonMobil to bear the costs of additional briefing and discovery. In fact, continuing the schedule would amplify the prejudice by "increasing the expense and delaying final resolution of this case." *Travelers Cas. & Sur. Co. of Am. v. James*, 2016 WL 9306254, at *3 (N.D. Tex. Oct. 5, 2016) (Godbey, J.) (denying motion for leave to amend); *DeWolff Boberg & Assocs.*, 2023 WL 4937406, at *5 (holding that continuance would not cure defendants' prejudice because it "would unnecessarily delay the proceedings . . . and the resolution of the litigation").

Moreover, "[a] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Union Planters Nat'l Leasing, Inc. v. Woods*, 687 F.2d 117,

34

121 (5th Cir. 1982) (quoting *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967)).

Plaintiffs have had multiple chances to comply with the PSLRA; they should not get another. *See Randall*, 189 F.3d at 466 (per curiam) (district court did not abuse its discretion in denying motion for leave to amend complaint against defendants who had been dismissed from lawsuit); *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566-67 (5th Cir. 2002) (district court did not abuse its discretion in denying securities plaintiffs motion for leave to file a third amended complaint); *Knutson v. Harris*, 2018 WL 4281557, at *9 (N.D. Tex. Sept. 6, 2018) (denying securities plaintiffs' motion for leave to file third amended complaint).

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion for Leave to File a Third Amended Class Action Complaint and Motion for Reconsideration.

Dated: November 1, 2024

Respectfully submitted,

/s/ Noelle M. Reed
Noelle M. Reed
   State Bar No. 24044211
Abigail E. Davis
   State Bar No. 24139564
Wallis M. Hampton
   State Bar No. 00784199
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
Tel.: (713) 655-5122
Fax: (713) 483-9122
noelle.reed@skadden.com
abigail.sheehan@skadden.com
wallis.hampton@skadden.com

Michelle L. Davis
   State Bar No. 24038854
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
308 Bahama Court
Granbury, Texas 76048
Tel.: (713) 655-5197
Fax: (713) 483-9197
michelle.davis@skadden.com

Michael W. Restey Jr. (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Tel.: (212) 735-3000
Fax: (212) 735-2000
michael.restey@skadden.com

*Attorneys for Defendants*
*Exxon Mobil Corporation, Darren W. Woods,*
*Liam M. Mallon, and Melissa Bond*

36