# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Civil Action No.: 3:21-cv-00194-N |
| v. | ) <u>CLASS ACTION</u> |
| EXXON MOBIL CORPORATION, DARREN W. WOODS, LIAM M. MALLON, and MELISSA BOND, | ) <u>DEMAND FOR JURY TRIAL</u> ) ) ) |
| Defendants. | ) ) ) ) ) ) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT AND MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

I.    ARGUMENT ...................................................................................... 2

      A.    THE PRODUCTION GOAL STATEMENTS ARE ACTIONABLE ............................................. 2

      B.    DEFENDANTS CANNOT RELY ON EVIDENCE NOT CITED IN THE
            AMENDMENT ................................................................................. 4

      C.    DEFENDANTS' FACTUAL ARGUMENTS ARE WRONG....................................................... 7

            1.    ███████████████████████████ ................................... 7

            2.    ███████████████████████████████ ....................... 10

      D.    DEFENDANTS' LOSS CAUSATION ARGUMENTS FAIL................................................... 10

      E.    THE AMENDMENT IS NOT AN "END-RUN" AROUND THE PSLRA ............................... 13

      F.    PLAINTIFFS DID NOT DELAY SEEKING AMENDMENT. .................................................... 14

      G.    DEFENDANTS' SUGGESTIONS OF MISCONDUCT ARE BASELESS ................................. 15

      H.    THE COURT SHOULD RECONSIDER ITS PRIOR RULING PURSUANT TO
            RULE 54(B). ................................................................................... 16

II.   CONCLUSION.................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ...............................................................................11, 12

*In re Allstate Life Ins. Co. Litig.*,
  2012 WL 176497 (D. Ariz. Jan. 23, 2012) ...................................................................14

*Belmont Holdings Corp. v. SunTrust Banks, Inc.*,
  896 F. Supp. 2d 1210 (N.D. Ga. 2012) .........................................................................7

*Bennett v. Lucier*,
  2009 WL 10720928 (N.D.N.Y. Dec. 14, 2009)..............................................................5

*Bolling v. Gold*,
  2015 WL 2406487 (W.D. Wash. May 19, 2015)............................................................14

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) (J. White, concurring) ................................................................16

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)...........................................................................................6

*City of Livonia Employees' Retirement System v. Boeing Co.*,
  306 F.R.D. 175 (N.D. Ill. 2014)......................................................................................7

*Comb v. Benji's Special Educ. Acad.*,
  2011 WL 4074525 (S.D. Tex. Sept. 13, 2011) ...............................................................5

*In re Constellation Energy Grp., Inc. Sec. Litig.*,
  2012 WL 1067651 (D. Md. Mar. 28, 2012).................................................................14

*Davis v. Prudential Ins. Co. of Am.*,
  2018 WL 3094885 (M.D. Ala. June 22, 2018) ...............................................................5

*Delaware Cty. Emp. Ret. Sys. v. Cabopt Oil & Gas*,
  620 F. Supp 3d 603 (S.D. Tex. 2022) ..........................................................................11

*DeWolff Boberg & Associates, Inc. v. Pethick*,
  2023 WL 4937406 (N.D. Tex. June 30, 2023) ..............................................................14

*Edward H. Bohlin Co. v. Banning Co.*,
  6 F.3d 350 (5th Cir. 1993) ..............................................................................................7

*In re Enron Corp.*,
2005 WL 1638039 (S.D. Tex. June 21, 2005) ........................................................................17

*Experexchange, Inc. v. Doculex, Inc.*,
2009 WL 3837275 (N.D. Cal. Nov. 16, 2009) ........................................................................14

*In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*,
2012 WL 730457 (E.D. La. Mar. 6, 2012) ...............................................................................7

*Fin. Acquisition Partners LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006) .............................................................................................6, 7

*Glenn v. Imperial Palace of Mississippi, LLC*,
2013 WL 3712429 (S.D. Miss. July 12, 2013) ........................................................................7

*Grand Famous Shipping Ltd. v. Port of Houston Auth.*,
572 F. Supp. 3d 307 (S.D. Tex. 2021) ....................................................................................7

*Harrison v. Forde*,
2022 WL 1572247 (S.D. Ala. May 18, 2022) ........................................................................14

*Hixson v. Houston Indep. Sch. Dist.*,
2011 WL 4860004 (S.D. Tex. Oct. 13, 2011)...........................................................................7

*Hogan v. Pilgrim's Pride Corp.*,
73 F.4th 1150 (10th Cir. 2023) .............................................................................................17

*iiiTec Ltd. v. Weatherford Tech. Holdings, LLC*,
2022 WL 138030 (S.D. Tex. Jan. 14, 2022)............................................................................7

*Lindsey v. Unitrin Auto & Home Insurance Co.*,
2010 WL 11640213 (E.D. Ky. Mar. 29, 2010)........................................................................6

