**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Civil Action No.: 3:21-cv-00194-N ) |
| v. | ) <u>CLASS ACTION</u> ) |
| EXXON MOBIL CORPORATION, DARREN W. WOODS, LIAM M. MALLON, and MELISSA BOND, | ) <u>DEMAND FOR JURY TRIAL</u> ) ) ) |
| Defendants. | ) ) ) ) ) |

**APPENDIX IN SUPPORT OF LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE PROTECTIVE ORDER**

Lead Plaintiffs Amalgamated Bank and State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island, submit the following documents in support of their opposition to Defendants' Motion to Enforce Protective Order.

| Exhibit | Description | Pages |
|---------|-------------|-------|
| A. | Joint Declaration of Rebecca E. Boon and Caitlin M. Moyna in Support of Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Enforce Protective Order (Filed Under Seal) | A-1 - A-3 |
| B. | Transcript of Deposition of Ozgur Ozen, PhD., held on August 20, 2024 | A-4 - A-15 |
| C. | January 15, 2021 *Wall Street Journal* Article titled "Exxon Draws SEC Probe Over Permian Basin Asset Valuation" | A-16 - A-19 |
| D. | October 6, 2022 Letter from US Dept of Labor, OSHA to Exxon Mobil Corp. containing findings of fact concerning the complaints filed by Dr. Lindsey Gulden and Dr. Damian Burch | A-20 - A-32 |
| E. | Protective Order, *Adams v. Medtronics, Inc.*, No. 4:19-cv-870 (E.D. Tex. July 17, 2020), ECF No. 22. | A-33 - A-45 |
| F. | Amended Agreed Protective Order, *Mobilemedia Ideas LLC v. Research in Motion Ltd.*, No. 3:11-cv-02353-N (N.D. Tex. Aug. 17, 2012), ECF No. 314 | A-46 - A-69 |
| G. | Protective Order, *Morris v. Experian Information Solutions, Inc.*, No. 4:04-cv-00552 (S.D. Tex. Oct. 14, 2004), ECF No. 22 | A-70 - A-73 |
| H. | Stipulated Protective Order, *Cohen v. Experian Information Solutions, Inc.*, No. 1:05-cv-01796-MSK-CBS (D. Colo. Feb. 8, 2006), ECF No. 25 | A-74 - A-78 |
| I. | Stipulated Protective Order, *Wyers v. Master Lock Company*, No. 1:06-cv-00619-LTB-MJW (D. Colo. Feb. 7, 2007), ECF No. 37 | A-79 - A-93 |
| J. | Protective Order, *Comcast Cable Communications, LLC v. BT Americas, Inc.,* No. 3:12-cv-01712-M (N.D. Tex. Mar. 4, 2013), ECF No. 86 | A-94 - A-118 |

Dated: January 6, 2025                                      Respectfully submitted,

/s/ *John Rizio-Hamilton*                                  /s/ *Daniel L. Berger*

John Rizio-Hamilton (pro hac vice)              Daniel L. Berger (pro hac vice)
johnr@blbglaw.com                                          dberger@gelaw.com
Rebecca E. Boon (pro hac vice)                     Caitlin M. Moyna (pro hac vice)
rebecca.boon@blbglaw.com                           cmoyna@gelaw.com

1

John J. Esmay (pro hac vice)
john.esmay@blbglaw.com
Thomas Sperber (pro hac vice)
thomas.sperber@blbglaw.com
Stephen Boscolo (pro hac vice)
stephen.boscolo@blbglaw.com
BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1251 Avenue of the Americas
New York, New York 10020
Phone: (212) 554-1400
Fax: (212) 554-1444

*Co-Lead Counsel for the Class and Counsel for Co-Lead Plaintiff State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island*

Lauren J. Salamon (pro hac vice)
lsalamon@gelaw.com
GRANT & EISENHOFER PA
485 Lexington Avenue
New York, New York 10017
Phone: (646) 722-8500
Fax: (646) 722-8501

*Co-Lead Counsel for the Class and Counsel for Co-Lead Plaintiff Amalgamated Bank*

Lewis T. LeClair
Texas Bar No. 12072500
lleclair@mckoolsmith.com
McKOOL SMITH PC
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Phone: (214) 978-4000
Fax: (214) 978-4044

*Liaison Counsel for the Class*

2

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> EXXON MOBIL CORPORATION, DARREN W. WOODS, LIAM M. MALLON, and MELISSA BOND, <br><br> Defendants. | Civil Action No.: 3:21-cv-00194-N |

**DECLARATION OF REBECCA E. BOON AND CAITLIN M. MOYNA IN SUPPORT OF LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO <u>DEFENDANTS' MOTION TO ENFORCE PROTECTIVE ORDER</u>**

We, Rebecca E. Boon and Caitlin M. Moyna, declare as follows:

1. I, Rebecca E. Boon, am an attorney licensed to practice law in the State of New York and admitted *pro hac vice* before this Court. I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"). BLB&G and Grant & Eisenhoffer ("G&E") are co-Lead Counsel for Lead Plaintiffs Amalgamated Bank and State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement Systems of Rhode Island (together, "Lead Plaintiffs"). I am over the age of 18, of sound mind, and am competent to make this declaration, and every statement herein is based on my personal knowledge or on information provided to me and is true or correct to the best of my knowledge.

2. I, Caitlin M. Moyna, am an attorney licensed to practice law in the State of New York and I am admitted *pro hac vice* before this Court. I am a partner in the law firm of G&E, co-

A-1

Lead Counsel for Lead Plaintiffs. I am over the age of 18, of sound mind, and am competent to make this declaration, and every statement herein is based on my personal knowledge or on information provided to me and is true or correct to the best of my knowledge.

3.    We submit this declaration in support of Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Enforce Protective Order.

4.    Lead Counsel sent Dr. Damian Burch's attorney the Protective Order on March 20, 2024.

5.    Lead Counsel conducted an interview of Dr. Burch on September 6, 2024. Lead Counsel conducted that interview on a Zoom video call.  The attendees on the call were representatives from Lead Counsel, Dr. Burch, Dr. Burch's attorney, and a representative from Plaintiffs' industry expert, Wright & Company.  During the video meeting with Dr. Burch, Lead Counsel asked Dr. Burch to confirm and explain certain facts in the Amendment. ███████████

████████████████████████████████

6.    During the interview, Lead Counsel showed Dr. Burch Confidential Information on the computer screen only as necessary for him to confirm or explain facts alleged in the Amendment. ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████

7.    Lead Counsel did not send Dr. Burch or his attorney any Confidential Information at any time or provide them with a copy of the sealed version of the Amendment.  Lead Counsel also did not interview any other former employees in connection with the preparation of the Amendment (or since).

A-2

8.      Due to an administrative oversight, Lead Counsel did not obtain Wright & Company's signature to the Protective Order until December 27, 2024, and informed defense counsel that day. Wright & Company confirmed that, consistent with the terms of their engagement letter, they have kept all Confidential Information confidential at all times.

We declare, under penalty of perjury, that the foregoing is true and correct.

Executed this January 6, 2025.

*/s/ Rebecca E. Boon*
Rebecca E. Boon

*/s/ Caitlin Moyna*
Caitlin M. Moyna

A-3

# Exhibit B

Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 9 of 131    PageID 5442

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MENDI YOSHIKAWA, Individually | ) | |
| and On Behalf of All Others | ) | |
| Similarly Situated, | ) | CIVIL ACTION NO. |
| | ) | 3:21cv00194-N |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EXXON MOBIL CORPORATION, | ) | |
| DARREN W. WOODS, LIAM M. | ) | |
| MALLON, and MELISSA BOND, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

VIDEO-RECORDED ORAL DEPOSITION OF

OZGUR OZEN PhD

Tuesday, August 20, 2024

REPORTED BY:

MICHAEL E. MILLER, FAPR, RDR, CRR

Notary Public in and for the State of Texas

JOB NO. 32001

VIDEO-RECORDED ORAL DEPOSITION OF OZGUR OZEN PhD, produced as a witness at the instance of the Plaintiff and duly sworn, was taken in the above-styled and numbered cause on the above-referenced date from 9:01 a.m. to 9:29 a.m. CDT before Michael E. Miller, FAPR, RDR, CRR, Notary Public in and for the State of Texas, reported by real-time stenographic means at the offices of Skadden Arps Slate Meagher & Flom LLP, 1000 Louisiana Street, Suite 6800, Houston, Texas, pursuant to the Federal Rules of Civil Procedure.

A P P E A R A N C E S:

        GRANT & EISENHOFER PA
        BY:  LAUREN J. SALAMON, ESQUIRE
             lsalamon@gelaw.com
             CAITLIN MOYNA, ESQUIRE
             cmoyna@gelaw.com
             ALEXANDRA E. FORGIONE, ESQUIRE (via Zoom)
             aforgione@gelaw.com
        485 Lexington Avenue
        29th Floor
        New York, New York 10017
        (646)722-8500
        Counsel for Plaintiffs


        BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
        BY:  JOHN J. ESMAY, ESQUIRE
             john.esmay@blbglaw.com
        1251 Avenue of the Americas
        New York, New York 10020
        (212)554-1400
        Counsel for Plaintiffs



        SKADDEN ARPS SLATE MEAGHER & FLOM LLP
        BY:  ABBY DAVIS (SHEEHAN), ESQUIRE
             abigail.sheehan@skadden.com
        1000 Louisiana Street
        Suite 6800
        Houston, Texas 77002
        (713)655-5100
        Counsel for Defendants


        SKADDEN ARPS SLATE MEAGHER & FLOM LLP
        BY:  MICHAEL W. RESTEY JR., ESQUIRE
             michael.restey@skadden.com
        One Manhattan West, 395 9th Ave
        New York, New York 10001
        (212)735-3000
        Counsel for Defendants

Case 3:21-cv-00194-N   Document 175   Filed 01/06/25   Page 12 of 131   PageID 5445

A P P E A R A N C E S:

ALSO PRESENT:

    PATRICE CHILDRESS, ESQUIRE
    Exxon Mobil Corporation


    SHAWN JANZEN PhD (via Zoom)


VIDEOGRAPHER:

    CYNTHIA AGUILAR
    Everest Court Reporting LLC

Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 13 of 131    PageID 5446

INDEX

OZGUR OZEN PhD

August 20, 2024


APPEARANCES                                              3

PROCEEDINGS                                              6


EXAMINATION OF OZGUR OZEN PhD:

        BY MS. SALAMON                                   7


CERTIFICATE                                              20




                    DEPOSITION EXHIBITS

    NUMBER                                        MARKED

Exhibit 1      E-mail(s) re: Updates to            16

               Permian Organization Charts -

               Effective August 1, 2019,

               EXXONPBA00036416 -

               EXXONPBA00036419

Deposition of Ozgur Ozen, PhD   Mendi Yoshikawa, et al. v. Exxon Mobil, et al

Page 6

----------

P R O C E E D I N G S

August 20, 2024, 9:01 a.m. CDT

----------

THE VIDEOGRAPHER: We are now on the record. Today's date is Tuesday, August 20th, 2024. The time is 9:01 a.m.

This is the recorded deposition of Ozgur Ozen in the matter of Mendi Yoshikawa et al v. Exxon Mobil Corp. et al in the District Court, Northern District of Texas, Dallas Division.

This deposition is being held at 1000 Louisiana Street, Suite 6800, Houston, Texas 77002.

My name is Cynthia Aguilar from Everest Court Reporting, and I'm the video specialist. The court reporter today is Mike Miller, also from Everest Court Reporting.

Counsel will now state their appearances for the record.

MS. SALAMON: Lauren Salamon for the plaintiffs.

MS. MOYNA: Caitlin Moyna from Grant & Eisenhofer for the plaintiffs.

Page 7

MR. ESMAY: John Esmay from BLB&G for the plaintiffs.

MS. DAVIS: Abby Davis of Skadden Arps for the defendants and for the witness. And with me are Mike Restey from Skadden Arps and Patrice Childress, supervising counsel, ligation, from Exxon Mobil.

----------

OZGUR OZEN PhD,
having been duly sworn,
testified as follows:

----------

EXAMINATION

----------

BY MS. SALAMON:

Q. Okay. Good morning, Mr. Ozen. Thank you for coming out here today.

Can you please state your full name and address for the record?

A. Yes. My name is Ozgur Ozen, 959 West 41st Street, Houston, Texas 77018.

Q. Have you ever given sworn testimony before?

A. No.

Q. Okay. You were just sworn in -- you were

Page 8

just sworn in by the court reporter, meaning that you must give truthful and accurate answers to my questions to the best of your ability.

Do you understand?

A. Yes.

Q. Okay. Are you currently taking any medications or do you have any medical conditions that could prevent you from giving complete and truthful testimony today?

A. No.

Q. If you don't understand my question, please ask me to clarify, and if you answer my question, I'm going to take that to mean that you understood what I was asking, okay?

A. Yes.

Q. And so to ensure that the record of today's deposition is clear and complete, please be sure to give verbal answers, because the court reporter can't write down that you nodded your head or shook your head. So please state everything out loud.

And as the court reporter mentioned previously, we'll try not to talk over each other so that everything can be put down clearly.

If at any point during the deposition you

Page 9

need to take a break, just let me know. I only ask that you don't take a break while a question is pending.

Is that okay?

A. Yes.

Q. During the deposition your counsel may object to some of my questions. If she objects, you still need to answer the question unless she specifically tells you not to.

Understood?

A. Yes.

Q. Okay. Did you do anything to prepare for this deposition?

A. I met with the lawyers.

Q. When you say the lawyers, who is that?

A. Abby, Mike and Patrice.

Q. And that would be Abby Davis, Mike Restey and Patrice --

A. Childress.

Q. I'm sorry. Childress, yes. Okay.

And you met with them in person or did you speak on the phone, over videoconference? How did you meet?

A. I met with them in person.

Q. In person.

Page 10

How many times?

A.    Twice.

Q.    Twice.  Okay.  And when were those meetings?

A.    One was in July, I believe.  I can't remember the exact date.  And the other one was yesterday.

Q.    Okay.  And how long were those meetings?

A.    The first one, I think, was maybe three to four hours, and yesterday was about six hours.

Q.    Okay.  Did you review any documents to prepare for today?

A.    We reviewed some documents.

Q.    Some documents.  Okay.

Were there any nonlawyers present at any of your meetings?

A.    They're all lawyers.  Yes.  No.

Q.    No, okay.

So you did not have any calls with counsel regarding this deposition?

A.    No.

Q.    Okay.  Did you speak to anyone that you work with or any of your associates about this deposition?

A.    No.

Page 11

Q.    No.

A.    I have one question.

Q.    Yes.

A.    When you say counsel, do you mean the lawyers?

Q.    Yes, I do.

A.    Okay.  Just making sure.

Q.    No problem.

And so you said you reviewed documents.  What kind of documents did you review?

A.    E-mails.

Q.    E-mails?  Okay.

And estimate how many documents you reviewed.  Rough estimate.

A.    Oh.  Could be 15 to 25, 30.

Q.    Okay.  Where did you go to college?

A.    My undergrad?

Q.    Yes.

A.    I went to University of Bosphorus in Istanbul, Türkiye.

Q.    Okay.  And when did you graduate?

A.    1999.

Q.    And what did you earn your degree in?

A.    I earned a Bachelor of Science in chemical engineering.

Page 12

Q.    And you mentioned undergrad.  Do you have further education?

A.    Yes.

Q.    And what is that?

A.    I have a PhD from University of Florida.

Q.    And what -- what is your PhD in?

A.    Chemical engineering.

Q.    Chemical engineering.

Do you have any further educational degrees, any additional PhDs?

A.    No.

Q.    Okay.  When did you begin working at Exxon?

A.    August 2006.

Q.    And where did you work before you started at Exxon?

A.    I was a postdoctoral, I guess, researcher or postdoctoral student at New Jersey Institute of Technology.

Q.    Okay.  And you went from there straight to Exxon?

A.    Yes.

Q.    Okay.  And what is your current title?

A.    Reservoir engineering supervisor.

Q.    Okay.  And what is it that you do as the

Page 13

reservoir engineering supervisor?

A.    I lead a team of reservoir engineers to develop a subsurface depletion plant.

Q.    And when you say reservoir engineers, what do reservoir engineers do?

A.    They develop depletion plans and production profiles for assets.

Q.    Okay.  And what are depletion plans?

A.    A depletion plan would be basically just how we produce an oil or a gas field.

Q.    Okay.  And you said production profiles.  What are production profiles?

A.    So it would basically show what the oil rates, gas rates and water rates are over time for a producing asset.

Q.    And when you say a producing asset, you mean like a well?

A.    Would be a combination of wells.

Q.    Okay.  And when you say oil rates, gas rates, rates of what?  Rates of production?

A.    Production, yes.

Q.    Okay.  Between 2019 and 2021, what was your title?

A.    2019 and 2021?

Q.    Yes.

Page 14

A.   I was a principal development planning engineer.

Q.   And what does a principal development planning engineer -- what do they do?

A.   A principal development planning engineer would mentor, coach and advise development planners on their work.

Q.   And what do development planners do?

A.   Development planners integrate inputs and assumptions from different functions and puts them together, helps a producing asset build a development plan.

Q.   And what is a development plan?

A.   A development plan would be basically producing rates, but also where they produce, what kind of facilities will produce it, and flowlines, takeaway capacities.

Q.   And what are flow lines?

A.   Oh, like oil and gas lines, pipelines.

Q.   Okay.  So how is a development plan used?  What is it used for?  What's its purpose?

A.   So a development plan is used to basically figure out how we're going to operate an oil or gas asset.

Q.   And in your role as the principal

Page 15

development planning engineer, did you also manage the development planning engineers that you mentored?  Were you their manager?

A.   No, I'm not their manager.

Q.   You're not their manager.

A.   No.

Q.   Was there a manager for the development planning engineers?

A.   Yes.

Q.   And who was that?

A.   Chuck Tautfest.

Q.   Okay.  And who is he?

A.   He is our development planning area manager for unconventional developments.

Q.   And what are unconventional developments?

A.   Unconventional developments would be the developments that produce oil and gas from tight formations.

Q.   And what are tight formations?

A.   They are formations that are actually like a smaller pore volumes, so they would require additional technology, like fracking.

Q.   What is fracking?

A.   Fracking is when a well is developed -- drilled and completed, you actually inject a water,

Page 16

and you basically open up the reservoir so it allows easier production.  So it fracs into the rock formation.  Fractures it.  That's -- fracs stands for -- short for fracture.

Q.   And I believe you mentioned a pore?  What is a pore?

MS. DAVIS:  Objection to form.
You can answer.

A.   A pore is just basically small holes in the ground.  It's...

BY MS. SALAMON:

Q.   Okay.  So other than mentoring and advising development planners, did you have any other job responsibilities?

MS. DAVIS:  Objection to form.
You can answer.

A.   I do train them.  I just basically help teams that ask for help.

BY MS. SALAMON:

Q.   Okay.  I want to take a look at Tab 8, and we're going to mark this as Ozen Exhibit 1.  And this is the e-mail and attachment e-mail with the Bates starting with 36416.

(Whereupon, Ozen Deposition Exhibit 1, E-mail(s) re: Updates to Permian

Page 17

Organization Charts - Effective August 1, 2019, EXXONPBA00036416 - EXXONPBA00036419, was marked for identification.)

BY MS. SALAMON:

Q.   And please take a moment to look that over.

(Document review.)

A.   All of it, or is there --

BY MS. SALAMON:

Q.   However much you feel comfortable with --

A.   Okay.

Q.   -- so that you feel familiar with the document.

(Document review.)

