**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |  |
|---|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 3:21-cv-00194-N |
| v. | ) ) ) | |
| EXXON MOBIL CORPORATION, DARREN W. WOODS, LIAM M. MALLON, and MELISSA BOND, | ) ) ) ) | |
| Defendants. | ) ) ) ) ) ) | |

**LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO**
**EXCLUDE THE DECLARATION OF D. RANDALL WRIGHT, P.E.**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

I.     The Class Certification Schedule Allows Plaintiffs to Submit "Rebuttal
       Evidence," including Expert Evidence, with their Class Certification Reply Brief ........... 3

II.    Plaintiffs Submitted a Renewed Motion for Class Certification which Established
       that Plaintiffs Are Entitled to the Basic Presumption of Reliance ..................................... 4

III.   Defendants' Opposition Sought to Disprove Plaintiffs' Entire "Theory of the
       Case" Based on the Full Discovery Record and a New Fact Declaration ......................... 5

IV.    Plaintiffs Seek Additional Pages for their Reply Brief and Attempt to Schedule
       the Deposition of Wright, whom they Timely Disclosed as a Rebuttal Expert ................. 6

V.     Wright Rebuts Several Merits Arguments by Defendants, including that
       "Discovery Has Disproved the Scheme" and "Discovery Refutes Plaintiffs'
       Theory of the Case" ........................................................................................................ 7

ARGUMENT ................................................................................................................... 10

I.     The Wright Rebuttal Is Procedurally and Legally Proper ................................................ 10

       A.    The Wright Rebuttal Is Proper Rebuttal Evidence ................................................ 10

       B.    The Wright Rebuttal Comports with the Law of this District and Supreme
             Court Precedent ................................................................................................... 14

       C.    The Court's Schedule Permits the Wright Rebuttal ............................................... 16

II.    The Wright Report Is Admissible Under Rule 702 .......................................................... 17

       A.    The Wright Rebuttal Does Not Merely Recite Record Evidence ......................... 19

       B.    Wright's Opinions Are Based on Reliable Methodology ..................................... 21

       C.    Wright Is Qualified to Assist the Court in Determining that the Inflated
             Learning Curves Were Used in Exxon's Proved Reserve Estimation .................. 24

III.   Submitting a Sur-Reply that Defendants Agreed to Does Not Prejudice
       Defendants ..................................................................................................................... 25

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aircraft Holding Sol's, L.L.C. v. Learjet, Inc.*,
2024 WL 3042394 (5th Cir. June 18, 2024) ..........................................................25

*Allegheny Cnty Empls' Ret. Sys. v. Energy Transfer LP*,
623 F. Supp. 3d 470 (E.D. Pa. 2022) ....................................................................4

*Amgen v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)...............................................................................................14

*Anderson v. Wells Fargo Bank, N.A.*,
2018 WL 3426269 (N.D. Tex. July 13, 2018) ......................................................19

*Blanchard & Co., Inc. v. Heritage Cap. Corp.*,
1997 WL 757909 (N.D. Tex. Dec. 1, 1997) ..........................................................14

*Canamar v. McMillin Texas Mgmt. Servs., LLC*,
2009 WL 2432012 (W.D. Tex. Aug. 4, 2009)........................................................20

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)....................................................................................2, 17, 18, 19

*De Boulle Diamond & Jewelry, Inc. v. Boulle, Ltd.*,
2014 WL 4413608 (N.D. Tex. Sept. 5, 2014).....................................................17, 18

*Dockery v. Fischer*,
253 F.Supp.3d 832 (S.D. Miss. 2015)...................................................................18

*Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*,
121 F.R.D. 284 (N.D. Tex. 1988) ........................................................................9

*E.E.O.C. v. Kaplan Higher Educ. Corp.*,
748 F.3d 749 (6th Cir. 2014) ...............................................................................24

*In re Enron Corp. Sec. Litig.*,
529 F. Supp. 2d 644 (S.D. Tex. 2006) ..................................................................17

*In re EQT Corp. Sec. Litig.*,
2022 WL 3293518 (W.D. Pa. Aug. 11, 2022) .......................................................4

*Factory Mutual Insurance Co. v. Alon USA L.P.*,
705 F.3d 518 (5th Cir. 2013) ...............................................................................21

*Gibbs v. Gibbs*,
210 F.3d 491 (5th Cir. 2000) ...............................................................................18

*Goldman Sachs Grp., Inc. v. Arkansas Teacher Retirement Sys.*,
594 U.S. 113 (2021)......................................................................................2, 3, 11, 15

*Greene v. Toyota Motor Corp.*,
2014 WL 12575962 (N.D. Tex. May 7, 2014) ....................................................................15

*Griffin v. United States*,
2023 WL 6930445 (E.D. La. Oct. 19, 2023) ....................................................................18

*Guile v. United States*,
422 F.3d 221 (5th Cir. 2005) ....................................................................21

*GWTP Investments, L.P. v. SES Americom, Inc.*,
2007 WL 7630459 (N.D. Tex. Aug. 3, 2007)....................................................................12

*Hathaway v. Bazany*,
507 F.3d 312 (5th Cir. 2007) ....................................................................25

*Headwater Research LLC v. Verizon Comm's, Inc.*,
2025 WL 1739330 (E.D. Tex. June 23, 2025)....................................................................20

*iCharts LLC v. Tableau Software, LLC*,
2024 WL 2305214 (W.D. Tex. May 21, 2024) ....................................................................11

*Kelly v. Healthcare Servs. Group, Inc.*,
2015 WL 1737870 (E.D. Tex. Apr. 10, 2015)....................................................................18

*Lea v. Wyeth LLC*,
2011 WL 13193321 (E.D. Tex. Sept. 16, 2011)....................................................................19

*Lonergan v. A.J.'s Wrecker Serv. Of Dallas, Inc.*,
1999 WL 527728 (N.D. Tex. July 8, 1999)....................................................................13

*Lytle v. Nutramax Lab's, Inc.*,
114 F.4th 1011 (9th Cir. 2024) ....................................................................13

*M.D. v. Perry*,
294 F.R.D. 7 (S.D. Tex. 2013)....................................................................13

*McAfee v. Murray Ohio Mfg., Inc.*,
66 F. App'x 523 (5th Cir. 2003) ....................................................................11

*Nationwide Agribusiness Ins. Co. v. Varco Pruden Bldgs., Inc.*,
2020 WL 1778069 (N.D. Tex. Mar. 3, 2020)....................................................................12

*Orthoflex, Inc. v. ThermoTek, Inc.*,
986 F.Supp.2d 776 (N.D. Tex. 2013) ....................................................................21

*Penn. Gen. Ins. v. Story*,
  2003 WL 21435511 (N.D. Tex. June 10, 2003) ........................................................14

*Poly-Am., Inc. v. Serrot Int'l, Inc.*,
  2002 WL 1996561 (N.D. Tex. Aug. 26, 2002) .......................................................12

*Potts v. Chesapeake Exploration LLC*,
  2013 WL 12123194 (N.D. Tex. May 16, 2013) .......................................................14

