**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated, <br><br> *Plaintiff*, <br><br> v. <br><br> EXXON MOBIL CORPORATION, DARREN W. WOODS, LIAM M. MALLON, and MELISSA BOND, <br><br> *Defendants*. | Civil Action No. 3:21-cv-00194-N |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE**
**DECLARATION OF D. RANDALL WRIGHT, P.E. AND BRIEF IN SUPPORT**

Plaintiffs used the Wright Declaration not to rebut any new argument or new expert opinion offered by Defendants, but to introduce on reply over 40 pages of new fact evidence they argued but failed to support with evidence in their Class Motion. Having made that choice, Plaintiffs cannot belatedly offer this new evidence in an attempt to carry their burden of proof.

Like the Wright Declaration it defends, Plaintiffs' Opposition is an exercise in misdirection.[1] Plaintiffs contend that they are entitled to submit "rebuttal evidence," but ignore case law that makes clear that rebuttal is limited to new arguments raised in the Class Opposition and they cannot rebut facts with a purported "expert." They contend that proving a connection between their alleged scheme and statements to investors was either Defendants' burden or a merits issue they need not address, but their Class Motion admits that Plaintiffs "must demonstrate" that connection to invoke the presumption of reliance at class certification. They argue that Wright rebuts the Ferrell expert report but cannot identify a single opinion of Dr. Ferrell that Wright rebuts. They claim that Wright is "rebutting" ExxonMobil employee Max Boone's personal knowledge of how SEC Proved Reserves were actually estimated at ExxonMobil with his interpretation of the record evidence uninformed by any personal experience with preparing SEC Proved Reserves. And they falsely claim that Defendants failed to timely disclose Boone's knowledge of the SEC Proved Reserves process but fail to identify any material fact sponsored by Wright that was not in their possession when they drafted the Class Motion.

Even if Plaintiffs were permitted to sandbag Defendants by attempting to shore up the evidentiary deficiencies in their Class Motion with new evidence in a reply appendix, Rule 702 and *Daubert* preclude them from doing so through the Wright Declaration. The Opposition does

---

[1] "Opposition" refers to Lead Plaintiffs' Opposition to Defendants' Motion to Exclude the Declaration of D. Randall Wright, P.E. "Class Opposition" refers to Defendants' Opposition to Plaintiffs' Renewed Motion for Class Certification.

not identify any opinion about "industry standards" in Defendants' Class Opposition or in the Boone Declaration. So Wright's opinions about industry standards are not rebuttal. Whether ExxonMobil followed unspecified "industry standards" in selecting learning curves or estimating its SEC Proved Reserves and Resource Base is also irrelevant. The question on class certification is whether ExxonMobil's public statements actually did incorporate any results of the alleged scheme – not whether they should have. Wright cannot opine on that issue because his expertise cannot make him a witness to the facts. And reviewing cherry-picked documents to opine about what ExxonMobil employees did or did not do is not a subject of expert analysis.

**ARGUMENT**

I.  **The Wright Declaration does not rebut any expert opinion and cannot rebut facts.**

Plaintiffs deliberately conflate whether they can respond to the facts in Defendants' Class Opposition in their reply brief (they can) with whether they can do so using an expert and relying on new evidence they chose to omit from their opening Class Motion (they cannot).

***Expert testimony cannot be used to avoid the bar on submitting new evidence on reply.***

If a "lay witness did not offer an expert report or expert testimony there [are] no 'new or unforeseen facts brought out' for a rebuttal expert to rebut." *Erica P. John Fund, Inc. v. Halliburton Co.*, 2016 WL 6330443, at *1 (N.D. Tex. July 3, 2016) (quoting *U.S. Risk Ins. Group v. U.S. Risk Mgmt., LLC*, 2013 WL 6098488, at *1 (N.D. Tex. Nov. 19, 2013)); *see also Nationwide Agribusiness Ins. Co. v. Varco Pruden Bldgs., Inc.*, 2020 WL 1778069, at *11 (N.D. Tex. Mar. 3, 2020); *United States ex rel. Taylor v. Healthcare Assocs. of Tex., LLC*, 2024 WL 4606799, at *2 (N.D. Tex. Oct. 28, 2024) (expert rebuttal permitted if it "directly respond[ed] to an opposing expert's opinion."). The Opposition cites no case in which a party was permitted to use an expert to rebut a purely factual argument. *iCharts LLC v. Tableau* addresses whether a party could rely on the declaration of a fact witness to rebut a new argument in an opposition. 2024 WL

