IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MENDI YOSHIKAWA, Individually and On Behalf of All Others Similarly Situated, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:21-CV-00194-N |
| EXXON MOBIL CORPORATION, DARREN W. WOODS, LIAM M. MALLON, and MELISSA BOND, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Plaintiffs'[1] renewed motion for class certification [224] and motion to strike Defendants' sur-reply to Plaintiffs' renewed motion for class certification [238]. Because Plaintiffs demonstrate that the proposed class meets all four requirements of Rule 23(a), as well as the requirements of Rule 23(b)(3), the Court grants Plaintiffs' motion for class certification. The Court denies Plaintiffs' motion to strike as moot.

## I. ORIGINS OF THE DISPUTE

As discussed in the Court's prior orders ruling on Defendants Exxon Mobil Corporation ("ExxonMobil"), Darren W. Woods, Liam M. Mallon, and Melissa Bond's (collectively, "Defendants") first and second motions to dismiss [88] & [112] and judgment

[1] "Plaintiffs" refers to co-lead plaintiffs, The State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island ("Rhode Island") and Amalgamated Bank ("Amalgamated").

on the pleadings [157], this is a federal securities putative class action on behalf of all persons and entities who purchased or otherwise acquired ExxonMobil common stock ("XOM") between March 5, 2019, and January 15, 2021 (the "Class Period").[2] Order 1, Sep. 29, 2022 ("First MTD Order") [88]; Order 1, Aug. 24, 2023 ("Second MTD Order") [112]. Plaintiffs allege that ExxonMobil portrayed its oil and gas assets in the Permian Basin[3] as more valuable than they were, and when ExxonMobil finally disclosed that its production goals could not be realized, the value of XOM shares declined. Second MTD Order 1–2. Plaintiffs initially sued ExxonMobil and several of its personnel under Sections 10(b) and 20(a) of the Securities and Exchange Act ("Exchange Act") and the related Rule 10b-5(b). *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(b); 15 U.S.C. § 78t(a). Plaintiffs allege both affirmative misrepresentations of ExxonMobil's drilling potential in the Permian Basin and omissions of material information about the project's obstacles. Second MTD Order 2.

The Court initially dismissed Plaintiffs' claims for failure to adequately plead that any Defendant acted with the requisite state of mind but granted leave to amend. First MTD Order 20, 37–38. Plaintiffs filed a Second Amended Complaint ("SAC") [92] and additionally asserted a scheme liability claim against Melissa Bond, the former Senior

[2] Plaintiffs' Original Complaint [1] defined the period as March 7, 2018, to January 15, 2021. However, pursuant to this Court's orders on Defendants' motions to dismiss, Plaintiffs' remaining claims are limited to the time period of March 5, 2019, through January 15, 2021, inclusive. Pls' Renew. Mot. Class. Cert. 3 [224].

[3] The Permian Basin is an oil-and-gas rich area in west Texas and southeast New Mexico which also includes the Delaware Basin.

Manager of Delaware Basin Development, alongside ExxonMobil officer Liam Mallon and ExxonMobil, and named Mallon as a control person. SAC ¶¶ 441, 448. Specifically, the SAC alleged Bond manipulated learning curve assumptions included in ExxonMobil's 2019 development plan, which increased proved reserves by increasing the number of wells ExxonMobil expected to drill. *Id.* ¶¶ 158, 174.

In ruling on the motion to dismiss the SAC, the Court dismissed all of Plaintiffs' claims under Section 10(b) of the Exchange Act and the claims against ExxonMobil's officer, Mallon, under Rule 10b-5(a) and (c) with prejudice. Second MTD Order 22. The scheme liability claims under Rule 10b-5(a) and (c) against Melissa Bond and ExxonMobil remain. *Id.* Plaintiffs' Section 20(a) claims survived the motion to dismiss because Defendants' sole argument for dismissing the control person liability claims was that Plaintiffs did not adequately plead a primary violation—but as of the Order on the motion for judgment on the pleadings, control person liability claims remain. Order 6, Aug. 12, 2024 ("Judgment on Pleadings Order") [157].

Additionally, this Court denied Defendants' motion for judgment on the pleadings. In denying the motion, the Court explained that Plaintiffs had pled adequate facts to connect Bond's allegedly deceptive conduct with the purchase or sale of a security, Plaintiffs were entitled to a presumption of reliance at the pleadings stage, and Plaintiffs had adequately pled that ExxonMobil acted with scienter. *Id.* at 3–6. Now, Plaintiffs' move to certify a class of investors who purchased XOM during the period of March 5, 2019, to January 15, 2021.