*Lormand v. U.S. Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) .........................................................................................11, 12

*Milanese v. Rust-Oleum Corp.*,
244 F.3d 104 (2d Cir. 2001).............................................................................................5, 6

*P.A. Trans. Auth. v. Orrstown Fin. Servs. Inc.*,
12 F.4th 337 (3d Cir. 2021) ..................................................................................................17

*Pasternak v. Shrader*,
863 F.3d 162 (2d Cir. 2017)..................................................................................................17

*In re Pfizer Inc. Sec. Litig.*,
2012 WL 983548 (S.D.N.Y. Mar. 22, 2012) ........................................................................14

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*,
    769 F.3d 313 (5th Cir. 2014) ...................................................................................11

*Randall v. Reeves*,
    189 F.3d 466 (5th Cir. 1999) ...................................................................................15

*Rooney v. EZCORP, Inc.*,
    2018 WL 3596054 (W.D. Tex. July 26, 2018) ...................................................13, 14

*Sako v. Wells Fargo Bank, Nat'l Ass'n*,
    2015 WL 5022326 (S.D. Cal. Aug. 24, 2015) ...........................................................15

*Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.*,
    335 F.R.D. 54 (M.D. Pa. 2020)..................................................................................14

*In re Seitel, Inc. Sec. Litig.*,
    447 F. Supp. 2d 693 (S.D. Tex. 2006) .......................................................................13

*So. Constructors Grp., Inc. v. Dynalectric Co.*,
    2 F.3d 606 (5th Cir. 1993) .......................................................................................15

*Spitzberg v. Houston American Energy Corp.*,
    758 F.3d 676 (5th Cir. 2014) ........................................................................11, 12, 13

*Squyres v. Heico Cos., L.L.C.*,
    782 F.3d 224 (5th Cir. 2015) ...................................................................................14

*Staley v. FSR Int'l Hotel Inc.*,
    2024 WL 1704931 (S.D.N.Y. Apr. 19, 2024)..............................................................6

*Stewart v. Atherio Inc.*,
    2018 WL 2047997 (N.D. Tex. May 2, 2018) .............................................................15

*Strong v. Marathon Resource Management Group LLC*,
    2019 WL 4696418 (W.D. Tex. Sept. 25, 2019)..........................................................15

*Swiss v. Rymark, Inc.*,
    2024 WL 4028225 (D. Utah Sept. 3, 2024)..................................................................5

*Templet v. HydroChem Inc.*,
    367 F.3d 473 (5th Cir. 2004) ...................................................................................17

*The Richards Grp., Inc. v. Brock*,
    2008 WL 1722250 (N.D. Tex. Apr. 14, 2008) ...........................................................14

*Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*,
    325 F. Supp. 3d 728 (N.D. Tex. 2018) .......................................................................7

iv

*Trammel Crow Residential Co. v. National Union Fire Insurance Co. of Pittsburgh, PA*,
2014 WL 12577396 (N.D. Tex. Sept. 30, 2014)........................................................14

*Travelers Cas. & Sur. Co. of Am. v. Madsen, Sapp, Mena, Rodriguez & Co., P.A.*,
2008 WL 11399642 (S.D. Fla. Jan. 31, 2008) ...........................................................5

*Turk v. Pershing LLC*,
2023 WL 11926441 (N.D. Tex. May 16, 2023) (Godbey, J.) ...................................17

*U.S. v. Preferred Builders Grp., LLC*,
2015 WL 12791746 (W. Va. Apr. 30, 2015) ...............................................................6

*Upton v. Vicknair*,
2023 WL 2043333 (E.D. La. Feb. 16, 2023) .............................................................16

*Walintukan v. SBE Ent. Grp., LLC*,
2017 WL 635278 (N.D. Cal. Feb. 15, 2017) ...............................................................5

*Whittington v. Minn. Life Ins. Co.*,
2010 WL 11610313 (W.D. La. Aug. 27, 2010).........................................................5-6

*Yates-Williams v. El Nihum*,
2010 WL 3505159 (S.D. Tex. Sept. 3, 2010) ..............................................................5

The proposed Amendment clarifies that several of the production goal statements were made solely by Exxon, and therefore remain in the case following the Court's August 12 Order.[1] It also establishes that Plaintiffs' 10b-5(b) fraud claims should be reinstated against Defendants Woods and Mallon because new evidence demonstrates their scienter. For these reasons, Plaintiffs have shown that there is good cause for allowing them to amend.