MS. DAVIS:  Can we go off the record for a moment?

MS. SALAMON:  Sure.

THE VIDEOGRAPHER:  We are going off the record at 9:15 a.m.

(Recess taken, 9:15 a.m. to 9:27 a.m. CDT)

(The following proceedings were conducted outside the presence of The Witness.)

THE VIDEOGRAPHER:  We are back on the

Page 18

record at 9:27 a.m.

MS. DAVIS: So it's come to my attention just a few moments ago that, minutes before starting this deposition, Mr. Restey was informed by Mr. Esmay that the plaintiffs in this case are going to be moving to file a new complaint, will be withdrawing their class certification motion, and are going to present us with a new scheduling stipulation later today that would extend all of the deadlines currently set in this case, including regarding class cert discovery.

As everyone knows in this room, we are in class cert discovery. This isn't merits discovery that can be used to amend a complaint. So we're not going to permit this deposition to go forward when there's still a bifurcation of class cert discovery and merits discovery.

We're also going to reserve all of our rights with respect to costs incurred with respect to this deposition because we find it hard to believe that it was only minutes before this deposition started that you-all knew that this was the plan going forward.

Page 19

MS. MOYNA: Okay. We note your comments. The one thing I do want to clarify is that the plaintiffs are not intending to withdraw their class cert motion that's been filed. We do just think that the rest of the class cert motion practice would be affected by our proposed amendment.

And so that's all I have to say at this time.

MS. DAVIS: So I think we're ready to go off the record. And for all these reasons, you know, Mr. Ozen will not be testifying today for a deposition for class cert discovery that appears to be being taken to get discovery to amend a complaint as if it were merits discovery.

MS. MOYNA: Yeah, I do have one more thing, which is just to object to your canceling or withdrawing the witness from this deposition, or however you want to phrase it. That's it.

THE VIDEOGRAPHER: We are going off the record at 9:29 a.m.

(Time noted: 9:29 a.m. CDT)

--o0o--

Case 3:21-cv-00204-N    Document 175    Filed 01/06/25    Page 18 of 131    PageID 5451

C E R T I F I C A T E

I, MICHAEL E. MILLER, FAPR, RDR, CRR, Notary Public, do hereby certify:

That OZGUR OZEN PhD, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by such witness;

That pursuant to FRCP Rule 30, signature of the witness was not requested by the witness or other party before the conclusion of the deposition;

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand on August 20, 2024.

_____
Michael E. Miller
Fellow of the Academy of Professional Reporters
Registered Diplomate Reporter
Certified Realtime Reporter

Notary Public in and for the
State of Texas

Case 3:21-cv-00124-N    Document 175    Filed 01/06/25    Page 19 of 131    PageID 5452

I HEREBY CERTIFY that I have read this transcript of my deposition, and that this transcript accurately states the testimony given by me, with the changes or corrections, if any, as noted.

X _____

OZGUR OZEN PhD

Case 3:21-cv-00194-N     Document 175     Filed 01/06/25     Page 20 of 131     PageID 5453

ERRATA SHEET FOR THE TRANSCRIPT OF:

CASE NAME: YOSHIKAWA v. EXXON MOBIL

DEP DATE:  August 20, 2024

DEPONENT:  OZGUR OZEN PhD

Pg. Ln.  Now Reads  Should Read      Reason

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

___ ___ _____ _____ _____

     X _____

          OZGUR OZEN PhD

# Exhibit C

Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 22 of 131    PageID 5455

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com.

https://www.wsj.com/articles/exxon-draws-sec-probe-over-permian-basin-asset-valuation-11610716622

◆ WSJ NEWS EXCLUSIVE BUSINESS

# Exxon Draws SEC Probe Over Permian Basin Asset Valuation

Whistleblower complaint alleges that lower-level employees were pressured to use unrealistic assumptions on drilling



Exxon has said the Permian Basin, the highest-producing U.S. oil field, remains essential to its plans.
PHOTO: CENGIZ YAR FOR THE WALL STREET JOURNAL

*By Christopher M. Matthews* [Follow]  *and Emily Glazer* [Follow]
Jan. 15, 2021 8:17 am ET

The Securities and Exchange Commission launched an investigation of Exxon Mobil Corp.  XOM **0.81%** ▲  after an employee filed a whistleblower complaint last fall alleging that the energy giant overvalued one of its most important oil and gas properties, according to people familiar with the matter.

Several people involved in valuing a key asset in the Permian Basin, currently the highest-producing U.S. oil field, complained during an internal assessment in 2019 that employees were being forced to use unrealistic assumptions about how quickly the company could drill wells there to arrive at a higher value, according to a copy of the complaint, which was reviewed by The Wall Street Journal.

At least one of the employees who complained was fired last year, according to a person familiar with the matter. The Journal previously reported that there had been internal disagreements over the valuation.

A-16

Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 23 of 131    PageID 5456



CEO Darren Woods's plans for the Permian Basin were viewed by some employees as unrealistic.
PHOTO: BRENDAN MCDERMID/REUTERS

The SEC began investigating the claims after receiving the complaint, people familiar with the matter said. The current status of the investigation is unknown. A SEC spokesman declined to comment.

Exxon spokesman Casey Norton declined to comment on the existence of an investigation. He said that if asked by authorities about the 2019 assessment, Exxon would provide information that shows Exxon's actual performance exceeded the drilling estimates. Mr. Norton also said Exxon doesn't comment on employees' performance.

"We cannot comment on the reasons for an unnamed employee's separation from the company," Mr. Norton said.

Under the SEC whistleblower program, individuals who provide information that results in a penalty can receive a share of the monetary penalty.

The investigation might now fall to an appointee of the incoming Biden administration, which is expected to choose Gary Gensler, a former financial regulator and Goldman Sachs Group Inc. executive, to head the SEC, the Journal reported Tuesday.

Exxon endured one of its worst-ever financial performances in 2020, posting billions of dollars in losses following an unprecedented decline in fossil-fuel demand as the coronavirus spread around the globe.

In November, Exxon pulled back from an ambitious plan by Chief Executive Darren Woods to boost its overall oil and gas production by one million barrels a day by 2025. The company said it would cut billions of dollars from its capital expenditures over the next five years and invest only in its best assets. Still, Exxon has said the Permian Basin, in West Texas and New Mexico, remains essential to its plans.

As the Journal previously reported, Mr. Woods's Permian growth plans dismayed some Exxon employees, who viewed them as unrealistic.

A-17

In March 2019, Mr. Woods said Exxon would increase oil and gas production in the Permian to one million barrels a day as early as 2024, up from previous estimates of 600,000 by 2025. The new target would amount to roughly 25% of Exxon's overall production before the Covid-19 pandemic. It hasn't updated its production targets there since announcing budget cuts in November.

"No one I knew in the organization thought this was possible; the pressure to deliver on Woods's promise to the market permeated the organization," the whistleblower said in the complaint.

Key to Mr. Woods's goal was ramping up production on Permian acreage Exxon acquired in 2017 for $6.6 billion in an area called the Delaware Basin. Exxon has regularly touted the asset as its most promising area in the Permian.

"For our largest resource, which is in the Delaware Basin, we're only just about to unleash the hounds," said Neil Chapman, who heads Exxon's oil and gas division, during the company's annual investor day last March.

As the Journal previously reported, some Exxon managers in 2018 had initially pegged the net present value of the Delaware Basin at about $60 billion. But some employees involved in Exxon's annual development planning estimated during the summer of 2019 that the area's net present value was closer to $40 billion.

### 'The pressure to deliver on Woods's promise to the market permeated the organization.'

— Whistleblower complaint

According to the whistleblower complaint, the lower estimate reflected, in part, that it took longer than expected to drill wells in 2018. After employees delivered the new number to the Delaware development manager, she allegedly asked them to "claw back" some of the lost value, according to the complaint, by using different assumptions, including a more optimistic "learning curve" that estimated the rate at which they would improve drilling times.

Some employees objected to using the new learning curve, which they viewed as unrealistic, and one employee submitted the revised estimates in a file named "This is a Lie," according to the complaint. The development planners ultimately estimated that the net present value was $50 billion.

Exxon previously told the Journal that it was common for disagreements during planning processes and that the company's performance in the Permian has exceeded expectations.

While the company has never publicly disclosed the Delaware Basin valuation, it has made pronouncements about its progress there. In March, Mr. Chapman said the company had steadily improved drilling times and costs.

A-18

Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 25 of 131    PageID 5458

"What we're drilling is more efficiently every year," Mr. Chapman said in March. "In fact, we're drilling more efficiently every month. If I thought that we were operating inefficiently, I will be the first to pull back."

*—Dave Michaels contributed to this article.*

**Write to** Christopher M. Matthews at christopher.matthews@wsj.com and Emily Glazer at emily.glazer@wsj.com

*Appeared in the January 16, 2021, print edition as 'Exxon Probed Over Asset Valuation'.*

A-19

# Exhibit D

# EXHIBIT A

**U.S. DEPARTMENT OF LABOR**          Occupational Safety and Health Administration
                                      525 S. Griffin Street, Room 602
                                      Dallas, TX 75202
                                      Tel: (972) 850-4148
                                      www.whistleblowers.gov



**VIA EMAIL:** Richard.Cino@jacksonlewis.com

October 6, 2022

Exxon Mobil Corporation
c/o Richard Cino, Esq.
Jackson Lewis P.C.
200 Connell Drive, Suite 2000
Berkeley Heights NJ 07922

Re: Exxon Mobil Corporation / Gulden and Burch/ 6-1730-21-120

Dear Mr. Cino:

This is to advise you that we have completed our investigation of the above-referenced complaint filed by Attorney Neil Henrichsen on behalf of his clients Dr. Lindsey Gulden, and Dr. Damian Burch (Complainants) against Exxon Mobil Corporation [1] ("ExxonMobil" or "Respondent") on February 10, 2021, under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A. In brief, Complainants allege retaliation for engaging in SOX-related protected activity throughout 2019 and 2020 and were terminated for Respondent's belief that Complainants provided information to a reporter at the Wall Street Journal (WSJ).

Following an investigation by a duly-authorized investigator, the Secretary of Labor, acting through his agent, the Regional Administrator for the Occupational Safety and Health Administration (OSHA), Region VI, finds that there is reasonable cause to believe that Respondent violated SOX and issues the following findings:

**Secretary's Findings**

*Timeliness of complaint*

On February 10, 2021, Complainants Dr. Lindsey Gulden and Dr. Damian Burch filed a complaint with the Secretary of Labor alleging Respondent retaliated against them in violation of SOX when Respondent terminated Dr. Gulden on October 23, 2020, and Dr. Burch on December 10, 2020, because they raised issues about the valuation of oil wells with Respondent's management, which they believed overinflated Respondent's SEC filings and information Respondent disclosed to the public. Since a Complainant has 180 days to file a complaint, the instant complaint is timely filed.

---

[1] . "Exxon Mobil Corporation" is the corporate name, but Respondent tends to refer to itself as "ExxonMobil" (This appears 255 times in their FY2021 10-K).

**Exxon Mobil Corporation / Gulden and Burch/ 6-1730-21-120**                    **2**

*Coverage*

Respondent is a company within the meaning of 18 U.S.C. § 1514A in that it is a company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) or a company required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d)).

Complainants were employees within the meaning of 18 U.S.C. § 1514A. In the course of their employment, Complainants worked as Computational Scientists.

*Findings of the investigation:*

ExxonMobil employed Dr. Lindsey Gulden as a Computational Scientist/Team Lead in Upstream Integrated Solutions. Dr. Gulden's responsibilities included making analytic technical contributions, building, managing, and executing a portfolio of projects in which analytics and optimization capability could assist decision-makers in the Upstream Oil and Gas division.

ExxonMobil employed Dr. Damian Burch as a Computational Scientist in Development Planning in Global Projects. Additionally, Dr. Burch assisted as the Development Planner in the Unconventional Development Planning Group (i.e., "Delaware Planning Team") in the Upstream Development Planning division of ExxonMobil Global Projects. Dr. Burch's responsibilities included simulating the long-term development of ExxonMobil properties, performing economic analyses of different development strategies, and developing new strategies that could improve the economics of a property.

On April 26, 2019, Respondent filed an SEC Form 8-K in which it claimed: "ExxonMobil has revised its Permian Basin growth plans to produce more than 1 million oil-equivalent barrels per day by as early as 2024. The size of the company's resource base in the Permian is approximately 10 billion oil-equivalent barrels and is likely to grow further as analysis and development activities continue." Dr. Gulden and Dr. Burch believed this statement was not accurate and they informed management about the misleading SEC filings.

The Complainants disagreed with the SEC filing because Dr. Gulden analyzed publicly available drilling-time data for more than 10,000 wells in the Delaware Basin[2] and observed that, while drilling times had fallen between the late 2000s and early 2010, drilling times over the past several years remained essentially unchanged. Dr. Gulden forwarded the results of her study to Dr. Burch and the supervisor of the Delaware Development Planning team, Mr. Ozgur Ozen. Dr. Gulden's study also supported Dr. Burch's objections to "learning curve assumptions" made by Melissa Bond, who was a Senior Manager in Respondent's Upstream Oil & Gas division. The "learning curve" was an assumption that drilling speed would increase substantially over the next five years. Complainants believed that this assumption was not accurate and was used to artificially inflate the production estimates and the Net Present Value (NPV) of the wells. Respondent then used the artificially inflated production estimates in their SEC filings.

---

[2] The Delaware Basin is a geologic depositional and structural basin in West Texas and southern New Mexico, it is part of the larger Permian Basin.

**Exxon Mobil Corporation / Gulden and Burch/ 6-1730-21-120**                                                3

On June 18, 2019, Dr. Burch sent an email to the Delaware Basin Team, including Mr. Ozgur Ozen, with his results using assumptions with the learning curve modeling against assumptions without the learning curve modeling. Dr. Burch's analysis revealed a lower NPV than what the Respondent had disclosed publicly.

On June 19, 2019, Dr. Burch followed up on his June 18, 2019, email writing "I REALLY regret adding the learning curve to my model. Note that D&C learning is solely responsible for a 45% increase in our 2025 production forecasts in Rojo-Coyanosa. But remember, we're telling investors that no efficiency improvements are needed to reach our 2025 production target (though we're also telling investors that we don't have production targets)." Dr. Burch made it clear to management that he disagreed with the NPV analysis and believed Respondent was artificially inflating its oil production capacity to improve Respondent's public filings.

On October 23, 2019, during an all-hands meeting of the Delaware Basin Development Planning Team, Dr. Burch raised a concern about the Respondent's desire to reach projected oil production using assumptions in the learning curve modeling that would double drilling speed in the next five years. Dr. Burch did not believe this was supported by the models. Dr. Burch raised these concerns to Senior Manager Melissa Bond. Shortly after the meeting, Dr. Gulden reported to Respondent's Human Resources what she believed to be potential securities fraud surrounding the learning curve model(s) and what was reported to the public. Both Complainants raised issues with Respondent's analysis of oil production in the Delaware Basin. They believed it was artificially inflated and Respondent was misleading the public and the SEC in their filings. Both complainants expressed these concerns to management, and in doing so, they engaged in SOX-protected activity.

On November 14, 2019, Dr. Burch sent an email to the Respondent's Human Resources, which said: *"our organization was misleading senior management this summer. Basically, they asked us to turn any knobs we could in our modeling software to get the forecasts NPV* (Net Present Value) *up, and (a) they didn't care whether or not those new assumptions were realistic (they weren't) and (b) they didn't make any changes that would be required to try to operationalize these new assumptions. The biggest offender was the "learning curve", which is an assumption that we'll more than double our drilling speed in the next five years."*. Dr. Burch's email makes it clear that he was worried about the forecasted NPV and believed it to be inaccurate; he raised these issues multiple times with management, thus engaging in SOX-protected activity.

On August 27, 2020, the Wall Street Journal (WSJ) contacted ExxonMobil's Public & Government Affairs department (P&GA) regarding an article they intended to publish regarding the Company's development plans for the Permian Basin, in particular the Delaware Basin.

Following WSJ's notice of their forthcoming article, Beth Casteel, Respondent's Audit Team and Security Director immediately initiated an investigation into whether company information had been improperly disclosed to the WSJ. ExxonMobil identified employees who had worked with or had access to data related to the Delaware Basin. Respondent claimed it reviewed the electronic records for approximately 10 employees to determine if any of those employees sent company information outside the company. During the Audit Team's investigation, they singled out Dr. Gulden and Dr. Burch.

**Exxon Mobil Corporation / Gulden and Burch/ 6-1730-21-120**                          **4**

On September 9, 2020, Dr. Burch reported, via email, to his manager Charles Tautfest that he had received a text message the day prior from a reporter wanting to talk about the Delaware Basin. The next day, Dr. Burch notified the P&GA of the text message he received from the WSJ reporter.

On September 13, 2020, the WSJ article titled *"Exxon Used to Be America's Most Valuable Company. What Happened?"* was published.[3] The article identified that it had interviewed over 20 current and former employees. It named former ExxonMobil geoscientist, Enrique Rosero, who said he was punished for asking questions about the company's climate strategy. Mr. Rosero, who left the company on July 21, 2020, is Dr. Gulden's husband.

OSHA's interviews of Respondent's audit team revealed that the audit team told Michael Deal, Vice-President of the Upstream for Research Technology & Digital Development, that the Audit Team believed since Dr. Gulden's husband was quoted in the article she was "guilty" by association and probably assisted in the WSJ article**.**

On October 23, 2020, Dr. Gulden was terminated, a little over a month after the WSJ article was published.

Respondent reported to OSHA that the audit identified multiple large files that Dr. Burch had sent from his work computer to his personal email which were concerning to Respondent because of their size and subject headings (i.e., plots, figures, update figures, and decision plots). Respondent believed these files contained classified company information. However, during OSHA's interview with the lead audit team investigator, he admitted he was unable to ascertain what specifically was in the files. Dr. Burch denied he had sent any confidential information outside of the office and that, rather, the information Burch emailed to his personal address was used to prepare a white paper on a model dealing with valuing options for development planning.

On December 10, 2020, Dr. Burch was terminated for allegedly providing company information to the WSJ, not fully cooperating in the internal investigation surrounding the article, and transferring company information to his personal email account. Dr. Burch denied sending any confidential information to his personal email.

### *Respondent's Defense*

Respondent asserted employees are required to protect company assets and are prohibited from disclosing company information. Respondent further asserts that all employees must certify each year that they have read and complied with these standards, which both Dr. Gulden and Dr. Burch executed. As employees and IT users, Burch and Gulden were subject to ExxonMobil's Key IT User Responsibilities guidance, including:

1. Company information and systems on any computer, mobile device, and/or network are the property of ExxonMobil.
2. ExxonMobil monitors the use of its systems to detect security problems, mitigate IT

---

[3] Available at: https://www.wsj.com/articles/exxon-used-to-be-americas-most-valuable-company-what-happened-oil-gas-11600037243

Case 3:22-cv-07418   Document 1-1   Filed 12/20/22   Page 6 of 13 PageID: 19
Case 3:21-cv-00194-N     Document 175     Filed 01/06/25     Page 32 of 131     PageID 5465
**Exxon Mobil Corporation / Gulden and Burch/ 6-1730-21-120**                                    **5**

security risks, detect and prevent unauthorized transmission of Company data or personal information, ensure proper use of systems …

3. Failure to follow the Key IT User Responsibilities guidance may result in possible irregularity investigation and disciplinary action up to and including termination.