*Prantil v. Arkema France S.A.*,
  2022 WL 1570022 (S.D. Tex. May 18, 2022) ........................................................13

*In re Qualcomm Inc. Sec. Litig.*,
  2023 WL 2583306 (S.D. Cal. Mar. 20, 2023) ..........................................................4

*Robroy Industries-Texas, LLC v. Thomas & Betts Corp.*,
  2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) .........................................................21

*Rodriguez v. Olin Corp.*,
  780 F.2d 491 (5th Cir. 1986) ................................................................................10

*Roman v. Western Mfg., Inc.*,
  691 F.3d 686 (5th Cir. 2012) ...............................................................................22

*S.W. Bell Tel., Co. v. Raza Telecom Inc.*,
  2013 WL 11330883 (N.D. Tex. Sept. 26, 2013) ....................................................14

*Salas v. Carpenter*,
  980 F.2d 299 (5th Cir. 1992) .........................................................................20, 21

*Schneider v. Natera*,
  2025 WL 369243 (W.D. Tex. Jan. 28, 2025) .........................................................14

*Spence v. Am. Airlines, Inc.*,
  725 F. Supp. 3d 963 (N.D. Tex. 2025) .............................................................18, 25

*Springs Indus., Inc. v. Am. Motorists Ins. Co.*,
  137 F.R.D. 238 (N.D. Tex. 1991) .......................................................2, 14, 15, 16

*Texokhan Operating, Inc. v. Hess Corp.*,
  89 F. Supp. 3d 903 (S.D. Tex. 2015) ....................................................................24

*Thompson v. Rowan Cos. Inc.*,
  2007 WL 724646 (E.D. La. Mar. 6, 2007) .............................................................19

*Tramonte v. Fibreboard Corp.*,
  947 F.2d 762 (5th Cir. 1991) ...............................................................................13

*Tunica Web Advertising, Inc. v. Barden Miss. Gaming, LLC*,
    2007 WL 2768914 (N.D. Miss. Sept. 18, 2007) ................................................................22, 23

*U.S. v. 14.38 Acres of Land, More or Less, Situated in Leflore Cnty.*,
    80 F.3d 1074 (5th Cir. 1996) ...............................................................................................18

*United States ex rel. Taylor v. Healthcare Assoc's of Tex., LLC*,
    2024 WL 4606799 (N.D. Tex., Oct. 28, 2024)..........................................................9, 10, 11, 12

*United States v. Brownlee*,
    744 F.3d 479 (7th Cir. 2014) ...............................................................................................21

*Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
    455 F. Supp. 2d 545 (N.D. Tex. 2006) ..................................................................................16

*Wellogix, Inc. v. Accenture LLP*,
    823 F.Supp.2d 555 (S.D. Tex. 2011), *aff'd Wellogix, Inc. v. Accenture, L.L.P.*, 716
    F.3d 867 (5th Cir. 2013) ..............................................................................................20, 25

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23..........................................................................................................................4

Fed. R. Civ. P. 26......................................................................................................................2, 12

Fed. R. Evid. 702 .......................................................................................................................2, 17

**INTRODUCTION**

The Wright Rebuttal is procedurally and legally proper for several reasons. To start, the operative case schedule provided that Plaintiffs designate any class certification "rebuttal experts" by July 22, 2024 and that Plaintiffs could submit "rebuttal evidence," including expert evidence, with their reply brief. Pursuant to that schedule, Plaintiffs disclosed on July 22, 2024 that they may rely on Wright as a rebuttal expert in addition to their expert economist, Dr. Matthew Cain. Then, pursuant to the schedule and Plaintiffs' designation, Plaintiffs served the Wright Rebuttal in support of their reply.

Moreover, the Wright Rebuttal is proper rebuttal evidence. It consists of opinions rebutting (i) new price impact opinions offered by Defendants' expert economist Allen Ferrell; (ii) improper, pure merits assertions and evidence raised by Defendants in their Opposition; and (iii) a purported fact declaration by Exxon employee Max Boone ("Boone Declaration"), which was served only after fact discovery had closed. Permitting Plaintiffs to use Wright to rebut such evidence is appropriate given how the discovery schedule in this case worked. Under that schedule, Plaintiffs served their renewed motion for class certification (the "Opening Submission") months before class certification discovery closed, and before any depositions took place. In contrast, Defendants had the benefit of the full class certification discovery record in submitting their opposition to Plaintiffs' renewed motion for class certification (the "Opposition"). Defendants utilized that record to attempt to demonstrate a lack of price impact and to advance improper and incorrect pure merits arguments. Plaintiffs' reply was their first opportunity to address Defendants' arguments and the fully developed record.

To the extent the question of burden is even relevant, and it is not, the Opening Submission contained expert evidence demonstrating that Plaintiffs are entitled to the *Basic* presumption of reliance. This shifted the burden to rebut the *Basic* presumption to Defendants, who must "in fact

1

… sever" completely the link between Defendants' alleged scheme and the stock price. *Goldman Sachs Grp., Inc. v. Arkansas Teacher Retirement Sys.*, 594 U.S. 113, 125 (2021). And to the extent the Court is inclined to consider the pure merits arguments Defendants raise, it is not Plaintiffs' burden to prove the merits of their claims now (particularly given that merits discovery was bifurcated and has not occurred).

Separately, the Wright Rebuttal is proper under the law in this District, which permits new evidence on reply where, as here, there is no "palpable injustice" because the opposing party has the opportunity to respond in a sur-reply—an opportunity that Defendants have under the schedule. *See Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991). Similarly, it is also consistent with the Supreme Court's mandate that district courts "be open to all probative evidence" of price impact at class certification. *Goldman*, 594 U.S. at 122.

The Wright Rebuttal also complies with Rule 702 and *Daubert*. *First*, Wright is a qualified oil and gas expert, with specific expertise as a reservoir engineer in the Permian Basin and in calculating SEC Proved Reserves. *Second*, the Wright Rebuttal does not merely recite record evidence—Wright relies on his industry expertise to interpret highly-technical and complex evidence to rebut Defendants' attempt to sever the learning curve scheme from Exxon's statements and stock price movement. *Third*, Defendants' brief relies on caselaw about trial disclosures under Rule 26, but that law does not apply to class certification. Plaintiffs submitted Wright's analysis to aid the Court in its consideration of the highly technical record to the extent relevant to determining whether the Class should be certified, as permitted by the Court-ordered schedule. Plaintiffs did not disclose the opinions in the Wright Rebuttal under Rule 26, or represent that Wright will testify to such opinions before a jury.

Defendants' contentions that Plaintiffs are improperly using the Wright Rebuttal to avoid

their obligations or exceed the page limits are baseless and not supported by the record. Plaintiffs' arguments are contained within the proscribed page limits, and their brief appropriately cites to the Wright Rebuttal, just like Defendants cite to a voluminous expert report and appendix.

The motion to exclude should be denied.