2

2305214, at *2-3 (W.D. Tex. May 21, 2024). *Taylor*, *Rodriguez*, and *McAfee* each analyzed whether an expert "rebutted" another expert. *See Taylor*, 2024 WL 4606799, at *2 ("a rebuttal expert witness [must] 'solely . . . contradict or rebut'" the opposing expert's evidence); *Rodriguez v. Olin Corp.*, 780 F.2d 491, 493-94 (5th Cir. 1986); *McAfee v. Murray Ohio Mfg., Inc.*, 2003 WL 21015787, at *7 (5th Cir. 2003).[2] And *McAfee* affirmed the exclusion of a rebuttal expert whose testimony "was not required to rebut any previously unavailable fact." 2003 WL 2105787, at *7.

Defendants' Class Opposition did not raise a new issue or rely on "any previously unavailable fact." The Class Motion admits that to establish predominance under the fraud-on-the-market presumption, Plaintiffs "must demonstrate [that] the alleged misrepresentations were publicly known." (Mot. App. 25.) That meant proving the scheme-statement nexus "with facts – and by a preponderance of the evidence." *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 139 (N.D. Tex. 2014) (emphasis omitted). Plaintiffs chose not to offer any evidence to meet that burden. Defendants used the evidence readily available to both parties to rebut those allegations. Plaintiffs cannot now supplement their Class Motion on reply. *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 551 (N.D. Tex. 2006) (striking a reply brief on grounds that is was "in effect . . . used to supplement [the opening] motion").

### The Wright Declaration does not rebut Dr. Ferrell's expert opinions.

Plaintiffs' claim that Wright is countering Dr. Ferrell's opinion "that there was no connection between the January 31, 2020 and May 1, 2020, corrective disclosures and the alleged

---

[2]  Contrary to Plaintiffs' argument (Opp. at 12), Rule 26 applies at class certification. *See, e.g.*, *Witt v. Chesapeake Expl., L.L.C.*, 2011 U.S. Dist. LEXIS 76033, at *6 (E.D. Tex. July 13, 2011) (prohibiting expert from testifying at class certification hearing because it "violate[d] the dictates of Rule 26(a)(2)(b)"); *Colindres v. Quietflex Mfg.*, 228 F.R.D. 567, 571-72 (S.D. Tex. 2005) (applying Rule 26(a)(2)(B) disclosure requirements to class certification expert); *Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, 2007 WL 4118519, at *2 (E.D.N.C. Nov. 16, 2007) (similar). And Plaintiffs also rely on Rule 26 cases.

misrepresentations" is belied by their refusal to say that before the reply was served and their use of economist Cain to rebut Ferrell's opinions. (Opp. at 9; Mot. App. 220-223.) And Dr. Ferrell was *not* offering that opinion. (Reply App. 49 at 146:7-10.) Dr. Ferrell's report does not discuss whether or how learning curves might be incorporated in SEC Proved Reserves or the Resource Base. (Mot. App. 85-101.) Wright is not responding to Dr. Ferrell's opinion, he is claiming to have mined ExxonMobil internal documents to determine pure fact issues such as ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Opp. at 10; Mot. App. 195 ¶ 88, 199 ¶ 98, 204 ¶ 107, 208-209 ¶¶ 117-119.)

### *Plaintiffs' decision not to use the extensive evidence they obtained during discovery does not let them submit new evidence on reply or use an expert to rebut a fact witness.*

Although they claim that Wright relied on "new" evidence, Plaintiffs fail to identify any material fact or evidence not available to them when they submitted their Class Motion. Plaintiffs sought and obtained thousands of documents in class discovery by successfully arguing to this Court that documents "concerning the connection between the alleged scheme to inflate Exxon's development plan for the Delaware Basin and Defendants' false public statements" were "relevant to class certification," even if they "might also be relevant to the merits of Plaintiffs' allegations." (ECF No. 127 at 14-15.) Plaintiffs received the vast majority of those documents (including many responsive to these requests) at least seven months before serving their Class Motion. The only substantive testimony Wright relies on comes from Lindsey Gulden and Damian Burch, both of whom made themselves available to Plaintiffs – and only to Plaintiffs – for interviews well before

the Class Motion was served.[3]

Plaintiffs contend it is "standard [PSLRA] practice" to proffer only evidence of an efficient market to establish the *Basic* presumption. (Opp. at 1, 4, 16.) But this is not a standard PSLRA case involving misleading statements or omissions under Rule 10b-5(b). The Class Motion acknowledged that proof of the scheme-statement nexus under Rule 10b-5(a) and (c) is an essential Rule 23(b) requirement and that Plaintiffs "must demonstrate [that] the alleged misrepresentations were publicly known." (Mot. App. 25.)