## II. CLASS CERTIFICATION LEGAL STANDARD

Under Federal Rule of Civil Procedure 23, the Court must "determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(c). The party seeking certification bears the burden of showing that class certification is appropriate. *Unger v. Amedisys Inc.,* 401 F.3d 316, 320 (5th Cir. 2005). The Court has wide discretion in determining whether to certify a class; however, that discretion must be exercised within the bounds of Rule 23. *See Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996). Furthermore, in making this determination, the Court must undertake a rigorous analysis of Rule 23's prerequisites by probing beyond the pleadings to understand the claims, defenses, and relevant facts. *See Unger,* 401 F.3d at 321.

A case may proceed as a class action only if the party moving for certification demonstrates that it has met all four requirements of Rule 23(a) as well as at least one of the three requirements of Rule 23(b). *See Feder v. Elec. Data Sys. Corp.,* 429 F.3d 125, 129 (5th Cir. 2005). Under Rule 23(a), the moving party must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). FED. R. CIV. P. 23(a).

In the instant case, Plaintiffs rely on the requirements of Rule 23(b)(3) in support of class certification. To satisfy Rule 23(b)(3), Plaintiffs must show that questions of law or fact common to the class predominate and a class action is superior to any other available

method of resolution. FED. R. CIV. P. 23(b)(3). For the reasons set forth below, the Court finds that the Plaintiffs' proposed class satisfies both Rule 23(a) and Rule 23(b)(3).

## III. THE PROPOSED CLASS SATISFIES RULE 23(A)

To satisfy the requirements of Rule 23(a), Plaintiffs must demonstrate the proposed class meets the numerosity, commonality, typicality, and adequacy requirements. Defendants do not contest that Plaintiffs' proposed class meets the numerosity requirement under Rule 23(a)(1). Defendants instead argue that the proposed class lacks sufficient commonality and the class representatives are atypical and inadequate. *See* Defs.' Resp. to Mot. for Class. Cert. 1–2 [226]. The Court respectfully disagrees.

### *A. The Proposed Class is Sufficiently Common*

The commonality requirement of Rule 23(a) requires that the claims of every class member "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832, 840 (5th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Rule 23(a)(2) thus necessitates that a common issue of law or fact will resolve a central issue of each class member's claims. *Id.*

The Court finds that there are common issues of law and fact in the instant case. The claims of each Class member are subject to common proof and raise many classwide questions, including (i) whether Defendants Exxon and Bond engaged in a scheme; (ii) whether, by virtue of the scheme, Defendants issued materially false or misleading statements; (iii) whether any Defendant knew or recklessly disregarded the scheme and/or

the resulting false or misleading statements; (iv) whether such conduct caused the Class to sustain damages; and (v) the methodology for calculating such damages. Accordingly, Plaintiffs have established that there are common issues of law and fact that satisfy Rule 23(a)'s commonality requirement.

### *B. The Representative Parties' Claims are Typical of the Class*

The third requirement of Rule 23(a) requires the claims of the representative parties be typical of the proposed class members' claims. The claims do not need to be completely identical; "'[r]ather, the critical inquiry is whether the [named plaintiff's] claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *Angell v. Geico Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023) (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)).

The Court finds that lead Plaintiffs Rhode Island and Amalgamated's claims are typical of the claims of the proposed class because they all arise out of the same issue: whether Defendants engaged in a scheme to defraud investors during the proposed Class Period by affirmatively misrepresenting ExxonMobil's drilling potential in the Permian Basin and omitting material information about the project's obstacles. The fact that Rhode Island might have been a net seller does not refute the typicality requirement in this case. *See In re MGM Mirage Sec. Litig.*, 2010 WL 4316754, at *4 (D. Nev. 2010) ("Whereas a net gainer achieves a net profit from its Class Period shares, a net seller merely sells more shares than it purchased during the Class Period and may well still suffer a loss."). Rhode Island purchased XOM during the proposed Class Period, held shares at the time of the

alleged misrepresentations, and has alleged an injury-in-fact under the widely-accepted LIFO methodology. *See* Pls.' App. A-2358–59 ¶¶ 105–08 [230]. Similarly, Amalgamated's antagonistic view on fossil fuels does not render Amalgamated's claims atypical. While Defendants argue this view subjects Amalgamated to unique arguments and defenses that would not apply to typical ExxonMobil shareholders, Defendants fail to state what those defenses would be and how they would make Amalgamated's claims atypical. *See* Defs.' Resp. to Mot. for Class. Cert. 23–24 [226]; *see also Feder*, 429 F.3d at 137 (rejecting the claim that "the presence of an arguable unique defense necessarily destroys typicality"). Accordingly, the typicality requirement under Rule 23(a)(3) is satisfied.