Defendants' Opposition relies on three arguments, all of which fail. *First*, Defendants contend that this Court dismissed all production goal statements from the case. Not so. In fact, the Court upheld the scheme liability claim against Bond based on manipulations designed "***to support Woods' public pledges to investors***" concerning Exxon's production goal of one million barrels of oil per day. *See* Second MTD Order, ECF No. 112, at 20 (citing Complaint ¶313 (explaining how the scheme "artificially inflat[ed] the production estimates")). While the Court dismissed production goal statements "***made by Woods and Mallon***" in the August 12 Order, it held that ***Exxon's own*** corporate statements remained in the case. ECF No.157, at 9-10. Indeed, the Court has twice ordered Defendants to produce discovery on these statements. ECF Nos. 133, 149.

*Second*, Defendants cite Exxon documents not referred to in the Amendment that they contend warrant dismissal of Plaintiffs' claims. But the Amendment must be decided on pleading—not summary judgment—standards. Defendants cannot rely on extrinsic documents, and their interpretation of those documents, to defeat Plaintiffs' allegations. At most, Defendants' reliance on extrinsic evidence raises issues of fact that cannot be decided in their favor now.

---

[1] "Motion" and "Mot." refer to Plaintiffs' Motion for Leave to File a Third Amended Class Action Complaint and Motion for Reconsideration (ECF No. 160), "Opposition" and "Opp." refers to Defendants' opposition and "A-__" and "DX __" refers to their Appendix and exhibits (ECF Nos. 166, 167), "Complaint" refers to the Second Amended Complaint (ECF No. 92), "Amendment" refers to the Proposed Third Amended Complaint (ECF No. 160-1 at A-1-172), and "¶__" refers to the paragraphs of the Amendment. Capitalized terms have the same meaning as in the Motion, all emphasis is added, and all internal quotation marks, citations, and alterations are omitted.

*Third*, Defendants accuse Plaintiffs of dilatory tactics and claim prejudice. But Plaintiffs moved to amend promptly after Defendants finished producing documents in August and the Court issued the August 12 Order. Plaintiffs' claims are meritorious; thus, claims of prejudice due to the length of the litigation ring hollow.

I.   **ARGUMENT**

   A.   **THE PRODUCTION GOAL STATEMENTS ARE ACTIONABLE**

Defendants' opposition starts from the false premise that the Court dismissed all production goal statements. However, they admit that the "claim the Court allowed to proceed was a 'scheme liability' claim in which Plaintiffs alleged that Melissa Bond engaged in a 'scheme' . . . ***to somehow support goals ExxonMobil had already publicly announced***," Opp. at 2, *i.e.*, Exxon's million-barrel-per-day production goal. The following orders make clear that the Court has held that the production goal statements are part of the scheme liability claim:

   ***The First MTD Order.*** Defendants wrongly assert that the Court dismissed all production goal statements in its order on Defendants' first Motion to Dismiss, and then never revisited that decision. In fact, the Court carefully analyzed the false statements at issue and explained that "[p]resent statements alongside forward-looking statements are actionable." ECF No. 88, at 24-25. The Court then identified which of those statements were forward-looking and which were not, and held that the statements that were not forward-looking could be actionable. *Id.* at 25-27.

   ***The Second MTD Order.*** In the Second MTD Order, the Court analyzed whether the Complaint followed the "path to scheme liability premised on conduct relating to [a] misstatement" and found that "Bond instructed her team to manipulate internal valuations of ExxonMobil's Permian assets in order to support Woods's public [production] pledges to investors." ECF No. 112 at 19-20.  Further, the Court noted that Bond had initiated the scheme "to substantiate Woods's promises to investors about ExxonMobil's future productivity in the Permian." *Id.* at 20-21. Thus,

2

the production goal statements are at the very heart of the Rule 10b-5(a) and (c) scheme that the Court upheld. *Id.* at 21-22.

**The Court's Discovery Orders and Defendants' Discovery Conduct.** In two discovery motions, plaintiffs sought, and the Court ordered production of, documents concerning the production goal statements. *See* ECF No. 127, at 8; ECF 147, at 4. Defendants argued that this discovery was "merits-based" (ECF Nos. 130, 140); they did not argue that the Court had dismissed the production goal statements. *Id.* Defendants also ran search terms intended to identify and produce responsive documents. *See* ECF Nos. 133, 149; ECF No. 141 Exs. B-G.

**The August 12 Order.** Defendants argue that in the Court's August 12 Order (ECF No. 157) denying their motion for judgment on the pleadings, it "squarely rejected Plaintiffs' theory that the alleged scheme included the Production Goal Statements." Opp. at 16. That is wrong. The Court merely reiterated that Plaintiffs had not pled scienter as to Woods or Mallon, and thus could not "rely on public statement[s] *made by Woods or Mallon*." ECF No. 157 at 8-9. However, many of the actionable production goal statements alleged in the Complaint *were made solely by Exxon* in corporate press releases and presentations. The Amendment does not change Plaintiffs' allegations. Rather, it simply clarifies by whom the alleged statements were made. *Compare* Complaint ¶¶361, 364, 365, 373, 388, 398 *with* Amendment ¶¶480-86 (quoting identical statements made in Exxon press releases/presentations). At a minimum, these corporate statements remain in the action and can be used to establish scheme liability. *See* Mot. at 14-15.