Respondent asserted that an investigation was initiated in August 2020 and that the investigation was not related to any alleged 2019 complaints by Complainants.  Respondent claims the investigation was triggered after Respondent was contacted by a reporter from the WSJ informing ExxonMobil of its plan to publish an article regarding, among other things, the company's development of its Permian assets. Respondent claims that it terminated both Complainants as a result of its findings from the internal investigation.

Respondent asserted Dr. Gulden was among the small group of individuals who worked with or had access to Delaware Basin data referred to in the WSJ article. Moreover, Dr. Gulden was married to Rosero, who was quoted in the article. As a result, in August 2020 ExxonMobil identified Dr. Gulden as someone who may have disclosed Company information and began a review of her electronic communications. In doing so, an audit identified communications in which Gulden had expressed negative opinions about the company. The audit also discovered emails Gulden had prepared[4] to individuals at other companies in pursuit of alternative employment. The emails were all dated around the time that ExxonMobil was contacted by the WSJ and the publication of the WSJ article. ExxonMobil was faced with the prospect of continuing to employ an individual who was the spouse of the former employee quoted in the WSJ article, who had expressed negative sentiments about the company, and who would continue to have access to sensitive company information, all while apparently seeking employment elsewhere. As a result, ExxonMobil alleges that it lost confidence in Gulden as an employee and terminated her employment on October 23, 2020.

On September 3, 2020, Respondent's audit identified multiple large files Burch had sent from his work computer to his personal email address. Exxon alleges the emails were of particular concern given both the size of the files and the file names which appeared to correspond to some of the topics in the WSJ article. For example, during the period between June 14 and July 4, 2020, Dr. Burch sent approximately 6.5 MB of data to his personal email address. The emails had subject headings including "Plots," "Figures," "Updated Figures," and "Decision Plot." A number of the files attached to the emails had names containing words that indicated the information in the files pertained to ExxonMobil work, including "WELL_NET_CASH_FLOW," "WELL_DECLINE_CURVE," and "WELL_CASH_STREAMS."

On September 9, 2020, Dr. Burch emailed his manager, Charles Tautfest, advising him that he received a "weird text" message the prior day from a WSJ reporter wanting to talk about the Delaware Basin. Dr. Burch said he deleted the text. The next day, Dr. Burch notified P&GA of the reporter's text.

In conversations with the WSJ reporter Respondent claimed that the reporter had access to Dr. Burch's emails containing spreadsheets with Permian projections. Respondent alleged the reporter also made other comments indicating he had information from Dr. Burch.

---

[4] It is unclear if the emails were ever sent.

Case 3:22-cv-07418   Document 1-1   Filed 12/20/22   Page 7 of 13 PageID: 20
Case 3:21-cv-00194-N   Document 175   Filed 01/06/25   Page 33 of 131   PageID 5466
Exxon Mobil Corporation / Gulden and Burch/ 6-1730-21-120                                      6

Respondent theorized that Dr. Burch sent emails outside the company's network to his personal email address shortly before the WSJ article was published and gave the data to the reporter. According to Respondent, the emails Dr. Burch sent to his personal email address appeared to contain information related to his Delaware Basin work. Neither Respondent nor Dr. Burch could prove what was in the files. Dr. Burch alleged the emails did not contain company data but could not substantiate his claim because he deleted the files. Respondent alleges that, in addition to deleting and modifying files during the course of the company's investigation, Dr. Burch did not fully cooperate with the investigation. Respondent alleges Dr. Burch provided incomplete answers and inconsistent responses. Respondent contends that in meetings with the audit team and in light of the information provided, the company terminated Dr. Burch's employment on December 10, 2020.

### Due Process

On May 6, 2022, OSHA sent a letter to Respondent, pursuant to 29 C.F.R. §1980.104(f), advising Respondent that OSHA has reasonable cause to believe that Respondent violated SOX when it terminated both Complainants. The letter further advised that Respondent had failed to provide clear and convincing evidence that it would have taken the same adverse actions in the absence of protected activity. The letter afforded Respondent an opportunity to submit rebuttal evidence.

On July 1, 2022, Respondent responded to the §1980.104(f) letter asserting that Complainants had failed to establish that they had engaged in activity protected by SOX that contributed to their terminations and that, in any event, Respondent would have terminated Complainants due to the results of the internal investigation even absent any protected activity.  Respondent's position rests primarily on its argument that disclosures to the media are not a protected activity under SOX, citing *Tides v. Boeing, Co.,* 644 F.3d 809 (9th Cir. 2011). While OSHA reviewed Respondent's submissions on the matter and analyzed their various arguments, OSHA believes Respondent's submissions did not demonstrate by clear and convincing evidence that the adverse action would have occurred absent the protected activity.  Neither Complainant had any disciplinary history and both had exemplary work records.  The evidence shows that neither Complainant was in danger of any disciplinary action, much less losing their job until Respondent suspected them of providing information to the WSJ.

### Analysis

Respondent claims that the leading case regarding whether providing information to the media constitutes protected activity under SOX is *Tides v. Boeing, Co.,* 644 F.3d 809 (9th Cir. 2011). But in that case, the Ninth Circuit held that employees' communications with the news media were not protected activities under section 806(a)(1) of SOX. The Court *did not address* whether communications with the media are protected under section 806(a)(2) of SOX.

Moreover, the Administrative Review Board (ARB or the Board) has consistently interpreted other whistleblower provisions with language virtually identical to that found in section 806(a)(2) as protecting from retaliation an employee's communications with the news media that could result in the exposure of employer wrongdoing. In reaching this conclusion, the Board has reasoned that the whistleblower protection provisions encompass not only the actual institution of formal proceedings but also communications with the news media about employer wrongdoing since such communications essentially are the first step in a process that could result in the initiation of formal proceedings.

A-26

**Exxon Mobil Corporation / Gulden and Burch/ 6-1730-21-120**                                    **7**

Therefore, consistent with the Secretary's interpretation of virtually identical language in the other whistleblower statutes, OSHA concludes that section 806(a)(2) of SOX protects an employee's communications with the news media relating to an alleged violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders. Here, Complainants engaged in protected activity several times in 2019 and 2020 when they raised their concerns to Respondent's management that the assumptions leading to the estimated NPV of the Permian Basin were inaccurate and how those assumptions were included in misleading statements in SEC filings. These concerns were ultimately the subject of the 2020 WSJ article and a subsequent lawsuit alleging shareholder fraud. Complainants had a reasonable belief that the Respondent's statements in their SEC filings were inaccurate.  Complainants raised these concerns internally and Respondent was aware of this protected activity.

Further, based on the record as a whole, OSHA finds that Respondent's belief that Complainants provided information to the WSJ, alleged violations of section 1341, 1343, 1344, 1348 or any rule or regulation of the SEC or any Federal law relating to fraud against shareholders, contributed to Respondent's termination of Complainants' employment.  Though Respondent asserts that it terminated Complainants based on the findings of Respondent's internal investigation, that internal investigation was launched and ultimately narrowed to focus on Complainants due to their suspected communications with the WSJ.

Respondent has failed to provide clear and convincing evidence that it would have taken the same adverse action in the absence of Complainants' actual or suspected protected activity. As noted above, although Respondent asserts that it fired Complainants based on the findings of its internal investigation, Respondent has failed to show that it would have even investigated Complainants (much less fired them) in the absence of Respondent's suspicion that Complainants provided information to the WSJ.  While Respondent claimed that other employees could be disciplined for improper use and disclosure of Company information, they <u>did not</u> provide any evidence that other employees had ever been disciplined for the violation. Therefore, OSHA has reasonable cause to believe that Respondent violated the whistleblower provision of SOX and Complainants are entitled to relief.

Complainants suffered financial hardship and mental anguish because Respondent illegally retaliated against them in violation of SOX. The terminations were devastating for Complainants, who are high-level professionals, neither of whom had ever been terminated from a position. Complainant Gulden had to move her family to Massachusetts in order to find suitable work. Complainant Burch experienced stress related to the retaliatory actions of Respondent and was forced to seek treatment. Both Complainants' family members suffered anxiety and stress due to the actions of Respondent. Compensatory damages for pain and suffering are warranted.

**Exxon Mobil Corporation / Gulden and Burch/ 6-1730-21-120**                                    **8**

## PRELIMINARY ORDER

1.  Upon receipt of this Secretary's Finding and Preliminary Order, Respondent shall immediately reinstate both Complainants to their former positions. Such reinstatement shall include all salary, benefits, rights, and seniority that Complainants would have enjoyed had they never been illegally discharged. Such reinstatement is not stayed by an objection to this order.

### *Dr. Gulden*

2.  Respondent shall pay Dr. Gulden back pay (minus interim earnings) in the amount of $240,727.77, for the period starting October 24, 2020, through October 6, 2022. Back wages will continue to accrue until paid.

3.  Respondent shall pay Dr. Gulden interest on the back wages totaling $9,009.45 at the IRS underpayment rate at 26 U.S.C. § 6621, compounded daily as of October 6, 2022. Interest on any unpaid amount of back wages will continue to accrue until paid.

4.  Respondent shall pay Dr. Gulden compensatory damages in the amount of $144,338.05, for the following:

    - Moving expenses from Texas to Massachusetts in the amount of $21,039.44
    - Travel and job-hunting expenses in the amount of $3,000.00
    - Pecuniary damages surrounding Respondent's 401K matching contribution for years 2020, 2021, and 2022 of $45,298.61 which includes interest as of October 6, 2022
    - Pain and suffering, including mental distress of $50,000.00
    - Return moving expenses from Massachusetts to Texas in the amount of up to $25,000.00, with Dr. Gulden submitting receipts for actual costs.[5]

5.  Respondent shall submit the appropriate documentation to the Social Security Administration allocating back pay to the appropriate calendar days of October 24, 2020, through October 6, 2022.

6.  Respondent shall pay reasonable attorney's fees.

7.  Respondent shall expunge Complainant's employment records of any reference to the exercise of her rights under SOX. Specifically, Respondent shall expunge the termination of October 23, 2020.

### *Dr. Burch*

8.  Respondent shall pay Dr. Burch back pay (minus interim earnings) in the amount of $251,099.20, for the period starting December 11, 2020, through October 6, 2022. Back wages will continue to accrue until paid.

---

[5] Payable if Complainant accepts reinstatement.

**Exxon Mobil Corporation / Gulden and Burch/ 6-1730-21-120**                                    **9**

9. Respondent shall pay Dr. Burch interest on the back wages in the amount of $7,462.22 at the IRS underpayment rate at 26 U.S.C. § 6621, compounded daily, as of October 6, 2022. Interest on any unpaid amount of back wages will continue to accrue until paid.

10. Respondent shall pay Dr. Burch compensatory damages in the amount of $114,971.91, for the following:

     - Medical expenses of $5,000.00
     - Pain and suffering including mental distress of $25,000.00
     - 700 unvested shares in ExxonMobil at $53.98 a share at the time of his termination worth $37,786.00
     - Pecuniary damages surrounding Respondent's 401K matching contribution for years, 2020, 2021, and 2022 of $47,185.91 which includes interest as of October 6, 2022.

11. Respondent shall reinstate Dr. Burch's right to exercise stock options pursuant to Respondent's policy. Dr. Burch's enrolment shall be deemed to have been continuous for purposes of vesting requirements.

12. Respondent shall submit the appropriate documentation to the Social Security Administration allocating back pay to the appropriate calendar days of October 24, 2020, through October 6, 2022.

13. Respondent shall expunge Complainant's employment records of any reference to the exercise of his rights under SOX. Specifically, Respondent shall expunge the termination of December 11, 2020.

14. Respondent shall pay reasonable attorney's fees.

**Other Relief**

15. Respondent shall expunge Complainants' employment records of any reference to the exercise of their rights under SOX. Respondent shall ensure that the facts and circumstances related to this complaint are not used against Complainants to deny them any future opportunities with the Respondent and that no negative references relating to the facts and circumstances related to this complaint are provided to any prospective future employers. Respondent shall expunge all records of Complainants' termination from their personnel record.

16. Respondent shall not retaliate or discriminate against Complainants in any manner for instituting or causing to be instituted any proceeding under or related to the Sarbanes-Oxley Act, 18 U.S.C.A. §1514A.

17. Respondent shall post immediately in a conspicuous place in or about Respondent's facility located at 2777 Springwoods Village Parkway, N1.4B.478, Spring, TX 77389, in all places where notices for employees are customarily posted, including Respondent's internal website for employees or by e-mail, if Respondent customarily uses one or more of these electronic methods for communicating with employees, and maintain for a period of at least 60

A-29

**Exxon Mobil Corporation / Gulden and Burch/ 6-1730-21-120**                                                    **10**

consecutive days from the date of posting the attached notice to employees, to be signed by a responsible official of Respondent and the date of actual posting to be shown thereon.

Either party has 30 days from the receipt of these Findings to file objections and to request a hearing before an Administrative Law Judge (ALJ). If no objections are filed, these Findings will become final and not subject to court review. Objections must be filed in writing with the Office of Administrative Law Judges:

> Primary method - via email to: OALJ-Filings@dol.gov
> Secondary method (if unable to file via email) - via hard copy submission to:
> Chief Administrative Law Judge - Office of Administrative Law Judges
> U.S. Department of Labor
> 800 K Street NW, Suite 400 North
> Washington, D.C. 20001-8002
> Telephone: (202) 693-7300; Fax: (202) 693-7365

With copies to:

> All parties to this complaint.

And:

> Primary method - via email to: R6.11c.OSHA@dol.gov
> Secondary method (if unable to file via email) - via hard copy submission to:
> Regional Administrator
> U.S. Department of Labor-OSHA
> 525 S. Griffin Street
> Room 602
> Dallas, TX 75202

In addition, please be advised that the U.S. Department of Labor generally does not represent any party in the hearing; rather, each party presents his or her own case. The hearing is an adversarial proceeding before an Administrative Law Judge (ALJ) in which the parties are allowed an opportunity to present their evidence de novo for the record. The ALJ who conducts the hearing will issue a decision based on the evidence, arguments, and testimony presented by the parties. A review of the ALJ's decision may be sought from the Administrative Review Board, to which the Secretary of Labor has delegated responsibility for issuing final agency decisions under the SOX. A copy of this letter has been sent to the Chief Administrative Law Judge along with a copy of the complaint. The rules and procedures for the handling of SOX cases can be found in Title 29, Code of Federal Regulations Part 1980, and may be obtained at www.whistleblowers.gov

Sincerely,

Michael Mabee
Assistant Regional Administrator - Whistleblower Protection Program

A-30

**Exxon Mobil Corporation / Gulden and Burch/ 6-1730-21-120**                                      **11**

Enclosure: Notice to Employees

cc:      Chief Administrative  Law Judge, USDOL

      U.S. Securities and Exchange Commission

      U. S. Department of Justice, Civil Frauds Division

      Neil Henrichsen, Esq.
      Henrichsen Law Group P.L.L.C.
      301 W. Bay Street, Suite 1400 (14th Floor)
      Jacksonville, FL 32202
      VIA EMAIL: nhenrichsen@hslawyers.com

# NOTICE TO EMPLOYEES

## PURSUANT TO AN ORDER BY THE U.S. DEPARTMENT OF LABOR, OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION:

**EXXON MOBIL CORPORATION** has been ordered to reinstate and make whole two employees who were found to have been retaliated against for exercising their rights under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A (SOX).

**PURSUANT TO THAT ORDER, NEITHER EXXON MOBIL CORPORATION NOR ANY OF ITS SUBSIDIARIES WILL:**

1. Discharge or in any manner discriminate against any employee because such employee has engaged in any activity, filed any complaint or instituted or caused to be instituted any proceeding under or related to the employee protection provisions of Section 806 of the Corporate and Criminal Fraud Accountability Act, Title VII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. §1514A (SOX), or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself/herself or others of any right afforded by SOX.

2. Discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee because such employee provided information, caused information to be provided, or otherwise assisted in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of 18 U.S.C. section 1341 (mail fraud), 1343 (wire fraud), 1344 (bank fraud), or 1348 (securities fraud), any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

3. Harass, intimidate or retaliate against employees because such employees contacted, spoke with, or cooperated with Occupational Safety and Health Administration (OSHA) officials or other government officials during the course of an investigation.

_____

Exxon Mobil Corporation                                    Date

**THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE. THIS NOTICE MUST REMAIN POSTED FOR 180 CONSECUTIVE DAYS FROM THE DATE OF POSTING AND MUST BE NOT ALTERED, DEFACED, OR COVERED BY OTHER MATERIAL.**



www.osha.gov

A-32

# Exhibit E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

**JANET ADAMS and RANDY ADAMS,**          §
                                          §
**Plaintiffs,**                           §
                                          §
                                          §
**v.**                                    §    **Civil Action No.: 4:19-cv-870-SDJ-KPJ**
                                          §
**MEDTRONIC, INC.,** *et al.*,            §
                                          §
**Defendants.**                           §
                                          §
                                          §
                                          §

### PROTECTIVE ORDER

Pending before the Court is the parties' Joint Motion for Entry of Standard Protective Order (the "Motion") (Dkt. 21). Upon consideration, the Motion (Dkt. 21) is hereby **GRANTED**, and the terms of the Protective Order are set forth below:

### Proceedings and Information Governed.

1.      This Order ("Protective Order") is made under Fed. R. Civ. P. 26(c). It governs any document, information, or other thing furnished by any party to any other party, and it includes any nonparty who receives a subpoena in connection with this action. The information protected includes, but is not limited to: answers to interrogatories; answers to requests for admission; responses to requests for production of documents; deposition transcripts and videotapes; deposition exhibits; and other writings or things produced, given or filed in this action that are designated by a party as "Confidential Information" or "Confidential Attorney Eyes Only Information" in accordance with the terms of this Protective Order, as well as to any copies,

PROTECTIVE ORDER – PAGE 1

A-33

excerpts, abstracts, analyses, summaries, descriptions, or other forms of recorded information containing, reflecting, or disclosing such information.

**Designation and Maintenance of Information.**

2.      For purposes of this Protective Order, (a) the "Confidential Information" designation means that the document is comprised of trade secrets or commercial information that is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Fed. R. Civ. P. 26(c)(7), or other information required by law or agreement to be kept confidential and (b) the "Confidential Attorney Eyes Only" designation means that the document is comprised of information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, or any other sensitive trade secret information.   Confidential Information and Confidential Attorney Eyes Only Information does not include, and this Protective Order does not apply to, information that is already in the knowledge or possession of the party to whom disclosure is made unless that party is already bound by agreement not to disclose such information, or information that has been disclosed to the public or third persons in a manner making such information no longer confidential.

3.      Documents and things produced during the course of this litigation within the scope of paragraph 2(a) above, may be designated by the producing party as containing Confidential Information by placing on each page and each thing a legend, or otherwise conspicuously designating electronically stored information, substantially as follows:

**CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER**

PROTECTIVE ORDER – PAGE 2

Documents and things produced during the course of this litigation within the scope of paragraph 2(b) above may be designated by the producing party as containing Confidential Attorney Eyes Only Information by placing on each page and each thing a legend, or otherwise conspicuously designating electronically stored information, substantially as follows:

**CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER**

A party may designate information disclosed at a deposition as Confidential Information or Confidential Attorney Eyes Only Information by requesting the reporter to so designate the transcript or any portion of the transcript at the time of the deposition.   If no such designation is made at the time of the deposition, any party will have fourteen (14) calendar days after the date of the deposition to designate, in writing to the other parties and to the court reporter, whether the transcript is to be designated as Confidential Information or Confidential Attorneys Eyes Only Information.   If no such designation is made at the deposition or within this fourteen (14) calendar day period (during which period, the transcript must be treated as Confidential Attorneys Eyes Only Information, unless the disclosing party consents to less confidential treatment of the information), the entire deposition will be considered devoid of Confidential Information or Confidential Attorneys Eyes Only Information.   Each party and the court reporter must attach a copy of any final and timely written designation notice to the transcript and each copy of the transcript in its possession, custody or control, and the portions designated in such notice must thereafter be treated in accordance with this Protective Order. It is the responsibility of counsel for each party to maintain materials containing Confidential Information or Confidential Attorney Eyes Only Information in a secure manner and appropriately identified so as to allow access to

PROTECTIVE ORDER – PAGE 3

such information only to such persons and under such terms as is permitted under this Protective Order.