## BACKGROUND

### I.    The Class Certification Schedule Allows Plaintiffs to Submit "Rebuttal Evidence," including Expert Evidence, with their Class Certification Reply Brief

As has become standard practice in securities fraud class actions, Defendants informed the Court at the outset of this case that they intended to advance a "price impact" challenge to class certification. Once a plaintiff demonstrates entitlement to the fraud-on-the-market presumption of reliance by establishing market efficiency, the burden shifts to Defendants to "in fact … sever" completely the link between the statements and the stock price. *Goldman*, 594 U.S. at 125 (2021).

On December 11, 2023, the Court issued the original class certification scheduling order. ECF No. 122. Consistent with the *Goldman* burden-shifting framework, that schedule provided that after Plaintiffs served their motion for class certification (thus revealing the identity of any opening expert), Defendants would designate any experts in opposition, and Plaintiffs would designate "rebuttal experts." *Id.* Pursuant to an amended class certification scheduling order (ECF No. 154), on July 22, 2024, Plaintiffs disclosed their intention to serve a reply rebuttal report from Dr. Cain, and from Wright "if necessary to rebut evidence Defendants submit supporting their opposition." A-9.[1] For over a year, Defendants did not object.

---

[1] References to "A-__" refer to page numbers of Plaintiffs' Appendix in Support of Lead Plaintiffs' Opposition to Defendants' Motion to Exclude the Declaration of D. Randall Wright, P.E., filed herewith. References to "DB __" and "D. A-__" refer to page numbers of the Motion to Exclude the Declaration of D. Randall Wright, P.E. and Brief in Support (ECF No. 194) and Appendix in Support (ECF No. 195), respectively. References to "¶__" are to the Second Amended Complaint (ECF No. 92).

3

On February 11, 2025, the Court entered the operative schedule, which provided that (i) Plaintiffs shall serve their Renewed Motion for Class Certification on February 7, 2025; (ii) class certification discovery would be completed on June 6, 2025, excluding expert depositions; (iii) Defendants shall serve the opposition to Plaintiffs' Renewed Motion on June 23, 2025; (iv) Plaintiffs shall depose Defendants' experts by July 23, 2025; (v) Plaintiffs shall serve the reply, including any "rebuttal evidence" by August 6, 2025; (vi) Defendants shall depose "any expert" on whom Plaintiffs rely by August 20, 2025; and (vii) Defendants shall serve the sur-reply, "addressing only issues on which Defendants bear the burden," by September 2, 2025. ECF No. 181.

## II.   Plaintiffs Submitted a Renewed Motion for Class Certification which Established that Plaintiffs Are Entitled to the Basic Presumption of Reliance

Plaintiffs served the Opening Submission on February 7, 2025, wherein Plaintiffs invoked the *Basic* presumption of reliance, and submitted an expert report from Dr. Cain, which established the prima facie requirements for the presumption (*e.g.*, that Exxon's shares traded in an efficient market). Plaintiffs thus demonstrated that this Action meets the requirements of Federal Rule 23 and Local Rule 23.2. This is standard practice in securities fraud class actions, including when defendants raise a price impact challenge. *See, e.g.*, *In re Qualcomm Inc. Sec. Litig.*, 2023 WL 2583306 (S.D. Cal. Mar. 20, 2023); *In re EQT Corp. Sec. Litig.*, 2022 WL 3293518 (W.D. Pa. Aug. 11, 2022); *Allegheny Cnty Empls' Ret. Sys. v. Energy Transfer LP*, 623 F. Supp. 3d 470 (E.D. Pa. 2022).

Contrary to Defendants' contention that Plaintiffs did not offer any evidence in their Opening Submission connecting the alleged scheme to Defendants' public statements (DB 3), Plaintiffs proffered (i) statements by the whistleblowers and OSHA's findings, set forth in the Complaint (¶¶115-40, 155-60), and (ii) Defendants' admission that the Production Goal was based

4

on the development plan, which the scheme inflated (¶384). In particular, the Opening Submission incorporated OSHA's findings that, *inter alia*, Dr. Burch and Dr. Gulden had (i) determined that Bond used unrealistic learning curve assumptions in Exxon's publicly-stated production estimates, (ii) reported a "securities fraud" to Exxon HR based on these false assumptions, and (iii) reasonably believed that Exxon incorporated "artificially inflated production estimates in their SEC filings." *See* ¶¶158(d), 158(g), 159.

Pursuant to the schedule, the Opening Submission did not have the benefit of the full class certification discovery record. The depositions of all seven non-expert witnesses took place between April 30 and June 5, 2025, months ***after*** Plaintiffs served their papers. These included the key depositions of Defendants Bond and Mallon, whistleblowers Drs. Burch and Gulden, and Exxon President Staale Gjervik. Further indicating Plaintiffs intended to rely on Wright as a rebuttal expert, a representative from Wright's firm attended four of the depositions. *See* A-5-7.

### III.    Defendants' Opposition Sought to Disprove Plaintiffs' Entire "Theory of the Case" Based on the Full Discovery Record and a New Fact Declaration

On June 23, 2025, after class certification discovery had closed (except for expert depositions), Defendants served the Opposition. Defendants attempted to rebut the *Basic* presumption of reliance by proving a lack of price impact, *i.e.*, that there was no connection between the alleged scheme and the market price of Exxon securities, in multiple ways. D. A-59-65. In support of their argument, Defendants submitted an expert report from Dr. Ferrell, who opined that there was no connection between alleged corrective disclosures and the alleged misrepresentations. D. A-93-94, 96-97.

The Opposition, served after the close of discovery, also included a new fact declaration from Exxon employee Max Boone ("Boone"). Defendants did not disclose in advance that they were submitting the Boone Declaration. By giving no notice of the Boone Declaration, and

submitting it only after the deadline for fact depositions had passed, Defendants ensured that Boone would not be deposed under the schedule. In an attempt to "sever the link" between the SEC Proved Reserves and Resource Base misrepresentations,

D. A-228. Defendants ████████████████ in support of their argument that the fraudulently inflated learning curve did not impact their public statements.

The Opposition also raised several broad, pure merits arguments that Defendants claimed were based on the full class certification discovery record, which Plaintiffs had not yet had an opportunity to address, as discussed below.

## IV. Plaintiffs Seek Additional Pages for their Reply Brief and Attempt to Schedule the Deposition of Wright, whom they Timely Disclosed as a Rebuttal Expert

On July 11, 2025, Plaintiffs filed a motion to increase the number of pages for their class certification reply to address the "completed class certification discovery record" and Defendants' "fact intensive" price impact and merits arguments. ECF No. 186 at 1-2, 6. Contrary to Defendants' suggestion (DB 4), Plaintiffs' page extension motion and reply reiterated that they would submit "rebuttal evidence" (ECF No. 186 at 3; ECF No. 190 at 2, 4), as permitted by the schedule and as previously disclosed to Defendants. Defendants opposed the motion, arguing that Plaintiffs should not be allowed to introduce any new evidence in their reply brief (even though Defendants had the benefit of the full class certification record that did not exist when Plaintiffs filed their Opening Submission). ECF. No. 189 at 2-4. On July 22, the Court granted Plaintiffs' motion for additional pages, and did not accept that Plaintiffs could not submit new evidence on reply. ECF No. 191.