*Goldman*'s burden-shifting regime also does not allow Plaintiffs to carry their proof burden in a reply. (*See* Opp. at 1, 3.) *Goldman* applies only to price impact issues, where "the defendant bears the burden of persuasion to prove a lack of price impact." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 126 (2021). Once a defendant introduces evidence on price impact, the plaintiff can seek to rebut that evidence in reply. *Goldman* does not affect Plaintiffs' obligation to carry their burden of proof on the other Rule 23 requirements. And Plaintiffs' vague disclosure they "may rely" on an expert "for [unspecified] rebuttal" did not relieve them of their obligation to carry their burden of proof in their Class Motion. *See In re Kosmos Energy*, 299 F.R.D. at 139.

### *Plaintiffs had timely notice of Max Boone's role in estimating SEC Proved Reserves.*

Plaintiffs cannot credibly claim they did not know until reading the Class Opposition either that Max Boone might be a relevant witness or the facts underlying Max Boone's declaration. (*See* Opp. at 5-6.) Defendants' February 2024 interrogatory responses described how ExxonMobil estimates its SEC Proved Reserves and Resource Base. (Reply App. 9-10.) Boone appears in at least 38 produced documents about SEC Proved Reserves and ▬▬▬▬▬▬▬▬▬▬

---

[3]   Plaintiffs cited ex parte interviews with Gulden and Burch in their September 2024 Motion to Amend. (*See* ECF No.161-1 at ¶¶ 169, 204; ECF No. 161 at 12; Reply App. 61 at 121:10-20.)

███████████████████████████████████████ (Reply App. 2, 44 at 161:12-16). And on May 21, 2025 – over two weeks before class discovery closed – Boone signed supplemental interrogatory responses that mirror the Boone Declaration that Plaintiffs now claim they "did not (nor could [have]) anticipate[d]." (Opp. at 13.) Plaintiffs chose not to depose Boone or serve an interrogatory to identify ExxonMobil employees involved in the estimation of SEC Proved Reserves. (Reply App. 19-39.) Any failure by Plaintiffs to understand Boone's role in the SEC Proved Reserves process was self-inflicted. Nor did Plaintiffs seek leave to amend or supplement their Class Motion. (*See* ECF No. 181 at 2.) Plaintiffs' rejoinder that the Boone Declaration is without "explanation or supporting documentation" is equally disingenuous. (Opp. at 6.) The underlying materials – many of which were cited in the Class Opposition – are among the 16,487 documents produced *before* Plaintiffs served their Class Motion. (Mot. App. at 52-53.)

## II.    The Wright Declaration contains no reliable expert analysis.
### A. *Daubert* applies with full force at class certification.

Citing a twenty-five-year-old case, Plaintiffs ask this Court to apply a more relaxed standard than *Daubert* to the admission of expert evidence at class certification. (Opp. at 18 (citing *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)).)[4] That isn't the law. Rather, in 2021 the Fifth Circuit held that "the *Daubert* hurdle *must* be cleared when scientific evidence is relevant to the decision to certify [a class]." *Prantil v. Arkema Inc.*, 986 F.3d 570, 575 (5th Cir. 2021) (emphasis added). *Prantil* itself vacated a class certification order in part because a district judge "hesitat[ed] to apply *Daubert*'s reliability standard with full force." *Id.* at 576. Plaintiffs next argue that "shaky" evidence can be challenged with other evidence or with court instructions. (Opp. at 18.) But these alternatives are appropriate only "where the basis of scientific testimony meets the

---

[4]    Plaintiffs' other authority predates *Prantil,* came from other circuits, or does not involve class certification. *Griffin v. United States*, 2023 WL 6930445, at *1 (E.D. La Oct. 19, 2023).

standards of Rule 702." 509 U.S. 579, 596 (1993).

### B. Wright's opinions are not based on any expertise or methodology.

Plaintiffs do not dispute that Wright cannot just repeat facts. (Opp. at 19.) But 28 paragraphs of Wright's Declaration are nothing more than his spin on what "the evidence shows" about fact issue. (*See* Mot. App. 163 ¶ 2, 168-170 ¶¶ 19-23, 175 ¶ 39, 180 ¶ 52, 181-182 ¶¶ 55-56, 187 ¶ 69, 188 ¶ 73, 189 ¶ 75, 194-195 ¶¶ 87-88, 196 ¶ 91, 198 ¶¶ 94-96, 199-202 ¶¶ 98-102, 203-204 ¶¶ 106-107, 208-209 ¶¶ 117-118.) The seven "opinions" Plaintiffs identify as appropriate expert testimony establish precisely why Wright's Declaration is an inadmissible "factual narrative based upon record evidence" interpreted in a light most favorable to Plaintiffs. *Escalante v. Creekside Logistics, LLC*, 2019 WL 9135758, at *8 & n.3 (W.D. Tex. Feb. 12, 2019).