### *C. Rhode Island and Amalgamated Are Adequate Representatives of the Proposed Class*

The fourth and final requirement of Rule 23(a) is adequate representation. To show adequacy of representation, a plaintiff must show that (1) the plaintiff's counsel has the zeal and competence to represent the class; (2) the proposed class representative is willing and able to take an active role in controlling the litigation; and (3) the absence of conflict and antagonism between the named plaintiffs and the interest of the class. *Id.* at 130. Defendants do not contest the first and second requirement under Rule 23(a)(4). Rather, Defendants argue Amalgamated is an inadequate class representative because its views on fossil fuel production are antagonistic to the interests of ExxonMobil's shareholder base. Defs.' Resp. to Mot. for Class. Cert. 24. The Court finds this argument unpersuasive.

To defeat the adequacy requirement, a conflict must be fundamental. *In re Deepwater Horizon*, 739 F.3d 790, 813 n.99 (5th Cir. 2014). "'A conflict is not fundamental when . . . all class members share common objectives and the same factual and legal positions and have the same interest in establishing the liability of defendants.'" *Nova Scotia Health Emps.' Pension Plan v. McDermott Int'l, Inc.*, 2025 WL 2814735, at *7 (5th Cir. 2025) (quoting *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010)); *see Littlewolf v. Hodel,* 681 F.Supp. 929, 936 (D.C. Cir. 1988) ("While actual antagonism between class members, or a "strong likelihood" of antagonism, would defeat class certification . . . incantations of the *potential* for antagonism are insufficient." (internal citations omitted) (emphasis in original)). Defendants do not identify any fundamental conflicts. Class members and Amalgamated alike seek the same common objectives of establishing liability and securing recovery. While some putative class members may disagree with Amalgamated's beliefs, mere speculation as to issues extraneous to litigation will not defeat the adequacy-of-representation requirement.

Defendants additionally argue that Rhode Island is an inadequate class representative because it fails to meet the typicality requirement. Because this Court found Rhode Island satisfied the requirement of typicality, Defendants' argument as to adequacy also fails. As such, Rhode Island and Amalgamated adequately represent the proposed class under Rule 23(a)(4).

## IV. THE PROPOSED CLASS SATISFIES RULE 23(B)(3)

In addition to satisfying the prerequisites of Rule 23(a), a proposed class action must meet at least one element of Rule 23(b). The party seeking certification bears the burden

of establishing that the putative class meets the requirements. *Gene & Gene LLC v. Biopay, LLC*, 541 F.3d 318, 325 (5th Cir. 2008). Here, Plaintiffs rely on Rule 23(b)(3), which requires that the questions common to the class predominate over questions affecting individual members and demonstrating that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Court concludes that these requirements are met.

### ***A. Questions Common to the Class Predominate Over Questions Affecting Individual Members***

A predominance analysis must be done on a claim-by-claim basis. *Prantil v. Arkema Inc.*, 986 F.3d 570, 577 (5th Cir. 2021). Plaintiffs allege violations under SEC Rule 10b-5 and control person liability under section 20(a). The elements of a SEC Rule 10b-5 claim are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460–61 (2013) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011)). Control person liability under section 20(a) requires the existence of an independent "primary" violation of the securities laws—in this case, SEC Rule 10b-5. *See Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 905 (5th Cir. 2018). While most elements of Plaintiffs' claims do not require meaningful individualized questions—they depend on the conduct of Defendants and do not vary with the identity of the putative class member asserting the claims—the question of reliance is different. An individual plaintiff can prove

reliance by "showing that he was aware of a company's statement and engaged in a relevant transaction . . . based on that specific misrepresentation." *Erica P. John Fund, Inc. v. Halliburton Co. ("Halliburton I")*, 563 U.S. 804, 810 (2011). But this individualized inquiry is impractical in a class action. Accordingly, Plaintiffs allege they are entitled to a presumption of reliance pursuant to the fraud-on-the-market doctrine as outlined in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and are also entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). The Court will address each in turn.

***1. Plaintiffs Are Entitled to* Basic's *Fraud-On-The-Market Presumption of Reliance.*** – In *Basic*, the Supreme Court held that in an efficient market, courts may presume that an individual relied on public and material misrepresentations when trading securities. *Basic*, 485 U.S. at 247. To establish the *Basic* presumption, Plaintiffs must show that "(1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc. ("Halliburton II")*, 573 U.S. 258, 278 (2014). ExxonMobil can rebut this presumption with "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." *Basic*, 485 U.S. at 248.