**The New Scienter Allegations.** The Amendment also alleges new facts, based on documents obtained in discovery, demonstrating that Woods and Mallon knew that their own production goal statements were false. ¶¶161-238. These facts state a separate claim against Woods and Mallon under Rule 10b-5(b), in addition to the scheme liability claim the court has already

3

sustained. These ***new internal Exxon documents show***:



- 

- 

- 

- 

- 

- ████████████████████████████████████████[2]

**B.**    **DEFENDANTS CANNOT RELY ON EVIDENCE NOT CITED IN THE AMENDMENT**

████████████████████████████████████████████

████████████████████████████████; and (3) one of the three

corrective disclosures was not corrective.  Significantly, none of this material was relied on or

referenced at all in the Amendment, except for (i) an earnings call transcript (A-287-A-309, DX

13); (ii) ████████████████████████████████████

████████████████████████████████; and (iii) ███████

---

[2] Defendants' arguments concerning the proved reserves and resource base misstatements are baseless. There was no need to amend on this issue because the August 12 Order expressly rejected Defendants' arguments about those misstatements. August 12 Order, at 9-10.

████████████████████████████████████████████████████████████████████████████.

It is impermissible for Defendants to submit documents not referred to in the Amendment and argue that they disprove Plaintiffs' allegations because the Court's consideration of a motion to amend is governed by the Rule 12(b)(6) standard. Accordingly, Defendants' arguments that ███████████████████████████████████████, and that the May 1, 2020 disclosure was caused by other factors should not be considered, let alone credited. *See Comb v. Benji's Special Educ. Acad.*, 2011 WL 4074525, at *6 (S.D. Tex. Sept. 13, 2011) (granting motion to amend in part); *Yates-Williams v. El Nihum*, 2010 WL 3505159, at *5 (S.D. Tex. Sept. 3, 2010) (refusing to consider extrinsic "affidavits and other documents"); *Swiss v. Rymark, Inc.*, 2024 WL 4028225, at *3 (D. Utah Sept. 3, 2024) (it is "improper to consider this extrinsic evidence" on a motion to amend); *Walintukan v. SBE Ent. Grp., LLC*, 2017 WL 635278, at *2 (N.D. Cal. Feb. 15, 2017) (granting leave to amend and refusing to consider extrinsic evidence submitted by defendants); *Davis v. Prudential Ins. Co. of Am.*, 2018 WL 3094885, at *4 (M.D. Ala. June 22, 2018) (same); *Bennett v. Lucier*, 2009 WL 10720928, at *4 (N.D.N.Y. Dec. 14, 2009) ("Court's review is relegated solely to the four corners of the proposed Second Amended Complaint, eschewing the extrinsic evidence provided."); *Travelers Cas. & Sur. Co. of Am. v. Madsen, Sapp, Mena, Rodriguez & Co., P.A.*, 2008 WL 11399642, at *2 (S.D. Fla. Jan. 31, 2008) (same).

While Defendants give lip service to the Rule 12(b)(6) standard, they take the untenable position that the Court should apply a summary judgment standard. Opp. 29-30. However, none of the cases they cite support their argument. Two involved proposed amendments ***after*** a summary judgment motion. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (motion to amend was made "in response to a Fed. R. Civ. P. 56 motion for summary judgment"); *Whittington v. Minn. Life Ins. Co.*, 2010 WL 11610313, at *3 (W.D. La. Aug. 27, 2010) ("[W]hen, as here, the

5

defendant has filed a motion for summary judgment, the courts more carefully scrutinize a plaintiff's attempt to raise new theories of recovery by amendment."). *Milanese* is further distinguishable because there, both parties had "presented all relevant evidence in support of their positions," whereas here, merits discovery has not even begun. 244 F.3d at 110. Defendants' other case, *Lindsey v. Unitrin Auto & Home Insurance Co.*, is also inapposite, because there the court ***denied*** defendants' motion to strike allegations relating to the definition of the plaintiff class. 2010 WL 11640213, at *3 (E.D. Ky. Mar. 29, 2010). Here, not a single deposition has occurred, and discovery has been limited to class certification issues.