### Inadvertent Failure to Designate.

4.      The inadvertent failure to designate or withhold any information as confidential or privileged will not be deemed to waive a later claim as to its confidential or privileged nature, or to stop the producing party from designating such information as confidential at a later date in writing and with particularity. The information must be treated by the receiving party as confidential from the time the receiving party is notified in writing of the change in the designation.

### Challenge to Designations.

5.      A receiving party may challenge a producing party's designation at any time.   Any receiving party disagreeing with a designation may request in writing that the producing party change the designation.   The producing party will then have ten (10) business days after receipt of a challenge notice to advise the receiving party whether or not it will change the designation. If the parties are unable to reach agreement after the expiration of this ten (10) business day time-frame, and after the conference required under LR 7. 1(a), the receiving party may at any time thereafter seek an order to alter the confidential status of the designated information.   Until any dispute under this paragraph is ruled upon by the presiding judge, the designation will remain in full force and effect, and the information will continue to be accorded the confidential treatment required by this Protective Order.

### Disclosure and Use of Confidential Information.

6.      Information designated as Confidential Information or Confidential Attorney Eyes Only Information may only be used for purposes of preparation, trial, and appeal of this action.

PROTECTIVE ORDER – PAGE 4

Confidential Information or Confidential Attorney Eyes Only Information may not be used under any circumstances for any other purpose.

7.      Subject to paragraph 9 below, Confidential Information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

(a) employees of the receiving party who are required in good faith to provide assistance in the conduct of this litigation, including any settlement discussions, and who are identified as such in writing to counsel for the designating party in advance of the disclosure;

(b) in-house counsel who are identified by the receiving party;

(c) outside counsel for the receiving party;

(d) supporting personnel employed by (b) and (c), such as paralegals, legal secretaries, data entry clerks, legal clerks, and private photocopying services;

(e) experts or consultants; and

(f) any persons requested by counsel to furnish services such as document coding, image scanning, mock trial, jury profiling, translation services, court reporting services, demonstrative exhibit preparation, or the creation of any computer database from documents.

8.      Subject to paragraph 9 below, Confidential Attorney Eyes Only Information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

(a) outside counsel for the receiving party:

(b) supporting personnel employed by outside counsel, such as paralegals, legal secretaries, data entry clerks, legal clerks, private photocopying services;

(c) experts or consultants; and

PROTECTIVE ORDER – PAGE 5

(d) those individuals designated in paragraph 11(c).

9.    Further, prior to disclosing Confidential Information or confidential Attorney Eyes Only Information to a receiving party's proposed expert, consultant, or employees, the receiving party must provide to the producing party a signed Confidentiality Agreement in the form attached as Exhibit A, the resume or curriculum vitae of the proposed expert or consultant, the expert or consultant's business affiliation, and any current and past consulting relationships in the industry. The producing party will thereafter have ten (10) business days from receipt of the Confidentiality Agreement to object to any proposed individual.   The objection must be made for good cause and in writing, stating with particularity the reasons for the objection. Failure to object within ten (10) business days constitutes approval. If the parties are unable to resolve any objection, the receiving party may apply to the presiding judge to resolve the matter.   There will be no disclosure to any proposed individual during the ten (10) business day objection period, unless that period is waived by the producing party, or if any objection is made, until the parties have resolved the objection, or the presiding judge has ruled upon any resultant motion.

10.    Counsel is responsible for the adherence by third-party vendors to the terms and conditions of this Protective Order. Counsel may fulfill this obligation by obtaining a signed Confidentiality Agreement in the form attached as Exhibit B.

11.    Confidential Information or Confidential Attorney Eyes Only Information may be disclosed to a person who is not already allowed access to such information under this Protective Order if:

(a) the information was previously received or authored by the person or was authored or received by a director, officer, employee or agent of the company for which the person is testifying as a designee under Fed. R. Civ. P. 30(b)(6);

PROTECTIVE ORDER – PAGE 6

(b) the designating party is the person or is a party for whom the person is a director, officer, employee, consultant or agent; or

(c) counsel for the party designating the material agrees that the material may be disclosed to the person.

In the event of disclosure under this paragraph, only the reporter, the person, his or her counsel, the presiding judge, and persons to whom disclosure may be made and who are bound by this Protective Order, may be present during the disclosure or discussion of Confidential Information.   Disclosure of material pursuant to this paragraph does not constitute a waiver of the confidential status of the material so disclosed.

**Nonparty Information.**

12.     The existence of this Protective Order must be disclosed to any person producing documents, tangible things, or testimony in this action who may reasonably be expected to desire confidential treatment for such documents, tangible things or testimony. Any such person may designate documents, tangible things, or testimony confidential pursuant to this Protective Order.

**Filing Documents With the Court.**

13.     If any party wishes to submit Confidential Information to the court, the submission must be filed only under seal on CM/ECF if filed electronically or if filed in hard copy in a sealed envelope bearing the caption of this action and a notice in the following form:

**CONFIDENTIAL INFORMATION**
**JANET ADAMS AND RANDY ADAMS v. MEDTRONIC, INC.**
**CASE NO. 4:19-cv-00870**
**This envelope, which is being filed under seal,**
**contains documents that are subject to a Protective**
**Order governing the use of confidential discovery material.**

PROTECTIVE ORDER – PAGE 7

A-39

**No Prejudice.**

14.     Producing or receiving confidential information, or otherwise complying with the terms of this Protective Order, will not (a) operate as an admission by any party that any particular Confidential Information contains or reflects trade secrets or any other type of confidential or proprietary information; (b) prejudice the rights of a party to object to the production of information or material that the party does not consider to be within the scope of discovery; (c) prejudice the rights of a party to seek a determination by the presiding judge that particular materials be produced; (d) prejudice the rights of a party to apply to the presiding judge for further protective orders; or (e) prevent the parties from agreeing in writing to alter or waive the provisions or protections provided for in this Protective Order with respect to any particular information or material.

**Conclusion of Litigation.**

15.     Within sixty (60) calendar days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) calendar days after dismissal pursuant to a settlement agreement, each party or other person subject to the terms of this Protective Order is under an obligation to destroy or return to the producing party all materials and documents containing Confidential Information or Confidential Attorney Eyes Only Information, and to certify to the producing party that this destruction or return has been done.   However, outside counsel for any party is entitled to retain all court papers, trial transcripts, exhibits, and attorney work provided that any such materials are maintained and protected in accordance with the terms of this Protective Order.

PROTECTIVE ORDER – PAGE 8

A-40

**Other Proceedings.**

16.     By entering this Protective Order and limiting the disclosure of information in this case, the presiding judge does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this Protective Order who may be subject to a motion to disclose another party's information designated Confidential pursuant to this Protective Order must promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

**Remedies.**

17.     It is Ordered that this Protective Order will be enforced by the sanctions set forth in Fed. R. Civ. P. 37(b) and any other sanctions as may be available to the presiding judge, including the power to hold parties or other violators of this Protective Order in contempt.  All other remedies available to any person injured by a violation of this Protective Order are fully reserved.

18.     Any party may petition the presiding judge for good cause shown if the party desires relief from a term or condition of this Protective Order.

**So ORDERED and SIGNED this 17th day of July, 2020.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE

PROTECTIVE ORDER – PAGE 9

A-41

Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **JANET ADAMS and RANDY ADAMS,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No.: 4:19-cv-870-SDJ-KPJ** |
| | § | |
| **MEDTRONIC, INC.,** *et al.***,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |
| | § | |

## CONFIDENTIALITY AGREEMENT FOR EXPERT, CONSULTANT OR EMPLOYEES OF ANY PARTY

I hereby affirm that:

Information, including documents and things, designated as "Confidential Information," or "Confidential Attorney Eyes Only Information," as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of this Court for enforcement of the Protective Order.

I agree not to use any Confidential Information or Confidential Attorney Eyes Only Information disclosed to me pursuant to the Protective Order except for purposes of the

CONFIDENTIALITY AGREEMENT – PAGE 1

A-42

above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the party who designated the information as confidential or by order of the presiding judge.

I also agree to notify any stenographic, clerical or technical personnel who are required to assist me of the terms of this Protective Order and of its binding effect on them and me.

I understand that I am to retain all documents or materials designated as or containing Confidential Information or Confidential Attorney Eyes Only Information in a secure manner, and that all such documents and materials are to remain in my personal custody until the completion of my assigned duties in this matter, whereupon all such documents and materials, including all copies thereof, and any writings prepared by me containing any Confidential Information or Confidential Attorney Eyes Only Information are to be returned to counsel who provided me with such documents and materials.

_____
Signed

_____
Printed Name

_____
Date

CONFIDENTIALITY AGREEMENT – PAGE 2

A-43

Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **JANET ADAMS and RANDY ADAMS,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **Civil Action No.: 4:19-cv-870-SDJ-KPJ** |
| **MEDTRONIC, INC.,** *et al.*, | § § § | |
| **Defendants.** | § § § § § | |

## CONFIDENTIALITY AGREEMENT FOR THIRD-PARTY VENDORS

I hereby affirm that:

Information, including documents and things, designated as "Confidential Information," or "Confidential Attorney Eyes Only Information," as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of this Court for enforcement of the Protective Order.

I agree not to use any Confidential Information or Confidential Attorney Eyes Only Information disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those

CONFIDENTIALITY AGREEMENT – PAGE 1

A-44

specifically authorized by the Protective Order, without the express written consent of the party

who designated the information as confidential or by order of the presiding judge.

_____
Signed


_____
Printed Name


_____
Date


CONFIDENTIALITY AGREEMENT – PAGE 2

A-45

# Exhibit F

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MOBILEMEDIA IDEAS LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 3:11-cv-02353-N** |
| **RESEARCH IN MOTION LIMITED and** | § | |
| **RESEARCH IN MOTION** | § | |
| **CORPORATION** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**<u>AMENDED AGREED PROTECTIVE ORDER</u>**

WHEREAS, Plaintiff MobileMedia Ideas LLC and Defendants Research in Motion Limited and Research in Motion Corporation, hereafter referred to as the "Parties," believe that certain information that is or will be encompassed by discovery demands of the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated and agreed among the Parties and ORDERED that:

1.  **<u>Scope.</u>** With respect to documents, information or material (whether or not embodied in any physical medium) designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY-SOURCE CODE" ("DESIGNATED MATERIAL"),[1]

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL- ATTORNEYS' EYES

subject to the provisions herein and unless otherwise stated, this Order shall govern, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) discovery, including but not limited to deposition testimony and responses to interrogatories or requests for admission; (c) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (d) pretrial pleadings, exhibits to pleadings and other court filings; (e) affidavits; and (f) stipulations. All copies, reproductions, extracts, digests and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

2.  **This Action Only.**  Documents, information or material produced pursuant to any discovery request in this Action ("Discovery Materials"), including but not limited to DESIGNATED MATERIAL, shall not be used or disclosed for any purpose other than the prosecution, defense, appeal or settlement of this Action. Any use of Discovery Materials or information obtained from Discovery Materials for any purpose (including business, investigative and/or enforcement purposes) other than the prosecution, defense, appeal, or settlement of this Action is expressly prohibited and would constitute a material breach of this Order.

3.  **Manner of Designation (Non-source code material).**[2] Each Party may designate for protection under this Order, in whole or in part, any document, information or

---

ONLY," or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE," both individually and collectively.

[2]      Designations for Source Code Material as defined herein shall be separately governed by the provisions set forth in paragraphs 8-10.

2

A-47

material that the Designating Party in good faith believes constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information or material ("Protected Material or Information"). Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information or material as follows: "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY." For documents, the appropriate legend or stamp shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts or electronic files produced in native format) for which such protection is sought. For deposition and hearing transcripts, the appropriate legend or stamp shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the appropriate designation(s) for some or all of that transcript. For electronic files produced in native format, the Producing Party shall mark the medium, container, and/or communication in which the electronic files were contained without altering the native file. For tangible things, the Producing Party shall label the thing or otherwise provide notice by means of a covering communication or the like. In the event that any document produced under Patent Rules 2-2, 3-2, and/or 3-4 before issuance of this Order is marked with the designation "Confidential" or "Highly Confidential-Attorneys' Eyes Only," such document shall receive the same treatment as if so designated pursuant to this Order, unless and until such document is redesignated.

4. **"CONFIDENTIAL" Information Generally.** A Party shall designate documents, information or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information or material relates to non-public, sensitive or confidential information or constitutes or contains trade secrets or other confidential research, development, commercial, or financial information of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information or material.

5. **Use or Disclosure of CONFIDENTIAL Material.**: "CONFIDENTIAL" documents, information and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the Designating Party, order of the Court, or as set forth herein:

(a) Outside Counsel of record in this Action for the Parties. The term "Outside Counsel" shall mean attorneys who are not employees of any named party to this Action or any Related Entity[3], but who are retained to represent or advise a named party to this Action or any Related Entity, including support personnel; contract attorneys; paralegals; consultants; legal secretaries; legal clerks; technical advisors; employees of outside vendors providing copy services, documents, graphics, and exhibit preparation services; and jury consultant and research services.

(b) up to and including six (6) designated representatives of each of the Parties to the extent reasonably necessary to this Action. The six (6) designated Party representatives may include any In-house Counsel for the Parties, and the term "In-house Counsel" shall mean attorneys who are employed by a named party in this Action. Each designated representative of each of the Parties shall execute the Undertaking attached hereto as Exhibit A prior to any disclosure of Confidential Information to such representative, and the signed Undertaking shall be served promptly upon the Designating Party. Within three (3) business days of service of such Undertaking, the Designating Party may object to the disclosure of its Confidential Information to a particular representative of the Receiving Party, and such objection shall be communicated in writing, stating the reason(s) for the objection. If an

---

[3] "Related Entity" shall mean any parent, subsidiary or other legal business entity owned or controlled by a common parent.

objection is raised, the Parties shall promptly attempt to resolve the objection in good faith. No disclosure shall be made until the objection is resolved by agreement of the Parties or by the Court. If no objection is raised by the Designating Party within three (3) business days of service of the Undertaking of a Party's representative, the Receiving Party shall be allowed to disclose the Confidential Information.

(c)     outside consultants or experts, which shall mean any outside person (and their support personnel) who is not an employee of a Party or any of the individuals or any Related Entity, and who is identified as an expert or consultant whose opinions may be presented at trial of this case, or is retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, including, but not limited to, a proposed expert witness with whom counsel may deem it necessary to consult concerning technical, financial, or other aspects of this case for the preparation or trial thereof. This term is to be construed within the meaning of Federal Rule 26(b)(4)(a)-(b). The consultant or expert shall execute the Undertaking attached as Exhibit A hereto, which same shall be served upon the Producing Party with a current curriculum vitae of the consultant or expert at least ten (10) days[4] before access to Protected Material is to be given to that consultant or expert. Within that ten (10) day time period, the Producing Party may request in writing additional information regarding the outside consultant or expert that the Producing Party believes in good faith is reasonably necessary and/or raise any objection, and the Parties agree to confer within five (5) days after any objection is raised and use good faith to resolve any objection. No disclosure shall occur until all such objections are resolved by agreement of the Parties or Court order. If no objection is raised by the Designating Party within ten (10) days of service of the Undertaking of a proposed consultant or expert, the Receiving Party shall be allowed to disclose the Confidential Information.

(d)     independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by Outside Counsel and reasonably necessary to assist Outside Counsel with this Action.

(e)     court staff, which shall mean the Court and its personnel, court reporters, independent shorthand reporters, and their staffs, and videographers, interpreters, or translators engaged for depositions or proceedings necessary to this case.

---

[4]     Unless business days are specified, any reference to days in this Order shall mean calendar days.

5

6. **"HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Information**

**Generally.** To the extent a Producing Party in good faith believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation than that required for Confidential Information, the Producing Party may designate such Protected Material "HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY."

7. **Use or Disclosure of Highly Confidential Material.** For Protected Material designated HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited as follows:

    (a) Outside Counsel, as defined above.

    (b) Outside consultants or experts, as defined above and subject to the same restrictions set forth in paragraph 5(c).

    (c) One (1) In-house Counsel, as defined above, if the Receiving Party requests the other Party's consent to disclose specific HIGHLY CONFIDENTIAL information to such In-house Counsel and consent is given, provided that, at least three (3) business days prior to disclosure of the specific information designated as HIGHLY CONFIDENTIAL, such In-house Counsel shall execute the Undertaking attached hereto as Exhibit A, which shall promptly be served on the Designating Party.

    (d) Independent litigation support services, as described above; and

    (e) Court staff, as defined above.

8. **Source Code**. The Parties anticipate that Source Code that the Producing Party in good faith believes contains highly confidential or trade secret information will be disclosed in this Action. In the event that such Source Code is produced in this Action, it shall be designated as "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE." Access to such Source Code will be given only

6

A-51

to: (a) court staff; (b) Outside Counsel and (c) up to twelve (12) outside consultants or experts approved to access such Protected Materials pursuant to paragraph 5(c). A Receiving Party may include excerpts of Source Code Material in a pleading, exhibit, expert report, discovery document, deposition transcript or other Court document, provided that any such documents are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures and orders, including this Order. To the extent that portions of Source Code Material are quoted in a document, either (a) the document will be stamped and treated as HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE or (b) those pages containing quoted Source Code Material will be separately stamped and treated as HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE.

9. **<u>Attendance at Source Code Inspection.</u>** Prior to any inspection of the Producing Party's Source Code Material, the Receiving Party shall give at least eight (8) days notice to the Producing Party, providing the names of all individuals to be present at the inspection.  If any outside consultant or expert plans to attend an inspection, the information set forth in paragraph 5(c) above shall be provided at least eight (8) days before the inspection, unless such information has already been provided to the Producing Party. No such individual shall attend a Source Code inspection until after the expiration of the foregoing eight (8) day notice period. If, during the eight (8) day notice period, the Producing Party serves, in writing, a good faith objection to the attendance of any such individual at a Source Code inspection, which shall set forth

7

the bases for the Producing Party's objection, that individual shall not attend any Source Code inspection until the objection is resolved. Consent to such attendance shall not be unreasonably withheld. The Parties shall meet and confer to resolve any such dispute within five (5) days of service of such an objection. If the Parties are unable to resolve their dispute within five (5) days of having met and conferred, the Producing Party or Receiving Party may apply to the Court for relief within a reasonable time which shall not exceed fifteen (15) days from the Parties' last attempt to resolve the issue, unless otherwise agreed to by the Parties. The Producing Party shall bear the burden of establishing that any request to bar a particular individual(s) from an inspection of its Source Code is in good faith and that good cause exists for excluding such individual(s). The eight (8) day notice period in this paragraph shall only apply the first time such individuals attend any Source Code inspection; thereafter, those same individuals may attend a Source Code inspection upon two (2) days notice to the Producing Party, unless an objection is raised by the Producing Party within the two (2) day notice period.

10. **Source Code Inspection**. In the event that Source Code is produced in this Action, the following additional restrictions shall apply:

(a) The Producing Party shall make its Source Code available electronically and in the form as kept in the ordinary course of business or other format suitable for review.