On July 24, two weeks *before* their reply papers were due, Plaintiffs contacted Defendants to reconfirm their intent to submit a rebuttal report from Wright and to provide Wright's

availability for a deposition before the scheduled deadline of August 20. D. A-223.

Without seeing Wright's rebuttal report, which was not due for two weeks, Defendants objected to the report, refused to confirm a deposition date, and demanded that Plaintiffs detail "precisely" the contents of the report. D. A-219-22. Even though Plaintiffs reminded Defendants that they had disclosed Wright as a rebuttal expert more than a year ago (D. A-222) and repeatedly assured Defendants that Wright's report would be limited to "rebutting the new (and incorrect) arguments and evidence you put in your opposition papers for the first time," Defendants threatened to file a motion to compel Plaintiffs to "disclose the actual topics" of Wright's rebuttal report and to "preclude" deposition testimony from Wright. D. A-218. Plaintiffs explained that any such motion would be premature prior to submission of the report itself. D. A-218-19.

**V.      Wright Rebuts Several Merits Arguments by Defendants, including that "Discovery Has Disproved the Scheme" and "Discovery Refutes Plaintiffs' Theory of the Case"**

On August 6, 2025, Plaintiffs served their reply brief in further support of their motion for class certification. Along with their supporting exhibits and declarations, Plaintiffs included the Wright Rebuttal to counter Defendants' price impact arguments and the pure merits arguments that Defendants asserted for the first time in their opposition papers. Wright is a highly trained and experienced petroleum engineer with over 50 years of relevant experience in the oil and gas industry. D. A-164-68. Over his career, Wright has worked with hundreds of oil and gas companies and evaluated hundreds of Permian Basin assets, including calculating SEC Proved Reserves and "analyzing the learning curve process" for hundreds of operators. D. A-165-67.

The Wright Rebuttal sets forth four main opinions, each of which rebuts specific arguments and evidence raised in the Opposition, for which Defendants have the burden of proof. In support of those opinions, Wright relies on, *inter alia*, five depositions conducted ***after*** the Opening Submission (which were accompanied by 128 deposition exhibits), his decades of experience in

7

the oil and gas industry, and clearly articulated industry standards. D. A-175-80, 197, 200.

*First*, the Wright Rebuttal refutes Defendants' merits arguments that "Discovery has disproved the alleged 'scheme'" and "Class certification discovery refutes Plaintiffs' theory of the case," supposedly because ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ D. A-48-53, 58. Wright described industry standards relevant to Defendants' newly-submitted evidence. He also used his industry experience to examine and explain the import of technical internal corporate records of Exxon's development planning process. Wright concluded that to support the first misstatement, ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ D. A-169, 181-96. Wright did not purport to opine on Defendants' "intent or purpose" (DB 6), but rather based his opinions on industry standards (*see, e.g.*, D. A-175-77) and Defendants' data and actions (*see, e.g.*, D. A-169; A-181-96).

*Second*, the Wright Rebuttal disproves the newly-submitted Boone Declaration and other similar evidence which Defendants offered in support of their argument that ██████████████ ████████████████████████████████████████████████████████████████ D. A-52-53, 58, 227-28. Based on a careful analysis of Exxon's internal corporate records, ████████████████████████████████████████████████████████████████, Wright demonstrated that ████████████████████████████████████████ ████████████████████████████ D. A-170, 196-200. Contrary to Defendants' mischaracterization (DB 6-7), Wright directly engaged with and rebutted the Boone Declaration

and relied on the relevant documents cited in the Opposition (D. A-211-12).[2]

*Third*, Wright rebuts Defendants' contention that ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ D. A-51-52. Wright reviewed ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮[3] D. A-170, 200-05. Defendants again

mischaracterize the Wright Rebuttal, which does not assume that ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DB 8.

Rather, Wright opined that ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D. A-169, 187, 189.

*Fourth*, Wright engages in standard rebuttal expert practices by refuting Dr. Ferrell's

***affirmative*** opinion that there was no connection between the January 31, 2020 and May 1, 2020,

corrective disclosures and the alleged misrepresentations offered in support of Defendants'

argument that there was no back-end price impact. D. A-62-64, 87. *United States ex rel. Taylor v.*

*Healthcare Assoc's of Tex., LLC*, 2024 WL 4606799, at *1 (N.D. Tex., Oct. 28, 2024) (Godbey,

---

[2] Defense counsel's claim that the Wright Rebuttal is "deliberately misleading" and "artfully written" to mislead the Court is meritless. *See Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 289 (N.D. Tex. 1988) (accusations of "bad faith" conduct should be "sparingly employed" and have "a sound basis in fact"). That Defendants disagree with Wright's conclusions is no basis for allegations of bad faith. Rather, it demonstrates that there are complex factual issues in dispute and differing expert analysis that must be considered at trial.

[3] Wright also did not ignore Gulden's testimony about ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ There was not. *Id.*

J.) ("A rebuttal report explains, repels, counteracts, or disproves evidence of the adverse party's initial report."). Specifically, Wright opined that

D. A-205-07. Wright further opined that

D. A-207-08. Wright did not "simply repeat[] the contents of internal ExxonMobil documents" (DB 9), but rather, in response to Defendants' affirmative class certification materials, he analyzed

Wright also analyzed and explained

D. A-208-09.

## ARGUMENT

### I.      The Wright Rebuttal Is Procedurally and Legally Proper

#### A.      The Wright Rebuttal Is Proper Rebuttal Evidence

"Rebuttal is a term of art, denoting evidence introduced by a plaintiff to meet new facts brought out in his opponent's [opposition]." *Rodriguez v. Olin Corp.*, 780 F.2d 491, 494 (5th Cir. 1986); *see Taylor*, 2024 WL 4606799, at \*1 (Godbey, J.) (same). The Wright Rebuttal clearly meets this definition: it explains that Wright's opinions are offered to rebut Defendants' price impact and merits-based arguments, all of which were raised for the first time in Defendants' Opposition.

10

Defendants' primary argument is that the Wright Rebuttal does not rebut "any expert opinion in Defendants' Class Opposition or any fact or argument on which Defendants bore the burden." DB 10. But this is not required under either the Court-ordered schedule or the law. "Rebuttal evidence is generally allowed to counter new facts presented in the defendant's presentation of proof." *McAfee v. Murray Ohio Mfg., Inc.*, 66 F. App'x 523, at *7 (5th Cir. 2003); *see, e.g.*, *Taylor*, 2024 WL 4606799, at *1; *iCharts LLC v. Tableau Software, LLC*, 2024 WL 2305214, at *3 (W.D. Tex. May 21, 2024) ("Parties are permitted to submit evidence and arguments in a reply brief 'to rebut a new argument raised by the opposing party in a response.'"). It is also wholly consistent with the Court's scheduling order. *See* ECF No. 181 (allowing Plaintiffs' reply to include "rebuttal evidence" without further qualification, while limiting Defendants' sur-reply to only those "issues on which Defendants bear the burden").

In any event, Wright ***does*** rebut issues on which Defendants bear the burden: (i) Ferrell's price impact opinions, (ii) the Boone Declaration, and (iii) Defendants' pure merits-based evidence and argument seeking to sever the link between the alleged scheme and Exxon's stock price. *See Goldman*, 594 U.S. at 125 (defendants bear burden to "sever" the link).