Plaintiffs first identify a "summary of industry standards and processes," an "explanation of the learning curves at the heart of the scheme," and an "overview of reserve analysis and its connection to drilling assumptions" as "helpful" "insights" offered by Wright. (Opp. at 19-20.) But Plaintiffs do not explain why Wright's rudimentary explanation of terms like "learning curve" or the commonsense statement that learning curves should be based on reliable data is helpful to this Court's understanding.[5] Nor do they explain how these basic definitions are "rebuttal" when these "industry terms" are used in the Complaint and the Class Motion.

Plaintiffs next identify an "opinion," a "conclusion," a "deduction," and an "explanation" that they claim are "standard expert analysis." (Opp. at 20.) None is the result of any expert analysis or methodology. Wright's ███████████████████████████████████████

---

[5] *Compare* Wright at Mot. App. 176 ¶ 40 ("a learning curve is a graphical representation that shows how proficiency in a task has changed with actual experience over time") *with Wikipedia* (A learning curve is a graphical representation of the relationship between how proficient people are at a task and the amount of experience they have.) https://en.wikipedia.org/wiki/Learning_curve.

7

████████████████████████████████████████████ is based on two emails and the opinion of

Burch, ███████████████████████████████ (Opp. at 20; Mot. App. 188-189; Reply App. 55

at 138:11-16.)  Citing nothing at all, Wright also rejects the documentary evidence that contradicts

his "opinion" on his *ipse dixit* that ████████████████████████████████████████

████████████████████████████████████████████████████████████ (Mot.

App. 189 ¶ 73.)  This is fiat, not analysis.

Wright's "conclusion" that the learning curve assumptions were not supported by empirical

data and his "deduction" that ExxonMobil did not achieve the learning curve assumptions are

similarly unsupported.  Wright does not dispute that the use of learning curves is appropriate, nor

does he contend that ExxonMobil should have assumed it could not improve its drilling speeds.

(Mot. App. 167 ¶ 13, 176 ¶ 40.)  He "opines" instead that ExxonMobil's learning curves in the

Delaware Basin were "aggressive."  (Mot. App. 188 ¶ 73.)  This, of course, is irrelevant to whether

learning curves were incorporated in any public statement.  And Wright reaches his conclusion

without reference to any identified "industry standards" and without explaining what curve would

have been consistent with industry standards.  Instead, he relies on the rank speculation of lay

witnesses Burch and Gulden.  (Mot. App. 185 ¶ 64, 186 ¶ 67, 188-189 ¶¶ 72-73, 191 ¶ 78, 195

¶ 88, 196 ¶ 90.)  Worse, he adopts wholesale Gulden's purported "study" without any independent

analysis of her methodology.[6]  (Mot. App. 202-203 ¶ 105.)  The Fifth Circuit requires that Wright

elucidate why he believed Gulden's opinion was reliable "other than the fact that it was the opinion

of someone he believed to be an expert."  *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344,

---

[6] ███████████████████████████████████████████ (Reply App. 55 at 138:11-16,
62 at 145:8-12, 63 at 195:3-7, 64 at 197:1-11.) ████████████████████████████
████████████████████████████████████████████ (Mot. at
8.)  Plaintiffs cannot use an expert to remedy these defects in Gulden's analysis.

349 (5th Cir. 2020) (citation omitted). Wright does not – and could not – do this.

Perhaps most bizarrely, Wright opines – without reference to any industry standard or custom and citing no document – that ExxonMobil did not meet the learning curve in 2020 because ExxonMobil reduced the number of rigs it was operating in 2020 and Wright speculates that it "retain[ed only] the efficient ones." (Mot. App. 204 ¶ 108.) According to Wright, this means that ExxonMobil was not actually drilling at the speed it was drilling. Because Wright "fails to identify with specificity which standards, customs and practices he contends apply," his opinions should be excluded. *See Brown v. Ill. Cent. Rail. Co.*, 705 F.3d 531, 536 n.11 (5th Cir. 2013) (citation omitted); *see also Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (excluding expert who "fail[ed] to conduct an independent analysis" on sales figures provided by attorneys).