Plaintiffs meet all four elements required to establish the *Basic* presumption.[4] First, ExxonMobil's alleged misrepresentations were publicly known. Plaintiffs make two connections between Bond's allegedly deceptive conduct and the purchase of or sale of a security: (a) that the scheme bolstered Defendants' public misstatements about false production goals, and (b) the fabricated learning curve assumptions were incorporated in the company's reported proved reserves and resource base. *See* Judgment on Pleadings Order 8–10 [157]. These allegations are sufficient to establish the "public" element of the Basic presumption. Additionally, there is no dispute that XOM stock trades in an efficient market. XOM stock trades in large volumes, is widely covered by securities analysts, and the market efficiently absorbs ExxonMobil-specific news and rapidly translates it into changes in stock price. *See* Pls' Renew. Mot. Class. Cert. 15–21; *see also Unger*, 401 F.3d at 323 (listing the factors used to determine whether a stock traded in an efficient market). Finally, Plaintiffs satisfy the fourth prerequisite by defining the Class as those who purchased Exxon common stock on or between the date of ExxonMobil's first actionable misrepresentation (March 5, 2019) and the date of the final corrective disclosure (January 15, 2021). Thus, Plaintiffs have met their burden to establish a presumption of reliance under Basic.

Defendants seek to rebut *Basic*'s presumption of class-wide reliance by contending that the alleged misrepresentations had no impact on the price of XOM. Defendants fail to

[4] The Court leaves materiality "to the merits stage because it does not bear on Rule 23's predominance requirement." *Goldman Sachs Grp., Inc., v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 119 (2021).

meet this burden. Successful rebuttal requires more than "a defendant's mere production of *some* evidence relevant to price impact." *Goldman Sachs*, 594 U.S. at 126 (emphasis in original). Rather a defendant must show that "it is more likely than not that the alleged misrepresentations had a price impact." *Id.* at 127. Here, while both parties present extensive expert reports on the issue of price impact, Defendants have not sufficiently "severed the link" between the alleged misrepresentations and price paid or received by Plaintiffs. *See id.* When confronted with limited evidence other than conflicting expert testimony as to price impact, the Court concludes that on balance, Defendants have not carried their burden to rebut the *Basic* presumption. Therefore, Plaintiffs are entitled to a presumption of reliance.

***2. Plaintiffs Are Likely Not Entitled to the* Affiliated Ute *Presumption of Reliance.* –** In addition to the fraud-on-the-market presumption of reliance, reliance can alternatively be presumed in cases "involving primarily a failure to disclose" when the information withheld is "material in the sense that a reasonable investor might have considered them important in the making of this decision." *Affiliated Ute*, 406 U.S. at 153–54. In the Fifth Circuit, to invoke the *Affiliated Ute* presumption of reliance on an omission, "a plaintiff must (1) allege a case primarily based on omissions or non-disclosure and (2) demonstrate that the defendant owed him a duty of disclosure." *Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA), Inc.*, 482 F.3d 372, 384 (5th Cir. 2007). The presumption applies only to those cases which involve primarily a failure to disclose, not to those involving positive misrepresentations. *See Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356,

359 (5th Cir. 1987). Like the presumption in *Basic*, this presumption of reliance is also a rebuttable one. *See Smith v. Ayres*, 845 F.2d 1360, 1363 (5th Cir. 1988).

Plaintiffs claim a mix of fraudulent conduct, most of which appear to be misrepresentations and omissions. That mix may not support application of the *Affiliated Ute* presumption. *See Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 510 (S.D. Tex. 2004) (holding that plaintiffs could not rely on *Affiliated Ute* presumption where plaintiffs alleged a mix of misrepresentations and omissions). But the Court need not and does not decide the applicability of *Affiliated Ute* to this case, as it has already found that Plaintiff is entitled to a rebuttable presumption of reliance based on *Basic*'s fraud-on-the-market theory.

***B. A Class Action is the Superior Method of Adjudication***

Having found that there are questions of law and fact common to the class that predominate, the Court must now turn to the question of whether a class action is the superior way of effectively and fairly resolving the matter as required under Rule 23(b)(3). Superiority is determined with reference to four factors: (a) class members' interest in controlling separate actions; (b) the extent and nature of existing litigation concerning the same claims; (c) the desirability of concentrating the litigation in a particular forum; and (d) the likely difficulties of managing a class action. FED. R. CIV. P. 23(b)(3).

Because all individuals in the class have similar claims, it is efficient and desirable to adjudicate them in one forum. Additionally, Plaintiffs are not aware of any separate actions concerning the same conduct at issue here brought on an individual or group basis by ExxonMobil's shareholders, and the Northern District of Texas remains the appropriate forum for litigating this matter as it was home to Defendants and other witnesses. Because

the Court is unconvinced that any alternative method of adjudication would be more conducive to the efficient and fair resolution of these claims, Rule 23(b)(3)'s superiority requirement is satisfied.

## CONCLUSION

Because the proposed class meets the threshold requirements of Rule 23(a) as well as the predominance and superiority requirements of Rule 23(b)(3), the Court grants Plaintiffs' renewed motion for class certification. The certified class is: all investors who purchased the common stock of Exxon Mobil Corporation during the period of March 5, 2019, to January 15, 2021, inclusive. Further, the Court denies as moot Plaintiffs' motion to strike.

Signed October 2, 2026.

David C. Godbey
Senior United States District Judge