Defendants also argue that because Plaintiffs have pled facts from new documents obtained in discovery, Defendants may litigate the truth of Plaintiffs' allegations by relying on documents not used in the Amendment. Opp. at 9, 30.  But courts may only rely on the complaint and proper attachments when ruling on a Rule 12(b)(6) motion. The documents Defendants cite do not fall into the narrow exceptions to this rule, which are limited to SEC filings or documents that "plaintiffs either possessed or knew about ***and upon which they relied in bringing the suit*** . . . ." *Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 286 (5th Cir. 2006); *see also Staley v. FSR Int'l Hotel Inc.*, 2024 WL 1704931, at *3 (S.D.N.Y. Apr. 19, 2024) (it did not "matter that the document was produced in discovery" because, "[w]hile defendants may of course rely on such evidence at summary judgment, it is hornbook law that a motion to dismiss [] tests only the sufficiency of the pleadings"); *U.S. v. Preferred Builders Grp., LLC*, 2015 WL 12791746, at *3 (W. Va. Apr. 30, 2015) (defendants' documents "cannot be considered"); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (requiring "*reliance* on the terms and effect of a document in drafting the complaint" for consideration on a dismissal motion and observing that "mere notice or possession is not enough" (emphasis in original)).

6

Defendants' remaining cases (i) did not consider extrinsic evidence at all,[3] (ii) involved inapposite situations such as fraud on the Court regarding confidential witnesses,[4] (iii) considered proper material such as SEC filings,[5] or (iv) were decided at or after summary judgment.[6]

By relying on extrinsic evidence to rebut the Amendment's factual allegations, Defendants concede that they cannot demonstrate that the allegations within the four concerns of the Amendment fail to state a claim. This dooms Defendants' attempt to show that Plaintiffs' amendment is futile.

### C.   DEFENDANTS' FACTUAL ARGUMENTS ARE WRONG

Even if the Court does consider documents from discovery that the Amendment does not rely on (which it should not), Plaintiffs' Motion should be granted.

**1.**

---

[3] *See Glenn v. Imperial Palace of Mississippi, LLC*, 2013 WL 3712429, at *2 (S.D. Miss. July 12, 2013), *aff'd sub nom. Glenn v. Imperial Palace of Mississippi, L.L.C.*, 575 F. App'x 475 (5th Cir. 2014); *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356 (5th Cir. 1993); *Hixson v. Houston Indep. Sch. Dist.*, 2011 WL 4860004, at *4 (S.D. Tex. Oct. 13, 2011).

[4] *See Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1220 (N.D. Ga. 2012); *City of Livonia Employees' Retirement System v. Boeing Co.,* 306 F.R.D. 175, 177-178 (N.D. Ill. 2014).

[5] *See Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.,* 325 F. Supp. 3d 728, 747 (N.D. Tex. 2018) (SEC filings); *Fin. Acquisition Partners LP*, 440 F.3d at 286 (expert report relied on in complaint); *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 2012 WL 730457, at *8 (E.D. La. Mar. 6, 2012) (evidence that counsel was served).

[6] *See iiiTec Ltd. v. Weatherford Tech. Holdings, LLC*, 2022 WL 138030, at *15 (S.D. Tex. Jan. 14, 2022); *Grand Famous Shipping Ltd. v. Port of Houston Auth.*, 572 F. Supp. 3d 307, 316 (S.D. Tex. 2021).





███████████████████████████████████████████████

2.   █████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

### D.   DEFENDANTS' LOSS CAUSATION ARGUMENTS FAIL

Defendants challenge only one of the three alleged corrective disclosures: Exxon's May 1,



2020, announcement which cut 75% of its rigs and materially reduced its production goal. Defendants say that the reasons for this negative news were the COVID-19 pandemic and the Russia-Saudi price war. Opp. at 13-16. This argument fails on the law and the facts.

First, Defendants have waived this argument—they had the opportunity to argue that the May 1, 2020 corrective disclosure could not support loss causation when they moved both to dismiss Plaintiffs' Amended Complaint and Plaintiffs' Second Amended Complaint. They did not do so. Additionally, allegations of loss causation need only meet the low bar set by Rule 8's notice pleading standard. *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 258 (5th Cir. 2009) (plaintiffs need only plead a "facially plausible" connection between the alleged misrepresentations and stock price drops following the corrective disclosures). Further, loss causation is rarely resolved at the pleading stage given its "highly fact intensive" nature. *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 325 (5th Cir. 2014). Defendants bear a heavy burden to defeat loss causation on the pleadings, as they must "sever completely the logical link between . . . earlier statements and the relevant truth revealed by the [corrective disclosure]." *Spitzberg v. Houston American Energy Corp.*, 758 F.3d 676, 688 (5th Cir. 2014). Defendants cannot meet that burden here with respect to the May 1, 2020 disclosure.