(b) Unless otherwise agreed to in writing between the Parties, the Receiving Party may only review a Producing Party's Source Code on a "stand-alone" Source Code Review computer (*i.e.*, individual computers or multiple computers that may be networked together by a private wired network but are not connected to any other network, Internet, or peripheral device, except that a Source Code Review computer may be connected to a printer). Source Code Review computers will be configured to prevent additional peripheral devices (*e.g.*, USB thumb drives) from being connected to it. The Parties agree that the

Source Code Review computer(s) will be located at the offices of the Producing Party's Outside Counsel, unless some other mutually convenient location is agreed to by the Parties in writing at least five (5) days prior to any proposed Source Code inspection.

(c)     The Receiving Party shall make reasonable efforts to restrict its requests for access to Source Code Review computer(s) to regular business hours, which for purposes of this paragraph shall be weekdays from 8:30 a.m. through 5:30 p.m., excluding Legal Holidays as defined in Federal Rule 6(a)(6), unless otherwise agreed to by the Parties. The Parties also acknowledge that inspection(s) of Source Code Material may span multiple days, and the Parties will cooperate in good faith in scheduling such inspection(s). The Parties further agree to cooperate in good faith such that maintaining the Producing Party's Source Code Material at the offices of its Outside Counsel shall not unreasonably hinder the Receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action.

(d)     The Producing Party shall provide the Receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s).

(e)     The Producing Party will produce Source Code Material in computer-searchable format on the stand-alone computer(s) as described above. The Receiving Party, at its own expense, may request that the Producing Party install software on a Source Code Review computer to perform searches of the Producing Party's Source Code. Timely requests for the installation of such search software will not be unreasonably denied so long as the requested search software is compatible with the operating system, and other software necessary to make the Source Code available for inspection, installed on a Source Code Review computer, does not prevent or impede the Receiving Party's access to the Source Code produced for inspection on a Source Code Review computer and does not circumvent any of the security features enabled on a Source Code Review computer (*e.g.* enable connection and use of a USB thumb drive).

(f)     No portions of Source Code Material shall be downloaded, nor any electronic copies created, except as necessary to create documents which, pursuant to the Court's rules, procedures and order, must be provided, filed or served electronically. In the event that the Receiving Party in good faith believes that transport of Source Code Material for Court proceeding(s) or deposition(s) is necessary, the Receiving Party shall so notify the Producing Party, and such transport may be effected: (i) by hand carry in hard copy paper form only, and shall be done at the direction of a person authorized under paragraph 8 above to another person authorized under paragraph 8 above to have access to Source Code Material or (ii) the Producing Party shall make whatever Source

9

A-54

Code Material it has produced to date available in electronic form at any Court proceeding(s) or deposition(s) upon receiving a written request from the Receiving Party at least five (5) business days prior to any such Court proceeding(s) or deposition(s). Source Code Material is at all times subject to the transport restrictions set forth herein.

(g) The Producing Party shall make available a laserjet printer for on-site printing during inspection of its Source Code. No paper print-outs shall be made of Source Code Material except for: (i) portions reasonably anticipated by the Receiving Party to be necessary for use in, and preparation for, court filings and proceedings, expert reports, and depositions of persons or entities permitted to access "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - COMPUTER SOURCE CODE" information of the Producing Party; and (ii) such other uses to which the Parties may agree or that the Court may order. The Receiving Party shall be permitted to print no more than 10% of the total source code for any software release and no more than 100 consecutive pages of any one source code file, provided that any reasonable extensions of those page limits will be considered promptly by the Producing Party in good faith.

(h) Each page of any printed copies of Source Code Material shall be printed on yellow (or other non-white) colored paper. Before printing, the Producing Party shall clearly label each page of colored paper "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - COMPUTER SOURCE CODE" and give each page a unique identification number. The Receiving Party shall maintain a log of all such files that are printed. The log will include the original name and location (*i.e.*, directory path) of each printed Source Code file or its unique identification number. This log shall be maintained in electronic form, and stored locally on the Source Code Review computer or on a mapped network drive that is accessible by each of the Source Code Review computers. The Producing Party shall make a good faith effort to provide (via overnight delivery with signature required or hand delivery with signature required) a copy of the labeled and numbered copies on yellow (or non-white) colored paper to Outside Counsel of the Receiving Party within three (3) business days. The Producing Party may object to any portion of any printed Source Code files as not relevant to any claim or defense in this litigation. If the Producing Party raises an objection on the grounds of relevance, the Parties shall meet and confer to resolve any such dispute within five (5) business days of the source code inspection when the Source Code at issue was printed. If the Parties are unable to resolve their dispute within five (5) days of having met and conferred, the Receiving Party or the Producing Party may apply to the Court for relief at any time.

(i) Outside Counsel or Outside Experts or Consultants of a Receiving Party may take notes during any Source Code inspection but may not copy portions of the Source Code into such notes. Any such notes must be marked on each

10

A-55

page with "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - COMPUTER SOURCE CODE." In addition, Outside Counsel or Outside Experts or Consultants of a Receiving Party may not bring into the room housing a Source Code Review computer any analogue or electronic recording devices, including, but not limited to, laptops or other portable computers, audio, image or video recorders or wireless devices with data transmission capabilities, unless agreed otherwise by the Parties in writing. Outside Counsel or Outside Experts or Consultants of a Receiving Party may not leave work product or other materials to which the Receiving Party claims privilege or protection from discovery in the room used to inspect the Producing Party's Source Code or on a Producing Party's Source Code Review computer, but if work product or privileged materials are inadvertently left in the room used to inspect Source Code Material, that shall not result in a waiver of any work product protection and/or applicable privilege.

(j)     The Receiving Party may make two (2) copies of the printed Source Code pages on yellow (or non-white) colored paper after delivery as well as one (1) copy as reasonably deemed necessary to provide to the Receiving Party's expert. All paper copies shall be securely destroyed if they are no longer necessary in this Action (*e.g.*, extra copies at the conclusion of a deposition). Source Code Material obtained by the Receiving Party may be reviewed at the offices of Outside Counsel for the Receiving Party only or at the Receiving Party's expert's place of business and may not be removed from those offices, except as provided for in paragraph 10(f). Printed copies of Source Code Material shall be securely maintained in locked rooms or cabinets at any of the permitted offices.

(k)     Copies of Source Code Material that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts; instead, the deposition record will identify any Source Code Material marked as an exhibit only by its production numbers.

11.     **<u>Objections to Disclosure</u>**. To the extent that any objection is raised to disclosure of or access to Confidential Information or Highly Confidential Information, the Parties shall endeavor in good faith to resolve the issue. If the Parties are unable to do so, the objecting Party may file a motion with the Court within a reasonable time, but no more than thirty (30) days after service of the Undertaking giving rise to the objection, unless the Parties agree otherwise. With respect to disclosure of Source Code Material, the time to seek relief from the Court is set forth in paragraph 9

11

above. If relief is sought from the Court, the objecting Party shall bear the burden of proving the need for a protective order.

12. **Limitations of this Order.** The restrictions set forth in any of the preceding paragraphs shall not apply to the following:

(a) Any documents or other information that becomes public knowledge by means not in violation of the provisions of this Order.

(b) Any information that the Party properly possessed prior to receipt of any Protected Information in this Action, or that is discovered or developed independently by the Receiving Party.

(c) Nothing in this Order shall prohibit Outside Counsel for a Party from disclosing Protected Information to any person whom the Discovery Material containing the Protected Information clearly identifies as an author, addressee, or carbon copy recipient of such Discovery Material. In addition, regardless of its designation, if Discovery Material makes reference to the actual or alleged conduct or statement of a person, Outside Counsel may discuss such conduct or statements with such person, provided that such discussions do not disclose or reveal any other Protected Information.

(d) The restrictions on the use of Discovery Material established by the Order are applicable only to Discovery Material received by a Party from another Party or from a Third Party as a direct result of this Action. Any Party is free to use own Discovery Material for any purpose, and no use by the Producing Party shall result in or otherwise act as a waiver with respect to the confidential status of that information.

(e) Nothing in this Order shall be construed to preclude or impede Outside Counsel's ability to communicate with or advise their clients with respect to this Action based in whole or in part upon Outside Counsel's review of Designated Material produced by the opposing Party, provided that such communications or advice shall not disclose or reveal the substance of any Designated Material itself except as provided for herein.

13. **Inadvertent Disclosure of Privileged and/or Work Product Material.** Nothing in this Order shall require production of documents, information or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information

12

or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information or other material it reasonably believes is protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity shall write to Outside Counsel for the Receiving Party or Parties requesting that the materials be returned and/or destroyed. Any Party receiving such a letter shall return the original and all copies of the alleged privileged material or certify their destruction within 48 hours, even if the Party disputes the underlying privilege. A Party's return or destruction of allegedly privileged Discovery Materials is without prejudice to its right to seek a judicial determination of the merits of that privilege claim.

14. **Inadvertent Production Without Designation.** The Parties will endeavor in good faith to make the appropriate confidentiality designation at the time such material is produced, but designation of Protected Material (*i.e*., "CONFIDENTIAL," "HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE") may be made at any time. Inadvertent or unintentional production of Protected Material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any Party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by

13

A-58

notifying the recipient(s) as soon as reasonably possible after the Producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. Upon request of the Producing Party, the recipient(s) shall destroy all copies of the inadvertently undesignated Protected Materials and any documents, information or material derived from or based thereon.

15. **Change of Designation.** A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the Designating Party does not agree to redesignation within ten (10) days of receipt of the written request, the Requesting Party may apply to the Court for relief. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the Designating Party shall be maintained.

16. **No Presumption of Protected Status.** Nothing in this Order creates a presumption or implies that Discovery Material designated as Protected Information under this Order is in fact Protected Information. The failure to designate documents, information or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order and/or the production of documents, information and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such

14

objections being hereby preserved.

17. **<mark>Use of Designated Material at Depositions.</mark>** <mark>Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing, provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (a) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party; (b) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information; (c) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL; (d) a current or former officer, director or employee of the Producing Party or a current or former officer, director or employee of a company affiliated with the Producing Party; (e) counsel for a Party, including Outside Counsel and In-house Counsel (subject to paragraphs 5(b) and 7(c) of this Order); (f) an independent contractor, consultant, and/or expert retained for the purpose of this Action (subject to paragraphs 5(c) and 7(b) of this Order); (g) court reporters and videographers; (h) the Court; or (i) other persons entitled hereunder to access DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the Producing Party or from the Court.</mark>

18. **Deposition Transcripts.** Parties may, at the deposition or hearing or within thirty (30) days after receipt of an official deposition or hearing transcript (*i.e.*, not a rough draft), designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY,"

or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE" pursuant to this Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order. Until the expiration of thirty (30) days after receipt of the official transcript of such testimony by the Producing Party, all testimony will be treated as "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY." In the event that expedited disclosure may be required by a Party(-ies) due to an impending deadline regarding preparation of any filing or submission that requires consideration of the Protected Information in question, the concerned Parties shall negotiate in good faith for a shortened expiration period, and, if they cannot reach agreement regarding a shortened expiration period, then the concerned Parties agree to submit the matter to the Court for its determination of the appropriate expiration period. Any portions so designated shall thereafter be treated in accordance with the terms of this Order.

19.  **Attendees at Depositions.** No one may attend or review the transcripts or the portions of any depositions or court proceedings at which Protected Information is shown or discussed other than those individuals qualified to see such Protected Information as set forth in this Order.

20.  **Third Parties.** To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend that the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

16

21. **<u>Third-Party Designations.</u>** To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE" any documents, information or other material, in whole or in part, produced or given by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information or other material so produced or given shall be treated as "HIGHLY CONFIDENTIAL– ATTORNEYS' EYES ONLY" in accordance with this Order.

22. **<u>Use of Protected Information in Court.</u>** Before disclosing Protected Information in an open courtroom at trial or other court hearings in this case, a party must provide notice to the Producing Party so that the Producing Party has a reasonable opportunity to take appropriate action to prevent or limit disclosure of the Protected Information in the open courtroom. The Producing Party bears the burden of showing that the Court should prevent or limit disclosure of the Protected Information in the open courtroom; otherwise, the Protected Information may be used in an open courtroom at trial or other court hearings in this Action without regard to the other provisions in this Order. The Parties agree that the use of Protected Information at trial or other court hearings in this case shall not constitute a waiver of or operate in prejudice to any claim of confidentiality in the Protected Information.

A-62

23. **Filing Under Seal.** Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court. The filing party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing. Exhibits to a filing shall conform to the labeling requirements set forth in this Order. If a pretrial pleading filed with the Court, or an exhibit thereto, discloses or relies on Designated Material, such portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

24. **Admissibility at Trial.** This Order applies to pretrial discovery. Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

25. **Experts.** Absent further order of the Court, testifying experts' draft reports, notes and outlines of draft reports shall not be subject to discovery in this Action, nor shall any such drafts, notes or outlines of reports that a testifying expert prepared in other cases be subject to discovery in this Action. Discovery of materials provided to testifying experts is limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the testifying expert in formulating a final report, trial or deposition testimony or any opinion in this Action. No discovery shall be taken from or about any consulting expert except to the extent that consulting expert has provided information, opinions or other materials that a testifying expert

18

A-63

relied upon in formulating his or her final report, trial or deposition testimony, or any other opinion in this Action. No conversations or communications between Counsel (Outside and In-house) and any testifying or consulting expert shall be subject to discovery in this Action unless the conversations or communications are relied upon by such experts in formulating opinions that are presented in final reports, trial or deposition testimony in this Action. Materials, communications (including e-mail), and other information exempt from discovery under this paragraph shall be treated as attorney work product for purposes of this Action.

26. **Logging Post-Litigation Materials.** No communications and/or attorney work product exchanged between each Party and its Outside Counsel after and including March 31, 2010 need be identified on a privilege log.

27. **Duty to Return or Destroy.** Within sixty (60) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the Producing Party's election either be returned to the Producing Party or be destroyed, except that Outside Counsel may retain court papers (including exhibits), correspondence and attorney and consultant work product, written discovery requests and responses, expert reports and exhibits, and trial transcripts and exhibits introduced into evidence at trial for archival purposes. The Receiving Party shall verify the return or destruction by affidavit furnished to the Producing Party, upon the Producing Party's request.

A-64

28. **Duty to Report.** Any Party knowing or believing that any other Party is in violation of or intends to violate this Order and, having raised the question of violation or potential violation with the opposing Party, has been unable to resolve the matter by agreement, may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

29. **Undertaking.** Any individual who executes the Undertaking attached hereto as Exhibit A shall be advised by counsel of the terms of this Order and shall be informed that he or she is subject to the terms and conditions of this Order. By signing the attached Undertaking, such individual acknowledges that he or she has received a copy of, has read, and has agreed to be bound by this Order.

30. **No Waiver.** Production of DESIGNATED MATERIAL by the Parties or any Third Party shall not be deemed a publication of the documents, information and material (or the contents thereof) produced so as to void or make voidable whatever claim may be made as to the proprietary and confidential nature of the documents, information or other material or its contents. Nothing in this Order shall be construed to effect an abrogation, waiver or limitation of any kind on the rights of the Parties or any Third Party to assert any applicable discovery or trial privilege.

31. **Disclosure Pursuant to Subpoena.** If any entity subpoenas or orders production of Protected Information from a Receiving Party that a Receiving Party has obtained subject to this Order, such Receiving Party shall promptly notify the Producing Party

20

of the subpoena or order and shall not produce the information until the Producing Party has had prior notice, which shall be not less than ten (10) business days, to object or take other appropriate steps to protect the information. If a Producing Party does not take steps to prevent disclosure of such documents within the notice period given, the Party to whom the referenced subpoena is directed may produce such documents in response. Nothing in this Order should be construed as authorizing a Receiving Party in this Action to disobey a lawful directive in another proceeding.

32. **Modification.** Each of the Parties shall retain the right to file a motion with the Court to: (a) modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action or (b) apply for additional protection of DESIGNATED MATERIAL. The Court may enter a subsequent order addressing the use of Protected Information at trial or at the conclusion of this Action.

33. **Jurisdiction.** This Protective Order shall be binding upon the Parties, and their respective attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control. The United States District Court for the Northern District of Texas, Dallas Division, or any Court to which this Action is transferred, is responsible for the interpretation and enforcement of this Order. All disputes concerning documents or information covered under this Order (however designated) and produced under the protection of this Order shall be resolved by the United States District Court for the Northern District of Texas, Dallas Division, or any Court to which this Action is

21

transferred. After the conclusion of the above-captioned case, the provisions of this Order shall continue to be binding until further order of this Court, or any Court to which this Action is transferred, which shall retain jurisdiction over the Parties and any other person who has had access to Protected Information pursuant to this Order, in order to enforce the provisions of this Order.

34. **Interpretation.** Should the Parties have any issues concerning the interpretation of this Order, before any Party moves for this Court's assistance, they shall first promptly meet and confer to resolve the dispute. The headings used in this Order are supplied for convenience only and shall not be taken into account in the interpretation of this Order.

35. **Duty to Safeguard.** There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information and material to protect against disclosure to any unauthorized persons or entities.

SIGNED August 17, 2012.

_____

DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE

22

A-67

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **MOBILEMEDIA IDEAS LLC,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | §  **CIVIL ACTION NO. 3:11-cv-02353-N** |
| **RESEARCH IN MOTION LIMITED and** | § |
| **RESEARCH IN MOTION** | § |
| **CORPORATION** | § |
| | § |
| **Defendants.** | § |
| | § |

**APPENDIX A**
**UNDERTAKING REGARDING**
**PROTECTIVE ORDER**

I, _____ , declare that:

1. My address is _____.

    My current employer is _____.

    My current occupation is _____.

2. I have received a copy of the Protective Order in this Action. I have carefully read and understand the provisions of the Protective Order.

3. I attest to my understanding that access to certain types of documents or information in this Action may be provided to me and that such access shall be pursuant to the terms, conditions and restrictions of this Protective Order. I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this Action any information designated as

A-68

"CONFIDENTIAL," "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE" that is disclosed to me.

4. Promptly upon termination of this Action, I will return all documents and things designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL– ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

5. I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____

# Exhibit G

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH M. MORRIS, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. H-04-0552** |
| | § | |
| EXPERIAN INFORMATION | § | |
| SOLUTIONS, INC., | § | |
| | § | |
| **Defendant.** | § | |

## PROTECTIVE ORDER

After considering the motion of Defendant Experian Information Solutions, Inc.

("Experian") for a protective order in this cause protecting and limiting disclosure of documents

and information that have been and may be sought, produced or exhibited by and among the

parties to this action relating to trade secrets, confidential research, development, technology or

other proprietary information belonging to Experian and personal income, credit and other

confidential information of Plaintiff, the Court finds there is good cause for the protection of

same in accordance with Rule 26(c)(7) of the Federal Rules of Civil Procedure and the Motion

should be GRANTED. Accordingly,

An Order of this Court protecting such confidential information shall be and hereby is

made by this Court on the following terms:

1. This Order shall govern the use, handling and disclosure of all documents,

testimony or information produced or given in this action which are designated to be subject to

this Order in accordance with the terms hereof.

2. Any party or non-party producing or filing documents or other materials in this

action may designate such materials and the information contained therein subject to this Order

HUI-37161v2

A-70

- 2 -

by typing or stamping on the front of the document, or on the portion(s) of the document for which confidential treatment is designated "Confidential."

3.    To the extent any motions, briefs, pleadings, deposition transcripts, or other papers to be filed with the Court incorporate documents or information subject to this Order, the party filing such papers shall designate such materials, or portions thereof, as "Confidential" and shall file them with the clerk under seal; provided, however, that a copy of such filing having the confidential information deleted therefrom may be made part of the public record.