*First*, the Wright Rebuttal rebuts Dr. Ferrell's flawed price impact opinion that there was no connection between the content of the January 31, 2020 and May 1, 2020 corrective disclosures and the alleged misrepresentations. D. A-205-08. Defendants mischaracterize Dr. Ferrell's opinion as purely "econometric analysis" (DB 10), when in fact, they and Dr. Ferrell argue qualitatively that "there was no connection" between the content of the misstatements and disclosures. D. A-60-64; *see* D. A-87 ("none of the alleged corrective disclosures … are connected to the alleged misrepresentations regarding Exxon's proved reserves"). Even if Dr. Ferrell's opinion was purely econometric, rebuttal experts may introduce new methods of analysis when responding to expert

11

opinions, even under the stricter expert disclosure requirements of Federal Rule of Civil Procedure 26, which do not apply here. *Taylor*, 2024 WL 4606799, at *3 (Godbey, J.) (denying motion to strike rebuttal expert reports introducing new evidence not raised in opening submission as "there is no prohibition on raising new arguments in rebuttal, so long as those arguments directly respond to an opposing expert's opinion").

Defendants' argument that the Wright Rebuttal can *only* address issues raised by Dr. Ferrell (DB 11) erroneously applies Rule 26, which applies only to the parties' "trial" expert disclosures. *See* Fed. R. Civ. P. 26(a)(2) (disclosure requirements for "any [expert] witness [a party] may use at trial").[4] Defendants do not argue that Rule 26 applies in this context, nor could they, as the challenged expert disclosures were made for class certification, not trial, and they were made pursuant to the Court's class certification schedule, not Rule 26(a)(2). *See* ECF Nos. 122, 181. The class certification schedule could have referenced and incorporated Rule 26's limitations on the scope of rebuttal experts, but it does not mention Rule 26(a)(2). *Id.*; *cf. GWTP Investments, L.P. v. SES Americom, Inc.*, 2007 WL 7630459, at *9 (N.D. Tex. Aug. 3, 2007) (noting that, unlike here, the court's scheduling order "tracks the language in Rule 26(a)(2)," defining evidence as "rebuttal" if it responds to another party's expert).

*Second*, Wright explicitly rebuts Boone's assertions by opining that, based on his experience and his review of the discovery record, ███████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████████ D. A-196-97. Wright's expertise helps the factfinder

---

[4] *Nationwide Agribusiness Ins. Co. v. Varco Pruden Bldgs., Inc.*, is inapposite and involved expert disclosures under Rule 26. 2020 WL 1778069, at *11 (N.D. Tex. Mar. 3, 2020); *see also Poly-Am., Inc. v. Serrot Int'l, Inc.*, 2002 WL 1996561, at *15 (N.D. Tex. Aug. 26, 2002) (same).

understand the technical documents produced in discovery that disprove Boone's assertions.

*Third*, Plaintiffs did not (nor could they) anticipate Defendants' undisclosed plan to submit a declaration from a fact witness **after** the close of fact discovery. Plaintiffs' only opportunity to rebut Boone's assertions is on reply through the Wright Rebuttal. *See Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764 (5th Cir. 1991) (courts "generally admit[] rebuttal evidence . . . to rebut evidence unavailable earlier through no fault of the plaintiff"). Defendants' suggestion that Plaintiffs missed their chance to "seek a deposition of Mr. Boone," DB 7 n.5, ignores that Defendants strategically chose not to disclose Boone as witness during the fact discovery period.

*Fourth*, Wright rebuts Defendants' improper pure merits arguments which invoked the fully developed discovery record, including that "[d]iscovery has disproved the alleged 'scheme.'" D. A-48-53, 58, 66; *see also* D. A-169, 181-96.

Defendants argue that "Plaintiffs were required to present" evidence affirmatively proving the existence of the scheme "in their initial moving papers." DB 11. This is wrong. The law is clear that a motion for class certification is not a motion for summary judgment: a plaintiff need not prove the substantive merits of its case to satisfy its burden at class certification. *Prantil v. Arkema France S.A.*, 2022 WL 1570022, at *44 (S.D. Tex. May 18, 2022); *see also id*. at *49 ("There is a difference between considering the merits and requiring a group of would-be class action plaintiffs to prove their case at this procedural stage."); *M.D. v. Perry*, 294 F.R.D. 7, 44 (S.D. Tex. 2013) ("At class certification, though, they do not need to prove that they are entitled to relief based on their claims; they need only make out a claim on behalf of the class."); *Lonergan v. A.J.'s Wrecker Serv. Of Dallas, Inc.*, 1999 WL 527728, at *1 (N.D. Tex. July 8, 1999) (Fitzwater, J.) (at class certification, "Plaintiffs are not required to prove the merits of the class claim or even to establish a probability that the action will be successful"); *Lytle v. Nutramax Lab's, Inc.*, 114 F.4th 1011,

13

1024 (9th Cir. 2024) ("[C]lass action plaintiffs are not required to actually prove their case through common proof at the class certification stage. Rather, plaintiffs must show that they will be able to prove their case through common proof at trial.").

Consistent with the caselaw, questions of whether ███████████████████ ████████████████████████████████████████████████████████ ████████████████████████ are "common questions" that need **not** "be answered, on the merits, in favor of the class" at the class certification stage. *Amgen v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (merits questions "will prevail or fail [for the class] in unison"); *Schneider v. Natera*, 2025 WL 369243, at *7 (W.D. Tex. Jan. 28, 2025) ("common questions" on the merits left to summary judgment or trial). Plaintiffs had no burden to prove these issues in the Opening Submission. *Id*. Moreover, because discovery was bifurcated, merits discovery has not yet occurred.

### B. The Wright Rebuttal Comports with the Law of this District and Supreme Court Precedent

The Court's schedule and Plaintiffs' submission of the Wright Rebuttal comport with the law of this District, which permits new evidence on reply where, as here, there is "no palpable injustice" because the opposing party has the opportunity to respond in a sur-reply. *Springs*, 137 F.R.D. at 239; *see S.W. Bell Tel., Co. v. Raza Telecom Inc.*, 2013 WL 11330883, at *1 (N.D. Tex. Sept. 26, 2013) (denying motion to strike reply that raised new arguments and evidence and granting non-moving party a sur-reply); *Potts v. Chesapeake Exploration LLC*, 2013 WL 12123194, at *2 (N.D. Tex. May 16, 2013) (same); *Penn. Gen. Ins. v. Story*, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003) (same); *Blanchard & Co., Inc. v. Heritage Cap. Corp.*, 1997 WL 757909, at *1 (N.D. Tex. Dec. 1, 1997) (same).