Wright's naked declaration that ExxonMobil failed to comply with unidentified industry standards (*See, e.g.*, Mot. App. 169 ¶ 21, 181 ¶ 55, 187 ¶ 69, 188 ¶ 73, 202 ¶ 104)[7] is also irrelevant to whether ExxonMobil's publicly reported SEC Proved Reserves estimates actually incorporated the learning curves. Even if industry standards required that learning curves be incorporated in SEC Proved Reserves (contrary to Wright's acknowledgment that "current economic conditions" must be used), that would not prove whether ExxonMobil did or did not incorporate them.

### III.    Defendants' right to a sur-reply does not cure Plaintiffs' untimely evidence.

Plaintiffs are well aware that the scheduling order includes a sur-reply only because the parties anticipated that Defendants would rely in their Class Opposition on a price impact expert, and Plaintiff would present "rebuttal evidence" countering that price impact expert on reply.

---

[7]   These are the only paragraphs in which Wright opines that ExxonMobil's conduct did not comply with industry standards. Three conclude that ███████████████████████████ █████████████████████████████████████████████████ ██████. (Mot. App. 169 ¶ 21, 181 ¶ 55, 187 ¶ 69.) The other two do not relate to whether the learning curves were included in a public statement.

(Reply App. 66, 72; ECF 181 ¶7.)    In fact, Defendants struck Plaintiffs' proposed language suggesting they use a "new" expert with their reply. (Reply App. 72.)    The parties did not agree to permit Plaintiffs to reargue facts or introduce new evidence that should have been addressed in the Class Motion under the guise of rebuttal.    Their argument that the word "rebuttal" loses its ordinary meaning if not expressly tied to Rule 26 borders on bad faith.    Defendants did not contemplate that Plaintiffs would use a pseudo-expert report to add 40 pages of fact evidence in a reply brief.

Plaintiffs confuse the exception with the rule in arguing that that "there is no 'palpable injustice'" in allowing Plaintiffs' untimely evidence "because [Defendants have] the opportunity to respond in a sur-reply." (Opp. at 2 (quoting *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991)).) *Springs Industries*, on which Plaintiffs chiefly rely, does not bless reply brief sandbagging so long as a sur-reply is available. To the contrary, *Springs Industries* reiterates that "[i]t cannot seriously be disputed that a movant is obligated to file with a motion the evidentiary materials necessary to justify the relief it seeks." *Id.* at 239; *see also Bell v. Ascendant Sols., Inc.*, 2004 WL 1490009, at *1 & n.1 (N.D. Tex. July 1, 2004) (Godbey, J.) (denying plaintiffs' motion for class certification and stating that the Court "discourages" plaintiffs from offering expert testimony "for the first time" on reply), *aff'd*, 422 F.3d 307 (5th Cir. 2005). While the court acknowledged that a sur-reply is one tool a court can use to prevent the injustice that results from a party using a reply to present its substantive briefing, it did not suggest that a sur-reply is always the answer. *Springs Indus., Inc.*, 137 F.R.D. at 240.

Here, Plaintiffs used the Wright Declaration not to rebut any new argument or new expert opinion offered by Defendants, but as a post hoc supplement to remedy the deficiencies of their Class Motion. Allowing a sur-reply – which will need to be at least 40 pages itself – to "fix" prejudice of Plaintiffs' own making is precisely the injustice *Springs Industries* warns against.

Dated: September 26, 2025

Respectfully submitted,

/s/ Noelle M. Reed
Noelle M. Reed
   State Bar No. 24044211
Abigail E. Davis
   State Bar No. 24139564
Wallis M. Hampton
   State Bar No. 00784199
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
Tel.: (713) 655-5122
Fax: (713) 483-9122
noelle.reed@skadden.com
abigail.sheehan@skadden.com
wallis.hampton@skadden.com

Michelle L. Davis
   State Bar No. 24038854
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
308 Bahama Court
Granbury, Texas 76048
Tel.: (713) 655-5197
Fax: (713) 483-9197
michelle.davis@skadden.com

Michael W. Restey Jr. (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Tel.: (212) 735-3000
Fax: (212) 735-2000
michael.restey@skadden.com

*Attorneys for Defendants*
*Exxon Mobil Corporation, Darren W. Woods,*
*Liam M. Mallon, and Melissa Bond*

11

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025, I served the foregoing document on counsel for Lead Plaintiffs via email, in accordance with Special Order 19-2 and Federal Rule of Civil Procedure 5(b)(2)(F).

/s/ *Wallis M. Hampton*
Wallis M. Hampton

12