The sharp (7.2%) stock drop that occurred immediately after Exxon announced its reduction in rigs and capex for the Permian shows that the corrective disclosure conveyed to investors that Exxon had failed to meet its announced production goal.  ¶¶493-495. This is all that is needed for Rule 8. *See Delaware Cty. Emp. Ret. Sys. v. Cabopt Oil & Gas*, 620 F. Supp 3d 603, 634 (S.D. Tex. 2022) (disclosure of disappointing oil production results satisfied loss causation); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009) (to be corrective, a disclosure "need not precisely mirror an earlier representation"). Defendants' argument that

11

Plaintiffs must show that it was "more probable than not" that this negative information affected the stock movement incorrectly uses the ***summary judgment*** standard, not the one that applies at the pleading stage. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 256 n.19 (5th Cir. 2009); *Flowserve*, 572. F32d at 236. Indeed, in *Lormand*, the Fifth Circuit emphasized that loss causation "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal the elements of the claim existed." 565 F.3d at 256.

Defendants cite extrinsic documents to argue that other causes may also have contributed to the production miss in May 2020. Again, this cannot defeat the Amendment's well-pled allegations of loss causation. *See id.* at 267 (courts are "not authorized or required to determine whether the plaintiff's plausible inference of loss causation is equally or more plausible than other competing inferences"); *Spitzberg*, 758 F.3d at 687-88 (plaintiffs' failure to "allege specifically whether the alleged misstatements or omissions were the actual cause of their economic loss as opposed to other explanations" is not fatal to loss causation allegations).



In its May 1, 2020 earnings call, Exxon disclosed that it was cutting drilling operations and capex in the Permian, and its stock price plummeted. ¶¶327-329.



*See Spitzberg* 758 F.3d 676, 688-89 (5th Cir. 2014) (loss causation adequately pled, even though it was "no doubt correct" that oil and gas well might "ultimately have been abandoned anyway, regardless of the truth of the challenged statements," because "such possibilities" did not "sever completely the logical link" between the statements and the "relevant truth revealed by the abandonment of [the well]"); *In re Seitel, Inc. Sec. Litig.*, 447 F. Supp. 2d 693, 713 (S.D. Tex. 2006) (loss causation challenge based on alternative explanation for corrective disclosure was "fact-based argument" that "requires a fact-specific inquiry at [] summary judgment or trial").

### E.    THE AMENDMENT IS NOT AN "END-RUN" AROUND THE PSLRA

Defendants assert that allowing an amendment would run afoul of the PSLRA's stay of discovery before adjudication of a motion to dismiss. Opp. at 32. Defendants' argument has been squarely rejected in this Circuit. *Rooney v. EZCORP, Inc.*, 2018 WL 3596054, at *3 (W.D. Tex. July 26, 2018). In *Rooney*, defendants argued that the "PSLRA bars [plaintiffs] from using information uncovered during discovery to revive previously dismissed claims," citing to the PSLRA's discovery stay provisions. *Id.* The court rejected that argument, holding that since "no

13

discovery stay is at issue" and the plaintiff had been "entitled to discovery on his claims surviving Defendants' previous motion to dismiss," "the discovery stay provision is inapplicable" and defendants had not "identified any other statutory basis for concluding the PSLRA bars the amendment." *Id.* The *Rooney* court also rejected defendants' argument that allowing the amendment would "frustrate the purposes of the discovery stay provision," explaining that "the purpose of the PSLRA is to prevent unnecessary imposition of discovery costs on defendants, ***not to preclude parties from using legitimately obtained discovery to refine their case*.**" *Id.* (collecting cases). Courts across the country agree.[10]

F.    **PLAINTIFFS DID NOT DELAY SEEKING AMENDMENT.**

Rules 15(a)(2) and 16(b)(4) explicitly permit amendment even after a deadline has passed when there is good cause. *See, e.g.*, *The Richards Grp., Inc. v. Brock*, 2008 WL 1722250, at *2 (N.D. Tex. Apr. 14, 2008) (granting leave to amend where plaintiff "filed the instant motion within a reasonable time after obtaining the discovery that supports the Proposed Amendments."). Such is the case here, and Defendants' cited authority is inapt.[11]

---

[10] *See, e.g.*, *Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.*, 335 F.R.D. 54, 75 (M.D. Pa. 2020), *aff'd*, 12 F.4th 337 (3d Cir. 2021); *Bolling v. Gold*, 2015 WL 2406487, at *3 (W.D. Wash. May 19, 2015); *In re Constellation Energy Grp., Inc. Sec. Litig.*, 2012 WL 1067651, at *4 (D. Md. Mar. 28, 2012); *In re Pfizer Inc. Sec. Litig.*, 2012 WL 983548, at *2 (S.D.N.Y. Mar. 22, 2012); *In re Allstate Life Ins. Co. Litig.*, 2012 WL 176497, at *6 (D. Ariz. Jan. 23, 2012).