4.    All documents, transcripts, or other materials subject to this Order, and all information derived therefrom (including, but not limited to, all testimony, deposition, or otherwise, that refers, reflects or otherwise discusses any information designated Confidential hereunder), shall not be used, directly or indirectly, by any person for any business, commercial or competitive purposes or for any purpose whatsoever other than solely for the preparation and trial of this action in accordance with the provisions of this Order.

5.    Except with the prior written consent of the individual or entity asserting confidential treatment, or pursuant to prior Order after notice, any document, transcript or pleading given confidential treatment under this Order, and any information contained in, or derived from any such materials (including but not limited to, all deposition testimony that refers, reflects or otherwise discusses any information designated confidential hereunder) may not be disclosed other than in accordance with this Order and may not be disclosed to any person other than: (a) the Court and its officers; (b) parties to this litigation; (c) counsel for the parties, whether retained counsel or in-house counsel and employees of counsel assigned to assist such counsel in the preparation of this litigation; (d) fact witnesses subject to a proffer to the Court or a stipulation of the parties that such witnesses need to know such information; and (e) present or former employees of the producing party in connection with their depositions in this action

- 2 -

HUI-37161v2

A-71

(provided that no former employees shall be shown documents prepared after the date of his or her departure), and (F) any expert retained or consulted in connection with this case only. NJ

6.     All persons receiving any or all documents produced pursuant to this Order shall be advised of their confidential nature. All persons to whom confidential information and/or documents are disclosed are hereby enjoined from disclosing same to any other person except as provided herein, and are further enjoined from using same except in the preparation for and trial of the above-captioned action between the named parties thereto. No person receiving or reviewing such confidential documents, information or transcript shall disseminate or disclose them to any person other than those described above in Paragraph 5 and for the purposes specified, and in no event shall such person make any other use of such document or transcript.

7.     Nothing in this Order shall prevent a party from using at trial any information or materials designated "Confidential."

8.     This Order has been entered to facilitate discovery and the production of relevant evidence in this action. Neither the entry of this Order, nor the designation of any information, document, or the like as "Confidential," nor the failure to make such designation, shall constitute evidence with respect to any issue in this action.

9.     Within sixty (60) days after the final termination of this litigation, all documents, transcripts, or other materials afforded confidential treatment pursuant to this Order, including any extracts, summaries or compilations taken therefrom, but excluding any materials which in the good faith judgment of counsel are work product materials, shall be returned to the individual or entity having produced or furnished same.

10.     In the event that any party to this litigation disagrees at any point in these proceedings with any designation made under this Protective Order, the parties shall first try to resolve such dispute in good faith on an informal basis. If the dispute cannot be resolved, the

- 3 -

HUI-37161v2

A-72

party objecting to the designation may seek appropriate relief from this Court. During the

pendency of any challenge to the designation of a document or information, the designated

document or information shall continue to be treated as "Confidential" subject to the provisions

of this Protective Order.

11.     Nothing herein shall affect or restrict the rights of any party with respect to its

own documents or to the information obtained or developed independently of documents,

transcripts and materials afforded confidential treatment pursuant to this Order.

IT IS SO ORDERED.

Dated: _____

UNITED STATES ~~DISTRICT~~ JUDGE
Magistrate

-4-

# Exhibit H

Case No. 1:05-cv-01796-MSK-CBS    Document 25    filed 02/08/06    USDC Colorado
pg 1 of 5
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 85 of 131    PageID 5518

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 05-cv-01796-MSK-CBS

JEFFREY COHEN, Esq., Individually,

     Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC. a Corporation.

     Defendant.

---

### STIPULATED PROTECTIVE ORDER

---

IT IS HEREBY STIPULATED by and between Plaintiff Jeffrey Cohen and Defendant Experian Information Solutions, Inc. ("Experian"), through their respective attorneys of record, as follows:

WHEREAS, documents and information have been and may be sought, produced or exhibited by and among the parties to this action relating to trade secrets, confidential research, development, technology or other proprietary information belonging to the defendants and/or personal income, credit and other confidential information of Plaintiff.

THEREFORE, an Order of this Court protecting such confidential information shall be and hereby is made by this Court on the following terms:

1. This Order shall govern the use, handling and disclosure of all documents, testimony or information produced or given in this action which are designated to be subject to this Order in accordance with the terms hereof.

A-74

Case No. 1:05-cv-01796-MSK-CBS    Document 25    filed 02/08/06    USDC Colorado
pg 2 of 5
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 86 of 131    PageID 5519

2.    Any party or non-party producing or filing documents or other materials in this action may designate such materials and the information contained therein subject to this Order by typing or stamping on the front of the document, or on the portion(s) of the document for which confidential treatment is designated, "Confidential."

3.    To the extent any motions, briefs, pleadings, deposition transcripts, or other papers to be filed with the Court incorporate documents or information subject to this Order, the party filing such papers shall designate such materials, or portions thereof, as "Confidential," and shall file them with the clerk under seal; provided, however, that a copy of such filing having the confidential information deleted therefrom may be made part of the public record.

4.    All documents, transcripts, or other materials subject to this Order, and all information derived therefrom (including, but not limited to, all testimony, deposition, or otherwise, that refers, reflects or otherwise discusses any information designated Confidential hereunder), shall not be used, directly or indirectly, by any person for any business, commercial or competitive purposes or for any purpose whatsoever other than solely for the preparation and trial of this action in accordance with the provisions of this Order.

5.    Except with the prior written consent of the individual or entity asserting confidential treatment, or pursuant to prior Order after notice, any document, transcript or pleading given confidential treatment under this Order, and any information contained in, or derived from any such materials (including but not limited to, all deposition testimony that refers, reflects or otherwise discusses any information designated confidential hereunder) may not be disclosed other than in accordance with this Order and may not be disclosed to any person other than: (a) the Court and its officers; (b) parties to this litigation; (c) counsel for the parties, whether retained

2

A-75

Case No. 1:05-cv-01796-MSK-CBS    Document 25    filed 02/08/06    USDC Colorado
pg 3 of 5
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 87 of 131    PageID 5520

counsel or in-house counsel and employees of counsel assigned to assist such counsel in the preparation of this litigation; (d) fact witnesses subject to a proffer to the Court or a stipulation of the parties that such witnesses need to know such information; and (e) present or former employees of the producing party in connection with their depositions in this action (provided that no former employees shall be shown documents prepared after the date of his or her departure).

6.    All persons receiving any or all documents produced pursuant to this Order shall be advised of their confidential nature.  All persons to whom confidential information and/or documents are disclosed are hereby enjoined from disclosing same to any other person except as provided herein, and are further enjoined from using same except in the preparation for and trial of the above-captioned action between the named parties thereto.  No person receiving or reviewing such confidential documents, information or transcript shall disseminate or disclose them to any person other than those described above in Paragraph 5 and for the purposes specified, and in no event shall such person make any other use of such document or transcript.

7.    Nothing in this Order shall prevent a party from using at trial any information or materials designated "Confidential."

8.    This Order has been agreed to by the parties to facilitate discovery and the production of relevant evidence in this action.  Neither the entry of this Order, nor the designation of any information, document, or the like as "Confidential," nor the failure to make such designation, shall constitute evidence with respect to any issue in this action.

9.    Within sixty (60) days after the final termination of this litigation, all documents, transcripts, or other materials afforded confidential treatment pursuant to this Order, including

3

A-76

Case No. 1:05-cv-01796-MSK-CBS    Document 25    filed 02/08/06    USDC Colorado
pg 4 of 5
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 88 of 131    PageID 5521

any extracts, summaries or compilations taken therefrom, but excluding any materials which in the good faith judgment of counsel are work product materials, shall be returned to the individual or entity having produced or furnished same.

10. In the event that any party to this litigation disagrees at any point in these proceedings with any designation made under this Protective Order, the parties shall first try to resolve such dispute in good faith on an informal basis.  If the dispute cannot be resolved, the party objecting to the designation may seek appropriate relief from this Court.  During the pendency of any challenge to the designation of a document or information, the designated document or information shall be continue to be treated as "Confidential" subject to the provisions of this Protective Order.

11. Nothing herein shall affect or restrict the rights of any party with respect to its own documents or to the information obtained or developed independently of documents, transcripts and materials afforded confidential treatment pursuant to this Order.

DATED at Denver, Colorado, this 8th day of February, 2006.

BY THE COURT:

_s/Craig B. Shaffer_
Craig B. Shaffer
United States Magistrate Judge

4

A-77

Dated: 01/25/06

s/ Xuan-Thu Phan

Xuan-Thu Phan
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:  (415) 875-5794

Counsel for Defendant
EXPERIAN INFORMATION
SOLUTIONS, INC.

Dated: 01/26/06

s/ Benjamin M. Petre

Benjamin M. Petre
Cohen & Associates, P.C.
1600 Stout Street, Suite 1710
Denver, CO  80202
Telephone:  (303) 825-4136

Counsel for Plaintiff
JEFFREY COHEN

A-78

# Exhibit I

Case No. 1:06-cv-00619-LTB-MJW    Document 37    filed 02/07/07    USDC Colorado
pg 1 of 15
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 91 of 131    PageID 5524

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 06-cv-00619-LTB-MJW

PHILIP W. WYERS, a Colorado resident, and
WYERS PRODUCTS GROUP, Inc., a Colorado corporation,

      Plaintiffs,

v.

MASTER LOCK COMPANY, a Delaware corporation

      Defendant.

_____

## STIPULATED PROTECTIVE ORDER
_____

**IT IS HEREBY STIPULATED AND AGREED** by counsel for Plaintiffs, Philip W. Wyers and Wyers Products Group, Inc. (jointly referred to as "Wyers") and Defendant, Master Lock Company ("Master Lock") pursuant to Rules 26(c) and 29 of the Federal Rules of Civil Procedure, as follows:

1.     (a)    This Stipulated Protective Order shall govern the handling of all documents, things, testimony or other information, including all copies, excerpts and summaries thereof (collectively "CONFIDENTIAL MATERIALS") that are subject to discovery in this action. Such discovery includes, without limitation, testimony adduced at depositions upon oral examination pursuant to Fed. R. Civ. P., Rule 30, written responses to interrogatories pursuant to Fed. R. Civ. P., Rule 33, documents produced pursuant to Fed. R. Civ. P., Rule 34, answers to requests

A-79

Case No. 1:06-cv-00619-LTB-MJW   Document 37   filed 02/07/07   USDC Colorado
pg 2 of 15
Case 3:21-cv-00194-N   Document 175   Filed 01/06/25   Page 92 of 131   PageID 5525

for admission pursuant to Fed. R. Civ. P., Rule 36, and testimony, documents and things provided pursuant to Fed. R. Civ. P., Rule 45.

(b)    The provisions of this Stipulated Protective Order shall apply to: (1) the parties in this action; and (2) any third party producing or disclosing material(s) in this action who agrees to be, or is ordered by the Court to be, bound by the terms of this Stipulated Protective Order.

2.    (a)    Any party or third party who elects or is ordered to provide discovery under the terms and conditions of this Stipulated Protective Order ("Providing Party") may designate as "CONFIDENTIAL" any material which it produces in the course of this litigation (including appeals) which is owned or controlled by the Providing Party, when the Providing Party in good faith believes that the material contains non-public information that should remain non-public. CONFIDENTIAL MATERIALS shall include all information, documents and things relating in any way to the substance of the foregoing, including but not limited to copies, summaries or abstracts thereof.

(b)    Where appropriate, a Providing Party may add the designation "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY", or an equivalent designation, only when the Providing Party believes in good faith that the CONFIDENTIAL MATERIALS is, or has the potential of being, competitively sensitive to the Providing Party or competitively useful to the Receiving Party. An equivalent designation for purposes of this Stipulated Protective Order may include, e.g., "SECRET – OUTSIDE COUNSELS' EYES ONLY".

A-80

Case No. 1:06-cv-00619-LTB-MJW    Document 37    filed 02/07/07    USDC Colorado
pg 3 of 15
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 93 of 131    PageID 5526

3.    CONFIDENTIAL MATERIALS shall be subject to the following restrictions:

(a)    CONFIDENTIAL MATERIALS shall be used only for the purposes of this litigation (including appeals) and for no other purpose (unless authorized by the Court) and shall not be disclosed, given, shown, made available or communicated, directly or indirectly, in any way to anyone except those authorized persons set forth below if it is necessary that such CONFIDENTIAL MATERIALS be given or shown for the purposes permitted under this paragraph 3.

(b)    CONFIDENTIAL MATERIALS specifically designated as such shall be disclosed, for the purposes set forth above in paragraph 3(a), only to:

(i)    the parties to this action and/or their employees who need access to CONFIDENTIAL MATERIALS for the purpose articulated in paragraph 3(a), above;

(ii)    counsel of record in this case for the parties, including their support personnel and in-house corporate counsel and support personnel;

(iii)    the author or recipient of any document claimed to be CONFIDENTIAL MATERIALS, including any person shown to have personal knowledge of the contents of said document;

(iv)    independent experts, consultants or translators for a party, including their support personnel, whose advice and consultation are being or will be used by such party in connection with preparation for trial, or for trial in this action, including any motions in this action;

(v)    the Court and those employed by the Court (including court reporters, stenographic reporters and Court personnel), in which case such information shall be filed under seal and kept under seal until further order of the Court; and

(vi)    any other person as to whom the Providing Party, or said party's legal representative, agrees to in writing or on the record.

A-81

Case No. 1:06-cv-00619-LTB-MJW    Document 37    filed 02/07/07    USDC Colorado
pg 4 of 15
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 94 of 131    PageID 5527

(c)    CONFIDENTIAL    MATERIALS    specifically    designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY", or an equivalent designation, shall be disclosed, for the purposes set forth above in paragraph 3(a), only to:

(i)    outside counsel of record in this case for the parties, including their support personnel;

(ii)    independent experts, consultants or translators for a party, including their support personnel, whose advice and consultation are being or will be used by such party in connection with preparation for trial, or for trial in this action, including any motions in this action, provided that counsel of record for the Providing Party is provided with written notice, together with a current resume for such expert or consultant, not less than ten (10) days before disclosure of such designated information to any such expert or consultant, unless otherwise agreed to in writing by counsel for the Providing Party. Should counsel of record for the Providing Party disagree with the disclosure of so designated material to such experts or consultants identified in the notice, the Providing Party may serve and file a noticed motion within not less than ten (10) days of receipt of the written notice. No disclosure shall take place until such motion is decided or by leave of the Court; and

(iii)    the Court and those employed by the Court (including Court reporters, stenographic reporters and Court personnel), in which case such information shall be filed under seal and kept under seal until further order of the Court.

(d)    Corporate in-house counsel, and its support personnel, shall be precluded from access to all CONFIDENTIAL MATERIALS specifically designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY", or an equivalent designation.    However, upon request by the Receiving Party, the Providing Party may, in its discretion, grant access to in-house counsel, and its support personnel, to certain requested CONFIDENTIAL MATERIALS, or, where appropriate, to summaries, and/or excerpts thereof.

A-82

4.    (a)  Subject to the provisions of paragraph 3 above, any party may disclose CONFIDENTIAL MATERIALS to the Providing Party's employees, former employees, consultants or former consultants who were employed or retained by the Providing Party on the date the document was prepared or dated ("former employees"), or whose employment or retention involved matters related to the subject matter of such CONFIDENTIAL MATERIALS, or to his/her counsel, during deposition or trial.

(b)    Any party may disclose CONFIDENTIAL MATERIALS to a third party witness (excluding former employees), or his/her counsel, during deposition or trial only when it is apparent from the face of the document or from prior testimony, including the testimony of the third party witness, that the said third party witness authored, assisted in the preparation of or received said document or material.  A third party witness and his/her counsel (unless said counsel is an attorney of record herein) shall not be permitted to retain a copy of the CONFIDENTIAL MATERIALS.

(c)    Other than those persons expressly identified in paragraphs 3(b) and 3(c), and those given express authorization pursuant to paragraph 3(d), CONFIDENTIAL MATERIALS designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY", or an equivalent designation, shall not be disclosed, given, shown, made available or communicated, directly or indirectly, in any way to any person or entity, including the parties to this action.

5.    Any person given access to CONFIDENTIAL MATERIALS pursuant to the terms hereof shall be advised that the CONFIDENTIAL MATERIALS are

A-83

Case No. 1:06-cv-00619-LTB-MJW    Document 37    filed 02/07/07    USDC Colorado
pg 6 of 15
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 96 of 131    PageID 5529

being disclosed pursuant to, and subject to, the terms of this Stipulated Protective Order and may not be disclosed other than pursuant to the terms hereof, and that the violation of the terms of this Stipulated Protective Order may constitute contempt of a court order. Before any person designated in paragraphs 3(b)(i), 3(b)(iv), 3(b)(vi), 3(c)(ii), or 3(d) is given access to CONFIDENTIAL MATERIALS, he/she shall provide a written statement of assurance to be bound by the provisions of this Stipulated Protective Order as provided in the form attached hereto as Exhibit A.

6.    CONFIDENTIAL MATERIALS shall be designated as follows:

(a)    In the case of documents, the designation shall be made by placing the legend "CONFIDENTIAL" and, if applicable, also "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY", or an equivalent designation, on each page of such document(s) produced by the Providing Party. Such designation shall be made at the time a document or portion thereof is produced for inspection by counsel, and it is sufficient designation for this purpose that a container holding tangible objects, a file or an individual document bear a written label marked with the appropriate designation. A Providing Party that inadvertently fails to mark an item at the time of production shall have ten (10) days thereafter in which to correct its failure. Such correction and notice thereof shall be made in writing, accompanied by substitute copies of each item, appropriately marked. Within five (5) days of receipt of the substitute copies, the Receiving Party shall return the previously unmarked items and all copies thereof or destroy the same and certify the destruction to counsel for the Providing Party. Until expiration of the aforesaid

A-84

Case No. 1:06-cv-00619-LTB-MJW    Document 37    filed 02/07/07    USDC Colorado
pg 7 of 15
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 97 of 131    PageID 5530

ten (10) day-period, all items produced shall be considered and treated as protected CONFIDENTIAL MATERIALS.

(b)    In the case of interrogatory answers or responses to requests for admissions, the designation shall be made by placing the legend "CONFIDENTIAL" and, if applicable, also "CONFIDENTIAL – ATTORNEYS' EYES ONLY", "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY", or an equivalent designation, on each page of any answer that contains confidential information.

(c)    In the case of depositions upon oral examination, if counsel for any party believes that a question or answer of its client, or former or current officers, directors or employees of such client, a third party witness and/or an expert constitutes CONFIDENTIAL MATERIALS, counsel may so state on the record and may request that the specific pages which include such CONFIDENTIAL MATERIALS be included in a separate sealed portion of the transcript. When testimony designated as "CONFIDENTIAL" and, if applicable, also "CONFIDENTIAL – ATTORNEYS' EYES ONLY"," is elicited during a deposition, persons not entitled to receive such information under the terms of this Stipulated Protective Order shall be excluded from the deposition.  Counsel attending a deposition who inadvertently fails to designate any portion of the transcript as CONFIDENTIAL MATERIALS on the record at the deposition shall have thirty (30) days, following mailing of the transcript by the court reporter, in which to correct the failure.  Such correction and notice thereof shall be made in writing to the reporter, with copies to all other counsel, designating the portion(s) of the transcript that

A-85

Case No. 1:06-cv-00619-LTB-MJW    Document 37    filed 02/07/07    USDC Colorado
pg 8 of 15
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 98 of 131    PageID 5531

constitute CONFIDENTIAL MATERIALS, and directing the reporter to place the same seal as provided in this Paragraph 6(c).  Until expiration of the aforesaid thirty (30) day period, all deposition transcripts shall be considered and treated as protected CONFIDENTIAL MATERIALS under the classification "CONFIDENTIAL – ATTORNEYS' EYES ONLY", unless otherwise agreed to on the record at the deposition.