*Springs* is instructive. There, Judge Fitzwater allowed a movant to include "new

14

evidentiary support" in its reply brief, noting that it could be addressed in a sur-reply. 137 F.R.D. at 240. The court found that it could "discern no palpable injustice in considering new supporting materials, followed by an additional response and final reply brief." *Id.* at 240. Thus, *Springs* recognized that the submission of new arguments or evidence on reply, even if not considered (unlike here) to be strict "rebuttal evidence," is permissible so long as the opposing party has a chance to respond. This "permits all appropriate evidence to be considered by the court, avoids depriving the nonmovant of a meaningful opportunity to oppose the factual and legal bases for a motion, and affords the movant the usual right of reply." *Id.* As in *Springs* (and many other instances where new evidence is permitted on reply), the parties here stipulated to allow Defendants to file a sur-reply brief on issues for which they carry the burden (which include the issues that Wright addressed). ECF No. 181. Given Defendants' "opportunity for further response," the Wright Rebuttal is proper and should not be excluded. *Springs*, 137 F.R.D. at 240.

Similarly, the Supreme Court requires district courts to "be open to all probative evidence" of price impact at class certification. *Goldman*, 594 U.S. at 122. To exclude the Wright Rebuttal— which rebuts price impact arguments—would diminish Plaintiffs' ability to respond to such arguments and frustrate the Supreme Courts' instruction to consider "all probative evidence." *Id.*

Defendants' cases are inapposite. In *Greene v. Toyota Motor Corp.*, **the defendant** filed a reply in support of its motion for summary judgment that relied on a fact declaration and documents that **the defendant** had produced after the close of discovery. 2014 WL 12575962, at *1-2 (N.D. Tex. May 7, 2014). The court found that "particularly in light of the late disclosure of the evidence, . . . consideration of the evidence would unduly prejudice **Plaintiffs**." *Id.* at *2. Unlike in *Greene*, Wright relied entirely on evidence produced in the normal course of class certification discovery (including a very significant amount of important new evidence produced

15

only *after* Plaintiffs filed the Opening Submission) and there is no undue prejudice to Defendants that would result from the Court's consideration of the Wright Rebuttal because Defendants have a sur-reply. *See Springs*, 137 F.R.D. at 240. *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.* is similarly inapposite; there, the court struck from a reply brief an entirely new theory of vacatur that did not rebut any new argument raised on opposition. 455 F. Supp. 2d 545, 550-51 (N.D. Tex. 2006). Here, Wright rebuts Defendants' price impact arguments and merits arguments, which Defendants raised for the first time in their Opposition.

### C.   The Court's Schedule Permits the Wright Rebuttal

As noted above, the Wright Rebuttal comports with the Court-ordered schedule, which allows Plaintiffs to submit "rebuttal evidence," and Defendants to depose "any expert submitted with Lead Plaintiffs' Reply." ECF No. 181. The only condition the Court set for the submission of rebuttal experts with Plaintiffs' reply was that "Plaintiffs would designate rebuttal experts, if any, by July 22, 2024." *Id.* Plaintiffs did precisely that, advising Defendants on July 22, 2024, that they would rely on Wright "if necessary to rebut evidence Defendants submit supporting their opposition to Plaintiffs' motion for class certification." D. A-217. For over a year, Defendants did not object to the designation of Wright as a rebuttal expert for this purpose.

Defendants argue incorrectly that document production was substantially completed in July 2024 and Plaintiffs could and should have incorporated the documents Wright relies on in their Opening Submission. DB 11. But this ignores the burden-shifting framework described above, pursuant to which Plaintiffs established that they were entitled to the *Basic* presumption by submitting Dr. Cain's market efficiency report with the Opening Submission. There is no legal requirement that Plaintiffs show they are entitled to the *Basic* presumption by relying only on Defendants' internal documents.

Defendants' argument also ignores the additional document productions made *after* the

16

Opening Submission, on which Wright relied. *Id.* Further, the depositions necessary to understand the context of Exxon's highly technical documents, on which Wright also relied, did not begin until April 2025, months *after* Plaintiffs' Opening Submission.

Defendants also wrongly suggest that Plaintiffs had access to Drs. Gulden and Burch but failed to incorporate their testimony in the Opening Submission. Plaintiffs **did** incorporate the whistleblower accounts, including Lead Counsel's investigatory interviews of Drs. Burch and Gulden, and OSHA's ***findings of fact***, into their Opening Submission, which demonstrated the scheme and its connection to the public statements at issue, as noted above. D. A-15-17 (citing ¶¶105-243, including ¶¶114, 158-59). But Plaintiffs did not have the benefit of Drs. Burch and Gulden's sworn testimony until after the Opening Submission, when they were deposed.

Finally, it is not true that Defendants do not have "a meaningful opportunity to respond." DB 11-12. The schedule provides Defendants with a sur-reply to address any arguments on which they bear the burden, including all the issues addressed by the Wright Rebuttal.

## II.      The Wright Report Is Admissible Under Rule 702

The Wright Rebuttal is fully admissible under both Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Once a court has determined that an expert is qualified "by knowledge, skill, experience, training, or education . . . [,]" Fed. R. Evid. 702, "*Daubert* requires the court to determine if the expert's testimony is reliable and if his 'reasoning or methodology properly can be applied to the facts in issue,' *i.e.*, whether it is relevant and will help the trier-of-fact decide the ultimate issues in the case." *In re Enron Corp. Sec. Litig.*, 529 F. Supp. 2d 644, 745 (S.D. Tex. 2006) (quoting *Daubert*, 509 U.S. at 590, 593). "The inquiry envisioned by Rule 702 is, we emphasize, a flexible one." *Daubert*, 509 U.S. at 594.

Trial courts are afforded "wide latitude in deciding how to determine reliability." *De Boulle Diamond & Jewelry, Inc. v. Boulle, Ltd.*, 2014 WL 4413608, at *2 (N.D. Tex. Sept. 5, 2014).

*Daubert* "did not work a seachange over federal evidence law, and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *Id.* (quoting *U.S. v. 14.38 Acres of Land, More or Less, Situated in Leflore Cnty.*, 80 F.3d 1074, 1078 (5th Cir. 1996)). *Daubert* itself instructs that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* "[R]ejection of expert testimony is the exception rather than the rule." *Spence v. Am. Airlines, Inc.*, 725 F. Supp. 3d 963, 975 (N.D. Tex. 2025).

These bedrock principles of flexibility in admitting expert testimony are all the more pronounced where the district court judge sits as the trier of fact, such as during class certification. Indeed, it is exceedingly rare for courts in this position to exclude entirely an expert report under *Daubert* because "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000); *Griffin v. United States*, 2023 WL 6930445, at *1 (E.D. La. Oct. 19, 2023) (denying motion to exclude despite "compelling arguments for exclusion"). Thus, in the class certification context, courts are reluctant to exclude expert evidence. *See*, *e.g.*, *Kelly v. Healthcare Servs. Group, Inc.*, 2015 WL 1737870, at *3 (E.D. Tex. Apr. 10, 2015) (allowing expert evidence at class certification and noting that district court judge served as the trier of fact); *Dockery v. Fischer*, 253 F.Supp.3d 832, 845 (S.D. Miss. 2015) (finding in the context of a motion for class certification that expert testimony should not be excluded because the court was the trier of fact).