[11] *See Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 238 (5th Cir. 2015) (plaintiff delayed amendment for a year after expressing intent to amend so that he could take deposition—which Plaintiff also delayed, inexplicably, for many months); *DeWolff Boberg & Associates, Inc. v. Pethick*, 2023 WL 4937406, at *3 (N.D. Tex. June 30, 2023) (plaintiff had all evidence and facts available to it to meet the amendment deadline, but inexplicably waited three extra months, showing a lack of diligence ); *Trammel Crow Residential Co. v. National Union Fire Insurance Co. of Pittsburgh, PA*, 2014 WL 12577396, at *2 (N.D. Tex. Sept. 30, 2014) (denying motion to amend answer to add affirmative defenses that defendants had available for more than two years); *Harrison v. Forde*, 2022 WL 1572247, at *3 (S.D. Ala. May 18, 2022) (plaintiffs waited three months to amend after they had all relevant facts available to them); *Experexchange, Inc. v. Doculex, Inc.*, 2009 WL 3837275, at *29 (N.D. Cal. Nov. 16, 2009) (plaintiff waited until after defendant filed summary judgment motion, suggesting that amendment was done to avoid

Plaintiffs' first set of requests for production became effective on December 11, 2024. *See* ECF No. 160-1, A-347–59; ECF No. 122. Defendants refused to produce responsive documents, forcing Plaintiffs to file a motion to compel (which Plaintiffs won, ECF Nos. 127, 133) and to oppose a motion for a protective order (which Defendants lost, ECF Nos. 140, 149). As a result, Defendants did not start to produce documents until May 3, 2024—***months after the February deadline to file an amended complaint had passed***. Opp. at 9. Defendants did not produce the last 20% of their documents—many of which support the Amendment—until August 16, 2024.

Defendants also fault Plaintiffs for relying on public disclosures. But Plaintiffs' allegations referring to public disclosures were previously alleged in the Complaint and restated solely to provide context for the new allegations. Further, as explained, the Amendment responds to the August 12 Order. In just over a week thereafter, Plaintiffs decided to seek to amend the Complaint and so notified Defendants at the earliest possible moment after making their decision.[12]

### G.   DEFENDANTS' SUGGESTIONS OF MISCONDUCT ARE BASELESS

Defendants accuse Plaintiffs of violating their duty of candor to the court by not citing "evidence" that Defendants attach to their opposition. Opp. at 18. Of course, Plaintiffs did no such

---

summary judgment); *Sako v. Wells Fargo Bank, Nat'l Ass'n*, 2015 WL 5022326, at *2 (S.D. Cal. Aug. 24, 2015) (court found that plaintiff knew the facts underlying the proposed amendment prior to filing the action).

[12] Relying on *Randall v. Reeves*, Defendants accuse Plaintiffs of trying to "patch holes" in the Complaint. 189 F.3d 466 (5th Cir. 1999). *Reeves* is inapposite, because the amendment there was not triggered by ***new*** evidence, which is the case here. Further, *Reeves* cited to *Southern Constructors Group, Inc. v. Dynalectric Co.*, where a plaintiff was "attempt[ing] to try its theories of recovery seriatim." 2 F.3d 606, 612 (5th Cir. 1993). Here, Plaintiffs' theory remains unchanged, and Plaintiffs simply provide new evidence in support of a claim they already asserted—a situation in which amendment is permitted. *See, e.g., Stewart v. Atherio Inc.*, 2018 WL 2047997, *2-3 (N.D. Tex. May 2, 2018) (allowing party to amend pleading for good cause to reassert affirmative defense in light of discovery obtained after deadline to amend had passed); *Strong v. Marathon Resource Management Group LLC*, 2019 WL 4696418, *1 (W.D. Tex. Sept. 25, 2019) (permitting amendment for good cause based on documents obtained in discovery to add fraud claims "thoroughly intertwined with the issues and transactions that are already before the Court").

15

thing. As discussed above, Defendants' "evidence" does not disprove Plaintiffs' claims, and in many instances actually supports Plaintiffs' claims. And in any event, Plaintiffs are under no obligation to find and present evidence to the Court that Defendants believe supports their highly contested version of events. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (J. White, concurring) ("It is the ***defendant's*** task to negate, if he can, the claimed basis for the suit."). Moreover, Defendants' contention that discovery is "well developed," Opp. at 20, is not credible: merits discovery ***has not even begun*** in this case, and not a single deposition has been taken.

Further, Defendants falsely accuse Plaintiffs of violating the Protective Order by showing certain confidential documents to Dr. Burch. Opp. 33-34 & n.7. In reality, the Protective Order explicitly permits the disclosure of information Exxon designated as "Confidential" to any Exxon "former . . . employee," thus disposing of this contention. ECF No. 138 ¶11(b).[13] This is a standard provision designed to allow lawyers to show documents to former employees. Further, much of the information shared with Dr. Burch consisted of materials he "authored or received." *Id.* ¶11(a).