7.    All designated information shall be stored and maintained in a manner that will prevent access to that information by unauthorized persons.

8.    (a)    The acceptance by a party of CONFIDENTIAL MATERIALS shall not constitute an admission or concession or permit an inference that the CONFIDENTIAL MATERIALS is, in fact, confidential.  Any party may upon ten (10) days advance written notice to the other party move this Court for (i) modification of this Stipulated Protective Order, or (ii) relief from the provisions of this Stipulated Protective Order.  In addition, the parties may agree in writing or on the record to necessary modifications of this Stipulated Protective Order.

(b)    A party shall not be obligated to challenge the propriety of the designation of CONFIDENTIAL MATERIALS at the time made, and failure to do so shall not preclude a subsequent challenge thereof.  If a party challenges such designation, the parties shall attempt to resolve any challenge in good faith on an expedited and informal basis.  If the challenge cannot be expeditiously and informally resolved, the party challenging the propriety of the designation CONFIDENTIAL MATERIALS shall provide written notice of such challenge to the Providing Party, and the party wishing to maintain the designation must present a

A-86

Case No. 1:06-cv-00619-LTB-MJW    Document 37    filed 02/07/07    USDC Colorado
pg 9 of 15
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 99 of 131    PageID 5532

motion to the Court claiming such status within ten (10) business days of service of the written notice of challenge of the claim to such status is waived.  The material in issue shall continue to be treated as designated until the Court orders otherwise.

9.    Nothing in this Stipulated Protective Order shall require disclosure of material that counsel for a party or a third party contends is protected from disclosure by the attorney-client privilege or the attorney work-product immunity. This shall not preclude any party from moving the Court for an Order directing the disclosure of such material.

10.    Nothing in this Stipulated Protective Order shall be construed as a waiver of the right of any party to object to the taking or the admissibility of any testimony or other evidence where such objection is based on a ground or grounds other than that the testimony or evidence involves CONFIDENTIAL MATERIALS, and nothing herein shall be construed as an agreement that any CONFIDENTIAL MATERIALS shall be withheld from or excluded from evidence in any proceeding in this case.

11.     This Stipulated Protective Order shall not prevent a party or third party from applying to the Court for relief therefrom, or from applying to the Court for further or additional protective orders.

12.    CONFIDENTIAL MATERIALS may be used to prepare for and conduct discovery and to prepare for trial.  CONFIDENTIAL MATERIALS may also be used in testimony at trial, in connection with any motion, at any hearing, and at depositions, and may be offered in evidence at trial or in connection with any motion. The restrictions on use of CONFIDENTIAL MATERIALS set forth in this

A-87

Case No. 1:06-cv-00619-LTB-MJW    Document 37    filed 02/07/07    USDC Colorado
pg 10 of 15
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 100 of 131    PageID 5533

Stipulated Protective Order shall survive the conclusion of this litigation and, after conclusion of this litigation. The Court shall retain jurisdiction for the purpose of enforcing this Stipulated Protective Order **until termination of this case**.

(a)    All pleadings or other court filings which incorporate or disclose CONFIDENTIAL MATERIALS shall be filed, pursuant to D.C.COLO.LCivR **7.2 and** 7.3, according to the ECF procedures for filing sealed materials, or if in paper form, unfolded in a sealed envelope or other appropriate sealed containers with a copy of a cover page affixed to the outside of the envelope, on which shall be endorsed: a) the case caption; b) the title of the paper or document; c) the name, address, and telephone number of the attorney or pro se party filing the paper or document; d) a notation that the paper or document is filed under seal; and e) the title and date of the court order pursuant to which the paper or document is sealed, if applicable, or the citation of the statute or other authority pursuant to which the paper or document is sealed, if applicable. Copies of the papers or documents in sealed envelopes shall be filed in accordance with D.C.COLO.LCivR 10.1L.

Such documents shall be kept in accordance with the Court's rules and shall remain under seal until otherwise ordered by the Court.

Where possible, those pages claimed to contain confidential information or material shall be segregated from the remainder of the associated material and filed separately. In addition, the above restraints shall not prevent a second copy of any pleading or paper specifically intended for review by the Court and appropriately designated from being hand delivered to the Court's chambers. Any documents so filed shall not be made a part of the public record herein and shall be returned to

Case No. 1:06-cv-00619-LTB-MJW    Document 37    filed 02/07/07    USDC Colorado
pg 11 of 15
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 101 of 131    PageID 5534

the respective parties promptly upon completion of the litigation.

(b)    Any disclosure of CONFIDENTIAL MATERIALS in any other court proceeding herein (other than when proffered as evidence at trial) shall be made *in camera* unless the Court orders otherwise, or the parties mutually agree otherwise.

13.    The inadvertent production of any privileged or otherwise protected materials shall not be deemed a waiver or impairment of any claim of privilege or protection, including, but not limited to the attorney-client privilege, the protection afforded to work-product materials, the confidentiality protection of the Stipulated Protective Order, or the subject matter hereof.  Upon receiving notice from the Providing Party that materials have been inadvertently produced, they shall be promptly returned to the Providing Party.  Such return shall not be deemed an admission or concession regarding any claimed privilege or protection under this Order.

14.    Notwithstanding any of the foregoing provisions, this Stipulated Protective Order has no effect upon, and its scope shall not extend to, any person's use of its own CONFIDENTIAL MATERIALS.

15.    Within sixty (60) days after final termination of this action, whether by judgment, settlement or otherwise, counsel for the Receiving Party shall return all copies of CONFIDENTIAL MATERIALS to counsel for the Providing Party, or shall destroy such CONFIDENTIAL MATERIALS and certify the destruction to counsel for the Providing Party except that counsel of record may retain for its files one full set of copies of pleading, affidavits, briefs and memoranda filed in this action; one

Case No. 1:06-cv-00619-LTB-MJW    Document 37    filed 02/07/07    USDC Colorado
pg 12 of 15
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 102 of 131    PageID 5535

set of transcripts of all depositions (with exhibits) taken and all of its own work product generated in connection with this action.

16.    Notwithstanding anything to the contrary contained in this Stipulated Protective Order, the restrictions and obligations set forth herein relating to CONFIDENTIAL MATERIALS shall not apply to any information which the parties agree, or the Court rules, which:

(a)    is already in the unrestricted and rightful possession of the receiving party or in the public domain at the time of receipt.  Provided, however, that this Stipulated Protective Order shall not impair, revoke, or affect the parties' obligations to maintain the confidentiality or proprietary information, trade secrets, or other confidential business information;

(b)    becomes public knowledge after receipt through no fault of the Receiving Party, the Receiving Party's counsel, or any expert or consultant retained by the Receiving Party; or

(c)    is transmitted to the Receiving Party by a third party having no obligation to the Providing Party.

Such restrictions and obligations shall not be deemed to prohibit discussions with any person of any CONFIDENTIAL MATERIALS if the parties agree or the Court rules that said person already had or obtained possession thereof legitimately.

A-90

Case No. 1:06-cv-00619-LTB-MJW     Document 37     filed 02/07/07     USDC Colorado
pg 13 of 15
Case 3:21-cv-00194-N     Document 175     Filed 01/06/25     Page 103 of 131     PageID 5536

17.     Any person to whom disclosure is made pursuant to any of the foregoing subparagraphs shall be subject to the restrictions imposed by this Stipulated Protective Order and consents to be subject to the personal jurisdiction of this Court for the limited purposes of securing compliance with the terms, or to punish the breach of any of the terms, of this Order.

Dated this 6th Day of February, 2007.

BY THE COURT:

S/Michael J. Watanabe
Magistrate Judge Michael J. Watanabe


Approved by on behalf of Philip W. Wyers and Wyers Products Group, Inc. by Martin & Henson, P.C.


Date:   February 6, 2007          By:   /s Timothy J. Martin
                                  Timothy J. Martin
                                  Michael R. Henson
                                  9250 West 5th Ave, Suite 200
                                  Lakewood, Colorado 80226
                                  (303) 232-3388


Approved by on behalf of Master Lock Company, by Faegre & Benson LLP


Date:   February 6, 2007          By:   /s Christopher P. Beall
                                  Christopher P. Beall
                                  Faegre & Benson LLP
                                  3200 Wells Fargo Center
                                  1700 Lincoln Street
                                  Denver, Colorado  80203
                                  (303) 607 3500

fb.us.1724461.01

Case No. 1:06-cv-00619-LTB-MJW    Document 37    filed 02/07/07    USDC Colorado
pg 14 of 15
Case 3:21-cv-00194-N    Document 175    Filed 01/06/25    Page 104 of 131    PageID 5537

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 06-cv-00619-LTB-MJW

Philip W. Wyers, a Colorado
resident, and Wyers Products
Group, Inc., a Colorado corporation,

      Plaintiffs,

v.

Master Lock Company,
a Delaware corporation

      Defendant.

---

## WRITTEN ASSURANCE

---

I, _____, declare that: I reside at _____ in the city of _____, county of _____, state of _____, and acknowledge and declare as follows:

I have been provided with and have read a copy of the Stipulated Protective Order ("Order") dated _____ entered in connection with this case and I agree, upon the threat of penalty of contempt and other civil remedies, to be bound by the terms of this Order. I further irrevocably consent to the jurisdiction of the United States District Court, District of Colorado, for the purpose of any proceeding to enforce or secure compliance with the terms of this Order, or to punish the breach of any of the terms of this Order.

A-92

Executed this ___ day of _____, 200_, at _____.

_____
Name

A-93

# Exhibit J

Case 3:12-cv-00943-M Document 75-1 Filed 02/06/13 Page 1 of 25 PageID 1187
Case 3:12-cv-01712-M Document 75-1 Filed 02/06/13 Page 1 of 25 PageID 1187



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

MAR - 4 2013

CLERK, U.S. DISTRICT COURT
By _____
Deputy

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

COMCAST CABLE COMMUNICATIONS,  )
LLC, COMCAST MO GROUP, INC., and  )
NATIONAL DIGITAL TELEVISION  )
CENTER, LLC (dba COMCAST MEDIA  )
CENTER),  )
                    )
      Plaintiffs,  )
                    )
      v.  )
                    )
BT AMERICAS, INC., BT  )
CONFERENCING, INC., and RADIANZ  )
AMERICAS, INC. (dba BT RADIANZ),  )
                    )
      Defendants.  )
                    )

Civil Case No. 3:12-cv-01712-M

**JURY TRIAL DEMANDED**

## [~~PROPOSED~~] PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26(c), the Court finds that good cause exists for entry of a

protective order to prevent unauthorized disclosure and use of the parties' trade secrets and other

confidential information during and after the course of this litigation. Accordingly, IT IS

HEREBY ORDERED as follows:

1.     **PURPOSES AND LIMITATIONS**

Disclosure and discovery activity in this action are likely to encompass confidential,

proprietary, or private information for which special protection from public disclosure and from

use for any purpose outside this litigation would be warranted. Accordingly, the parties hereby

stipulate to and petition the Court to enter the following Protective Order. The parties

acknowledge that this Order does not confer blanket protections on all disclosures or responses

to discovery and that the protection it affords extends only to the limited information or items

that are entitled under the applicable legal principles to treatment as confidential. The parties

further acknowledge, as set forth in Section 9 below, that this Protective Order creates no

1

A-94

entitlement to file such information under seal; Civil Local Rule 79.3 sets forth the procedures that must be followed and reflects the standards that will be applied when a party seeks permission from the court to file material under seal.

2.      **DEFINITIONS**

2.1      **Party:**  any party to this action, including all of its officers, directors, employees, agents, consultants, retained experts, and Counsel of Record (and their staff).

2.2      **Disclosure or Discovery Material:**  all items or information, regardless of the medium or manner generated, stored or maintained (including, among other things, documents, testimony, transcripts, interrogatory answers, responses to requests for admission, pleadings, correspondence, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.3      **"CONFIDENTIAL" Information or Items:**  non-public Disclosure or Discovery Material (regardless of how generated, stored or maintained) that a party claims in good faith contains or discloses information relating to trade secrets, confidential, or proprietary research, development, technical or commercial information within the meaning of Fed. R. Civ. P. 26(c)(1)(G).  This material includes, but is not limited to, non-public experiments, technical documents, laboratory notebooks, source code, current pricing, market information, marketing material (including current marketing plans), and customer, distributor, licensee, supplier, and vendor information.

2.3.1      **"CONFIDENTIAL–TECHNICAL" Information:**  a subcategory of **CONFIDENTIAL** information that is technical in nature, including, but not limited to, non-public experiments, laboratory notebooks, technical documents, system architecture information, and template and configuration files.

2

A-95

2.3.2   **"CONFIDENTIAL SOURCE CODE" Information:** a subcategory of **CONFIDENTIAL** information that includes a Party's source code.

2.4   **Receiving Party:** a Party that receives Disclosure or Discovery Material from a Producing Party.

2.5   **Producing Party:** a Party, non-party, or third party that produces Disclosure or Discovery Material in this action.

2.6   **Designating Party:** a Producing Party that designates information or items that it produces in disclosures or in responses to discovery as **CONFIDENTIAL, CONFIDENTIAL–TECHNICAL** or **CONFIDENTIAL SOURCE CODE.**

2.7   **Protected Material:** any Disclosure or Discovery Material that is designated as **CONFIDENTIAL, CONFIDENTIAL–TECHNICAL** or **CONFIDENTIAL SOURCE CODE.**

2.8   **Counsel of Record:** attorneys who have filed appearances with and been admitted by the Court on behalf of any Party in this action.

2.9   **Other Counsel:** attorneys who have been retained in any capacity by any Party in this action but have not filed an appearance.

2.10   **Counsel:** (without qualifier): Counsel of Record and Other Counsel.

2.11   **Expert:** a person with specialized knowledge or experience in a matter pertinent to the litigation who is: (i) retained by a Party or its Counsel to serve as an expert witness or consultant in this action, (ii) not a past or current employee of a Party or a competitor of a Party, and (iii) not anticipated to become an employee of a Party or a competitor of a Party. This definition includes a professional jury or trial consultant retained in connection with this litigation.

A-96

2.12 **Professional Vendors**: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, organizing, storing, retrieving data in any form or medium, etc.) and their employees and subcontractors.

3. **SCOPE.** The protections conferred by this Protective Order apply not only to Protected Material (as defined above), but also to any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel that includes Protected Material. Counsel will work together to discuss how to handle confidential information to be presented at hearings or at trial.

4. **ACCESS TO AND USE OF PROTECTED MATERIAL**

4.1 **Basic Principles.** With respect to Protected Material that has been designated in accordance with Section 5 below and has been disclosed or produced by another Party, non-party, or third party, a Receiving Party may use such information in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of ¶ 11.2, below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

4.2 **Disclosure and Use of CONFIDENTIAL Information.** Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated **CONFIDENTIAL** only to:

4

A-97

(a)     The Receiving Party's Counsel of Record in this action, as well as employees of said Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation.

(b)     One in-house counsel who is a bona fide attorney assisting outside counsel in this litigation and who: (1) has signed (i) the "Acknowledgment and Agreement to Be Bound" (Exhibit A attached) and (ii) a declaration stating that he agrees to be subject to the jurisdiction of the United States and this Court for purposes of enforcing this Protective Order, and submitted both to the Producing Party; (2) prior to receiving any **CONFIDENTIAL–TECHNICAL** information of the Producing Party, has submitted a sworn declaration to the Producing Party that he or she does not have a competitive technical role for the Receiving Party; (3) agrees to maintain all **CONFIDENTIAL** information in a physically or electronically secure manner available only to him or her; and (4) is not the subject of an unresolved objection under ¶ 4.4 below. "Competitive technical role" for purposes of this Protective Order shall include advice, participation, or role in the client's decisions about patent prosecution involving the technology disclosed in the patents-in-suit or the technology of the accused products. The individuals identified below are pre-approved by the parties under ¶ 4.2(b) and will have immediate access to **CONFIDENTIAL** information when they have completed the undertaking of ¶ 4.2(b)(1) and to **CONFIDENTIAL–TECHNICAL** information if they complete the undertaking of ¶ 4.2(b)(2):

(1)     For BT: Neil Hobbs, Senior Litigation Lawyer (BT Legal) ; and

(2)     For Comcast: David Marcus (Vice President, Deputy

General Counsel, Comcast Cable Communications).

(c)    Experts (as defined in this Order) of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in Section 4.4 below have been followed.

(d)    The Court, Court Reporters, and their respective staffs and personnel.

(e)    Professional Vendors to whom disclosure is reasonably necessary for this litigation.

(f)    During their depositions, witnesses (1) who are listed as the author or prior recipients of the **CONFIDENTIAL** document, (2) the original source of the **CONFIDENTIAL** information, or (3) current employees of the Designating Party. Even if a witness does fall within the three points above in this subsection, the questioning attorney may show the **CONFIDENTIAL** document to a former employee of the Designating Party who is not employed by a competitor at the time of deposition, solely to ask the witness preliminary questions to determine authorship, receipt or access to the **CONFIDENTIAL** document; in this latter situation, the **CONFIDENTIAL** document should be specifically identified on the record, but should not be marked as an exhibit unless the witness confirms the applicability of one or more of the three points above.

(g)    Notwithstanding other provisions of this Protective Order that establish terms for disclosure and use of CONFIDENTIAL or CONFIDENTIAL-TECHNICAL or CONFIDENTIAL SOURCE CODE information, if a Producing Party contends that certain underlying information involves information which

6

cannot be disclosed due to national laws or regulations involving the protection of national security or national infrastructure, the Producing Party is entitled to seek further protective intervention from this Court before it has to produce the underlying information. Nothing in this provision restricts the Receiving Party's ability to challenge the Producing Party's attempt to seek protective intervention from this Court.

4.3 **Newly Identified Individuals Under Paragraph 4.2(b) and Procedures for Objecting.** A Receiving Party may seek to replace its in-house counsel under ¶ 4.2(b) if that counsel materially changes his or her role at, or leaves, the Receiving Party. Designating Parties may object in writing to individuals identified under ¶ 4.2(b) within ten (10) business days of service of a new declaration submitted on their behalf. The Receiving Party shall not disclose **CONFIDENTIAL** information to a ¶ 4.2(b) individual until ten (10) business days have elapsed following service of the declaration. If an objection to such an identified individual is received, the Receiving Party shall not disclose **CONFIDENTIAL** information to that individual until the objection is resolved by agreement of the parties or by the Court.

4.4 **Procedures for Approving Disclosure of CONFIDENTIAL Information or Items to "Experts".**

(a) Unless otherwise ordered by the court or agreed in writing by the Designating Party, a Party that seeks to disclose to an "Expert" (as defined in this Order) any information or item that has been designated **CONFIDENTIAL** first must make a written disclosure to the Designating Party that (1) sets forth the full name of the Expert and the city and state of his or her primary residence, (2) attaches a copy of the Expert's current resume, (3) identifies the Expert's current employer(s), (4) identifies each person

7

A-100

or entity from whom the Expert has received compensation for work in his or her areas of expertise or to whom the expert has provided professional services at any time during the preceding four years, and (5) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has provided any professional services during the preceding four years.