Against this weight of authority, Defendants argue that the Court is not equipped to consider the Wright Rebuttal because it merely recites record evidence and opines about what Exxon could and could not do. DB 13-15, 18-19. But that argument distorts the reliability of

18

Wright's opinions, which, as described *infra*, comply with standard expert methodologies in comparing company practices to industry norms, and help the trier of fact understand the import of internal company documents given his vast experience in the field.  None of this is controversial. *See, e.g.*, *Anderson v. Wells Fargo Bank, N.A.*, 2018 WL 3426269, at *17 (N.D. Tex. July 13, 2018) (Godbey, J.) (finding methodology reliable where expert "reviewed thousands of pages of documents in preparation of the Report and has over forty years of experience in the relevant industries"). Further, should Defendants seek to undermine the reliability of Wright's opinions, they may do so *in a deposition* and in their sur-reply brief—which is, again, standard expert practice. Because "*Daubert* requires a binary choice—admit or exclude—and a judge" sitting as trier of fact "should have discretion to admit" evidence it deems relevant, the Court should deny Defendants' improper attempt to exclude the Wright Rebuttal. *Thompson v. Rowan Cos. Inc.*, 2007 WL 724646, at *1 (E.D. La. Mar. 6, 2007).

### A.    The Wright Rebuttal Does Not Merely Recite Record Evidence

The Wright Rebuttal provides several valuable opinions to assist the Court in determining whether to certify the class that go beyond "[l]awyers' arguments dressed up as expert opinions . . . ." DB 13. A qualified expert's "clarification and summary of a large corporation's business plans could certainly prove helpful to the average [trier of fact] who presumably lacks such experience in and knowledge about complex" oil and gas calculations. *Lea v. Wyeth LLC*, 2011 WL 13193321, at *4 (E.D. Tex. Sept. 16, 2011) (holding that expert's opinion would assist jury).

In particular, the Wright Rebuttal offers multiple insights and opinions properly provided by an oil and gas industry expert. This includes Wright's:

(1) Summary of industry standards and processes used in planning and drilling wells, from the creation of the development plan to the determination of SEC Proved Reserves and Resource Base figures (D. A-175-79);

(2) ██████████████████████████████████████████████;

19

(3) Overview of reserve analysis and its connection to drilling assumptions (D. A-179-80);

(4)

(5)

(6)                                                                                      and

(7)

None of this is a mere recitation of the evidence; rather, it is standard expert analysis of the evidence from a highly-experienced oil and gas expert who recognizes the flaws in Defendants' evidence and arguments. That these opinions are based on Wright's review of the record evidence is unavoidable, since his purpose was to review the record evidence and ***analyze*** that evidence, as well as Defendants' affirmative expert opinions. Courts frequently allow such expert testimony to assist the fact finder in this way. *See*, *e.g.*, *Headwater Research LLC v. Verizon Comm's, Inc.*, 2025 WL 1739330, at *6 (E.D. Tex. June 23, 2025) (expert testimony helpful to trier of fact where technical subject matter of the record was "beyond the ken of the average juror"); *Canamar v. McMillin Texas Mgmt. Servs., LLC*, 2009 WL 2432012, at *3 (W.D. Tex. Aug. 4, 2009) (allowing expert familiar with "terminology" to assist factfinder by "defining relevant but possibly confusing terms" ); *Wellogix, Inc. v. Accenture LLP*, 823 F.Supp.2d 555, 576 (S.D. Tex. 2011) (expert testimony appropriate where expert "review[ed] hundreds of documents and many depositions, described how to read [documents] in an intelligible manner, and provided the jury with his understanding, gathered from his industry expertise, of [relevant terms]"), *aff'd Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867 (5th Cir. 2013) ("*Wellogix II*").

Defendants' cases are distinguishable. In *Salas v. Carpenter*, the court rejected expert

testimony that consisted of "conclusory assertions regarding [the defendant's] state of mind." 980 F.2d 299, 305 (5th Cir. 1992). Defendants do not claim that the Wright Rebuttal should be excluded because it is conclusory, nor does Wright opine about Defendants' state of mind. Similarly, Defendants do not argue that the Wright Rebuttal is based on inadmissible hearsay, which was the question in *Factory Mutual Insurance Co. v. Alon USA L.P.*, 705 F.3d 518, 525 (5th Cir. 2013) (allowing expert testimony based hearsay evidence that was "the sort of information reasonably relied upon by appraisers"). *United States v. Brownlee* also dealt with the irrelevant question of hearsay testimony at trial. 744 F.3d 479, 482 (7th Cir. 2014). *Robroy Industries-Texas, LLC v. Thomas & Betts Corp.* also addressed an expert's testimony at trial, and the court found that the defendant's damages expert, who was an economist, was "in no better position to testify as to the causes of contract awards in the PVC-coated conduit industry generally, or in the circumstances of this case in particular, than any person who has looked through the records of this case." 2017 WL 1319553, at *10 (E.D. Tex. Apr. 10, 2017). And in *Orthoflex, Inc. v. ThermoTek, Inc.*, the plaintiff's expert explicitly "testified that the basis for this opinion was a conversation with plaintiffs' counsel[.]" 986 F.Supp.2d 776, 797 (N.D. Tex. 2013).

None of those circumstances exist here. Wright is a highly-qualified industry expert retained to opine on standards in the oil and gas industry and how they apply to the complex and technical issues raised in Defendants' class certification arguments. He relied on a thorough analysis of the record. And, unlike the expert in *Guile v. United States*, his opinions are fully supported by his experience and the data. 422 F.3d 221, 227 (5th Cir. 2005).

**B.    Wright's Opinions Are Based on Reliable Methodology**

After arguing that the Wright Rebuttal merely repeats the record, Defendants contend that it "is connected to existing data only by the *ipse dixit* of the expert" and "there is simply too great an analytical gap between the data and the opinion proffered." DB 16. In particular, Defendants

21

fault the Wright Rebuttal for "never identif[ying] any specific industry standard or methodology." *Id.* 15 n.7. But he *does* describe industry standards and methodologies. D. A-175-80 ("Relevant Industry Standards and Processes").

Further, "[t]he absence of textual support or published studies is not dispositive when reliable methods are used." *Roman v. Western Mfg., Inc.*, 691 F.3d 686, 694 (5th Cir. 2012) (affirming admissibility of expert testimony based on principles "generally 'accepted in the engineering community'"); *Tunica Web Advertising, Inc. v. Barden Miss. Gaming, LLC*, 2007 WL 2768914, at *4 (N.D. Miss. Sept. 18, 2007) ("[A]n expert's opinions need not necessarily be based on peer-reviewed, 'scientific' reports or studies. Rather, expert opinions may also be based on experience, skill, or other specialized knowledge that renders the expert's knowledge expert."). That Wright used general oil and gas engineering principles and his extensive experience to interpret and analyze the record does not mean that his report relies on *ipse dixit* reasoning.