### H.   THE COURT SHOULD RECONSIDER ITS PRIOR RULING PURSUANT TO RULE 54(B).

Reconsideration is appropriate when newly available evidence shows dismissed claims to be meritorious. *See, e.g.*, *Upton v. Vicknair*, 2023 WL 2043333, at *3 (E.D. La. Feb. 16, 2023) (vacating dismissal with prejudice and allowing amended complaint based on newly available evidence).[14] As detailed above, Plaintiffs' motion to reinstate claims under Section 10(b) of the Exchange Act (and Rule 10b-5(b) promulgated thereunder) against Woods and Mallon is based on

---

[13] Defendants direct the Court to the wrong part of the Protective Order. *See* Opp. at 33 (citing ECF No. 138 ¶11(a)).

[14] *Upton* is not limited to situations where a plaintiff has not previously amended; it provides that a plaintiff should have "***at least*** one chance to amend." 2023 WL 2043333, at *2.

substantial, previously unavailable evidence. *See supra* at 3-4; *see also* Mot. at 20-24.[15] Thus, Plaintiffs are not simply "rehash[ing] old arguments" or wasting judicial resources. Opp. at 20-21. Defendants' other arguments that permitting reconsideration would be an end-run around the PSLRA, that Plaintiffs were not diligent in seeking reconsideration, and that reconsideration would be futile all fail for the reasons discussed above. *See supra* at 7-14.

Finally, Defendants wrongly assert that the statute of repose bars claims based on certain of the alleged misstatements. Opp. at 25. The statute of repose does not bar amendments asserting claims concerning the same "conduct, transaction, or occurrence" as the original complaint. *In re Enron Corp.*, 2005 WL 1638039, at *4 (S.D. Tex. June 21, 2005) (an amendment to a PSLRA complaint not barred by the statue of repose because it asserted claims based on same misstatements as in original complaint). Moreover, Plaintiffs are not asserting new claims; they are re-asserting the same misstatements in the Complaint, which remained part of the case because "[a]n order, even a dismissal, other than a final judgment does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment . . ."[16] *Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150, 1159 (10th Cir. 2023) (quoting Rule 54(b) and reversing a grant of a motion to dismiss on statute of repose grounds). Accordingly, "statutes of repose themselves are no barrier to relation back under Rule 15(c) here." *See P.A. Trans. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 350 (3d Cir. 2021).

## II.    CONCLUSION

For the reasons above and in Plaintiffs' prior submissions, the Motion should be granted.

---

[15] Neither of Defendants' cited cases involved new evidence. *See Turk v. Pershing LLC*, 2023 WL 11926441, at *1-2 (N.D. Tex. May 16, 2023) (Godbey, J.); *Templet v. HydroChem Inc.,* 367 F.3d 473, 480 (5th Cir. 2004).

[16] In *Pasternak v. Shrader*, 863 F.3d 162, 171 (2d Cir. 2017), plaintiff sought to add securities claims to a complaint which had previously only alleged RICO and common law claims.

Dated: November 26, 2024                    Respectfully submitted,

/s/ *John Rizio-Hamilton*                   /s/ *Daniel L. Berger*

John Rizio-Hamilton (*pro hac vice*)        Daniel L. Berger (*pro hac vice*)
johnr@blbglaw.com                           dberger@gelaw.com
Rebecca E. Boon (*pro hac vice*)            Caitlin M. Moyna (*pro hac vice*)
rebecca.boon@blbglaw.com                    cmoyna@gelaw.com
John J. Esmay (*pro hac vice*)              Lauren J. Salamon (*pro hac vice*)
john.esmay@blbglaw.com                      lsalamon@gelaw.com
Thomas Sperber (*pro hac vice*)             **GRANT & EISENHOFER PA**
thomas.sperber@blbglaw.com                  485 Lexington Avenue
Stephen Boscolo (*pro hac vice*)            New York, New York 10017
stephen.boscolo@blbglaw.com                 Phone: (646) 722-8500
**BERNSTEIN LITOWITZ BERGER**               Fax: (646) 722-8501
**& GROSSMANN LLP**
1251 Avenue of the Americas                 *Co-Lead Counsel for the Class and*
New York, New York 10020                    *Counsel for Co-Lead Plaintiff*
Phone: (212) 554-1400                       *Amalgamated Bank*
Fax: (212) 554-1444

*Co-Lead Counsel for the Class and*         Lewis T. LeClair
*Counsel for Co-Lead Plaintiff State of*    Texas Bar No. 12072500
*Rhode Island, Office of the General*       lleclair@mckoolsmith.com
*Treasurer, on behalf of the Employees'*    **McKOOL SMITH PC**
*Retirement System of Rhode Island*         300 Crescent Court, Suite 1500
                                            Dallas, Texas 75201
                                            Phone: (214) 978-4000
                                            Fax: (214) 978-4044

                                            *Liaison Counsel for the Class*

18