(b)     A Party that makes a disclosure of the information specified in the preceding paragraph may disclose the subject Protected Material to the identified Expert unless, within ten (10) business days of delivering the disclosure, the Party receives a written objection from the Designating Party.  Any such objection must set forth in detail the grounds on which it is based.

(c)     A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice-to-voice dialogue) to try to resolve the matter by agreement.  If no agreement is reached, the Party seeking to make the disclosure to the Expert may file a motion as provided in Civil Local Rule 7.1 (and in compliance with Civil Local Rule 79.3, if applicable) seeking permission from the Court to do so.  Any such motion must describe the circumstances with specificity, set forth in detail the reasons for which the disclosure to the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail and suggest any additional means that might be used to reduce that risk.  In addition, any such motion must be accompanied by a competent declaration in which the movant describes the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet-and-confer discussions) and sets forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.  In any such proceeding, the Party opposing disclosure to the Expert shall bear

8

A-101

the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

### 4.5 Disclosure and Use of CONFIDENTIAL SOURCE CODE Information.

(a) Access to a Party's source code shall be provided only on one "stand-alone" computer (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet). The stand-alone computer may be connected to a printer or a device capable of temporarily storing electronic copies solely for the limited purposes permitted pursuant to paragraphs 4.5(i) and (l) below. Additionally, except as provided in paragraph 4.5(l) below, the stand-alone computer may only be located at the offices of the Producing Party's Texas-based outside counsel.

(b) The Receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 8:00 a.m. through 6:00 p.m., Monday through Friday. However, upon reasonable notice from the receiving party, the Producing Party shall make reasonable efforts to accommodate the Receiving Party's request for access to the stand-alone computer outside of normal business hours. The Parties agree to cooperate in good faith such that maintaining the Producing Party's source code at the offices of its Texas-based outside counsel shall not unreasonably hinder the Receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action.

A-102

(c)      The Producing Party shall provide the Receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced source code on the stand-alone computer(s).

(d)      The Producing Party will produce source code in computer searchable format on the stand-alone computer(s) as described above, and the Producing Party shall provide a printed copy of a complete directory tree listing the folders and files contained in the stand-alone computer if (1) such directory tree is in existence and in the control and custody of the Producing Party, or (2) can be generated by the Producing Party without an unreasonable burden.  The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business, and such tools are reasonably necessary for the Receiving Party to perform its review of the source code consistent with all of the protections herein.  Further, the Receiving Party's outside counsel and/or experts may request that commercially available software tools, including tools that are no longer used by the Producing Party but are commercially available, for viewing and searching source code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party approves such software tools, such approval which will not be unreasonably withheld; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the source code consistent with all of the protections herein.

(e)      Access to Protected Material designated "**CONFIDENTIAL SOURCE CODE**" shall be limited to (i) outside counsel and employees of such outside

10

A-103

counsel actively assisting such counsel in the litigation of this Action and to whom it is reasonably necessary to disclose such information, and (ii) up to three (3) outside consultants or experts (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 4.4 above.

(f)     At the time of inspection, the Receiving Party's outside counsel and/or experts shall be entitled to take notes relating to the source code on a note-taking computer provided by the Producing Party. The Receiving Party's outside counsel and/or experts may not copy the source code into the notes or transmit (or attempt to transmit) any source code or notes relating to the source code electronically over the Internet or through any other unauthorized means. The Receiving Party's outside counsel and/or experts shall be responsible for creating an encrypted file for any notes taken on the note-taking computer. To the extent the Receiving Party seeks an electronic version of notes taken on the note-taking computer, such notes will be burned onto a CD-ROM. The notes on the CD-ROM must be transferred to the Receiving Party's outside counsel's and/or experts' computer at the end of each day of review. This transfer will take place outside of the secured room. Once the transfer has taken place, the Receiving Party's outside counsel and/or experts must destroy the CD-ROM. The Receiving Party is not permitted to remove the note-taking computer from the secured room. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review and transfer of notes from the note-taking computer to the Receiving Party's outside counsel's and/or experts' computer, but only to ensure that no unauthorized electronic records of the source code and no information concerning the

11

A-104

source code are being created or transmitted in any way.

(g)     A Receiving Party may include excerpts of source code in a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document, provided that the source code documents are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures and orders.

(h)     To the extent portions of source code are quoted in a source code document, either (1) the entire source code document will be stamped and treated as **CONFIDENTIAL SOURCE CODE** or (2) those pages containing quoted source code will be separately stamped and treated as **CONFIDENTIAL SOURCE CODE**.

(i)     Except as set forth in paragraph 4.5(l) below, no electronic copies of source code shall be made without prior written consent of the Producing Party, except as necessary to create documents which, pursuant to the Court's rules, procedures and order, must be filed or served electronically.

(j)     The Receiving Party shall be permitted to make a reasonable number of printouts at the time of inspection and photocopies of source code, all of which shall be designated and clearly labeled **CONFIDENTIAL SOURCE CODE**, and the Receiving Party shall maintain a log of all such files that are printed or photocopied.

(k)     Should such printouts or photocopies be transferred back to electronic media, such media shall be labeled **CONFIDENTIAL SOURCE CODE** and shall continue to be treated as such.

(l)     If the Receiving Party's outside counsel, consultants, or experts

12

A-105

obtain printouts or photocopies of source code, the Receiving Party shall ensure that such outside counsel, consultants, or experts keep the printouts or photocopies in a secured locked area in the offices of such outside counsel, consultants, or expert. The Receiving Party may also temporarily keep the printouts or photocopies at: (i) the Court for any proceedings(s) relating to the source code, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the source code are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the printouts or photocopies (e.g., a hotel prior to a Court proceeding or deposition).

(m)     A Producing Party's source code may only be transported by the Receiving Party at the direction of a person authorized under paragraph 4.5(e) above to another person authorized under paragraph 4.5(e), on paper or removable electronic media (*e.g.*, a DVD, CD-ROM, or flash memory "stick") via hand carry, Federal Express, or other similarly reliable courier. Source code may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet. Source code may only be transported electronically for the purpose of Court proceeding(s) or deposition(s) and is at all times subject to the transport restrictions set forth herein. But, for those purposes only, the source code may be loaded onto a stand-alone computer.

5.      **DESIGNATING PROTECTED MATERIAL**

5.1     **Exercise of Restraint and Care By The Designing Party.** Each Party or non-party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. A

13

A-106

Designating Party must take care to designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routine designations are prohibited. Designations that are shown to be clearly unjustified, or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process, or to impose unnecessary expenses and burdens on other parties), may expose the Designating Party to sanctions.

If it comes to a Party's or a non-party's attention that information or items that it designated for protection do not qualify for protection under this Protective Order, that Party or non-party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.2    **Manner and Timing of Designations.** Except as otherwise provided in this Order (see, e.g., section 5.2(a) below) or as otherwise stipulated or ordered, material that qualifies for protection under this Protective Order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this Order requires:

(a)    **for information in documentary form** (but not including transcripts of depositions, court hearings, or other court pretrial or trial proceedings), that the Producing Party shall affix or cause to be affixed the legend **CONFIDENTIAL** or **CONFIDENTIAL SOURCE CODE** on each page that contains Protected Material. The use of the legend **CONFIDENTIAL–TECHNICAL** is an optional designation and failure to use this legend on technical documents does not impact a Party's rights or restrictions with respect to a Party's **CONFIDENTIAL** information. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must

14

A-107

clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins or appropriate forms of redaction). A Party or non-party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all materials made available for inspection shall be deemed **CONFIDENTIAL**. After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Protective Order, and then, before producing the specified documents, the Producing Party must affix the appropriate **CONFIDENTIAL** or **CONFIDENTIAL SOURCE CODE** legend on each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins or other appropriate forms of redaction).

(b)      **for testimony given in deposition, court hearing, or other court pretrial or trial proceedings**, that before the close of the deposition, hearing, or other court proceeding, the Party or non-party offering or sponsoring the testimony shall identify on the record all protected testimony and shall further specify any portions of the testimony that qualify as **CONFIDENTIAL**. Furthermore, at any point in time up to and including 20 days after receipt of the transcript, any party may designate the entire transcript or appropriate portions thereof under as **CONFIDENTIAL** under the appropriate provisions of this Protective Order.

15

A-108

Transcript pages containing Protected Material should be identified with the legend **CONFIDENTIAL**, as instructed by the Party or nonparty offering or sponsoring the witness or presenting the testimony.

(c)      **for information produced in some form other than documentary, and for any other tangible items**, that the Producing Party must take reasonable steps to provide notice prominently with respect to such information; for example, by affixing in a prominent place on the exterior of the container(s) or disc(s) in which the information or item is stored the legend **CONFIDENTIAL** or **CONFIDENTIAL SOURCE CODE**.  If only portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portions.

5.3      **Inadvertent Failure(s) to Designate.**  If timely corrected, an inadvertent failure to designate qualified information or items as **CONFIDENTIAL** or **CONFIDENTIAL SOURCE CODE** does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. If material is appropriately designated as **CONFIDENTIAL** or **CONFIDENTIAL SOURCE CODE** after the material was initially produced, the Receiving Party, on timely notification of the designation, must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

5.4      **Limits on Confidential Information.**  Information is not Protected Material under this Protective Order which (a) is shown by contemporaneous documentation of the Receiving Party to have been in its possession prior to receipt from the Producing Party; or (b) becomes, through no fault of the Receiving Party, publicly known; or (c) is furnished to the

16

A-109

Receiving Party by a third party without breach of a duty to the Producing Party; or (d) is independently developed by the Receiving Party without access to the Protected Information.

### 6.   <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

6.1   <u>Timing of Challenges</u>.  A challenge to a Designating Party's confidentiality designation should normally be raised promptly after the Receiving Party becomes aware that it disagrees with the Designating Party's confidentiality designation. However, a Party that elects not to mount a challenge promptly after the confidentiality designation is disclosed does not thereby waive its right to later challenge a confidentiality designation if the Court determines that circumstances taken as a whole preserve substantial fairness, avoid unnecessary economic burdens, and is warranted to prevent significant disruption or delay of the litigation.

6.2   <u>Meet and Confer</u>.  A Party that elects to initiate a challenge to a confidentiality designation must do so in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) with counsel for the Designating Party.  In conferring, the challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and to explain the basis for the chosen designation.  A challenging Party may proceed to the next stage of the challenge process only if it has first engaged in this meet and confer process.

6.3   <u>Judicial Intervention</u>.  A Party that elects to press a challenge to a confidentiality designation after considering the justification offered by the Designating Party may file and serve a motion under Civil Local Rule 7.1 (and in compliance with all Civil Local Rules and Standing Orders of the Court, as applicable).  Each such motion shall set forth in detail

A-110

the basis for the challenge, must be accompanied by a competent declaration that the movant has complied with the meet and confer requirements imposed in the preceding paragraph, and set forth with specificity the justification for the confidentiality designation given by the Designating Party during the meet and confer dialogue. The ultimate burden of persuasion in any such challenge proceeding shall be on the Designating Party.

Until the Court rules on the challenge, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation.

7.     **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION.** If a Receiving Party is served with a subpoena or a document demand issued in other litigation that would compel disclosure of any information or items designated in this action as **CONFIDENTIAL** or **CONFIDENTIAL SOURCE CODE**, the Receiving Party must so notify the Designating Party in writing (by email and fax) as soon as reasonably possible and in no event more than three court days after receiving the subpoena or demand. Such notification must include a copy of the subpoena or document demand.

The Receiving Party also must inform in writing the person who caused the subpoena or document demand to issue in the other litigation that some or all the material covered by the subpoena or demand is the subject of this Protective Order, and therefore may be subject to protective action by the Designating Party. In addition, the Receiving Party must deliver a copy of this Protective Order promptly to the person who caused the subpoena or demand to issue in the other litigation.

The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party an opportunity to try to protect its confidentiality interests in the court from which the subpoena or document demand issued. The

Designating Party shall bear the burden and expense of seeking protection of its Protected Material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

8. **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL.** If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

9. **FILING PROTECTED MATERIAL.** A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79.3 of this Court. If Protected Material comprises only a portion of the pleading or other document to be filed, the filing party shall file and/or serve a redacted version of the pleading or other document pursuant to the local rule, redacting only the Protected Material.

10. **PROSECUTION BAR.** Any attorney (whether in-house or outside counsel) representing any Party, and any person associated with the Parties who accesses, reviews, or otherwise learns the substance of, in whole or in part, another Party's **CONFIDENTIAL– TECHNICAL** information (whether or not that information is designated **CONFIDENTIAL– TECHNICAL**) or **CONFIDENTIAL SOURCE CODE**, shall not engage in Prosecution Activity on behalf of the Parties or their affiliates, acquirers, or successors, or any direct competitor of any of the Parties during the pendency of this action and for one (1) year after its

19

A-112

conclusion (including any appeals). "Prosecution Activity" means to prepare, draft, prosecute, advise, or assist in the preparation or prosecution of any patent application involving the technology disclosed in the patents in suit or the technology of the Accused Products (including but not limited to responding to office actions, signing oaths or declarations (with the exception of powers of attorney), or assisting in such activities) or reexamination proceedings of U.S. Patent Nos. 5,752,159; 6,115,035; 6,487,594; 6,148,400; 5,638,516; 7,142,508 or patents in related fields.

Nothing in this section shall prohibit any attorney of record in this litigation from discussing any aspect of this case that is reasonably necessary for the prosecution or defense of any claim or counterclaim in this litigation with his/her client.

Nothing in this section shall prohibit any attorney of record in this litigation from advising counsel in any reexamination or reissue proceeding involving a patent asserted in this action if the following conditions are met: (1) outside counsel, the patentee or the assignee retains reexamination or reissue counsel separate from and unaffiliated with outside counsel in this case; (2) outside counsel does not directly prosecute the reexamination or reissue, in whole or in part; (3) outside counsel does not participate in the drafting of new claims during the reexamination or reissue; (4) outside counsel does not reveal **CONFIDENTIAL** Information to outside reexamination or reissue counsel; and (5) outside counsel does not use an opposing Party's **CONFIDENTIAL** Information for any purpose other than the preparation for and conduct of the trial in this case, which shall include not using the opposing Party's **CONFIDENTIAL** Information, or knowledge gained therefrom, in connection with advising reexamination or reissue counsel, the patentee, or the assignee regarding the reexamination.

A-113

## 11.   TERM AND TERMINATION

11.1   **Duration.**  Even after the termination of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs or the underlying material becomes public through no action of the Receiving Party.

11.2   **Final Disposition.**  Unless otherwise ordered or agreed in writing by the Producing Party, within sixty days after the final termination of this action, including exhaustion of all rights to appeal, each Receiving Party must return or destroy all Protected Material received from a Producing Party.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material.  By the 60-day deadline, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) that identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and that affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or other forms of reproducing or capturing any of the Protected Material.  Notwithstanding other provisions of this Protective Order, Counsel of Record are entitled to retain an archival copy of all pleadings, motion papers, transcripts, exhibits, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material.  Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in ¶ 4, above.

## 12.   MISCELLANEOUS

12.1   **Right to Further Relief.**  Nothing in this Order limits the right of any person to seek modification of this Order by the Court in the future.

A-114

12.2    **Right to Assert Other Objections.**  By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order. Similarly, no Party waives any right to object on any ground to the use in evidence of any of the material covered by this Protective Order.  Nothing in this Protective Order shall be construed as a finding that any designated Protected Material actually constitutes or contains proprietary or confidential material or trade secrets.  For purposes of this order, **CONFIDENTIAL** information shall not include information that (a) has become public knowledge in a manner other than by violation of this Order; (b) is acquired by the Receiving Party from a third party having the right to disclose voluntarily such information or material; (c) was lawfully possessed by the Receiving Party prior to the entry of this Order by the Court; or (d) was lawfully developed by the Receiving Party independent of the information produced under the Protective Order.

12.3    **Inadvertent Production of Privileged Documents.**  If a party learns that through inadvertence it has produced or provided discovery which it believes is subject to a claim of attorney-client privilege or work product immunity, the Producing Party must promptly give written notice to the Receiving Party or parties that the information or material is subject to a claim of attorney-client privilege or work product immunity and request that the information or material be returned to the Producing Party.  The Receiving Party may challenge the designation of such information as attorney-client privileged or attorney work product by (i) conducting a meet-and-confer on the issue within ten (10) business days of written notice from the Producing Party, and (ii) if no agreement is reached, by filing a motion within ten (10) business days after the meet-and-confer.  The motion shall be filed under seal and shall include a copy of the designated material in question.  The Receiving Party bears the burden of proving that the

22

A-115

designation is not justified.  The Receiving Party or parties shall return such information or material to the Producing Party unless the Receiving Party has made a timely challenge to designation of such information or material as attorney-client privileged or work product protected.  If a timely challenge is made, then unless and until the Court has resolved the issue, the Receiving Party shall return or destroy all copies or derivatives of the disputed information except for the material that is attached to and comprises part of the challenge motion retained in the files of Counsel of Record and confirm in writing to the Producing Party that such information has been returned or destroyed.  Such inadvertent production of privileged material shall not be deemed a waiver of any asserted privilege or protection.  Return or destruction of the information or material by the Receiving Party shall not constitute an admission or concession, or permit any inference, that the returned information or material is, in fact, properly subject to a claim of attorney-client privilege or work product immunity nor shall it foreclose any Party from later moving the court for an order that such information or material has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.

12.4    **Advice to Clients.**  Nothing in this Protective Order shall bar or otherwise restrict any attorney for the parties from rendering advice to his or her client with respect to this action.  In the course of doing so, said attorney may generally refer to or rely upon his or her examination of Protected Material, but shall not disclose the specific contents of the Protected Material to persons not authorized to receive such Protected Material pursuant to this Protective Order, except by written agreement with counsel for the Designating Party.

12.5    **Non-Parties.**  The terms of this Protective Order are applicable to Protected Material produced by a non-party.  Any Party or non-party may designate any of its

23

A-116

own material produced in connection with this litigation as **CONFIDENTIAL,**

**CONFIDENTIAL–TECHNICAL** or **CONFIDENTIAL SOURCE CODE** information. Such

material so designated will be protected by the remedies and relief provided by the Protective

Order.

      12.6    **Disclosure of Protective Order.** This Order shall not, in any manner, be

disclosed to the jury in any litigation between or among the Parties. Further, this Order shall not

be used, in any manner or form, directly or indirectly, as evidence in any trial or any hearing, or

referred to in any trial or any hearing, save and except a hearing that involves issues related to

any provision of this Order.

IT IS SO ORDERED.

Dated: _____ 3-4-13 _____

_____
The Honorable Barbara M.G. Lynn
United States District Judge

24

A-117

<u>EXHIBIT A</u>

<u>ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND</u>

I, _____ [print or type name], of _____[print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Protective Order that was issued by the United States District Court for the Northern District of Texas on [--date--] in the case of *Comcast Cable Communications, LLC et al. v. BT Americas, Inc., et al,* Civil Action No. 12-1712.  I agree to comply with and to be bound by all the terms of this Protective Order, and I understand and acknowledge that failure to do so could expose me to sanctions and punishment in the nature of contempt.  I solemnly promise that I will not disclose in any manner any information or item that is subject to this Protective Order to any person or entity except in strict compliance with the provisions of this Protective Order.  Nor will I use any such information for any business purpose other than assisting with the aforesaid litigation.

I further agree to submit to the jurisdiction of the United States District Court for the Northern District of Texas for the purpose of enforcing the terms of this Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____[print or type full name] of _____[print or type full address and telephone number] as my Texas agent for service of process in connection with this action or any proceedings related to enforcement of this Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____
[printed name]

Signature: _____
[signature]

A-118