Defendants' arguments that the Wright Rebuttal is not based on any scientific or reliable methodology are also meritless. After admitting that Wright "does identify a purported industry standard," Defendants nevertheless take issue with Wright's opinion that learning curves should be based on three factors: "real-world drilling performance, realistic expectations of technological and operational improvements, and expert judgment by drilling engineers." DB 16. Defendants incorrectly argue that Wright's conclusion ████████████████████████ is unsound because he did not consider the second and third factors. But Wright *did* consider those factors and concluded that ████████████████████████████████████████████████ ███████████████████████████████████████████. *See* D. A-181-96. Wright concluded, based on a careful review of Exxon's development planning documents, that ████████████████████████████████████████████████ *Id.*

22

Moreover, Wright's analysis of Exxon's real-world drilling performance was sufficient to conclude that ████████████████████████ D. A-200-03.

Defendants also argue that the Wright Rebuttal is internally inconsistent because it states that industry standards dictate that reported proved reserves should be based on actual (*i.e.*, current) operating and economic conditions. DB 17. ████████████████████████████

████████████████████████████████████████

██████████ That is not an inconsistency—it is the basis for Wright's opinion that ██████████

████████████████████ and part of Plaintiffs' theory of the scheme.[5] It is also the basis for Wright's opinion that ████████████████████████████████

██████████ contrary to the Boone Declaration. D. A-198-200.[6]

Defendants wrongly contend that Wright opined as to Exxon's "intentions" ██████████

████████████████████████████, and argue that he did not explain "what industry standards allowed him" to do so. DB 17 (citing D. A-199). Wright did not opine as to Exxon's "intentions" or state of mind—he reviewed the record and concluded based on his review and expertise that ████████████████████████████████

████████████████████ D. A-199. He also identified the relevant industry standard— the "fundamental principle" that an oil and gas company must "plan to actually invest the required capex [used to calculate SEC Proved Reserves] to develop the undeveloped reserves." *Id.*

Finally, Defendants argue that whether the 2019 Company Plan conformed to industry

---

[5] Defendants also fault the Wright Rebuttal for supposedly failing to explain "how industry standards are relevant to Wright's opinions about what 'the evidence shows.'" DB 16. But that is clearly relevant where his opinion was that ████████████████████████████████.

[6] That Wright did not "explain why ExxonMobil would have included learning curves" in its SEC Proved Reserves is irrelevant. DB 17. Plaintiffs are not required to establish *why* Defendants violated the securities laws—only that they *did*.

standards is not relevant to the determination of whether Defendants' scheme "somehow reached investors on or by a date certain." DB 17-18. This is a red herring. Wright opines that ███████████ ████████████████████████████████████████████████. D. A-181-83. Wright also counters Defendants' improper merits-based arguments that ███████ ████████████████████████████████████████████████ ███████████. D. A-51, 183-96. Defendants' cases suggesting that Wright's analysis was based on an unreliable methodology are readily distinguishable on their facts. *See E.E.O.C. v. Kaplan Higher Educ. Corp.*, 748 F.3d 749, 751-54 (6th Cir. 2014) (finding unreliable expert's "race rating" methodology of "eyeball[ing] DMV photos" to classify credit applicants by their race); *Texokhan Operating, Inc. v. Hess Corp.*, 89 F. Supp. 3d 903, 910-11 (S.D. Tex. 2015) (finding unreliable expert's "purely subjective methodology" that he admitted was more "commonly used before computers" to forecast future oil production from a well).

### C. Wright Is Qualified to Assist the Court in Determining that the Inflated Learning Curves Were Used in Exxon's Proved Reserve Estimation

Wright holds a Master of Science degree in Mechanical Engineering and is a registered professional engineer in the state of Texas. D. A-164. He also belongs to several oil-and-gas-industry and engineering professional organizations, including the Society of Petroleum Engineers ("SPE"), and is qualified as a reserves evaluator pursuant to the SPE's "Standards Pertaining to the Estimating and Auditing of Oil and Gas Reserves Information." *Id*. Wright has over 50 years of practical experience in the estimation and evaluation of petroleum reserves, and his employment experience includes working for an international oil and gas company, as a reservoir engineer, and in the Permian Basin. D. A-164-65. Wright has repeatedly calculated SEC Proved Reserves and evaluated reserves by analyzing geology, petrophysical data, and log analyses. D. A-166. He also has significant experience working with learning curves. D. A-166-67.

24

Despite Wright's experience, Defendants contend that Wright is unqualified to render his opinions because he "does not claim to have had any experience estimating SEC Proved Reserves for a public company," and "has never worked on an ExxonMobil company plan." DB 18. But the law does not require that an expert's experience be so particularized to be admissible. Indeed, while Wright is, in fact, eminently qualified, the Fifth Circuit has made clear that "an expert is not required to be *highly* qualified in order to testify about an issue." *Aircraft Holding Sol's, L.L.C. v. Learjet, Inc.*, 2024 WL 3042394, at *10 (5th Cir. June 18, 2024); *see also Wellogix II*, 716 F.3d at 881-82 (holding that software expert "did not need particular expertise in the oil-and-gas industry, or complex services procurement, to help the jury understand software concepts and terms"); *Spence*, 775 F. Supp. 3d at 976 (expert qualified based on "extensive education, research, and overall experience," noting that "differences" regarding expertise "bear chiefly on the weight to be assigned by the trier of fact, not its admissibility").

Defendants cite to *Hathaway v. Bazany* (DB 18-19), that concerned an opinion that relied solely on "speculative premises" rather than any quantitative data. 507 F.3d 312, 318-19 (5th Cir. 2007). Wright relied on no "speculative premises," and has the requisite expertise and experience.

**III.     Submitting a Sur-Reply that Defendants Agreed to Does Not Prejudice Defendants**

Defendants assert they will be prejudiced if they have address the Wright Rebuttal on sur-reply. DB 19. But the sur-reply framework was included in the schedule months ago at Defendants' request; and it is how price impact is routinely litigated in securities class actions. Requiring Defendants to address the Wright Rebuttal in their sur-reply would not prejudice Defendants.

Finally, with respect to delay, it is Defendants, not Plaintiffs, who asked this Court to hold the class certification briefing process in abeyance while they challenge the Wright Rebuttal.

CONCLUSION

The Court should deny Defendants' motion to exclude the Wright Rebuttal.

25

Dated: September 12, 2025

Respectfully submitted,

/s/ John Rizio-Hamilton

John Rizio-Hamilton (*pro hac vice*)
johnr@blbglaw.com
Rebecca E. Boon (*pro hac vice*)
rebecca.boon@blbglaw.com
John Esmay (*pro hac vice*)
john.esmay@blbglaw.com
Thomas Z. Sperber (*pro hac vice*)
thomas.sperber@blbglaw.com
**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Phone: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Plaintiffs, Lead Counsel for the
Class and proposed Class Counsel*

Caitlin M. Moyna
cmoyna@gelaw.com
Lauren J. Salamon
lsalamon@gelaw.com
**GRANT & EISENHOFER PA**
485 Lexington Avenue
New York, New York 10017
Phone: (646)722-8500
Fax: (646) 722-8501

*Co-Lead Counsel for Co-Lead Plaintiff
Amalgamated Bank*

Lewis T. LeClair
Texas Bar No. 12072500
lleclair@mckoolsmith.com
**McKOOL SMITH PC**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Phone: (214) 978-4000
Fax: (214) 978-4044

*Liaison Counsel for the Class*

26